| | |
|---|---|
| 1 | JEFFREY F. KELLER (SBN 148005) |
| 2 | DENISE L. DIAZ (SBN 159516)<br>**KELLER GROVER, LLP** |
| 3 | 425 Second Avenue, Suite 500<br>San Francisco, California  94107 |
| 4 | Telephone:    (415) 543-1305<br>Facsimile:    (415) 543-7861 |
| 5 | jfkeller@kellergrover.com |
| 6 | JOHN G. JACOBS (pending *PRO HAC VICE*)<br>BRYAN G. KOLTON (pending *PRO HAC VICE*) |
| 7 | **THE JACOBS LAW FIRM, CHTD.**<br>122 South Michigan Avenue, Suite 1850 |
| 8 | Chicago, Illinois 60603<br>Telephone: (312) 427-4000 |
| 9 | Facsimile: (312) 427-1850<br>jgjacobs@thejacobslawfirm.com |
| 10 | bgkolton@thejacobslawfirm.com |
| 11 | DAVID SCHACHMAN (pending *PRO HAC VICE*)<br>**DAVID SCHACHMAN & ASSOCIATES, P.C.** |
| 12 | 122 South Michigan Avenue, Suite 1850<br>Chicago, Illinois 60603 |
| 13 | Telephone: (312) 427-9500<br>Facsimile: (312) 427-1850 |
| 14 | ds@schachmanlaw.com |
| 15 | Attorneys for Plaintiffs<br>and the Putative Class |

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DESIREE MOORE and KAREN JONES individually and on behalf of a class of similarly situated individuals, | ) ) ) | Case No. CV-09 1823 |
| | ) | **CLASS ACTION** |
| Plaintiffs, | ) ) | **COMPLAINT FOR DAMAGES,** |
| v. | ) ) | **DECLARATORY AND INJUNCTIVE RELIEF** |
| VERIZON COMMUNICATIONS INC., a Delaware corporation, VERIZON CALIFORNIA, INC., a California corporation, VERIZON NORTHWEST, INC., a Washington corporation, VERIZON WEST COAST, INC., a California corporation, and and DOES 1 through 25, | ) ) ) ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

- 0 -

Plaintiffs Desiree Moore and Karen Jones, on behalf of themselves and a class and sub-class of similarly situated individuals, bring this class action against Verizon Communications Inc., a Delaware corporation, Verizon California, Inc., a California corporation, Verizon Northwest, Inc., a Washington corporation, Verizon West Coast, Inc., a California corporation, and Does 1 through 25 (collectively "Verizon"), and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.     NATURE OF THE CASE

1.     This class action against Verizon involves a particularly abusive practice: the unauthorized charging of consumers for products and services they have not purchased and the illegal billing and collection of such charges. The problem lies in business practices Verizon has adopted for billing and collecting on behalf of itself and myriad third-party companies for various third-party products and services.

2.     Verizon knows that its third-party billing and collection system lacks sufficient checks and safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills – indeed, to the contrary, it knows that there is a significant likelihood of unauthorized charges, given the system presently used – yet it continues to bill and collect such third-party charges without taking sufficient steps to ensure that the charges are in fact authorized by the persons legally empowered to authorize such charges.

3.     Verizon is well aware from numerous sources – including its customer service department who receives on a daily basis numerous calls from customers complaining of third-party items billed on their Verizon bill that they know nothing about – of the widespread incidence of unauthorized billing by it for third-party providers, yet fails to take with regard to its third-party billings even the steps that it requires for one of its own customers to change his or her account with Verizon to make sure that any person purporting to change the billing on that account is in fact an authorized person.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 1 -

4. Verizon is by no means an innocent conduit in these matters, merely billing on behalf of third parties and passing the collected money on to the third parties. Instead, Verizon is a full joint venturer with the third-party providers and the aggregators involved in this system, keeping for itself a substantial portion of the amounts billed and collected for these third-party services.

5. As set forth below, Plaintiff and the Class and Sub-Class bring claims against Verizon for (a) violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, *et seq.* (the "TCA"); and (b) breach of contract. Plaintiff and the Sub-Class bring additional claims against Verizon for violation of (a) California Public Utilities Code § 2890 (the "CPUC") and (b) California Business and Professions Code sections 17200, *et seq.*

6. Plaintiff and the Class and Sub-Class seek actual and exemplary damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## II.    PARTIES

7. Plaintiff Desiree Moore is a citizen of Whittier, California.

8. Plaintiff Karen Jones is a citizen of Santa Ynez, California.

9. Defendant Verizon Communications Inc. ("Verizon Communications") is one of the largest providers of local wireline telephone service in the United States. Verizon Communications is a Delaware corporation with its headquarters and principal place of business in New York, New York.

10. Verizon Communications Inc. does business and has offices throughout the United States, including the State of California and this District. Verizon Communications Inc., directly and/or through subsidiary corporations, partnerships, limited liability companies or other entities, provides local wireline telephone services in at least the following states:
California, Connecticut, Delaware, Florida, Idaho, Illinois, Indiana, Maryland, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, Washington, West Virginia, Wisconsin and Washington D.C. On information and belief, Verizon Communications Inc. and its

wireline subsidiaries provide local wireline telephone services to more than 36 million customer phone lines.

11. Verizon Communications Inc. provides telephone service in California through its subsidiary, Verizon California, Inc. ("Verizon California"), a California corporation with its headquarters and principal place of business in Irving, Texas. Verizon Communications Inc. also provides telephone service in California through Verizon West Coast, Inc. ("Verizon West Coast"), a California corporation with its headquarters and principal place of business in Irving, Texas, which is a subsidiary of Verizon Northwest, Inc. ("Verizon Northwest"), a Washington corporation with its headquarters and principal place of business in Irving, Texas, which is, in turn, a subsidiary of Verizon Communications Inc.

12. Defendants Does 1 through 25 are additional Verizon-owned subsidiary corporations, partnerships, limited liability companies or other entities that provide Verizon wireline local telephone services. Plaintiffs are unaware of the true names and capacities of the Defendants sued as Does 1 through 25. Plaintiffs will amend their complaint when the true names and capacities have been ascertained. Each Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

### III.  JURISDICTION

13. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, 47 U.S.C. § 201, *et seq.*, and 28 U.S.C. § 1332(d). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### IV.  VENUE

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) and pursuant to 47 U.S.C. § 207.

### V.  FACTS RELATING TO VERIZON'S WIRELINE TELEPHONE BILLING AND COLLECTION SYSTEM

15. The wireline telephone billing and collection system in the United States was initially devised and used exclusively by AT&T – when it was known colloquially as "Ma Bell" – when it

maintained a monopoly over wireline telephone services in the United States. The charges handled by "Ma Bell's" wireline telephone billing and collection system were limited to those generated through consumers' use of "Ma Bell" wireline telephone transmission services.

16. That situation changed in the mid-1980s with the "The Bell Divesture," *i.e.*, the U.S. Justice Department's break-up of "Ma Bell" and "The Bell System."

17. At that time, units of The Bell System that became local exchange carriers ("LECs"), such as Verizon (f/k/a Bell Atlantic Corporation), took over responsibility for billing and collection.

18. LECs, including Verizon, also began billing and collecting not only on their own behalf for local telephone services, but also on behalf of other third-party companies ("third-party service providers") for third-party telecommunication products and services, such as long distance services ("LEC third-party billing").

19. Through the years, the LECs, including Verizon, have made their billing and collection systems available to a myriad of providers of varied products and services. As a result, there has been a proliferation in the number of service providers "piggybacking" on the LECs', including Verizon's, billing and collection systems and a corresponding proliferation in the number and type of products and services being billed for.

20. Some of these products and services directly relate to "basic" telephone service, *i.e.*, the transmission of telecommunications, some, such as voice mail services and long distance, are offered and used through the telephone. Other products and services being billed for, however, are further afield.

21. For example, automobile roadside service clubs bill for memberships on consumers' wireline telephone bills. Diet companies claiming to create personalized diet plans for consumers to lose weight include recurring monthly subscription charges on wireline telephone bills. Credit repair companies claim to help consumers fix their credit ratings and then charge hefty subscription fees on their local phone bills.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 4 -

22. The products and services are typically subscription-based and renew automatically each month, and the charges are included on the LEC customer's monthly bill, such as on Verizon's bills.

23. LECs such as Verizon are compensated for their billing and collection services by retaining substantial portions of the amounts so billed and collected, typically based upon a percentage of the billing revenue. Verizon typically purchases the accounts receivable from the aggregators and other billers, bills and collects from its customers and then through a system of allowances and refunds, effectively remits to the aggregators and other billers the amount of the collected sums minus its cut.

24. Due to cost and other factors, only the largest third-party service providers are able to bill directly through the LECs such as Verizon. Instead, the vast bulk of third-party service providers (many of which are virtual operations without any substantial assets) typically turn to one of a handful of third-party billing aggregators or billing clearinghouses ("billing aggregators"). Billing aggregators act as intermediaries between the service providers and LECs, opening the gate to the LECs' telephone billing and collection system for service providers by contracting with the LECs to have charges on behalf of their service provider clients placed on consumers' telephone bills and to have the LECs collect those charges. Verizon has devised and utilized at all relevant times a fully computerized, standardized, systemized billing system, such that it requires all aggregators to pass on to it for billing all bills in this standardized, systemized computerized format specified by Verizon and requires that third-party providers provide data and information to the aggregators in the same format.

25. Billing aggregators are compensated for their billing and collection services by retaining a portion of the amounts so billed, typically based upon a percentage of the billing revenue.

26. Once the charges are billed and collected by the LECs such as Verizon, the LECs after taking their cut, pass the remaining funds back to the billing aggregators, who in turn, take their cut and pass the remaining funds back to their third-party service provider clients.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 5 -

27. LEC third-party billing has become a very lucrative business for LECs, such as Verizon, billing aggregators and third-party service providers.

## VI. VERIZON'S FLAWED THIRD-PARTY BILLING SYSTEM

28. The largely unsupervised growth of the LEC third-party billing industry has led both to the above-described structure and to a disastrous flaw within it. That flaw – understood, perpetuated, and even encouraged by Verizon and other LECs, billing aggregators, and service providers – is an open secret within the industry, but little understood outside of it.

29. Unlike more conventional billing and collection systems, such as credit cards and checks, LEC third-party billing and collection systems, such as Verizon's, lack sufficient checks or safeguards to prevent billing and collection of unauthorized charges and instead effectively encourage unauthorized billing.

30. The bankcard billing and collection system, for example, has a number of mechanisms to protect against the billing and collection of unauthorized charges. The most obvious is that the bankcard billing and collection system uses, as a basis for billing charges, a physical card with a unique account number assigned to each individual cardholder that, unlike a telephone number, is not widely available to the public.

31. Unlike transactions made using checks and credit cards, which use signatures, highly private account numbers and various other security measures, under the system used by Verizon the only thing a billing aggregator or service provider needs to charge a consumer for its products and services is a telephone number. Once the service provider or billing aggregator has the number, they can submit it to the LEC directly, or via a billing aggregator, to initiate billing for services.

32. Using a telephone number as the basis for billing of products and services is a virtual invitation to fraud and abuse because there is no reasonable basis for believing that the person providing a telephone number is the LEC customer, that is, the person legally empowered to authorize charges to that number.

33. Indeed, *any person* capable of obtaining a consumer's telephone number can cause charges for a product or service to be included on that consumer's phone bill.

34. There are literally hundreds upon hundreds of third-party service provider websites on the internet where anyone can initiate billing subscriptions by filling out and submitting electronic forms, using *anyone's* phone number.

35. The lack of sufficient checks or safeguards within the Verizon third-party billing and collection system to prevent erroneous and unauthorized charges from being added to customers' wireline telephone bills has led to rampant abuse of Verizon's wireline customers.

36. Verizon knows, or is reckless in not knowing, that its third-party billing and collection system lacks sufficient checks or safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills.

37. Verizon knows, or is reckless in not knowing, that its third-party billing and collection system is subject to widespread abuse, and that it has, in fact, been so abused.

38. Verizon knows, or is reckless in not knowing, that significant amounts of money, in the millions of dollars, have been billed and collected by it on account of such unauthorized charges.

39. Nonetheless, Verizon continues to bill and collect third-party charges, without taking sufficient steps to ensure that such charges have in fact been authorized by the person legally empowered to authorize charges billed to that number ("valid authorizations").

40. Verizon has a policy and practice of not obtaining valid authorizations directly from its telephone customers, but rather purports to rely upon its billing aggregators and/or third-party services providers to obtain such authorizations, even though it knows or is reckless in not knowing that the billing aggregators and/or third-party service providers are not obtaining such authorizations. Instead, Verizon uses a standardized contract with its aggregators that purports to shift the burden to the aggregators to only submit billing from third-party providers who represent that they will only submit billing based upon valid authorizations. Verizon continues to improperly shift responsibility to third parties for obtaining authorization even though it knows or is reckless in not knowing that on

a widespread and recurring basis, charges are in fact being sent from the third-party providers through the aggregators via Verizon to Verizon's customers that are not based on valid authorizations. Verizon places this language into its contracts with the aggregators so as to seek to give it plausible deniability with respect to the unauthorized charges for which it bills its customers that it knows or is reckless in not knowing are not based on valid authorizations.

41. Verizon has a policy and practice of not verifying whether the billing aggregators and/or third-party service providers obtained valid authorizations, before placing third-party charges on customers' bills, instead satisfying itself with its contractual requirements that valid authorizations be obtained, even though it knows or is reckless in not knowing that on a widespread and recurring basis, valid authorizations are not being obtained.

42. As a result, Verizon has for years systematically, repeatedly and uniformly billed and collected millions of dollars of charges from its customers for products and services that its customers never authorized. Verizon, billing aggregators and third-party service providers have, on information and belief, profited greatly from this conduct.

43. Verizon's conduct constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

44. Because the amount Verizon is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per customer – and because of Verizon's vast resources and superior bargaining power, Verizon employs this scheme with the hope and expectation that its illegal conduct will go undetected and unpunished.

45. Unchecked, Verizon's practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

### VII. VERIZON'S TELEPHONE BILLS

46. Verizon's billing and collection of unauthorized charges is further exacerbated by the misleading and deceptive nature of the telephone bills it uniformly sends to customers. Verizon's telephone bills are misleading and deceptive in that consumers are led to believe that the charges on the bill are legitimate by the very fact of their inclusion in the amount indicated as owed to Verizon

on the bill. The placing of a charge for products or services on a telephone bill is a representation that the subscriber has in fact authorized any such charge included on the bill and actually owes that sum.

47. Verizon bills customers for charges and represents to them that they owe money (*i.e.*, charges were authorized) when Verizon either knows that the charges were not authorized or at least lacks a reasonable basis to believe that they were authorized.

48. Verizon's telephone bills also uniformly contain misleading and/or unclear billing descriptions. The charges that appear on customers' bills are not sufficiently identified or explained; thus, a reasonable consumer cannot determine whether he or she actually requested and received the services for which the charge is made.

49. Verizon's telephone bills also uniformly contain misleading and/or unclear descriptions of the manner in which disputes regarding the third-party charges could be addressed and lack sufficient information (such as the date the charges were authorized, the manner in which they were authorized, the name of the person who authorized the charges, etc.) such that reasonable customers could inquire about, or contest, charges on the bill.

**VIII. THE FACTS RELATING TO NAMED PLAINTIFF DESIREE MOORE**

50. At all relevant times, Plaintiff Moore ("Ms. Moore") was a Verizon local wireline telephone customer.

51. Each month, Verizon sent Ms. Moore a bill for her telephone service.

52. On her January 2009 Verizon bill, Verizon included a $19.77 charge from Verizon on behalf of The Billing Resource on behalf of a third-party company, Enhanced Long Dist.for a so-called Enhanced Long Distance SetUp Fee . This was an unauthorized charge.

53. Ms. Moore is the only person legally empowered to authorize charges to her telephone, but she never authorized these third-party charges. Indeed, Ms. Moore was already paying Verizon for long distance services as part of her plan with Verizon and had no need or desire for any other long distance service.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 9 -

54. Verizon has failed to provide Ms. Moore a complete refund of such charges, with interest, costs and attorneys' fees, nor has Ms. Moore received such a refund from anyone else.

### IX. THE FACTS RELATING TO NAMED PLAINTIFF KAREN JONES

55. At all relevant times, Plaintiff Jones ("Ms. Jones") was a Verizon local wireline telephone customer.

56. Each month, Verizon sent Ms. Jones a bill for her telephone service.

57. On her March 2009 Verizon bill, Verizon included a $ 12.95 charge from Verizon on behalf of ESBI on behalf of a third-party company, Voicexpress for a so-called VoiceExpress Voicemail Monthly Fee. . This was an unauthorized charge.

58. Ms. Jones is the only person legally empowered to authorize charges to her telephone, but she never authorized these third-party charges. Indeed, Ms. Jones was already paying Verizon for voicemail services as part of her plan with Verizon and had no need or desire for any other voicemail service.

59. Verizon has failed to provide Ms. Jones a complete refund of such charges, with interest, costs and attorneys' fees, nor has Ms. Jones received such a refund from anyone else. Verizon has likewise failed and refused to provide an assurance that it will not continue to bill her for this and/or other unauthorized charges, even after having been notified that the charges are unauthorized.

### X. CLASS ALLEGATIONS

60. Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23 (b)(2), on behalf of themselves and the following class (the "Injunctive And Declaratory Class"):

> All Verizon local wireline customers in the United States with respect to whom Verizon billed charges for third-party products and services using its billing and collection system.

and pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of herself and the following class (the "Damages" Class):

> All current and former Verizon local wireline customers (1) with respect to whom Verizon billed and collected charges for third-party products and services using its billing and collection system and for which Verizon did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

61. Additionally, Plaintiffs bring this action on behalf of a state-wide sub-class (the "Sub-Class"), consisting of all current and former Verizon wireline customers within the State of California (1) with respect to whom Verizon billed and collected charges for third-party products and services using its billing and collection system and for which Verizon did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

62. Excluded from the foregoing Class and Sub-Class are Defendants, their officers and directors and persons whose third-party charges were exclusively for pay-per-call services.

63. The Classes and Sub-Class consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of FRCP 23(a)(1). The exact size of the respective classes and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to their billing and collection records.

64. The claims of Plaintiffs are typical of the claims of the respective classes. The claims of the Plaintiffs and the respective classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and the respective classes.

65. The respective classes have a well-defined community of interest. The Defendants have acted and failed to act on grounds generally applicable to the Plaintiffs and the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective classes.

66. There are many questions of law and fact common to the claims of Plaintiffs and the respective class members, and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

67. Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

        a.      Whether Defendants' conduct described herein is in violation of 47 U.S.C. §§ 201 *et seq.* and 47 C.F.R. § 64.2401; and

        b.      Whether Defendants' conduct described herein is in breach of Contract.

68. Common questions of fact and law affecting members of the Sub-Class include, but are not limited to, the following:

        a.      Whether Defendants' conduct described herein is in violation of California Public Utility Code § 2890; and

        b.      Whether Defendant's conduct described herein violates California Business and Professions Code §§ 17200, *et seq.*

69. Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

70. Plaintiffs will fairly and adequately represent and protect the interests of the members of the respective classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other respective class members.

### FIRST CAUSE OF ACTION

**(Violations of 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401 on behalf of the Classes and Sub-Class)**

71. Plaintiffs incorporate by reference the foregoing allegations.

72. At all times relevant hereto, there was in existence 47 U.S.C. § 201, which provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

73. Defendants' practice of billing and collecting unauthorized third-party charges from Plaintiffs and the respective classes and sub-classes is neither just nor reasonable and is, in fact, unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

74. At all times relevant hereto, there was also in existence 47 C.F.R. § 64.2401, entitled "Truth-in-Billing Requirements," which provided, in relevant part, as follows:

> (b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.
>
> . . .
>
> (d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill.

75. The charges contained on Defendants' bills were not accompanied by "clear, non-misleading, plain language description of the service or services rendered" nor did they "contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill," in violation of 47 C.F.R. § 64.2401.

76. Defendants are liable to Plaintiffs and the respective classes and sub-classes for damages and attorney's fees, pursuant to 47 U.S.C. § 206, which provides as follows:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in

> consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

77. As a result of Defendants' violations, Plaintiffs and the respective classes and sub-classes suffered damages, and pursuant to 47 U.S.C. § 207 are entitled to recover, as follows:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

## SECOND CAUSE OF ACTION

**(Breach of Contract on behalf of the behalf of the Classes and Sub-Class)**

78. Plaintiffs incorporate by reference the foregoing allegations.

79. Plaintiffs and the Classes and Sub-Class entered into agreements with Defendants whereby Plaintiffs and the respective classes agreed to pay a certain sum of money in exchange for Defendants' activation of Plaintiffs' and the respective classes' local wireline telephone account and its promise to provide various communication and related services to Plaintiffs and the respective classes.

80. Defendants expressly and/or impliedly agreed to bill and collect only for such charges that Plaintiffs and the respective classes clearly and explicitly authorized.

81. Defendants also expressly and/or impliedly agreed to provide clear and non-misleading telephone bills to Plaintiffs and the respective classes.

82. Defendants further expressly and/or impliedly agreed to carry out their obligations of good faith and fair dealing.

83. Defendants breached their contractual obligations, including their contractual obligation of good faith and fair dealing, by billing and collecting from Plaintiffs and the respective classes for products or services, the purchase of which they never authorized.

84. Defendants further breached their contractual obligations by providing Plaintiffs and the respective classes with telephone bills that were unclear and misleading.

85. Plaintiffs and the respective classes performed their contractual obligations.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 14 -

86. The aforementioned breaches of contract have proximately caused the Plaintiffs and the respective classes' economic injury and other damages.

### THIRD CAUSE OF ACTION

### (Violation Of California Public Utilities Code § 2890 on behalf of the Sub-Class)

87. Plaintiffs incorporate by reference the foregoing allegations.

88. California Public Utilities Code § 2106 provides as follows:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury maybe brought in any court of competent jurisdiction by any corporation or person.

89. Verizon is a "public utility" within the meaning of the CPUC.

90. According to the California Public Utilities Commission, "the practice of cramming has become a serious and widespread problem in California, draining time and money from California consumers and businesses."

91. CPUC § 2890, provides, *inter alia*, as follows:

> (a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.
> …
>
> (b) (2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:
>
> (A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.
>
> (B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
- 15 -

telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

92. Defendants violated § 2890(a) since their telephone bills contained charges for products and services, the purchase of which Plaintiffs and the Sub-Class did not authorize.

93. Defendants' billing for unauthorized charges is further exacerbated by its failure to comply strictly with various disclosure-related requirements of § 2890(d), making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

94. Although required to do so, the bills issued by Defendants systematically and uniformly failed to include "a clear and concise description of the service, product, or other offering for which a charge has been imposed" or "a description of the manner in which a dispute regarding the charge may be addressed."

95. Defendants' conduct was, as set forth above, willful.

96. As a result of Defendants' conduct, Plaintiffs and the Sub-Class have suffered and will continue to suffer loss, damage, and injury.

97. Plaintiffs and the Sub-Class are entitled to actual and exemplary damages.

## FOURTH CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.* on behalf of the Sub-Class)

98. Plaintiffs incorporate by reference the foregoing allegations.

99. The Unfair Business Practices Act proscribes unfair business competition and defines the same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §§17200, *et seq.*

100. Defendants violated, and continue to violate this proscription through their conduct alleged above, including their violations of the California Public Utilities Code section 2890, as set forth above.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
- 16 -

101. Defendants, through their acts of unfair competition, have obtained money from Plaintiffs and members of the proposed Classes. Plaintiffs and the members of the Classes ask that this Court restore this money to them and enjoin Defendants from continuing their illegal practices.

102. Defendants' conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

103. Such conduct is ongoing and continues to this date. Plaintiffs, the Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class and sub-class, request the following relief:

1. That the Court enter an order certifying the Classes and Sub-Class and appointing Plaintiffs as the representatives of the Classes and Sub-Class, and appointing counsel for Plaintiffs as lead counsel for the respective classes;

2. That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

3. That the Court enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiffs and the respective classes exemplary damages;

4. That the Court award Plaintiffs and the respective classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

5. That the Court award Plaintiffs and the respective classes pre- and post-judgment interest;

6. That the Court issue an injunction prohibiting Defendants from continuing their conduct complained of herein; and

///

///

///

7. That the Court award such other and further relief as may be necessary or appropriate.

Respectfully submitted,

**KELLER GROVER, LLP**

Dated: April 27, 2009

By: /s/ Denise D. Diaz
JEFFREY F. KELLER
DENISE L. DIAZ
Attorneys for Plaintiffs and the Putative
Classes and Sub-Class

## JURY DEMAND

Plaintiffs demand trial by jury on all counts for which a jury trial is permitted.

Dated: April 27, 2009

**KELLER GROVER, LLP**

By: /s/ Denise L. Diaz
JEFFREY F. KELLER
DENISE L. DIAZ
Attorneys for Plaintiffs and the Putative Classes and Sub-Class