JEFFREY F. KELLER (SBN 148005)
**KELLER GROVER, LLP**
425 Second Avenue, Suite 500
San Francisco, California  94107
Telephone:     (415) 543-1305
Facsimile:      (415) 543-7861
jfkeller@kellergrover.com

Attorneys for Plaintiffs Desiree Moore,
Karen Jones and the Putative Class and Sub-Class

[*Additional Counsel Listed on Signature Page*]

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE MOORE and KAREN JONES individually and on behalf of a class of similarly situated individuals, | Case No. 4:09-cv-01823-SBA |
| | CLASS ACTION |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| VERIZON COMMUNICATIONS INC., a Delaware corporation, VERIZON CALIFORNIA, INC., a California corporation, VERIZON NORTHWEST, INC., a Washington corporation, VERIZON WEST COAST, INC., a California corporation, VERIZON CORPORATE SERVICES GROUP INC., a New York corporation, VERIZON SERVICES CORP., a Delaware corporation, TELESECTOR RESOURCES GROUP, INC. d/b/a VERIZON SERVICES GROUP,  a Delaware corporation, VERIZON SERVICES OPERATIONS INC., a Delaware corporation, VERIZON SERVICES ORGANIZATION, INC.,  a Delaware corporation, VERIZON CORPORATE SERVICES CORP., a Delaware corporation, VERIZON DATA SERVICES, INC., a Delaware corporation, and DOES 1 through 25, | **DEMAND FOR JURY TRIAL** |
| | The Honorable Saundra Brown Armstrong |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Desiree Moore and Karen Jones, on behalf of themselves and a class and sub-class of similarly situated individuals, bring this class action against Verizon Communications Inc., a Delaware corporation, Verizon California, Inc., a California corporation, Verizon Northwest, Inc., a Washington corporation, Verizon West Coast, Inc., a California corporation, Verizon Corporate Services Group Inc., a New York corporation, Verizon Services Corp., a Delaware corporation, Telesector Resources Group, Inc. d/b/a Verizon Services Group,  a Delaware corporation, Verizon Services Operations Inc., a Delaware corporation, Verizon Services Organization, Inc.,  a Delaware corporation, Verizon Corporate Services Corp., a Delaware corporation, Verizon Data Services, Inc. a Delaware corporation and Does 1 through 25 (collectively "Verizon"), and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### I.       NATURE OF THE CASE

1.       This class action against Verizon involves a particularly abusive practice: the intentional charging of consumers for products and services they have not requested or authorized and the illegal billing and collection of such charges.  The problem lies in business practices Verizon has adopted for billing and collecting on behalf of itself and myriad third-party companies for various third-party products and services.

2.       Verizon knows that its third-party billing and collection system lacks sufficient checks and safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills – indeed, to the contrary, it knows it could easily eliminate virtually all billing and collections of millions of dollars of unauthorized charges – yet it continues to bill and collect such third-party charges without taking sufficient steps to ensure that the charges are in fact authorized by the persons legally empowered to authorize such charges.  Verizon could eliminate the problem in an instant if it chose to, but it has very deliberately chosen to continue things as they are.

3.       Verizon is well aware from numerous sources – including its customer service

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

department who receives on a daily basis numerous calls from customers complaining of third-party items billed on their Verizon bill that they know nothing about, as well as from state and federal regulatory bodies across the nation, including the California Public Utilities Commission in California – of the widespread incidence of unauthorized billing by it for third-party providers, yet fails to take with regard to its third-party billings even the steps that it requires for one of its own customers to change his or her account with Verizon to make sure that any person purporting to deal with the billing on that account is in fact an authorized person.  For instance, Verizon will not allow a person to change or manage a customer account without providing a unique identifier or other password type validation associated with that customer's account.  Yet, Verizon does *not* require its billing aggregators to provide such confirmatory information, nor does it require its billing aggregators to make sure the third-party providers for whom the billing aggregators bill obtain such identifying information from persons purporting to subscribe a Verizon customer to a third-party service.  Such a requirement would essentially eliminate the problem overnight.

4.      Verizon is by no means an innocent conduit in the matter of third-party billing, merely billing on behalf of third parties and passing the collected money on to the third parties. Instead, Verizon is a full joint venturer with the third-party providers and the billing aggregators involved in this system, keeping for itself a substantial portion of the amounts billed and collected for these third-party services, running in the millions of dollars annually.

5.      Verizon does not allow most third party service providers to place charges directly on their bills.  Instead, Verizon requires that the third party providers bill through so-called billing aggregators, of which there are only a few.  The billing aggregators (such as Billing Services Group, Ltd. ("BSG"), by far the largest landline billing aggregator in the country and its various subsidiaries through whom it does business, including Enhanced Services Billing, Inc. d/b/a ESBI on whose behalf one of the Plaintiffs here was billed and other billing aggregators such as The Billing Resource d/b/a Integretel, Inc. on whose behalf another Plaintiff here was billed) act as an intermediary between the third-party providers and the local exchange carriers (so-called "LECs,"

FIRST AMENDED COMPLAINT                         CASE NO. 09-1823 SBA

1    i.e., local phone companies).  The third parties send their billings to the billing aggregators, and the

2    billing aggregators in turn send those billings along to the appropriate LEC, and the LEC places

3    those charges on its customers' monthly phone bills.  All the way up and down the line, Verizon, the

4    billing aggregators and the third-party providers know that the billing and collection system used

5    lacks sufficient checks and safeguards to prevent unauthorized charges from being added to

6    customers' wireline telephone bills – indeed, to the contrary, they all know that there is a significant

7    likelihood of unauthorized charges, given the system presently used – and they have knowingly

8    exploited those defective systems to implement and carry out their fraudulent scheme.

9         6.    As set forth below, Plaintiffs and the Class and Sub-Class bring claims against

10   Verizon for (a) violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§

11   1961-1968; (b) violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, et seq. (the

12   "TCA"); and (c) breach of trust.  Plaintiffs and the Class and Sub-Class bring claims against all

13   Defendants, other than the Verizon LECs, for tortious interference with contract.  Plaintiffs and the

14   Sub-Class bring additional claims against Verizon California for  (a) violation of California Public

15   Utilities Code § 2890 (the "CPUC") and (b) breach of contract and against all Defendants for

16   violation of California Business and Professions Code sections 17200, *et seq*.

17        7.    Plaintiff and the Class and Sub-Class seek actual, treble and exemplary damages,

18   injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

19                        **II.    PARTIES**

20        8.    Plaintiff Desiree Moore is a citizen of Whittier, California.

21        9.    Plaintiff Karen Jones is a citizen of Santa Ynez, California.

22        10.   Defendant Verizon Communications Inc. ("Verizon Communications") is one of the

23   largest providers of local wireline telephone service in the United States.  Verizon Communications

24   is a Delaware corporation with its headquarters and principal place of business in New York, New

25   York.

26

27

28

---

FIRST AMENDED COMPLAINT                              CASE NO. 09-1823 SBA

11.     Verizon Communications directly and/or indirectly through subsidiary corporations, partnerships, limited liability companies or other entities, provides local wireline telephone services in at least the following states:  California, Connecticut, Delaware, Florida, Idaho, Illinois, Indiana, Maryland, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, Washington, West Virginia, Wisconsin and Washington D.C.   Verizon Communications and its wireline subsidiaries provide local wireline telephone services to more than 36 million customer phone lines.

12.     Verizon Communications is a publicly-traded company whose stock is traded on the New York Stock Exchange with a market capitalization of over 88 billion dollars.  Yet it claims to own (directly) no telephone poles, no lines, no switching stations; it purports to have no employees.  Instead, it sits on top of a hydra-structure of a myriad of subsidiaries, each of which provides a piece of the services relentlessly marketed to the public as coming from "Verizon."  All operating subsidiaries pass their earnings upstream to Verizon Communications, which reports those earnings as its own.  Verizon Communications directs and controls the other Defendants in furtherance of Verizon's corporate objectives, including specifically the fraudulent scheme alleged in this complaint.   Verizon has chosen this fragmented structure at least in part so as to make it as difficult as possible for consumers to be able to sue in a single forum and obtain nationwide relief.

13.     Verizon Corporate Services Group Inc. is a New York corporation headquartered in Basking Ridge, New Jersey and registered to do business in California.  Verizon Corporate Services Group Inc. is a direct subsidiary of GTE Corporation and an indirect subsidiary of Verizon Communications.   Verizon Corporate Services Group Inc. is an administrative corporate headquarters organization that provides managerial and centralized functions, such as human resources, finance, legal, public policy, external affairs, security, strategic planning, and public affairs services, to Verizon Communications and its subsidiaries and affiliates, including its operating telephone subsidiary companies (hereinafter the "Verizon LECs") such as Verizon California.

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

14.     Verizon Services Corp. is a Delaware corporation headquartered in Arlington, Virginia and registered to do business in California.  Verizon Services Corp. is a direct subsidiary of Verizon Communications.   Verizon Services Corp. is an administrative corporate headquarters organization that provides managerial and centralized functions, including legal, financial, regulatory, planning and operations support services, to Verizon Communications and its subsidiaries and affiliates, including Verizon LECs such as Verizon California.  Verizon Services Corp. entered into one or more third party billing services agreements with Enhanced Services Billing Inc. d/b/a ESBI and The Billing Resource, on behalf of itself, Verizon Communications and other Verizon affiliates and subsidiaries, including Verizon LECs such as Verizon California.

15.     Telesector Resources Group, Inc. d/b/a Verizon Services Group is a Delaware corporation headquartered in New York, New York.  Verizon Services Group is a direct subsidiary of Verizon New England Inc. and Verizon New York Inc. and an indirect subsidiary of NYNEX Corporation and an indirect subsidiary of Verizon Communications.  Verizon Services Group was once registered to do business in California and has a registered agent for service of process in California.   Verizon Services Group provides among other things, managerial and centralized functions to Verizon Communications and its subsidiaries and affiliates, including Verizon LECs such as Verizon California.

16.     Verizon Services Operations Inc. is a Delaware corporation headquartered in Basking Ridge, New Jersey and registered to do business in California.  Verizon Services Operations Inc. is a direct subsidiary of GTE Corporation and an indirect subsidiary of Verizon Communications. Verizon Services Operations Inc. is an administrative corporate organization which provides certain corporate real estate, corporate purchasing, logistics, electronic, repair services, supply chain systems and processes, supplier quality, supplier diversity,  enterprise resource planning (ERP), corporate systems and intranet across Verizon, as well as Verizon information technologies and fraud services for Verizon Communications  and other Verizon affiliates and subsidiaries, including Verizon LECs such as Verizon California.

- 5 -

17.     Verizon Services Organization, Inc. is a Delaware corporation headquartered in Hidden Ridge, Texas and registered to do business in California. Verizon Services Organization, Inc. is a direct subsidiary of GTE Corporation and an indirect subsidiary of Verizon Communications. Verizon Services Organization Inc. is an administrative corporate headquarters organization that provides human resources, finance, legal, public policy and external affairs, security, strategic planning, and public affairs services for Verizon Communications and its subsidiaries and affiliates, including the Verizon LECs such as Verizon California.

18.     Verizon Corporate Services Corp. is a Delaware corporation headquartered in Basking Ridge, New Jersey and registered to do business in California.  Verizon Corporate Services Corp. is a direct subsidiary of Verizon Communications.  Verizon Corporate Services Corp. is an administrative corporate headquarters organization which provides human resources, finance, legal, public policy and external affairs, security, strategic planning, and public affairs services for Verizon Communications and its affiliates and subsidiaries, including the Verizon LECs such as Verizon California.

19.     Verizon Data Services Inc. is a Delaware corporation headquartered in Temple Terrance, Florida.  Verizon Data Services, Inc. is a direct subsidiary of GTE Wireless Incorporated, an indirect subsidiary of GTE Corporation and an indirect subsidiary of Verizon Communications. Verizon Data Services, Inc. was once registered to do business in California and has a registered agent for service of process in California.  Verizon Data Services Inc. provides computer and data processing services through various computerized data centers, software application development and maintenance and information management services, which benefit Verizon Communications and its affiliates and subsidiaries, including the Verizon LECs such as Verizon California.

20.     Verizon Corporate Services Group Inc., Verizon Services Corp., Telesector Resources Group, Inc. d/b/a Verizon Services Group, Verizon Services Operations Inc., Verizon Services Organization, Inc.,  Verizon Corporate Services Corp. and Verizon Data Services, Inc. (collectively known as "Verizon Services") operate in conjunction with each other and provide

1   various centralized services on behalf of Verizon Communications and Verizon's subsidiaries and

2   affiliates, including the Verizon LECs such as Verizon California, with whom they have contractual

3   arrangements.  These centralized services are divided into two broad categories. The first category

4   consists of network related services that directly benefit Verizon LECs such as Verizon California,

5   including marketing, sales, legal, accounting, finance, data processing, materials management,

6   procurement, labor relations and staff support for various network operations.  The second category

7   consists of overhead and support services that benefit all subsidiaries of Verizon, including corporate

8   governance, corporate finance, external affairs, legal, media relations, employee communications,

9   corporate advertising, human resources, treasury and rent expenses associated with rental of facilities

10  and equipment.

11          21.     Verizon    Services    provides    billing    and    collection    services    for    Verizon

12  Communications and its subsidiaries and affiliates, including the Verizon LECs such as Verizon

13  California.  Verizon Services negotiates and enters into various contracts, including billing and

14  collection agreements, with third parties on behalf of themselves and on behalf of Verizon

15  Communications and Verizon's subsidiaries and affiliates, including Verizon LECs such as Verizon

16  California.  Verizon Services also provides and manages online billing and payment capabilities for

17  customers of the Verizon LECs.  Verizon Services also administers the website www.verizon.com.

18          22.     Verizon Communications and Verizon Services do substantial business in California

19  through their agent Verizon California.  Verizon Communications controls, manages, directs and

20  implements its corporate strategy through the operations of Verizon Services, which in turn controls,

21  manages, directs and implements Verizon Communications' corporate strategy through the

22  operations of Verizon California and the other Verizon LECs.  Verizon Communications has chosen

23  to set up California subsidiaries (and other similar subsidiaries in the other states) that cannot

24  function without the centralized control, management, direction and support services and

25  organization and financing provided by Verizon Communications and Verizon Services.  Verizon

26  Communications has chosen to set up Verizon Services, which has no purpose other than to perform

27

28

FIRST AMENDED COMPLAINT                              CASE NO. 09-1823 SBA

1    the necessary services (marketing, sales, legal, accounting, finance, data processing, materials

2    management, procurement, labor relations, staff support for various network operations, corporate

3    governance, corporate finance, external affairs, media relations, employee communications,

4    corporate advertising, human resources, treasury, rent expenses, computer and data processing

5    services through computerized various data centers, software application development, maintenance

6    and information management services, strategic planning and billing and collections services) to

7    allow Verizon California, the other local LECs and other Verizon subsidiaries to function.

8          23.    Virtually all of Verizon Communications' and Verizon Services' sales, customers and

9    revenue arise from California Verizon, other Verizon LECs and other Verizon subsidiaries.  Verizon

10   Communications obtains the revenue to support the expenses of Verizon Services and by receiving

11   upstream profits and dividends from sales of Verizon Services to its customers: Verizon California

12   and the other Verizon LECs and directly or indirectly from upstream profits and dividends from

13   Verizon California and the other Verizon LECs.  Thus, for at least the last five years, Verizon

14   Communications and Verizon Services have been engaged in ongoing and substantial business in

15   California through sales to its subsidiary Verizon California and have derived substantial profits and

16   benefits from their ongoing and substantial business in California.

17         24.    Thus, in 2008, Verizon California paid approximately $ 563 million dollars to

18   Verizon Services in the form of expenses, directly assigned to one subsidiary or allocated to more

19   than one subsidiary based on functional reviews of the work performed, or based on proportional

20   cost allocations methodologies.  In 2008, Verizon California also transferred approximately $ 526

21   million in the form of dividends to its direct parent, GTE Corporation, a direct subsidiary of Verizon

22   Communications.  In 2007, Verizon California paid approximately $ 539 million to Verizon Services

23   and a dividend of $ 300 million to its parent,   In 2006, Verizon California paid approximately $ 524

24   million to Verizon Services and paid another $ 287 million in dividends to its parent.  In 2005,

25   Verizon California paid approximately $ 498 million dollars to Verizon Services and upstreamed

26   another $ 345 million in dividends.

27

28

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

25.     In addition, Verizon Communications and Verizon Services have deliberately allocated all of the functions necessary to formulate, design, direct, control and implement the fraudulent billing scheme that is involved in this case among various corporate subsidiary corporations in an attempt to claim that neither Verizon Communications as the head of the fraudulent scheme, nor Verizon Services which provided the necessary services, equipment, expertise and support to implement the fraudulent scheme, did anything in California that would subject them to jurisdiction in California (or other courts), so that California Verizon would be the only possible defendant and that any remedy must be limited to customers of Verizon California as the "only" Verizon corporate entity subject to jurisdiction in California courts and the "only" entity involved the fraudulent billing and collection scheme that is the subject of this suit.

26.     Verizon Communications and Verizon Services formulated, designed, directed, controlled and implemented the fraudulent billing scheme that is involved in this case for the purpose of defrauding thousands of California residents. Verizon Communications and Verizon Services have successfully defrauded thousands of California residents out of millions of dollars over the many years that they have been implementing the fraudulent scheme in California and throughout the twenty-two states in which they have implemented the fraudulent scheme. Verizon Communications provides telephone service in California through its subsidiary, Verizon California, Inc. ("Verizon California"), a California corporation with its headquarters and principal place of business in Irving, Texas.  Verizon Communications also provides telephone service in California through Verizon West Coast, Inc. ("Verizon West Coast"), a California corporation with its headquarters and principal place of business in Irving, Texas, which is a subsidiary of Verizon Northwest, Inc. ("Verizon Northwest"), a Washington corporation with its headquarters and principal place of business in Irving, Texas, which is, in turn, a subsidiary of Verizon Communications.  Through the contracts entered into on its behalf by Verizon Services with the billing aggregators, Verizon California (or another Verizon subsidiary) billed its customers, including Plaintiffs as set forth below, for charges for third-party services.

- 9 -

27.     Defendants Does 1 through 25 are additional Verizon-owned subsidiary corporations, partnerships, limited liability companies or other entities that provide Verizon wireline local telephone services and/or facilitate Verizon's billing and collection practices.  Plaintiffs are unaware of the true names and capacities of the Defendants sued as Does 1 through 25.   Plaintiffs will amend their complaint when the true names and capacities have been ascertained.  Each Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

### III.     JURISDICTION

28.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, 47 U.S.C. § 207, 28 U.S.C. § 1332(d) and 18 U.S.C. § 1964.   This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### IV.     VENUE

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) and pursuant to 18 U.S.C. § 1965 (a) and (b).

### V.     FACTS RELATING TO VERIZON'S WIRELINE TELEPHONE BILLING AND COLLECTION SYSTEM

30.     The wireline telephone billing and collection system in the United States was initially devised and used exclusively by AT&T – when it was known colloquially as "Ma Bell" – when it maintained a monopoly over wireline telephone services in the United States.  The charges handled by "Ma Bell's" wireline telephone billing and collection system were limited to those generated through consumers' use of "Ma Bell" wireline telephone transmission services.

31.     That situation changed in the mid-1980s with the "The Bell Divesture," *i.e.*, the U.S. Justice Department's break-up of "Ma Bell" and "The Bell System."

32.     At that time, the former units of The Bell System that had become local exchange carriers ("LECs"), such as the Verizon LECs, took over responsibility for billing and collection.

33.     LECs, including the Verizon LECs, also began billing and collecting not only on their own behalf for local telephone services, but also on behalf of other third-party companies ("third-

party service providers") for third-party telecommunication products and services, such as long distance services ("third-party billing").

34.     Through the years, the LECs, including the Verizon LECs, have made their billing and collection systems available to a myriad of providers of varied products and services.  As a result, there has been a proliferation in the number of service providers "piggybacking" on the LECs', including the Verizon LECs', billing and collection systems and a corresponding proliferation in the number and type of products and services being billed for.

35.     Some of these products and services directly relate to "basic" telephone service, *i.e.*, the transmission of telecommunications, some, such as voice mail services and long distance, are offered and used through the telephone.  Other products and services being billed for, however, are farther afield.

36.     For example, automobile roadside service clubs bill for memberships on consumers' wireline telephone bills.  Diet companies claiming to create personalized diet plans for consumers to lose weight include recurring monthly subscription charges on wireline telephone bills.  Credit repair companies claim to help consumers fix their credit ratings and then charge hefty subscription fees on their local phone bills.

37.     The products and services are typically subscription-based and renew automatically (on a monthly, quarterly or annual basis) and the charges are included on Verizon's bills to its customers.

38.     Verizon is compensated for its billing and collection services by retaining substantial portions of the amounts so billed and collected, typically based upon a percentage of the billing revenue.  Verizon typically purchases the accounts receivable from the billing aggregators and other billers, bills and collects from its customers and then through a system of allowances and refunds, effectively remits to the billing aggregators and other billers the amount of the collected sums minus its cut.

---

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

39.     Due to cost and other factors, only the largest third-party service providers are able to bill directly through Verizon.  Instead, the vast bulk of third-party service providers (many of which are "virtual" operations without any substantial assets) typically turn to one of a handful of third-party billing aggregators or billing clearinghouses ("billing aggregators").   By far, the largest landline billing aggregator in the country is BSG.  Billing aggregators act as intermediaries between the service providers and LECs, opening the gate to the LECs' telephone billing and collection system for service providers by contracting with the LECs to have charges on behalf of their service provider clients placed on consumers' telephone bills and to have the LECs collect those charges. Verizon has devised and utilized at all relevant times a fully computerized, standardized, routenized, systemized billing system, such that it requires all billing aggregators to pass on to it for billing all bills in this standardized, systemized computerized format specified by Verizon and requires that third-party providers provide data and information to the aggregators in the same format.

40.     Billing aggregators are compensated for their billing and collection services by retaining a portion of the amounts so billed, typically based upon a percentage of the billing revenue.

41.     Once the charges are billed and collected by Verizon, taking its cut, it passes the remaining funds back to the billing aggregators, who in turn, take their cut and pass the remaining funds back to their third-party service provider clients.

42.     Third-party billing has become a very lucrative business for Verizon, the billing aggregators (such as BSG d/b/a ESBI and The Billing Resource d/b/a Integretel, Inc.) and third-party service providers.

## VI.      VERIZON'S FLAWED THIRD-PARTY BILLING SYSTEM

43.     The largely unsupervised growth of the third-party billing industry has led both to the above-described structure and to a disastrous flaw within it.  That flaw – understood, perpetuated, and encouraged by Verizon, billing aggregators (such as BSG d/b/a ESBI and The Billing Resource d/b/a Integretel, Inc.), and service providers – is an open secret within the industry, but little understood outside of it.

FIRST AMENDED COMPLAINT                              CASE NO. 09-1823 SBA

44.     Unlike more conventional billing and collection systems, such as credit cards and checks, LEC third-party billing and collection systems, such as Verizon's, lack sufficient checks or safeguards to prevent billing and collection of unauthorized charges and instead effectively encourage unauthorized billing.

45.     The bankcard billing and collection system, for example, has a number of mechanisms to protect against the billing and collection of unauthorized charges.  The most obvious is that the bankcard billing and collection system uses, as a basis for billing charges, a physical card with a unique account number assigned to each individual cardholder that, unlike a telephone number, is not widely available to the public.

46.     Unlike transactions made using checks and credit cards, which use signatures, highly private account numbers and various other security measures, under the system used by Verizon the only thing a billing aggregator or service provider needs on order to be able to charge a consumer for its products and services is a telephone number.  Once the service provider or billing aggregator has the number, they can submit it to the LEC directly, or via a billing aggregator, to initiate billing for services.

47.     Using a telephone number as the basis for billing of products and services is a virtual invitation to fraud and abuse because there is no reasonable basis for believing that the person providing a telephone number is in fact the actual LEC customer, that is, the person legally empowered to authorize charges to that number.

48.     Indeed, *any person* capable of obtaining a consumer's telephone number can cause charges for a product or service to be included on that consumer's phone bill.

49.     There are literally hundreds upon hundreds of third-party service provider websites on the internet where anyone can initiate billing subscriptions by filling out and submitting electronic forms, using *anyone's* phone number.

- 13 -

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

50.     The lack of sufficient checks or safeguards within the Verizon third-party billing and collection system to prevent unauthorized charges from being added to customers' wireline telephone bills has led to rampant abuse of Verizon's wireline customers.

51.     Verizon knows, or is reckless in not knowing, that its third-party billing and collection system lacks sufficient checks or safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills.

52.     Verizon knows, or is reckless in not knowing, that its third-party billing and collection system is subject to widespread abuse, and that it has, in fact, been so abused.

53.     Verizon knows, or is reckless in not knowing, that significant amounts of money, in the millions of dollars, have been billed and collected by it on account of such unauthorized charges.

54.     Nonetheless, Verizon continues to bill and collect third-party charges, without taking sufficient steps to ensure that such charges have in fact been authorized by the person legally empowered to authorize charges billed to that number ("valid authorizations").

55.     Verizon has a policy and practice of not obtaining valid authorizations directly from its telephone customers, but rather purports to rely upon its billing aggregators and/or third-party services providers to obtain such authorizations, even though it knows or is reckless in not knowing that the billing aggregators and/or third-party service providers are not obtaining such authorizations. Instead, Verizon uses a standardized contract with its billing aggregators that purports to shift the burden to the billing aggregators to only submit billing from third-party providers who represent that they will only submit billing based upon valid authorizations.  Verizon continues to improperly shift responsibility to third parties for obtaining authorization even though it knows or is reckless in not knowing that on a widespread and recurring basis, charges are in fact being sent from the third-party providers through the billing aggregators via Verizon to Verizon's customers that are not based on valid authorizations.  Verizon places this responsibility-shifting language into its contracts with the billing aggregators so as to seek to give it plausible deniability with respect to the unauthorized

charges for which it bills its customers that it knows or is reckless in not knowing are not based on valid authorizations.

56.   Verizon has a policy and practice of not verifying whether the billing aggregators and/or third-party service providers obtained valid authorizations, before placing third-party charges on customers' bills, instead satisfying itself with its contractual requirements that others do so, even though it knows or is reckless in not knowing that on a widespread and recurring basis, valid authorizations are not being obtained.

57.   As a result, Verizon has for years systematically, repeatedly and uniformly billed and collected millions of dollars of charges from its customers for products and services that the customers never authorized.  Verizon, the billing aggregators and third-party service providers have profited greatly from this conduct.

58.   Verizon's conduct constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

59.   Because the amount of these charges is small on an individual basis – as little as a few dollars to at most several hundred dollars per customer over the course of a year – and because of Verizon's vast resources and superior bargaining power, Verizon employs this scheme with the expectation that its illegal conduct will, if detected, go unpunished.  Verizon knows, however, that many customers will not even notice the unauthorized charges, and that if they do, the amounts will be so small that many of them will not take the time to investigate and object and will ultimately grow frustrated in trying to rectify the situation and abandon such efforts.  Other than placing third-party charges on customers' bills (whether authorized or not), Verizon never informs its customers of the possibility of the charges that are the subject of this complaint being placed on their bills.

60.   The LECs such as Verizon California and the other Verizon LECs have a legal duty under federal law (e.g., 47 U.S.C. 201 *et seq*.) not to bill and collect for unauthorized charges. In addition the Verizon LECs have a legal duty under the various regulatory laws of the states in which they operate that prohibit the type of billing and collection practices that are the subject of this suit

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

and which have for many years resulted in the billing and collection of unauthorized charges. Thus, the improper conduct that is the subject of this Complaint is unlawful under both Federal and State law. The Verizon defendants other than the Verizon LECs know that their conduct permits, encourages, gives substantial assistance to and is essential to the Verizon LECs' violation of Federal and State law prohibiting the billing and collection of unauthorized charges.

61. Verizon knows that there are available simple and effective methods of virtually eliminating the billing and collection of the unauthorized charges that are the subject of this Complaint. The simple and effective security procedures or measures that would prevent unauthorized charges include procedures that Verizon itself uses to insure that requests for access to, or changes to, a customer's billing information, are authorized, that is, actually requested by the customer. These procedures include requiring the person to prove that he or she is authorized by providing a unique identifier or password type validation associated with the customer's account.

62. Verizon has the ability to dictate the terms and conditions under which it permits the billing aggregators and the third party providers to place charges on Verizon's bills, and Verizon could easily require that in contracts with the billing aggregators, the billing aggregators obtain (or require the aggregators to require the third party providers to provide) this information, which would easily and effectively prevent the billing and collection of the unauthorized charges that are the subject of this Complaint. Instead, Verizon has drafted its contracts with the billing aggregators to require numerous and complicated -- but virtually useless -- procedures to make it appear that Verizon is attempting to prevent the billing and collection of unauthorized charges when, in fact, the contractual procedures and measures are simply a charade or pretext designed to create the false impression that Verizon is doing everything in its power to prevent the billing and collection of unauthorized charges. It is not.

63. Verizon's conduct is deliberate and willful because, *inter alia*, (a) Verizon has been aware for years of the fraudulent billing and collection of charges from its customers as a result of its customers' complaints and the anti-cramming laws passed by the federal government and the states,

(b) Verizon knows from the procedures it itself uses, that it has solely within its power and discretion the ability to require the billing aggregators and third party providers to use the same or similar procedures that would effectively put a stop to the billing and collection of unauthorized charges on its bills, and (c) yet Verizon refuses to utilize the simple and effective security procedures and instead continues to engage in the fraudulent scheme.

64.     Unchecked, the practices challenged here will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

## VII.   VERIZON'S TELEPHONE BILLS

65.     Verizon's billing and collection of unauthorized charges is further exacerbated by the misleading and deceptive nature of the telephone bills it uniformly sends to customers. Verizon's telephone bills are misleading and deceptive in that consumers are led to believe that the charges on the bill are legitimate by the very fact of their inclusion in the amount indicated as owed to Verizon on the bill. The placing of a charge for products or services on a telephone bill is a representation that the subscriber has in fact authorized any such charge included on the bill and actually owes that sum.

66.     Verizon bills customers for charges and represents to them that they owe money (*i.e.,* charges were authorized) when Verizon either knows that the charges were not authorized or acts in reckless disregard of the likelihood that the charges were not authorized.

67.      Verizon's telephone bills also uniformly contain misleading and/or unclear billing descriptions. The charges that appear on customers' bills are not sufficiently identified or explained; thus, a reasonable consumer cannot determine whether he or she actually requested and received the services for which the charge is made.

68.     Verizon's telephone bills also uniformly contain misleading and/or unclear descriptions of the manner in which disputes regarding the third-party charges could be addressed and lack sufficient information (such as the date the charges were authorized, the manner in which they were authorized, the name of the person who authorized the charges, etc.) such that reasonable customers could inquire about, or contest, charges on the bill.

**VIII.   THE FACTS RELATING TO NAMED PLAINTIFF DESIREE MOORE**

69.    At all relevant times, Plaintiff Moore ("Ms. Moore") was a Verizon local wireline telephone customer.

70.    Each month, Verizon sent Ms. Moore a bill for her telephone service by mail and each month Ms. Moore paid her bill by sending a check to Verizon by mail, who then, using the wires and/or mails, caused such funds to be withdrawn from her checking account at her bank.

71.    On her January 2009 Verizon bill, Verizon included a $19.77 charge from Verizon on behalf of The Billing Resource on behalf of a third-party company, Enhanced Long Dist. for a so-called Enhanced Long Distance SetUp Fee.  This was an unauthorized charge.

72.    On her February 2009 Verizon bill, Verizon included an $18.01 charge from Verizon on behalf of The Billing Resource on behalf of Enhanced Long Dist. for a so-called Enhanced Long Distance Monthly Fee.  This was an unauthorized charge.  On her March 2009 Verizon bill, a month later, Verizon credited her $18.01 for the unauthorized charge on the February 2009 Verizon bill that she paid, but did not credit her any interest on the lost use of her funds.

73.    Ms. Moore is the only person legally empowered to authorize charges to her telephone, but she never authorized these third-party charges.  Indeed, Ms. Moore was already paying Verizon for long distance services as part of her plan with Verizon and had no need or desire for any other long distance service.

74.    Verizon has failed to provide Ms. Moore a complete refund of such charges, with interest, costs and attorneys' fees, nor has Ms. Moore received such a refund from anyone else.

**IX.    THE FACTS RELATING TO NAMED PLAINTIFF KAREN JONES**

75.    At all relevant times, Plaintiff Jones ("Ms. Jones") was a Verizon local wireline telephone customer.

76.    Each month, Verizon sent Ms. Jones a bill for her telephone service by mail, but through an auto payment system Verizon provided, using the wires and/or mails, automatically removed the money from her checking account at her bank to pay the bills.

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

77. On her April 2009 Verizon bill, Verizon included a $12.95 charge from Verizon on behalf of ESBI on behalf of a third-party company, Voicexpress, for a so-called VoiceExpress Voicemail Monthly Fee.   This was an unauthorized charge.

78. On her May 2009 Verizon bill, even after this lawsuit was filed, Verizon again included a $12.95 charge from Verizon on behalf of ESBI on behalf of Voicexpress for a so-called VoiceExpress Voicemail Monthly Fee.   This was an unauthorized charge.

79. Ms. Jones is the only person legally empowered to authorize charges to her telephone, but she never authorized these third-party charges.  Indeed, Ms. Jones was already paying Verizon for voicemail services as part of her plan with Verizon and had no need or desire for any other voicemail service.

80. Verizon has failed to provide Ms. Jones a complete refund of such charges, with interest, costs and attorneys' fees, nor has Ms. Jones received such a refund from anyone else. Verizon has likewise failed and refused to provide an assurance that it will not continue to bill her for this and/or other unauthorized charges, even after having been notified that the charges are unauthorized.

## X.    CLASS ALLEGATIONS

81. Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23 (b)(2), on behalf of themselves and the following class (the "Injunctive And Declaratory Class"):

> All Verizon local wireline customers in the United States with respect to whom Verizon billed charges for third-party products and services using its billing and collection system.

and pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of herself and the following class (the "Liability" Class"):

> All current and former Verizon local wireline customers (1) with respect to whom Verizon billed and collected charges for third-party products and services using its billing and collection system and for which Verizon did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

82.     Additionally, Plaintiffs bring this action on behalf of a state-wide sub-class (the "Sub-Class"), consisting of all current and former Verizon wireline customers within the State of California (1) with respect to whom Verizon billed and collected charges for third-party products and services using its billing and collection system and for which Verizon did not possess a valid authorization from the customer, and (2) as to which the customer suffered loss.

83.     Excluded from the foregoing Class and Sub-Class are Defendants, their officers and directors and persons whose third-party charges were exclusively for message toll services (e.g., 1+ Direct Dial Calls, Operator Handled Calls, Directory Assistance) and/or any service for which the customer is charged on a per-use or per-call basis.

84.     The Classes and Sub-Class consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of FRCP 23(a)(1).  The exact size of the respective classes and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to their billing and collection records.

85.     The claims of Plaintiffs are typical of the claims of the respective classes.  The claims of the Plaintiffs and the respective classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and the respective classes.

86.     The respective classes have a well-defined community of interest.  The Defendants have acted and failed to act on grounds generally applicable to the Plaintiffs and the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective classes.

87.     There are many questions of law and fact common to the claims of Plaintiffs and the respective class members, and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

88.     Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

- 20 -

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

a.     Whether Defendants' conduct described herein is in violation of 18 U.S.C. § 1962(c) which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

b.     Whether each of the Defendants herein is a corporate "person" under 18 U.S.C. § 1961(4).

c.     Whether Defendants' conduct described herein is in violation of 18 U.S.C. § 1962(d) which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

d.     Whether Defendants' conduct constituted wire fraud, mail fraud or financial institution fraud under, respectively, 18 U.S.C. §§ 1341, 1343 and 1344.

e.     Whether Defendants' conduct described herein is in violation of 47 U.S.C. §§ 201 *et seq*. and 47 C.F.R. § 64.2401.

f.     Whether an enterprise has existed that affects interstate or foreign commerce.

g.     Whether the Defendants have been associated with the enterprise.

h.     Whether the Defendants participated in the conduct of the enterprise's affairs.

i.     Whether Defendants have engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering.

j.     Whether the entities forming the enterprise conduct lawful business activity unrelated to the illegal acts that constitute the pattern of racketeering.

k.     Whether Defendants obtained and held customers' personal and financial information in a position of trust.

l.     Whether Defendants Verizon Corporate Services Group Inc., Verizon Services Corp., Telesector Resources Group, Inc. d/b/a Verizon Services

Group, Verizon Services Operations Inc., Verizon Services Organization, Inc., Verizon Corporate Services Corp. and Verizon Data Services, Inc. tortiously interfered with the contracts between customers and the Verizon LECs.

          m.     Whether Defendants received confidential information from class members and were required to treat that information with fiduciary responsibility.

89.     Common questions of fact and law affecting members of the Sub-Class include, but are not limited to, the following:

          a.     Whether Verizon California's conduct described herein is in violation of California Public Utility Code § 2890.

          b.     Whether Verizon California's conduct described herein is in breach of contract.

          c.     Whether Defendants' conduct described herein violates California Business and Professions Code §§ 17200, *et seq*.

90.     Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

91.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the respective classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other respective class members.

FIRST AMENDED COMPLAINT           CASE NO. 09-1823 SBA

**FIRST CAUSE OF ACTION**
**For Violations of the Racketeer Influenced Corrupt**
**Organizations Act, 18 U.S.C. §§ 1961-1968**

92.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

93.     In relevant part, 18 U.S.C. § 1961(1) defines "racketeering activity" as… (B) "any act which is indictable under any of the following provisions of title 18, United States Code: [including]… section 1343 [18 USCS § 1343] (relating to wire fraud), section 1344 [18 USCS § 1344] relating to financial institution fraud…."

94.     18 U.S.C. § 1961(3) defines "person" to "include[] any individual or entity capable of holding a legal or beneficial interest in property[.]"

95.     18 U.S.C. § 1961(4) defines "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"

96.     18 U.S.C. § 1961(5) provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]"

97.     18 U.S.C. § 1343, the federal wire fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

98.     18 U.S.C. § 1341, the federal mail fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan,

1    exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit

2    or spurious coin, obligation, security, or other article, or anything represented to be or intimated or

3    held out to be such counterfeit or spurious article, for the purpose of executing such scheme or

4    artifice or attempting so to do, places in any post office or authorized depository for mail matter, any

5    matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be

6    deposited any matter or thing whatever to be sent or delivered by any private or commercial

7    interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be

8    delivered by mail or such carrier according to the direction thereon, or at the place at which it is

9    directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be

10   fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial

11   institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30

12   years, or both."

13          99.    18 U.S.C. § 1344, the federal bank fraud statute specifically identified by 18 U.S.C. §

14   1961(1) as an indictable predicate act for purposes of racketeering, states:

15          "Whoever knowingly executes, or attempts to execute, a scheme or artifice --

16                 1.    to defraud a financial institution, or

17                 2.    to obtain any of the moneys, funds, credits, assets, securities, or other property

18                       owned by, or under the custody or control of, a financial institution, by means

19                       of false or fraudulent pretenses, representations, or promises shall be fined not

20                       more than $1,000,000 or imprisoned for not more than 30 years, or both."

21          100.   18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by

22   or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

23   commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

24   through a pattern of racketeering activity or collection of unlawful debt.

25          101.   At all times relevant hereto, Defendants Verizon Communications, Inc., Verizon

26   Corporate Services Group Inc., Verizon Services Corp., Telesector Resources Group, Inc. d/b/a

27

28

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

1   Verizon Services Group, Verizon Services Operations Inc., Verizon Services Organization, Inc.,

2   Verizon Corporate Services Corp. and Verizon California were corporate "person[s]" within the

3   meaning of 18 U.S.C. § 1961(4), with a definable corporate structure and a hierarchy of corporate

4   direction and control, as were the Doe Defendants.

5        102.    At all times relevant hereto, the plaintiff in this First Amended Complaint, and each

6   putative member of the Class, was and is a "person" within the meaning of 18 U.S.C. § 1961(3).

7                                   **The RICO Enterprise**

8        103.    The enterprise consists of Defendant Verizon Communications, Inc., Verizon

9   Corporate Services Group Inc., Verizon Services Corp., Telesector Resources Group, Inc. d/b/a

10  Verizon Services Group,  Verizon Services Operations Inc., Verizon Services Organization, Inc.,

11  Verizon Corporate Services Corp., Verizon Data Services, Inc., Verizon California, the Doe

12  Defendants, the billing aggregators (such as ESBI and The Billing Resource) and the hundreds of

13  third party providers for which Verizon provided third party billing services, such as Enhanced Long

14  Dist. and VoiceExpress (hereinafter the "Enterprise").  Each and every member of the Enterprise

15  participated in the process of obtaining, transmitting, billing and collecting phony, unauthorized

16  charges on Verizon's wireline bills to the members of the class.  In addition to the unlawful activities

17  of the Enterprise as alleged herein, Verizon and the billing aggregators also utilized the identical

18  contractual relationships, computer systems, and organization of their joint billing and collection

19  business to conduct legitimate and lawful billing and collection services for proper and authorized

20  charges for Verizon's services and third party billing services.   The contractual relationships

21  between and among Verizon Communications, Inc., Verizon Corporate Services Group Inc., Verizon

22  Services Corp., Telesector Resources Group, Inc. d/b/a Verizon Services Group,  Verizon Services

23  Operations Inc., Verizon Services Organization, Inc., Verizon Corporate Services Corp., Verizon

24  Data Services, Inc., Verizon California, the Doe defendants, the billing aggregators and the third-

25  party providers constitutes an enterprise in fact.

26

27

28

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

104.    Plaintiff is informed and believes that each member of the Enterprise played a role as alleged herein in obtaining, transmitting, billing and collecting phony, unauthorized charges on Verizon's bills under the direction of Verizon and pursuant to its scheme to bill and collect millions of dollars for unauthorized charges from Verizon's customers.

### Defendants' Ongoing Pattern of Racketeering

105.    Beginning at a date currently unknown to plaintiffs but at least four years prior to the filing of this complaint, Verizon adopted and implemented one centrally managed, uniform, nationwide scheme to defraud its customers by billing and collecting a percentage of bogus and unauthorized charges from its customers, and for the purposes of implementing this fraudulent scheme Verizon associated itself with the billing aggregators and third party providers by entering into dozens of  virtually identical contractual relationships with billing aggregators operating nationwide setting forth the terms and conditions upon which the billing aggregators, and in turn, the third-party providers, would be permitted to utilize Verizon's billing and collection system for purposes of submitting the bogus and unauthorized charges to Verizon's customers, while simultaneously permitting Verizon to falsely claim that it was the billing aggregators and the third party providers, not Verizon, that submitted the bogus unauthorized charges.  As part of the scheme, Verizon shares with the billing aggregators and the third party providers a portion of the proceeds of the fraudulent, bogus, unauthorized charges that Verizon bills and collects from its customers through the fraudulent scheme (the "fraudulent scheme") that inures to the benefit of Verizon.

106.    Pursuant to the fraudulent scheme, Verizon directly or indirectly through its byzantine corporate structure operating nationwide, and intermediate subsidiary corporations, has designed and implemented one common, uniform, nationwide scheme to defraud its customers.   Verizon's contracts with the billing aggregators, and the billing and collection system used for purposes of implementing the nationwide fraudulent scheme, is one common, uniform nearly identical system of provisions and rules and procedures used in virtually an identical manner in each and every state nationwide in which Verizon provides the local wireline services and the billing and collection

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

system involved in this case notwithstanding that Verizon claims that its operations are conducted separately and independently by twenty-six or more separate and independent subsidiaries, without any common, uniform direction or control by Verizon Communications, Inc.  Thus, while there are dozens of purportedly separate billing and collection contracts between as many as twenty-six separate Verizon subsidiaries and the billing aggregators (executed at Verizon Communication Inc.'s behest on behalf of all of the Verizon LECs by Verizon Services), all of the billing and collection contracts are virtually identical and designed and implemented to further the one uniform, nationwide fraudulent scheme alleged herein.

107.   Within the past four years Verizon has billed and collected millions of dollars in unauthorized charges pursuant to the above-described fraudulent scheme to bill and collect unauthorized charges from customers.

108.   Within the past four years, Verizon has knowingly, intentionally, and/or recklessly engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of mail fraud within the meaning of 18 U.S.C. § 1341, wire fraud within the meaning of 18 U.S.C. § 1343, and bank fraud within the meaning of 18 U.S.C. § 1344(2), by knowingly and intentionally implementing the scheme to bill and collect millions of dollars for unauthorized charges from its customers

109.   Verizon, having devised or intended to devise a scheme or artifice to defraud consumers, for the purpose of executing such scheme or artifice or attempting so to do, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to: (1) the Verizon bills mailed to Verizon wireline customers; (2) the receipt of payments mailed by Verizon wireline customers for phony, unauthorized third party charges; (3) billing and collection agreements between Verizon and the billing aggregators and/or the billing aggregators and

the third party providers; and/or (4) correspondence regarding the foregoing (hereinafter referred to collectively as "Mailing Acts").

110.     Plaintiff is informed and believes that Verizon, having devised or intended to devise a scheme or artifice to defraud consumers, for the purpose of obtaining money from the consumers by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed and/or knowingly caused to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or a private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to the Mailing Acts.

111.     Verizon, having devised or intending to devise a scheme or artifice to defraud consumers as described herein, and/or for obtaining money from the consumers by means of false or fraudulent pretenses, representations, or promises as to phony and unauthorized charges on the Verizon wireline bills, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme or artifice, including by: (1) transmission of phony, unauthorized charges by third party providers to billing aggregators for purposes of ultimately being billed and collected by Verizon pursuant to the scheme; (2) transmission of phony, unauthorized charges by billing aggregators to Verizon for purposes of ultimately being billed and collected by Verizon pursuant to the scheme; (3) by transmitting e-mail communications relating to the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on Verizon's bills to the members of the Class; and/or (4) by collecting funds from consumers via electronic fund transfers or electronic communication with the consumer's bank or credit card institution and transmitting payment from Verizon to the billing aggregators, and by  transmitting payments from the billing aggregators to the third party providers.

112.     In addition to the foregoing, Plaintiffs  are informed and believe that Verizon used the mails and wires in conjunction with reaching the agreement between itself and the other members of

the Enterprise with respect to the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on Verizon's bills to the members of the Class.

### The Effect of the Racketeering Scheme On Interstate Commerce

113.   As part of the racketeering scheme described herein, Verizon has used the racketeering Enterprise to increase its profits to the detriment of consumers residing in the twenty six states in the nation in which Verizon operates its unlawful scheme.

114.   The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Amended Complaint arise out of, and are based upon, Defendants' use of the Internet, agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting phony, unauthorized charges on Verizon's bills to the members of the Class, in furtherance of the racketeering scheme as alleged herein above.

### Injury to Plaintiff and Putative Class Members in their Business or Property by Reason of the Pattern of Racketeering Activity

115.   Plaintiff and class members are the only direct victims of Verizon's wrongful and unlawful conduct; in that Plaintiffs and class members directly paid to Verizon money to pay for an unauthorized charge, including money which was in the custody or control of a financial institution, such as when the charge was paid for by check, debit card or automatic clearing house fund withdrawals from bank accounts.

116.   Plaintiffs and the putative class were injured by reason of the fact that they were billed for and paid for a service that they did not authorize, and because they were the primary and intended victims of the scheme to defraud.   It was a foreseeable and natural consequence of Verizon's scheme that consumers would pay for the unauthorized charges.   There are no independent factors that account for Plaintiffs' and the putative class members' economic injuries. There is no risk of duplicative recoveries by Plaintiffs and the putative class, removed at different levels of injury from the violation.

117.   No more immediate victims are better situated to sue for the RICO violations at issue, given that Plaintiffs and the putative class members were billed for and paid the unauthorized

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

charges from Verizon.  Indeed, Plaintiffs and the putative class members are the only known victims of the fraudulent scheme.

118.    Plaintiffs were victims of the scheme to defraud consumers by billing and collecting for unauthorized charges.  Numerous consumers were exposed to the same fraudulent scheme to defraud.

119.    As a direct and proximate result of Defendants' fraudulent scheme, Plaintiffs and the putative Class members have lost money comprised of the amounts paid for unauthorized charges, in an amount according to proof.  Damages will be calculated with greater accuracy according to information contained in Defendants' records.

120.    The pattern of racketeering activity, as described herein, is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering practices.  Verizon has consistently demonstrated its unwillingness to discontinue the illegal practices described herein, and continues its pattern of racketeering as of this moment.

121.    As a direct and proximate result of the racketeering activities described herein, Plaintiffs and the absent Class members are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

122.    As a direct and proximate result of the racketeering activities as described herein, Plaintiffs, on behalf of themselves and the absent Class members, are entitled to an Order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants from further engaging in the unlawful conduct which the Enterprise has engaged in.

### SECOND CAUSE OF ACTION
### For Conspiracy To Violate the Racketeer Influenced Corrupt
### Organizations Act, 18 U.S.C. §§ 1961-1968

123.    Plaintiffs incorporate by reference the foregoing allegations.

124.    Verizon Communications, Inc., Verizon Corporate Services Group Inc., Verizon Services Corp., Telesector Resources Group, Inc. d/b/a Verizon Services Group,  Verizon Services

Operations Inc., Verizon Services Organization, Inc.,  Verizon Corporate Services Corp., Verizon Data Services, Inc.,  Verizon California, and the Doe Defendants have conspired with each other and with billing aggregators, including specifically Billing Services Group (and its subsidiaries including ESBI) and The Billing Resource, and the third party providers, to carry out the Enterprise pleaded above and to violate 18 U.S.C. § 1962(c), as alleged above in violation of  18 U.S.C. § 1962(d). Each has aided, assisted and abetted the others in carrying out and attempting to carry out the Enterprise.

125.    As alleged above, each Defendant by words or action manifested an agreement to commit two or more predicate acts in furtherance of the common purpose of the RICO Enterprise.

126.    As alleged above, each Defendant knew of the conspiracy's goals and agreed to facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other things, two predicate acts of mail, wire, and/or bank fraud.

**THIRD CAUSE OF ACTION**
**For Violations of 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401**

127.    Plaintiffs incorporate by reference the foregoing allegations.

128.    At all times relevant hereto, there was in existence 47 U.S.C.§ 201, which provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

129.    Defendants' practice of billing and collecting unauthorized third-party charges from Plaintiffs and the respective classes and sub-classes is neither just nor reasonable and is, in fact, unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

130.    At all times relevant hereto, there was also in existence 47 C.F.R. § 64.2401, entitled "Truth-in-Billing Requirements," which provided, in relevant part, as follows:

FIRST AMENDED COMPLAINT                              CASE NO. 09-1823 SBA

(b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.
. . .

(d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill.

131.    The charges contained on Defendants' bills were not accompanied by "clear, non-misleading, plain language description of the service or services rendered" nor did they "contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill," in violation of 47 C.F.R. § 64.2401.

132.    Defendants are liable to Plaintiffs and the respective classes and sub-classes for damages and attorneys' fees, pursuant to 47 U.S.C. § 206, which provides as follows:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

133.    As a result of Defendants' violations, Plaintiffs and the respective classes and sub-classes suffered damages, and pursuant to 47 U.S.C. § 207 are entitled to recover, as follows:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

## FOURTH CAUSE OF ACTION
### Breach of Contract on behalf of the Sub-Class Against Verizon California

134.    Plaintiffs incorporate by reference the foregoing allegations.

135.     Plaintiffs and the Sub-Class entered into agreements with Verizon California whereby Plaintiffs and the Sub-Class agreed to pay a certain sum of money in exchange for Verizon California's activation of Plaintiffs' and the Sub-Class' local wireline telephone account and its promise to provide various communication and related services to Plaintiffs and the Sub-Class.

136.     Verizon California expressly and/or impliedly agreed to bill and collect only for such charges that Plaintiffs and the Sub-Class clearly and explicitly authorized.

137.     Verizon California also expressly and/or impliedly agreed to provide clear and non-misleading telephone bills to Plaintiffs and the Sub-Class.

138.     Verizon California further expressly and/or impliedly agreed to carry out its obligations of good faith and fair dealing.

139.     Verizon California breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by billing and collecting from Plaintiffs and the Sub-Class for products or services, the purchase of which they never authorized.

140.     Verizon California further breached its contractual obligations by providing Plaintiffs and the Sub-Class with telephone bills that were unclear and misleading.

141.     Plaintiffs and the Sub-Class performed their contractual obligations.

142.     The aforementioned breaches of contract have proximately caused the Plaintiffs and the Sub-Class' economic injury and other damages.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with a Contract Against All Defendants Except The Verizon LECs**

143.     Plaintiffs incorporate by reference the foregoing allegations.

144.     Plaintiffs and the Class and Sub-class had contractual relationships with their Verizon LECs whereby they agreed to pay a certain sum of money in exchange for activation of their telephone accounts and their carriers' promise to provide various communication and related services to Plaintiffs and the Class and Sub-class and to bill them only for products or services the purchase of which they had authorized.

145.    Defendants (other than the Verizon LECs) knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

146.    Defendants (other than the Verizon LECs) intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the class members' bills across the nation unauthorized charges.

147.    Plaintiff and the Class and Sub-Class suffered loss as a direct result of the conduct of Defendants (other than the Verizon LECs).

**SIXTH CAUSE OF ACTION**
**Breach of Trust**

148.    Plaintiffs incorporate by reference the foregoing allegations.

149.    In connection with the opening of accounts for Verizon wireline service, Verizon received from the customer class members herein extremely confidential personal information including, *inter alia*, information concerning the customer's name, address, Social Security number and various other items of personal identifying information, including, in the case of customers who signed up for automatic payments such as one of the Plaintiffs here, information concerning the customer's bank account or credit card information.

150.    Verizon received the foregoing information in trust and was bound by fiduciary duties to hold that information in trust for the benefit of the customers providing such information.

151.    Verizon occupied a position of trust and confidence with respect to its customers, and was legally bound to treat all such information provided in connection with the opening of Verizon accounts or payment schemes with utmost fidelity.  In connection therewith, Verizon owed fiduciary duties to its customers in this regard.

152.    Under well established law, any time a fiduciary has a financial interest in a transaction, as Verizon did here, the transaction is presumptively fraudulent, and the burden shifts to the fiduciary to prove by clear and convincing evidence that the transaction is in all regards fair to the beneficiary (the customer here).

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

153.    Verizon's conduct here in using information it obtained in confidence to impose

charges on customers in which charges Verizon had a direct and substantial interest was in violation

of the duty of trust imposed on Verizon and were presumptively fraudulent.

### SEVENTH CAUSE OF ACTION
### Violation Of California Public Utilities Code § 2890
### on behalf of the Sub-Class Against Verizon California

154.    Plaintiffs incorporate by reference the foregoing allegations.

155.    California Public Utilities Code § 2106 provides as follows:

> Any public utility which does, causes to be done, or permits any
> act, matter, or thing prohibited or declared unlawful, or which
> omits to do any act, matter, or thing required to be done, either by
> the Constitution, any law of this State, or any order or decision of
> the commission, shall be liable to the persons or corporations
> affected thereby for all loss, damages, or injury caused thereby or
> resulting therefrom.  If the court finds that the act or omission was
> willful, it may, in addition to the actual damages, award exemplary
> damages.  An action to recover for such loss, damage, or injury
> maybe brought in any court of competent jurisdiction by any
> corporation or person.

156.    Verizon California is a "public utility" within the meaning of the CPUC.

157.    According to the California Public Utilities Commission, "the practice of cramming

has become a serious and widespread problem in California, draining time and money from

California consumers and businesses."

158.    CPUC § 2890, provides, *inter alia*, as follows:

> (a) A telephone bill may only contain charges for products or
> services, the purchase of which the subscriber has authorized.
> …
>
> (b)    (2) Any person, corporation, or billing agent that charges
> subscribers for products or services on a telephone bill shall do all
> of the following:
>
>     (A) Include, or cause to be included, in the telephone bill
> the amount being charged for each product or service, including
> any taxes or surcharges, and a clear and concise description of the
> service, product, or other offering for which a charge has been
> imposed.
>
>     (B) Include, or cause to be included, for each entity that
> charges for a product or service, information with regard to how to

- 35 -

1

2

3

4

resolve any dispute about that charge, including the name of the
party responsible for generating the charge and a toll free
telephone number or other no cost means of contacting the entity
responsible for resolving disputes regarding the charge and a
description of the manner in which a dispute regarding the charge
may be addressed.  Each telephone bill shall include the
appropriate telephone number of the commission that a subscriber
may use to register a complaint.

5   159.   Verizon California violated § 2890(a) since its telephone bills contained charges for

6   products and services, the purchase of which Plaintiffs and the Sub-Class did not authorize.

7   160.   Verizon California's billing for unauthorized charges is further exacerbated by its

8   failure to comply strictly with various disclosure-related requirements of § 2890(d), making it more

9   difficult for customers to discover the unauthorized charges, realize what their options are, and

10  thereafter dispute said charges.

11  161.   Although required to do so, the bills issued by Verizon California systematically and

12  uniformly failed to include "a clear and concise description of the service, product, or other offering

13  for which a charge has been imposed" or "a description of the manner in which a dispute regarding

14  the charge may be addressed."

15  162.   Verizon California's conduct was, as set forth above, willful.

16  163.   As a result of Verizon California's conduct, Plaintiffs and the Sub-Class have

17  suffered and will continue to suffer loss, damage, and injury.

18  164.   Plaintiffs and the Sub-Class are entitled to actual and exemplary damages.

19

20

**EIGHTH CAUSE OF ACTION**
**Violation of California Business & Professions Code § 17200, _et seq._**
**on behalf of the Sub-Class**

21  165.   Plaintiffs incorporate by reference the foregoing allegations.

22  166.   The Unfair Business Practices Act proscribes unfair business competition and defines

23  the same to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California

24  Business & Professions Code §§17200, _et seq._

25

26

27

28

FIRST AMENDED COMPLAINT                    CASE NO. 09-1823 SBA

167. Defendants violated, and continue to violate this proscription through their conduct alleged above, including their violations of the California Public Utilities Code section 2890, as set forth above.

168. Defendants, through their acts of unfair competition, have obtained money from Plaintiffs and members of the proposed Classes. Plaintiffs in fact have been injured by Defendants' conduct, as have members of the Class. Plaintiffs and the members of the Classes ask that this Court restore this money to them and enjoin Defendants from continuing their illegal practices.

169. Defendants' conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

170. Such conduct is ongoing and continues to this date. Plaintiffs, the Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class and sub-class, request the following relief:

1. That the Court enter an order certifying the Classes and Sub-Class and appointing Plaintiffs as the representatives of the Classes and Sub-Class, and appointing counsel for Plaintiffs as lead counsel for the respective classes;

2. That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

3. That the Court enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiffs and the respective classes treble and exemplary damages;

4. That the Court award Plaintiffs and the respective classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

5. That the Court award Plaintiffs and the respective classes pre- and post-judgment interest;

FIRST AMENDED COMPLAINT          CASE NO. 09-1823 SBA

1      6.     That the Court issue an injunction prohibiting Defendants from continuing their

2    conduct complained of herein; and

3      7.     That the Court award such other and further relief as may be necessary or appropriate.

Respectfully submitted,

**THE JACOBS LAW FIRM, CHTD.**

Dated:  September 18, 2009

By:  /s/ John G. Jacobs
      JOHN G. JACOBS
      Attorneys for Plaintiffs and the Putative
      Class and Sub-Class

JOHN G. JACOBS (*PRO HAC VICE*)
BRYAN G. KOLTON (*PRO HAC VICE*)
**THE JACOBS LAW FIRM, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850
jgjacobs@thejacobslawfirm.com
bgkolton@thejacobslawfirm.com

DAVID SCHACHMAN (*PRO HAC VICE*)
**DAVID SCHACHMAN & ASSOCIATES, P.C.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-9500
Facsimile: (312) 427-1850
ds@schachmanlaw.com

FIRST AMENDED COMPLAINT          CASE NO. 09-1823 SBA

**JURY DEMAND**

Plaintiffs demand trial by jury on all counts for which a jury trial is permitted.

**THE JACOBS LAW FIRM, CHTD.**

Dated:  September 18, 2009

By:   /s/ John G. Jacobs
JOHN G. JACOBS
Attorneys for Plaintiffs and the Putative
Class and Sub-Class

JOHN G. JACOBS (*PRO HAC VICE*)
BRYAN G. KOLTON (*PRO HAC VICE*)
**THE JACOBS LAW FIRM, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850
jgjacobs@thejacobslawfirm.com
bgkolton@thejacobslawfirm.com

DAVID SCHACHMAN (*PRO HAC VICE*)
**DAVID SCHACHMAN & ASSOCIATES, P.C.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-9500
Facsimile: (312) 427-1850
ds@schachmanlaw.com

- 39 -