JEFFREY F. KELLER (SBN 148005)
**KELLER GROVER, LLP**
1965 Market Street
San Francisco, California  94103
Telephone:  (415) 543-1305
Facsimile: (415) 543-7861
jfkeller@kellergrover.com

JOHN G. JACOBS (*PRO HAC VICE*)
BRYAN G. KOLTON (*PRO HAC VICE*)
**JACOBS KOLTON, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850
jgjacobs@jacobskolton.com
bgkolton@jacobskolton.com

Attorneys for Plaintiffs and the Proposed Class

[*Additional Counsel on Signature Page*]

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE MOORE and KAREN JONES, individually and on behalf of a class of similarly situated individuals,<br><br>               Plaintiffs,<br><br>    vs.<br><br>VERIZON COMMUNICATIONS INC., VERIZON CALIFORNIA, INC., VERIZON CORPORATE SERVICES GROUP INC., VERIZON SERVICES CORP., TELESECTOR RESOURCES GROUP, INC. d/b/a VERIZON SERVICES GROUP, VERIZON SERVICES OPERATIONS INC., VERIZON SERVICES ORGANIZATION, INC., VERIZON CORPORATE SERVICES CORP., VERIZON DATA SERVICES, INC., and DOES 1 through 25,<br><br>               Defendants. | CASE NO. CV 09-1823 SBA<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Location: Courtroom 1, 4th Floor.<br>1301 Clay Street<br>Oakland, California 94612<br>Date:  February 28, 2012<br>Time:  1:00 p.m.<br><br>The Honorable Saundra B. Armstrong |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on February 28, 2012, at 1:00 p.m., or at such other time as the Court may set, the undersigned will appear before the Honorable Saundra B. Armstrong in Courtroom 1, 4th Floor at the United States Courthouse at 1301 Clay Street, Oakland, California, and then and there move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order preliminarily approving a proposed Settlement Agreement entered into between the parties in this class action, a copy of which is attached hereto as Exhibit 1.

By this motion, Plaintiffs respectfully move the Court for an Order: (1) certifying for settlement purposes only the proposed Settlement Class; (2) appointing Plaintiffs' counsel as Class Counsel and John G. Jacobs and David Schachman as Lead Class Counsel; (3) appointing Plaintiffs as class representatives; (4) granting preliminary approval of the proposed Settlement; (5) approving the Parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to such program; (6) appointing Epiq Systems, Inc. as the independent Settlement Administrator; and (8) setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

The Motion is based on this Notice of Motion, the Memorandum in Support of the Motion immediately following herewith (including the declarations attached thereto) and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: February 1, 2012        Respectfully Submitted,

DESIREE MOORE and KAREN JONES, individually and on behalf of a class of similarly situated individuals,

By:  /s/ John G. Jacobs

John G. Jacobs (*Pro Hac Vice*)
Bryan G. Kolton (*Pro Hac Vice*)
**JACOBS KOLTON, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000

Facsimile: (312) 427-1850
jgjacobs@jacobskolton.com
bgkolton@jacobskolton.com

David Schachman (*Pro Hac Vice*)
**DAVID SCHACHMAN & ASSOCIATES, P.C.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-9500
Facsimile: (312) 427-1850
ds@schachmanlaw.com

Jeffrey F. Keller (SBN 148005)
**KELLER GROVER, LLP**
1965 Market Street
San Francisco, California  94103
Telephone:  (415) 543-1305
Facsimile: (415) 543-7861
jfkeller@kellergrover.com

Michael W. Sobol (SBN 194857)
Jahan C. Sagafi (SBN 224887)
**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
msobol@lchb.com
jsagafi@lchb.com

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO.  CV 09-1823 SBA

# MEMORANDUM IN SUPPORT OF MOTION

### Table of Contents

I.      INTRODUCTION – The Problem Addressed By This Litigation ............................. 1

    **A.  The Plaintiffs' Position** ............................................................. 1

    **B.  Defendants' Position** .............................................................. 6

    **C.  Settlement Negotiations** ......................................................... 6

II.     TERMS OF THE PROPOSED SETTLEMENT ........................................ 7

    **A.  Settlement Class Definition** ................................................... 7

    **B.  Settlement Benefits** ............................................................... 7

        **1. Retrospective/Monetary Relief** ...................................... 7

        **2. Prospective/Injunctive Relief** ........................................ 9

            a.  *Reduced Complaint Thresholds* .................................. 10

            b.  *Increased Penalties For Cramming Complaints* ........................... 10

            c.  *Improved Employee Training Regarding Cramming* .................... 10

            d.  *Special Notice To Other Wireline Carriers And Government Entities Of Rejection Of Service Providers' Application For Billing Service Or Termination Of Billing Services Or Suspension Of Aggregators* .......................... 11

            e.  *Third Party Charge Authorization Confirmation Process* ............ 11

            f.   *Notice Regarding Terminated Service Providers Or Sub-CICs* .... 12

            g.  *Regular Independent Audits* ......................................... 12

            h.  *Reduced Cramming Adjustment Thresholds* ................................ 12

    **C.  Additional Relief** ................................................................ 12

        **1. Payment Of Notice Costs And Settlement Administrative Fees** ........ 12

        **2. Compensation For The Class Representatives** ................................ 13

        **3. Payment Of Attorneys' Fees And Expenses** ....................................... 13

    **D.  Release** ................................................................................ 13

III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .................. 14

A.  **The Requirement Of Numerosity Is Satisfied**.................................. 14

B.  **The Requirement Of Commonality Is Satisfied** .............................. 15

C.  **The Requirement Of Typicality Is Satisfied** .................................... 16

D.  **The Requirement Of Adequate Representation Is Satisfied** .......................... 17

E.  **The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)** . 17

**IV.     THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**........................................................................................ 19

**V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** . 20

**VI.     THE PROPOSED PLAN OF CLASS NOTICE**.......................................... 22

A.  **Direct Mail Notice to Current Verizon Customers (Bill Stuffer Notice)**........ 23

B.  **Direct Mail Notice to Former Verizon Customers (Postcard Notice)** ............ 23

C.  **Email Notice (Direct Email Notice)** .................................................. 23

D.  **Class Action Settlement Website (Internet Notice)** ............................. 23

E.  **Verizon Cramming Webpage Hyperlink (Internet Notice)**........................... 23

F.  **Newspaper Notice (Publication Notice)** ............................................. 24

G.  **CAFA Notice to Government Officials**................................................. 24

**VII.    PROPOSED SCHEDULE** ........................................................................... 24

**VIII.   CONCLUSION**........................................................................................ 25

ii

1

## Table of Authorities

2

**Cases:**

3

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997). ........................................................................................ 14, 18

4

5

*Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ................................................................................. 20

6

7

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ........................................................................ 21

8

*Celano v. Marriot Int'l, Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) ......................................................................... 14

9

10

*Churchill Village L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)................................................................................. 22

11

*Dalton v. Lee Publications, Inc.*,
   270 F.R.D. 555 (S.D. Cal. 2010)........................................................................... 15

12

13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .......................................................................................... 14, 22

14

15

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................... 20, 21

16

17

*FTC v. Inc21*,
   745 F.Supp.2d. 975 (N.D. Cal. 2010) .................................................................... 2

18

19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998)...................................................................... 15, 17, 20

20

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)............................................................................... 20

21

22

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................... 20

23

*Lady Di's, Inc. v. Enhanced Services Billing, Inc.*,
   654 F.3d 728 (7th Cir. 2011)............................................................................. 5 n. 2

24

25

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. Jul. 18 1997) .......................................................... 21

26

27

*Moore v. Verizon Communications Inc.*,
   2010 WL 3619877 (N.D. Cal. Sept. 10, 2010)................................................... 1, 19

28

iii

*Nwabueze v. AT&T Inc.,*
    2011 WL 332473 (N.D. Cal. Jan 29, 2011) ..................................................... 19

*Pierce v. County of Orange,*
    519 F.3d 985 (9th Cir. 2008)................................................................. 17

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993)................................................................. 22

*Wal-mart Stores, Inc. v. Dukes,*
    131 S.Ct.2541 (2011) ......................................................................... 15

**Statutes, Rules, & Regulations:**

18 U.S.C. §§ 1961-1968................................................................................. 1

28 U.S.C. § 1715 ........................................................................................ 24

California Public Utilities Code § 2890 ...................................................... 1

California Business & Professions Code § 17200 ...................................... 1

Fed. R. Civ. P. 23(a)(1-4).......................................................... 14, 15, 16, 17

Fed. R. Civ. P. 23(b)(3). ................................................................. 14, 17, 22

Fed. R. Civ. P. 23(g)(1)(A)(i-iv). ....................................................... 19

Fed. R. Civ. P. 23(g)(1)(B)........................................................................ 19

**Miscellaneous:**

Federal Communications Commission, Cramming Infographic:
    http://transition.fcc.gov/cgb/cramminggraphic.pdf ..................................... 4 n. 1

Manual for Complex Litigation § 21.632 (4th ed. 2004) ...................................... 14, 20

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed.2002) .............. 15, 20, 21

iv

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION—The Problem Addressed By This Litigation**

3

> **A.   <u>The Plaintiffs' Position</u>**

4

This lawsuit was brought in early 2009 on behalf of a proposed nationwide class of current

5

and former Verizon landline customers who were billed for allegedly unauthorized third-party

6

charges submitted to Verizon by billing aggregators on behalf of third party providers.  The

7

placing of unauthorized charges on customers' monthly phone bills is commonly known as

8

"cramming."   After extensive briefing on Defendants' motion to dismiss, the Court ruled that

9

Plaintiffs had stated valid causes of action for (1) violations of the Racketeer Influenced Corrupt

10

Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, (2) conspiracy to violate RICO, (3) breach

11

of contract, (4) violation of California Public Utilities Code § 2890, (5) violation of California

12

Business & Professions Code § 17200 and (6) tortious interference with contract.  *Moore v.*

13

*Verizon Communications Inc.*, C 09-1823 SBA, 2010 WL 3619877 (N.D. Cal. Sept. 10, 2010)

14

(*See* Dkt. No. 60).

15

Following the Court's ruling, the parties embarked on a rigorous mediation schedule under

16

the supervision of the Honorable Daniel H. Weinstein.   (See the Declaration of The Honorable

17

Daniel H. Weinstein (ret.) In Support Of Preliminary Approval Of Class Action Settlement,

18

attached hereto as Exhibit 2.)  As part of discovery, Defendants have provided responses to

19

Plaintiffs' production requests and have produced over 150,000 pages of documents (both in

20

hardcopy and electronic form) and compilations and analysis of data extracted from millions of

21

computerized records, which Plaintiffs' counsel have thoroughly reviewed and analyzed.

22

Throughout the litigation (and even prior to its commencement), Plaintiffs researched and

23

investigated issues relating to third party billing and cramming and have consulted with industry

24

experts. (Jacobs Dec. ¶¶ 3) (Schachman Dec. ¶¶ 3-9.)  As part of the mediation process, there was

25

extensive exchange of information, multiple briefings, and multiple days of face-to-face mediation

26

conducted by Judge Weinstein and his colleague, Lizbeth Hasse over the course of a year.  The

27

ultimate result is the Settlement Agreement attached hereto as Exhibit 1.  During the pendency of

28

this suit, the United States Senate Committee On Commerce, Science and Transportation issued a report entitled "Unauthorized Charges On Telephone Bills" on July 12, 2011 after a year-long investigation of cramming in the United States (the "Senate Report").  What that Senate Report makes clear is that the economic consequences of cramming nationwide are staggering.  It likewise makes clear that, as did Judge Alsup in his opinion in *FTC v. Inc21*, 745 F.Supp.2d. 975 (N.D. Cal. 2010), overwhelmingly, the reason cramming is able to thrive is that most people – upwards of 95% -- *do not even realize that the charges have been placed on their bills*, and the charges are allowed to go on and on.   Below are some of the findings of the United States Senate Report.  They make clear the nature of the problem addressed by this suit.

- "The evidence obtained through this investigation suggests that third-party billing is causing extensive financial harm to all types of landline telephone customers, from residences and small businesses, to government agencies and large companies.  Over the past decade, telephone customers appear to have been scammed out of billions of dollars through third-party billing on landline telephones.  Unauthorized third-party charges are a nationwide problem."  (Senate Report at ii)

- "Telephone companies place approximately 300 million third-party charges on their customers' bills each year, which amount to more than $2 billion worth of third-party charges on telephone bills every year.  Over the past five years, telephone companies have placed more than $10 billion worth of third-party charges on their customers' landline telephone bills."  (*Id.*)

- "The unauthorized charges that are crammed onto telephone customer's bills are typically between $10 and $50. These charges, although relatively minor if they occur only once, can quickly amount to significant losses for telephone customers.  To maximize revenue, crammers charge consumers on a recurring monthly basis for their services, so that the charges will continue as long as consumers fail to discover them."  (*Id.* at 18)

- "The evidence obtained and analyzed by Committee staff suggests that third-party billing on landline telephones has largely failed to become a reliable method of payment that consumers and businesses use to conduct legitimate commerce.  Rather, it created cramming, a problem of massive proportions likely affecting millions of telephone users and costing them billions of dollars in unauthorized third-party charges over the past decade.  With the exception of legitimate third-party vendors that offer services like satellite television and long distance, third-party billing appears to be primarily used by con artists and unscrupulous companies to scam telephone customers."  (*Id.* at 44)

- 2 -

- "Over the past year, Committee staff has confirmed millions of instances of cramming on thousands of landline telephone bills.  *** Because so many third-party charges are unauthorized, the third-party billing system that was initially promoted as a convenience for telephone customers has instead made them targets for scams.  Third-party billing has likely cost telephone customers billions of dollars in unauthorized charges and wasted time over the past decade." (*Id.* at 11.)

- "Residences and small businesses affected by cramming have generally experienced losses in the hundreds and thousands of dollars.  Larger organizations, like government agencies and corporations, sometimes experience unauthorized third-party charges worth tens of thousands of dollars a year.  Because large organizations often have thousands of telephone lines in hundreds of locations, they are particularly susceptible to cramming." (*Id.* at 18)

- "Despite the telephone companies' decision to enact voluntary anti-cramming guidelines and the FCC's Truth-in-Billing requirements, it still takes minimal effort for a company engaged in cramming to place unauthorized third-party charges on consumers' bills, while it remains difficult for customers to find and remove those charges from their telephone bills.  As a result, unless additional protections are put in place, millions of telephone customers will likely continue to face billions of dollars of unauthorized charges."  (*Id.* at 44.)

- "Telephone customers with third-party charges on their telephone bills overwhelmingly reported that the charges were unauthorized.  Committee staff has spoken with more than 500 individuals and business owners whose telephone bills included third-party charges.  Not one person said the charges were authorized.  Law enforcement agencies have reported similar findings when conducting surveys for their own cramming investigations. " ( *Id.* at ii)

A copy of the Senate Report is attached hereto as Exhibit 4.

The FCC Website states it more succinctly and in graphics:

- Fifteen to 20 million American households are estimated to receive crammed charges on their landline bills each year;

- Only 1 out of 20 victims of cramming is aware of the crammed charges; and

- In two Commission investigations of cramming, involving approximately 36,000 consumers billed for a product on their telephone bills, only 0.1% of the consumers had actually <u>used</u> the product.[1]

---

[1]    See Federal Communications Commission, Cramming Infographic (June 22, 2011). (available at:
http://transition.fcc.gov/cgb/cramminggraphic.pdf) (accessed January 28, 2012).  A hard copy is found at Exhibit 5 hereto.

1   As we discuss later in this memorandum, those findings by the United States Senate

2   Committee and by the FCC are by no means surprising.  State and federal law enforcement and

3   consumer protection agencies, consumer protection groups and private litigants have been saying

4   the same thing for years and have fought a losing battle trying to stamp out this burgeoning

5   problem.

6   As noted, after over a year of mediation before Judge Weinstein, the Parties in this case

7   were able to reach an agreement on a proposed settlement agreement.

8   The settlement hammered out in that painstaking process is remarkable in every regard.

9   This settlement makes <u>full recovery</u> (100 cents on the dollar) available to all present and former

10  Verizon landline customers since April of 2005 for all unauthorized Third-Party Charges.  It also

11  provides a customer-friendly means of finding out if there were charges and how much they

12  amounted to, as well as providing a simple claim for full recovery.  (The settlement also provides

13  customers the option to file a simple Flat Payment Claim for $40 instead of a Full Payment

14  Claim.)  Equally – if not more important – the settlement calls for critical injunctive relief.   While

15  we will not detail all of them here, just three components of the injunctive relief provided by this

16  settlement demonstrate the important provisions achieved that inevitably must have a profound

17  effect on the ability of anyone to cram Verizon customers:

18     1.   Any time a customer opens a new account with Verizon, the customer must
    affirmatively choose whether or not to allow third party charges.  No account can be
    opened without the customer's having made that election.  Simply put, it no longer

19       will be the default that third-party billing will be allowed.  Cramming works primarily,
    if not solely, because consumers do not know that third-party charges are permitted to

20       be included in their telephone bills, and the "default" in favor of allowing third-party

21       billing is an essential element in the problem.   That element will be gone.

22     2.   The Settlement also includes a concerted, comprehensive, educational campaign --
    through mail, e-mail and website -- to notify, inform and educate the millions of

23       Verizon's ***current*** customers (who were never given the opportunity when they
    initially opened their account with Verizon to make a knowing, informed choice

24       whether to block or permit third-party charges on their bill) that third-party charges
    may be included in their bills and that Verizon will block such charges (for free) for

25       any customer who calls a toll free number and request the bill block.  At least once a
    year, Verizon will reiterate that notice to all current customers.

26     3.   In addition, the Settlement includes an additional, significant change in the third-party

27       business model:  whenever any of the millions of ***current*** (and future) Verizon
    customers purportedly agree to purchase a new third-party service to be billed on their

28       phone bill, the Aggregator (or a third-party), ***but not the third-party provider***, will send

- 4 -

a letter to the Verizon customer notifying the customer that their Verizon telephone bill will contain a new third-party charge.  The confirmation letter will have prominent language on the outside of the envelope stating "CONTAINS IMPORTANT INFORMATION ABOUT NEW CHARGES ON YOUR VERIZON BILL." This is important, given that one of the central problems in third-party billing today is that charges can go on for months, or longer, without the customer's realizing that the charges are there.

There are other important injunctive provisions that will provide serious impediments to cramming, but just these three, without more, make this settlement singular.  To be sure, Verizon itself is to be given a great deal of credit in acting as it has in this settlement to take truly meaningful steps to deal with the problem, but the question here is not to whom credit should be given, but, rather, whether the settlement is fair, reasonable and adequate and whether it should be approved by this Court.  Plaintiffs respectfully submit that the instant settlement readily passes that test; this is plainly an excellent settlement.   Entry of the proposed Preliminary Approval Order (Exhibit A to the settlement agreement) will not only allow the parties to proceed with a robust program of notice, but will itself constitute an important element of consumer education about cramming.

Numerous prior private class action lawsuits relating to cramming have resulted either in outright dismissal[2] or in settlements that result in no significant changes in the way the industry conducts the third party billing business and the opportunity to make only fractional recoveries for small groups of consumers of particular third party providers (Jacobs Dec. ¶ 3) (Schachman Dec. ¶ 13).   Moreover, even when some monetary relief has been afforded, the monetary relief has been severely limited in dollar amount.  No prior settlement has permitted any class the ability to find out *every single Third-Party Charge* they have paid and *to recover every single dollar of unauthorized charges*.  (*Id.*)

The results achieved are, at a minimum, fair, reasonable, and adequate, and merit the Court's preliminarily approval of the settlement.   Plaintiffs thus move the Court to enter an Order:

---

[2] *E.g., Lady Di's, Inc. v. Enhanced Services Billing, Inc.,* 654 F.3d 728 (7th Cir. 2011), affirming summary judgment for defendants and denial of class certification.

- 5 -

(1) certifying for settlement purposes the proposed Settlement Class; (2) appointing Plaintiffs' counsel as Class Counsel; (3) appointing Plaintiffs as class representatives; (4) granting preliminary approval of the proposed Settlement; (5) approving the Parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to such program; (6) appointing  Epiq Systems, Inc. as the independent Settlement Administrator; and (8) setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

### B.   Defendants' Position

At all times, Defendants have denied and continue to deny any wrongdoing whatsoever and have denied and continue to deny that they committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the FAC, and contend that they have acted properly in all regards in connection with the charges in question.  Defendants also deny: (1) each and every claim and contention alleged by Plaintiffs in the lawsuit; (2) all charges of wrongdoing or liability against any of them arising out of any conduct, statements, acts or omissions alleged in the lawsuit; and (3) that Plaintiffs or the Settlement Class is entitled to any form of damages or other relief based on the conduct alleged in the lawsuit.  In addition, Defendants maintain that they have meritorious defenses to the claims alleged in the lawsuit and that they were prepared to vigorously oppose class certification and the lawsuit.

### C.   Settlement Negotiations

In or about October of 2010, the parties began to explore the possibility of a settlement. Towards that end, the Parties retained Judge Weinstein to attempt to mediate the dispute.  The mediation was extensive, continued for a year through multiple  sessions and ultimately resulted in the settlement now before the Court.  (Weinstein Declaration, Exhibit 2 hereto.)

## II.   TERMS OF THE PROPOSED SETTLEMENT

The key terms of the settlement follow:

### A.   Settlement Class Definition:

The Settlement Agreement defines the settlement class as:

- 6 -

1

2

3

4

5

all Persons who are current and former Verizon landline customers billed for Third Party Charges submitted to Verizon by the Aggregators from April 27, 2005 to the date of Preliminary Approval.  Excluded from the class are: (i) customers billed for only the following charges: (a) message telephone services ("MTS") usage charges; (b) charges that relate to a change in the customer's primary interexchange carrier ("PIC"); (c) charges billed by local telephone companies purchased from Verizon by Frontier Communications Corporation, FairPoint Communications, Inc., and Hawaiian Telcom; (ii) any judicial officer to whom the Action is assigned; and (iii) the U.S. government and any State government or instrumentality thereof.

6

7

(*See* Ex. 1 ¶ 40.)  The term "Settlement Class Member" means a person or entity who falls within the above settlement class definition who does not opt out of the class.

8

**B.**     **Settlement Benefits:**

9

10

11

12

The Settlement Agreement calls for Verizon to provide substantial monetary relief  to the class:  complete refunds of all unauthorized charges for those filing Full Payment Claims as well as Flat Payments of $40 for those who do not want to make the (simple) effort to file a Full Payment Claim.  It also calls for unprecedented injunctive relief, as follows:

13

**1.**     **Retrospective/Monetary Relief:**

14

15

16

17

18

19

20

21

22

23

24

The settlement in this case will allow class members to recover **100%** of all their unauthorized charges.   We are aware of no prior resolution of a cramming case that has resulted in such a benefit.   There is no limit, or cap, on class members' recovery, either individually or in the aggregate.  Settlement Class Members who file timely and valid claim forms will have the option of receiving a cash payment of either (a) $40 ("Flat Claim"), <u>or</u> (b) the <u>full</u> amount paid for unauthorized third-party charges incurred during the class period ("Full Claim"), i.e., **100%** of the claimed amount of unauthorized charges paid.  (*See* Ex. 1 ¶¶ 23 and 25.)  With respect to Settlement Class Members who are current Verizon customers, Verizon has the option to provide a credit in lieu of a cash payment.[3]  (*See* Ex. 1 § I.E.)  For Settlement Class Members who choose to file a Full Payment Claim, Verizon will, upon customer request, provide – free of charge -- a summary of all third-party charges billed during the class period.  (*See* Ex. 1 § I.B.)  The summary

25

26

27

[3] To the extent Settlement Class Member claims are paid by check, any checks that are uncashed after 90 days shall be paid *cy pres* to a charity or charities of the Parties' selection, subject to Court approval.  (*See* Ex. 1 § I.F.)

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO.  CV 09-1823 SBA

of all Third-Party Charges, provided in a consumer-friendly manner and for free, is a significant benefit to the Class in itself because most customers don't know if they have been billed for such charges and most will not have their old bills going back to 2005.  If the Court preliminarily approves the Settlement, notice will be disseminated through multiple means, pursuant to the proposed notice plan described below, and Class Members will have 150 days after the Notice Completion Date to submit claims for payment.  The claim form will be substantially in the form attached as Exhibit H to the Settlement.   (*See* Ex. 1, Ex. H)  Claims may be submitted by mail or online.  (*See* Ex. 1 § I.C.)

The claim form will require the Settlement Class Member to state under penalty of perjury that, to the best of their knowledge and belief, that:

> (i) he or she paid third-party charges, and for Settlement Class Members filing a Full Claim, he or she paid third-party charges in the claimed amount;

> (ii) he or she did not knowingly authorize the third-party charges, and for Settlement Class Members filing a Full Claim, he or she did not knowingly authorize the claimed third-party charges;

> (iii) he or she did not receive a refund of all third-party charges paid, and for Settlement Class Members filing a Full Claim, he or she did not receive a refund of the claimed third-party charges;

> (iv) he or she did not intentionally use the service associated with any third-party charge, and for Settlement Class Members filing a Full Claim, he or she did not intentionally use the service associated with the claimed third-party charges; and

> (v) he or she did not release claims related to these third-party charges in any prior litigation.  (See Ex. 1 , Exhibit H.)

To protect against abuse of the claims process, claims may be challenged by Verizon, aggregators and/or service providers, if accompanied by a statement verifying under penalty of perjury that, after good faith investigation, to the best of the challenger's knowledge and belief, the records, documents, or other evidence submitted in support of the challenge are accurate, legitimate and bona fide.   Flat Claims may be challenged by presenting: (i) records showing that the Class Member did not pay third-party charges; (ii) records showing that the Class Member

- 8 -

previously received a refund of all third-party charges; (iii) records showing that all claims related to third-party charges were released by the Class Member in prior litigation; or (iv) records showing that the Class Member used the product or service associated with the claimed charges. Full Claims may be challenged by presenting: (i) records showing that the Class Member did not pay the claimed charges; (ii) records showing that the Class Member received a refund of the claimed charges, (iii) records showing that claims related to the specified third-party charges were released by the Class Member in prior litigation; (iv) records showing that the Class Member used the product or service associated with the claimed charges; (v) a Letter Of Authorization or Third Party Verification recording authorizing the claimed charges; or (vi) other evidence showing that the claimed charges were authorized or that Class Member ratified them.

Class Members may rebut challenges with evidence and/or further sworn testimony relating to the basis of any challenge, including by showing that the third-party charges at issue were not knowingly authorized and, if challenged on the basis of usage, that such usage was not intentional. (See Ex. 1, § III.D.)   Class counsel gets copies of objections and rebuttal documents and may participate in the objection process.  (*Id.,* § III.D.3 and 4.)   Challenged claims will be resolved by the Settlement Administrator on a final and non-appealable basis, and resolution of a claim shall preclude any later claim by the Class Member, Verizon, aggregators or service providers with regard to the claimed charges.  (*Id.* III.D.5.)

## 2.     Prospective/Injunctive Relief*:*

We have previously described the first three principal items of injunctive relief having to do with the election to be made at the time of opening of an account whether to allow third-party billing, the comprehensive educational campaign to inform current customers about the availability of bill blocking and that it is free, and the requirement that the Aggregators (or a third party retained by them, but <u>not</u> the third-party providers) must send a separate letter to phone customers to tell them anytime a new third-party charge is proposed to be added to their bill. The confirmation letter will have prominent language on the outside of the envelope stating

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO.  CV 09-1823 SBA

1  "CONTAINS IMPORTANT INFORMATION ABOUT NEW CHARGES ON YOUR VERIZON

2  BILL."

3          But those are by no means the only items of injunctive relief provided by this settlement.

4  Below are additional components of injunctive relief called for by this settlement.

5          a.  _Reduced Complaint Thresholds_:

6          As a result of this settlement, Verizon will apply an aggregator-level complaint threshold

7  of 0.5% within 6 months after the settlement becomes final, reducing to 0.25% within one year

8  after the settlement becomes final.  Each aggregator must keep total complaints below those

9  thresholds or be suspended if it fails to bring complaints within the acceptable range within 90

10 days.  Verizon will apply the same lower thresholds to service providers.  Verizon will require

11 aggregators to apply thresholds to complaints about service providers that come directly to it that

12 are no higher than those set forth above.  (Exhibit 1, § II.A.2)

13         b.  _Increased Penalties For Cramming Complaints_:

14         Any cramming complaint received by Verizon from a customer will result in a $150

15 chargeback to the aggregator per complaint, or $300 for a complaint made to a government entity,

16 in addition to the $15 charge Verizon applied in the past.  (_Id._)

17         c.  _Improved Employee Training Regarding Cramming_:

18         Verizon will improve adherence to its First Call Resolution policy (which shall continue

19 notwithstanding the settlement and continue to allow customers who have been billed for third-

20 party charges they claim were unauthorized to obtain relief without engaging in the settlement

21 procedures outlined herein) through enhanced training of customer service representatives and

22 supervisors regarding the policy, including by providing quarterly reinforcement of the policy.

23 Verizon will modify its job aids to (i) improve its ability to identify unauthorized TPCs (i.e., in

24 response to customer inquiries regarding TPCs, customer service representatives will ask if TPCs

25 were authorized and only refer customers to a third-party if the answer is not no, including where

26 customers say the TPC was not authorized because they did not understand that they were

27 authorizing the charges in question); (ii) provide a full refund of all past charges for TPCs that a

28                                              - 10 -

1  customer claims are unauthorized, or escalate the customer to a supervisor who can provide such a

2  refund; and (iii) determine if the customer is being billed for *other* TPCs, and if so, notify the

3  customer, ask if they are authorized, and if not, provide refunds as set forth above. (Exhibit 1, §

4  II.A.3.)

      d.  *Special Notice To Other Landline Carriers And Government Entities Of*

5              *Rejection Of Service Providers' Application For Billing Service or Termination*

6              *of Billing Services or Suspension of Aggregators*:

7        Verizon will cause aggregators to provide notice to Verizon, AT&T, and Qwest (now

8  Century Link), and to relevant government entities to be identified within 30 days of an

9  aggregator's rejection of a provider's application for billing services or termination of billing

10  services for a provider for any reason.  Such notice must specify the reasons for the aggregator's

11  action.  If Verizon suspends an aggregator, Verizon will notify relevant government entities,

12  AT&T and Qwest within 30 days and provide the reasons for such suspension.  (Exhibit 1, §

13  II.A.4.)

14        e.  *Third Party Charge Authorization Confirmation Process*:

15        Verizon will cause aggregators to require that service providers have in place an order

16  confirmation process that verifies any individual order placed via (i) personal information obtained

17  from a customer (e.g. date of birth, social security number or like information) that must be

18  verified by the aggregator or an independent third-party and (ii) a confirming opt-in

19  communication with customers that they understand an order was placed with the service provider.

20  (Exhibit 1, § II.A.5.)

21        f.  *Notice Regarding Terminated Service Providers or Sub-CICs*:

22        Verizon will cause aggregators to notify Verizon customers of a sub-CIC that is terminated

23  by Verizon or the aggregator who have been billed by the sub-CIC in the most recent month prior

24  to termination.  Exhibit 1, § II.A.8.

25        g.  *Regular Independent Audits*:

26        Verizon will cause aggregators to conduct a regular independent audit, at least annually, of

27  aggregator and provider compliance with Verizon and aggregator policies and requirements,

28

1   including by non-limiting example policies regarding provider qualifications, marketing practices,

2   customer authorization and complaint tracking/suspension/reporting.  In addition, Verizon will

3   require aggregators to maintain an on-going internal audit function to ensure compliance with all

4   required policies, including by non-limiting example the notice policies agreed to herein, and that

5   audit function itself will be subject to the regular independent auditing process.  Any substantial

6   failure to comply with the required policies will result in termination of the aggregator by Verizon.

7   (Exhibit 1, § II.A.6.)

8                   h.  *Reduced Cramming Adjustment Thresholds*

9           In its contracts with Aggregators, Verizon will lower the cramming adjustment threshold

10   for Third Party Charges at which Verizon has the right to terminate billing by a Third-Party

11   Service Provider from 15% to 5%.   (Exhibit 1, § II.A.2.)

12           **C.**     **Additional Relief**:  In addition to the Settlement Benefits described above, Verizon

13   has agreed to provide the following additional relief that will be paid by Verizon in addition to the

14   benefits provided to the members of the Settlement Class and will not reduce the benefits available

15   to the Settlement Class Members:

16                   **1.**     ***Payment of Notice Costs and Settlement Administrative Fees***:

17           Defendant will pay the full cost of sending the Settlement Class notice, including bill

18   stuffer notice, online bill notice, postcard notice, newspaper publication notice, email notice,

19   internet notice via a settlement website supported by Google Adwords and link on Verizon's

20   website page concerning cramming issues and CAFA notice to federal and state officials and any

21   other notice as required by the Court as well as all costs of administration of the settlement,

22   including fees and expenses of the Settlement Administrator.   (*See* Ex. 1, § III.A.9.)

23                   **2.**     ***Compensation for the Class Representatives***:

24           In addition to any award under the settlement, and in recognition of their efforts on behalf

25   of the class, and subject to the approval of the Court, Verizon will not oppose an application to the

26   Court, and has agreed to pay in addition to all other payments, an incentive award of $5,000 to

27

28                                                   - 12 -

1   each of the class representatives as appropriate compensation for their time and effort serving as

2   the class representatives in this litigation. (*See* Ex. 1, § V.C.)

3        **3.**     ***Payment of Attorneys' Fees and Expenses*:**

4        In addition to all the other payments, Verizon has agreed to pay such attorneys' fees and

5   expenses as the Court shall award up to $7,500,000. (*See* Ex. 1, § V.A.) This is the amount

6   recommended by the Mediator, Judge Daniel Weinstein (ret.).  (See, Weinstein Decl. ¶ 18).

7        Verizon's payment of the foregoing items will not reduce class members' recovery.

8   Those filing approved Flat Payment Claims will be paid $40 each, and those filing approved Full

9   Payment Claims will be paid 100% of their unauthorized charges.

10        **D.**     <u>**Release**</u>

11        Upon the entry of a final order approving this settlement and the time for appeal has

12   expired or such appeal has been decided, Settlement Class Members will release all claims against

13   Verizon entities, billing aggregators, and sub-CICs related to the Third Party Charges (TPCs)

14   billed by Verizon through Billing Concepts Inc., The Billing Resource, ILD, Transaction Clearing,

15   and/or Payment One.  Verizon will include provisions in its contracts with aggregators that

16   prohibit aggregators and sub-CICs from seeking to collect directly from Settlement Class

17   Members charges for which claims have been released as a result of this settlement.   If Verizon or

18   its assignee take actions to collect a TPC from a Settlement Class Member, the Settlement Class

19   Member may assert as a defense, on an individual basis only, that the TPC was not authorized.

20   The Settlement Agreement is explicit that the scope of released claims shall be no broader as to

21   time or charges than the Settlement Class.  (See, Exhibit 1, ¶ 36 and §IV.)

22   **III.**     **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

23        Prior to granting preliminary approval of a settlement, the Court should determine that the

24   proposed settlement class is a proper class for settlement purposes.  Manual for Complex

25   Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

26   The Court may certify a class when the plaintiff demonstrates that the proposed class and

27   proposed class representatives meet the following prerequisites of Rule 23(a): numerosity,

28        - 13 -

commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1-4).  After meeting the strictures of Rule 23(a), a plaintiff seeking damages must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  As such, the Court accepts the allegations of the plaintiff's complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis.  *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

### A.      The Requirement of Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical.  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement there is no "specific" number required, nor are the plaintiffs required to state the "exact" number of potential class members.  *Celano*, 242 F.R.D. at 548.  Generally, the numerosity requirement is satisfied when the class comprises 40 or more members.  *See id.* at 549.  In this case, the class consists of millions of Verizon landline customers nationwide, easily enough to satisfy the numerosity requirement.  Accordingly, the proposed class is so numerous that joinder of their claims is impracticable.

### B.      The Requirement of Commonality is Satisfied

The second threshold to certification requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality focuses on the relationship of common facts and legal issues among class members.  *See, e.g.*, 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:10 at 271 (4th ed.2002).  Rule 23(a)(2) has been construed permissively and does not require that all questions of fact or law be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998).  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

- 14 -

1  within the class.  *Id.*  The commonality test is qualitative rather than quantitative -- one significant

2  issue common to the class may be sufficient to warrant certification.  *See, Dalton v. Lee*

3  *Publications, Inc., 270* F.R.D. 555, 559 (S.D. Cal. 2010*), leave to appeal denied*, 625 F.3d 1220

4  (9th Cir. 2010), *citing Hanlon*., 150 F.3d at 1019; *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct.2541

5  (2011).  Here, all class members share a claim that arose out of the same activity of Defendants, is

6  based on the same legal theory, and implicate the following common questions of fact or law,

7  among others:

8    • Whether Verizon's local exchange carrier ("LEC") third-party billing and

9      collection system lacked sufficient checks or safeguards to prevent the billing

10      and collection of unauthorized third party charges and whether Verizon was

11      aware of it;

12    • Whether Verizon billed and collected third-party charges, without taking

13      sufficient steps to ensure that such charges were in fact authorized by the

14      person legally empowered to authorize charges billed to that number;

15    • Whether the telephone bills Verizon sent to customers were misleading and

16      deceptive with respect to billing for third party charges;

17    • Whether Verizon's conduct constitutes a violation of the Racketeer Influenced

18      Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968;

19    • Whether Verizon's conduct constitutes a conspiracy to violate RICO;

20    • Whether Verizon's conduct constitutes a violation of California Public

21      Utilities Code § 2890;

22    • Whether Verizon's conduct constitutes a violation of California Business &

23      Professions Code § 17200;

24    • Whether Verizon LECs breached their contract with their customers;

25    • Whether Verizon defendants other than Verizon LECs tortiously interfered

26      with the Verizon LECs' contracts with their customers; and

27

28
- 15 -

1     • Whether Verizon is estopped to assert certain defenses against Plaintiffs and

2        the proposed class;

3   In addition, common questions for the settlement include whether the settlement is fair and what is

4   the proper form of notice.  The commonality requirement is amply met.

5        **C.      The Requirement of Typicality is Satisfied**

6        Rule 23 next requires that Plaintiffs' claims be typical of those of the class.  Fed. R. Civ. P.

7   23(a)(3).  Typicality focuses on the relationship of facts and issues between the class and its

8   representatives.   Under the rule's permissive standards, representative claims are "typical" if they

9   are reasonably coextensive with those of absent class members, they need not be substantially

10  identical.  In this case, the claims of Plaintiffs are typical of the claims of the class.  The claims of

11  the Plaintiffs and the class are based on the same legal theories and arise from the same conduct,

12  resulting in the same injury to the Plaintiffs and the respective class.

13       Plaintiffs and the proposed class members all were current and former Verizon landline

14  customers who were billed for third-party charges submitted to Verizon for billing by billing

15  aggregators using Verizon's standardized third party LEC billing system.  Their claims are all

16  based on Verizon's common, uniform, nationwide billing system, which subjected them to being

17  billed for unauthorized third party charges.  Plaintiffs and the proposed class have alleged that this

18  conduct violates the same federal and state laws and statutes, which laws would provide the same

19  type of monetary and injunctive relief to all members of the class.  As such, Plaintiffs' claims are

20  typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

21       **D.      The Requirement of Adequate Representation is Satisfied**

22       The final Rule 23(a) prerequisite requires that the proposed class representatives have and

23  will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

24  "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of

25  interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent

26  counsel."  *Hanlon, supra.,* 150 F.3d at 1020.

27

28                                                    - 16 -

1    In this case, Plaintiffs will fairly and adequately represent the Class.  Plaintiffs do not have

2    conflicts of interest with the proposed class.  Plaintiffs have the same interests as the proposed

3    class members; both were current customers when the case began (one is now a former customer)

4    and both were billed for the Third-Party Charges that are the subject of this suit.  As such,

5    Plaintiffs' interests are not antagonistic, but rather are fully congruent with the interests of other

6    class members, and their pursuit of this matter has demonstrated that they will continue to be

7    zealous advocates for the class.  Plaintiffs are familiar with the case, have consulted with their

8    attorneys, have searched for, and provided documents to their attorneys, reviewed and approved

9    the complaints and all of the important court filings and the long and extensive history of the

10   settlement negotiations.  (Schachman Decl. ¶¶ 14-19.)

11   Plaintiffs have also retained counsel with substantial experience in prosecuting complex

12   litigation and class actions who will vigorously represent the class.  *See*, Group Ex. 3 hereto,

13   (attaching firm resumes of the four firms representing Plaintiffs).  Accordingly, both Plaintiffs and

14   their counsel will adequately represent the class.

15   **E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

16   Once the subsection (a) prerequisites are satisfied, Federal Rule of Civil Procedure

17   23(b)(3) provides that a class action can be maintained where the questions of law and fact

18   common to members of the class predominate over any questions affecting only individuals, and

19   the class action mechanism is superior to the other available methods for the fair and efficient

20   adjudication of the controversy.  Fed. R. Civ. P 23(b)(3); *Pierce v. County of Orange*, 519 F.3d

21   985, 991 n. 5 (9th Cir. 2008).

22   In this case and in the context of the proposed settlement, common issues of fact and law

23   predominate.  The common questions set forth above are central to the litigation.  Plaintiffs' and

24   the class members' claims all arise from Verizon's uniform third-party LEC billing and collection

25   system, which subjected them to being billed for unauthorized third party charges.  Whether

26   Verizon engaged in such conduct, including its billing and collection of unauthorized third party

27   charges, whether such conduct constitutes a violation of the state and federal laws set forth above;

28                                          - 17 -

1   and whether the class members are entitled to monetary or injunctive relief as a result of this

2   conduct are the primary focus and central issues of this class action and thus predominate over any

3   individual issues that may exist.

4          In addition, the instant class action is superior to any other method available to fairly,

5   adequately, and efficiently resolve the class members' claims.  In this case, absent a class action,

6   most members of the class would find the cost of litigating their claims -- each of which is small

7   on an individual basis and typically between several dollars to several hundred or thousands of

8   dollars -- to be prohibitive and therefore will have no effective remedy.  Many of the proposed

9   class members do not even know that their rights have been violated since the vast majority of

10  people receiving third-party billing do not know that third-party charges are included in their bills.

11  Moreover, a class action in this case would serve the economies of time, effort, and expense as

12  well as prevent inconsistent results.  Resolving claims on an individual basis, on the other hand,

13  would waste judicial resources, while addressing the common issues in a single proceeding would

14  aid judicial efficiency and administration.

15         Also, because the issue is whether to approve the settlement, the Court need not consider

16  issues of manageability relating to trial.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620

17  (1997) (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a

18  district court need not inquire whether the case, if tried, would present intractable management

19  problems, for the proposal is that there be no trial").  Accordingly, common questions predominate

20  and a class action is the superior method of adjudicating this controversy. [4]

21  **IV.     THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS**
22  **        COUNSEL**

23         Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must

24  fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making

25  _____

26  [4]   Verizon has stipulated to the certification of the proposed settlement class, but has reserved its
27  right to oppose class certification should the Settlement Agreement not become effective.  *See*,
    Settlement Agreement, Ex.1, § VII.C.5.)

28                                                          - 18 -

1    this determination, the Court must consider counsel's: (1) work in identifying or investigating

2    potential claims; (2) experience in handling class actions or other complex litigation, and the types

3    of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to

4    representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

5           As discussed above, proposed class counsel have extensive experience in prosecuting class

6    actions and other complex litigation, and have established seminal precedent in this particular area

7    of the law.  *See Moore v. Verizon Communications Inc*., C 09-1823 SBA, 2010 WL 3619877

8    (N.D. Cal. Sept. 10, 2010) (*See* Dkt. No. 60); *Nwabueze v. AT&T Inc*., C 09-1529 SI, 2011 WL

9    332473 (N.D. Cal. Jan. 29, 2011); (*see also* Group Exhibit 3, resumes of Class Counsel.)  Further,

10   proposed class counsel have diligently investigated and prosecuted this matter, dedicating

11   substantial resources to the investigation of the claims at issue in the action, and have successfully

12   negotiated the settlement of this matter to the benefit of the Settlement Class.  Accordingly, the

13   Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant

14   to Rule 23(g) and appoint John G. Jacobs and David Schachman as Lead Class Counsel and

15   appoint John G. Jacobs, Bryan G. Kolton, David Schachman, Jeffrey F. Keller and Jahan C. Sagafi

16   as Class Counsel.   (See, Exhibit 1, ¶¶ 10, 27.)

17   **V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

18          After certifying the settlement class, the Court should preliminarily approve the settlement.

19   The procedure for review of a proposed class action settlement is a well-established two-step

20   process.  Fed. R. Civ. P. 23(e); *see also* Alba Conte & Herbert Newberg, 4 *Newberg on Class*

21   *Actions*, §11.25, at 38-39 (4th Ed. 2002).  The first step is a preliminary, pre-notification hearing

22   to determine whether the proposed settlement is "within the range of possible approval."

23   *Newberg*, §11.25, at 38-39 (quoting Manual for Complex Litigation §30.41 (3rd ed. 1995)); *In re*

24   *Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008).  This hearing is not a fairness hearing;

25   its purpose, rather, is to ascertain whether there is any reason to notify the class members of the

26   proposed settlement and to proceed with a fairness hearing.  *In re Syncor ERISA Litig*., 516 F.3d at

27   1110.  Notice of a settlement should be sent where "the proposed settlement appears to be the

28                                                    - 19 -

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation § 21.632 (4th ed. 2004).  If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing.  *Newberg*, §11.25, at 38-39.  The standard of scrutiny for preliminary approval is more relaxed than for final approval.  *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation.  *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).  While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable.  *See 4 Newberg § 11.41; Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

In this case, there is no question but that the proposed settlement is, at a minimum, "within the range of possible approval."  Only after extensive investigation, targeted discovery, exchange of information and documents and extended arms' length negotiations, conducted with the assistance and under the supervision of the Honorable Daniel H. Weinstein (ret.), were the parties able to reach the instant settlement agreement.  The fairness, reasonableness, and adequacy of this settlement are apparent from the substantial and immediate monetary benefits and injunctive relief benefits conferred upon the Settlement Class.  Although Plaintiffs' counsel believe that plaintiffs'

- 20 -

claims are meritorious and should prevail, it would blink reality to not recognize that there is great risk to continued litigation.  When the strengths of the Plaintiffs' claim are weighed against the legal and factual obstacles combined with the complexity of class action practice, it is apparent that the proposed settlement is clearly in the best interest of settlement class members as it provides substantial relief and recovery now.  (Jacobs Decl. ¶¶3, 8; Weinstein Dec. ¶¶ 21-22.)

The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate also weighs heavily in favor of the Court approving the Settlement.  *See Linney v. Cellular Alaska Partnership,* 1997 WL 450064, at 5 (N.D. Cal. Jul. 18 1997); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").   The declarations in Group Exhibit E hereto contain the unequivocal recommendation of experienced and highly qualified counsel that this settlement be approved.  Likewise, the Declaration of Judge Weinstein (Exhibit 2 hereto) sets forth his analysis of the settlement and how it was reached.

It is to be noted that only after the relief to the class was agreed upon did the parties discuss, and then reach an agreement on, the amount of attorneys' fees to be paid by Defendants, lending further credence to the arms' length nature of the negotiations.  (See, Weinstein Decl.¶ 18, Jacobs Declaration ¶ 6.)

As this settlement easily falls well "within the range of possible approval," it should be preliminarily approved.

## VI.  THE PROPOSED PLAN OF CLASS NOTICE

When certification of a settlement class is sought under Rule 23 (b)(3), the substance of the notice to the settlement class must describe in plain language, the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue.  Furthermore, the notice must explain that settlement class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement Class, the time and manner for requesting exclusion and that the effect of a class judgment shall be binding on all

- 21 -

1   class members.  *See* Fed. R. Civ. P. 23 (c)(2)(B).   In the context of a class settlement, the notice

2   must also include a general description of the proposed settlement. *See Churchill Village*, 361 F.3d

3   at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  In addition to the

4   substance of the notice, the manner of issuing notice must also satisfy Rule 23 and Due Process,

5   which require that the Court direct the Parties to give "the best notice practicable under the

6   circumstances, including individual notice to all members who can be identified through

7   reasonable effort." Fed. R. Civ. P. 23(b)(3); *Eisen*, 417 U.S. at 177.

8        The proposed class notice in this case satisfies – and greatly exceeds – the requirements of

9   Rule 23 and Due Process.  The proposed forms of class notice apprise the settlement class of the

10  pendency of this action, the key terms of the Settlement, Class Counsel's attorneys' fee

11  application, and the right to opt-out of the Settlement Class and object to the Settlement and/or to

12  Class Counsel's attorneys' fee application.  (See Exhibit 1, § III.)  As set forth below, the notice

13  program, which will be administered by the Parties and an independent Settlement Administrator,

14  is comprehensive, and consists of a multi-part notice plan designed to reach as many potential

15  settlement class members as possible through reasonable effort.

16             **A.  Direct Mail Notice To Current Verizon Customers (Bill Stuffer Notice):**

17       Verizon will give all class members who are current Verizon customers and receive paper

18  bills a notice of the proposed settlement by first class direct mail by including a notice of the

19  proposed settlement in bills for current customers who have been billed for third-party charges

20  during the class period.  The bill stuffers will be on paper of a color different from any other pages

21  in the envelope and will be included in <u>two</u> consecutive bills with envelopes that prominently

22  state: **"You may be entitled to refunds of third-party charges.  See enclosed [color] notice,"** or

23  other language to be agreed upon.  (See, Exhibit 1, § III.A.3.a.)

24       Customers who received their bills online as opposed to by regular mail (so-called e-

25  billers), will sent the Email Notice that is Exhibit D to the Settlement Agreement multiple times,

26  and in the event that the email notices are for some reason returned undelivered, they will be sent

27  the Postcard Notice that is Exhibit F to the Settlement Agreement. (See, Exhibit 1, § III.A.3.b.)

28                                          - 22 -

**B.  Direct Mail Notice to Former Verizon Customers (Postcard Notice):**

The Settlement Administrator shall cause postcard notice to be sent to the last known address Verizon has in its records for Settlement Class Members who are no longer Verizon customers as of the date of preliminary approval of the settlement.  (*See* Ex. 1 § III.A.3.c.)

**C.  Email Notice (Direct Email Notice):**

The Settlement Administrator shall cause email notice that is Exhibit D to the Settlement to be sent to the email addresses of <u>all</u> Settlement Class Members (current and former) for whom Verizon has email addresses.   (*See* Ex. 1 §III.A.3.4)

**D.  Class Action Settlement Website (Internet Notice):**

Internet notice will be given through a class action settlement website established and maintained by the Settlement Administrator and supported by Google Adwords.  The class action settlement website will provide links to the settlement, the claim form, and relevant Court documents, and provide for the online submission of claims.  (*See* Ex. 1 § III.A.3.6.a.)

**E.  Verizon Cramming Webpage Hyperlink (Internet Notice):**

Verizon will provide a conspicuous notice on a page of its website dealing with cramming-related issues announcing the settlement of the class action lawsuit and provide a link to the class action settlement website.  (*See* Ex. 1 § III.A.3.6.b.)

**F.   Newspaper Notice (Publication Notice):**

The Settlement Administrator will cause the publication notice that is Exhibit G to the Settlement Agreement to be given by <u>two</u> 1/4 pages ads in the USA Today, at least a week apart.  (*See* Ex. 1 § III.A.3.5.)

**G.  CAFA Notice to Government Officials:**

Verizon will provide notice under CAFA to appropriate federal and state officials specified in 28 U.S.C. § 1715, not later than 10 days after the Settlement is filed. (*See* Ex. 1, § VI.B.)

\* \* \*

The proposed class action notice plan is robust and comports with Rule 23 and the requirements of Due Process and should be approved by this Court as the best notice practicable.

- 23 -

1

## VII.    PROPOSED SCHEDULE

2          The Parties propose the following schedule leading to a final approval hearing.  As of the

3   date of this motion, the Customer List Search Methodology has been confirmed.  (Settlement

4   Agreement § III.A.1.)   For purposes of the following schedule it is assumed that the Preliminary

5   Approval Order is entered by February 28, 2012.

6

| | |
|---|---|
| CAFA notice to be sent to appropriate federal and state officials | No later than 10 days after the proposed settlement is filed with the Court i.e. by February 13, 2012. |
| Internet notice will begin through a class action settlement website established and maintained by the Settlement Administrator and supported by Google Adwords. Website remains up at least until fourteen days after all settlement payments are made. | No later than 10 days after Court enters Preliminary Approval Order ("PAO"): March 9, 2012. |
| Verizon posts on the cramming page of its website a link to the official class action website maintained by the Settlement Administrator.  This remains up at least until 14 days after all settlement payments are made. | No later than 10 days after Court enters Preliminary Approval Order ("PAO"): March 9, 2012. |
| Verizon mails 1st bill stuffer notice to Class Members who are current Verizon customers and provides comparable notice to Class Members who receive online bills | No later than within 10 days of the creation of the Notice Lists (which is to be done within seventy days of confirmation of the Customer List  Search Methodology) : April 19, 2012 |
| Verizon mails 2nd bill stuffer notice to Class Members who are current Verizon customers and provides comparable notice to Class Members who receive online bills | By May 19, 2012 |
| Settlement Administrator mails postcard notice to Class Members who are no longer Verizon customers | No later than within 10 days of the creation of the Notice Lists:  April  19, 2012 |
| During 60 day period, Verizon sends email notice twice to the last known email address of all Class Members for whom Verizon has email addresses | April 19- June 19, 2012 |
| Settlement Administrator issues publication notice via two ¼ page ads in USA Today | Within 60 days of creation of the Notice Lists, no later than June 9, 2012 |

- 24 -

| Notice Completion Date | June 25, 2012 |
|---|---|
| Deadline for Opt-outs/Objections: | 45 days after the Notice Completion Date: August 9, 2012 |
| Plaintiffs file Petition for Fees and Expenses and Class Representative Incentive Awards. | No later than date bill stuffers first go out, i.e., by April 19, 2012 |
| Final Settlement Hearing | No less than 75 days after Notice Completion Date (at the Court's convenience)<br><br>Circa September 25, 2012 |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement agreement, approve the form and manner of notice described above, certify the proposed Settlement Class, name Plaintiffs and their counsel, respectively, as Representative Plaintiffs and Class Counsel for the Settlement Class, and enter the proposed Preliminary Approval Order separately submitted herewith (a copy of which is Exhibit A to the Settlement Agreement), and grant such further relief the Court deems reasonable and just.

Dated: February 1, 2012

Respectfully Submitted,

DESIREE MOORE and KAREN JONES, individually and on behalf of a class of similarly situated individuals,

By: _/s/ John G. Jacobs_____

John G. Jacobs (*Pro Hac Vice*)
Bryan G. Kolton (*Pro Hac Vice*)
**JACOBS KOLTON, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850
jgjacobs@jacobskolton.com
bgkolton@jacobskolton.com

David Schachman (*Pro Hac Vice*)
**DAVID SCHACHMAN & ASSOCIATES, P.C.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-9500

- 25 -

Facsimile: (312) 427-1850
ds@schachmanlaw.com

Jeffrey F. Keller (SBN 148005)
**KELLER GROVER, LLP**
1965 Market Street
San Francisco, California  94103
Telephone:  (415) 543-1305
Facsimile: (415) 543-7861
jfkeller@kellergrover.com

Michael W. Sobol (SBN 194857)
Jahan C. Sagafi (SBN 224887)
Eduardo E. Santacana (SBN 281668)
**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
msobol@lchb.com
jsagafi@lchb.com
eesantacana@lchb.com

*Attorneys for Plaintiffs and the Proposed Class*

- 26 -

1

## **CERTIFICATE OF SERVICE**

2      I, John G. Jacobs, an attorney, certify that on February 1, 2012, I served the above and

3 foregoing ***Plaintiffs' Notice Of Motion And Motion For Preliminary Approval Of Class Action***

4 ***Settlement; Memorandum Of Points And Authorities In Support Thereof*** by causing true and

5 accurate copies of such paper to be filed and transmitted to the persons registered to receive such

6 notice via the Court's CM/ECF electronic filing system.

7                          /s/  John G. Jacobs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO.  CV 09-1823 SBA