1  Jeffrey F. Keller (SBN 148005)
   **KELLER GROVER, LLP**
2  1965 Market Street
   San Francisco, California  94103
3  Telephone:  (415) 543-1305
   Facsimile:  (415) 543-7861
4  E-mail:  jfkeller@kellergrover.com

5  John G. Jacobs (admitted *pro hac vice*)
   Bryan G. Kolton (admitted *pro hac vice*)
6  **JACOBS KOLTON, CHTD.**
   55 West Monroe Street, Suite 2970
7  Chicago, Illinois 60603
   Telephone: (312) 427-4000
8  Facsimile:  (312) 268-2425
   E-mail:  jgjacobs@jacobskolton.com
9  E-mail:  bgkolton@jacobskolton.com

10 *Attorneys for Plaintiffs and the Settlement Class*

11 [*Additional Counsel on Signature Page*]

12                  **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
13

14

15 DESIREE MOORE and KAREN JONES            Case No.  4:09-cv-01823-SBA
   individually and on behalf of a class of similarly
16 situated individuals,                      **NOTICE OF MOTION AND**
                                            **MOTION FOR FINAL APPROVAL**
                     Plaintiffs,            **OF CLASS ACTION**
17                                          **SETTLEMENT AND**
          vs.                               **MEMORANDUM OF POINTS AND**
18                                          **AUTHORITIES IN SUPPORT**
   VERIZON COMMUNICATIONS INC., VERIZON
19 CALIFORNIA, INC., VERIZON CORPORATE       Date:       July 9, 2013
   SERVICES GROUP INC., VERIZON SERVICES     Time:       1:00 p.m.
20 CORP., TELESECTOR RESOURCES GROUP,        Courtroom:  1
   INC. d/b/a VERIZON SERVICES GROUP,
21 VERIZON SERVICES OPERATIONS INC.,
   VERIZON SERVICES ORGANIZATION, INC.,
22 VERIZON CORPORATE SERVICES CORP.,
   VERIZON DATA SERVICES, INC., and DOES 1   The Honorable Saundra B. Armstrong
23 through 25

24                   Defendants.

25

26

27

28

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on July 9, 2013, at 1:00 p.m., in the Courtroom of the

3  Honorable Saundra B. Armstrong, United States District Judge for the Northern District of

4  California, Oakland Division, 1301 Clay Street, Oakland, California, Plaintiffs Desiree Moore

5  and Karen Jones ("Plaintiffs"), on behalf of themselves and all others similarly situated, will and

6  hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an

7  Order of Final Approval of a proposed Settlement Agreement and Release ("Settlement") entered

8  into between the parties and for other related relief.

9      By this motion, Plaintiffs respectfully move the Court for entry of the [Proposed] Agreed

10  Final Approval Order attached hereto, granting final approval of the proposed Settlement.

11  This motion is based on the accompanying memorandum, the Settlement and all exhibits thereto,

12  the separately-filed Declarations of Cameron Azari, Gary Zimmers, Eric Schaefer, Ricky Borges,

13  and Julie Redell, the attached Declaration of John G. Jacobs,  the argument of counsel, and all

14  papers and records on file in this matter.

15  
16  Dated: June 11, 2013                   Respectfully submitted,

17                                       */s/ John G. Jacobs*

18                                     John G. Jacobs (*pro hac vice*)

19                                   Bryan G. Kolton (*pro hac vice*)
                                 JACOBS KOLTON, CHTD.

20                                   55 West Monroe Street, Suite 2970
                                 Chicago, Illinois 60603

21                                   Telephone: (312) 427-4000
                                 Facsimile:  (312) 268-2425

22                                   E-mail:  jgjacobs@jacobskolton.com
                                 E-mail:  bgkolton@jacobskolton.com

23                                   David Schachman (*pro hac vice*)
                                 LAW OFFICES OF DAVID SCHACHMAN, P.C.

24                                   55 West Monroe Street, Suite 2970
                                 Chicago, Illinois 60603

25                                   Telephone:  (312) 427-9500
                                 Facsimile:  (312) 268-2425

26                                   ds@schachmanlaw.com

27  
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey F. Keller (State Bar No. 148005)
KELLER GROVER, LLP
1965 Market Street
San Francisco, CA 94103
Telephone:  (415) 543-1305
Facsimile:  (415) 543-7861
jfkeller@kellergrover.com

Michael W. Sobol (State Bar No. 194857)
Jahan C. Sagafi (State Bar No. 224887)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
msobol@lchb.com
jsagafi@lchb.com

*Class Counsel*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1

## TABLE OF CONTENTS

2

INTRODUCTION ........................................................................................................ 1

3

ARGUMENT ............................................................................................................... 5

4

I.      THE SETTLEMENT MERITS FINAL APPROVAL ................................... 5

5

6

     A.  The Settlement Is The Product Of Arms-Length Negotiation ......................... 7

7

     B.  The Immediate Relief Provided By The Settlement Is Particularly Impressive
        Given The Significant Class Certification, Liability, And Damages Hurdles

8

        Plaintiffs Faced In This Risky, Expensive and Complex Litigation, And Given
        The Possibility Of Delayed Recovery Or No Recovery At All ......................... 8

9

     C.  The Overwhelmingly Positive Reaction Of The Class Members Supports

10

        Approval ....................................................................................................... 10

11

     D.  The Recommendations Of Experienced, Well-Informed Counsel And A

12

        Nationally Respected Mediator Favor Approval ........................................... 11

13

II.     THE OBJECTIONS LACK MERIT ......................................................... 12

14

     A.  The Court-Approved Notice Plan Was The Best Notice Practicable ............. 14

15

     B.  The Claims Process Approved By This Court Used A Well-Accepted Claims

16

        Process And Entitled Class Members To Full Refunds Of All Unauthorized
        Charges ........................................................................................................ 20

17

     C.  The Unprecedented, Robust Injunctive Relief Also Supports A Finding That

18

        The Settlement As A Whole Is Fair, Reasonable, And Adequate ................... 23

19

     D.  The Remaining Objections Lack Merit Because They Fail To Address The

20

        Settlement, Or They Focus On Concerns Peculiar To The Objector And Not
        To The Class As A Whole .............................................................................. 25

21

     E.  Most Purported Objectors Lack Standing.  One Objection May Be

22

        Fraudulent.  At Least Two Are From Professional Objectors ...................... 29

23

        1. The Purported Pentz Objction ............................................................... 29

24

        2. The Purported Turkish Objection ........................................................... 31

25

     F.  Seventeen Of The Purported Objections Were Not Filed And Served In

26

        Compliance With The Court's Preliminary Approval Order ....................... 33

27

III.    DEVELOPMENTS SUBSEQUENT TO PRELIMINARY APPROVAL ONLY

28

        MAKE THE SETTLEMENT BETTER .................................................. 34

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL               CASE NO. 4:09-CV-01823-SBA
OF CLASS ACTION SETTLEMENT AND MEMORANDUM     i
OF POINTS AND AUTHORITIES IN SUPPORT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    **A. Verizon Has Ceased Billing For The Enhanced Services Involved In This Case** ........................................................................................... 35

    **B. Changes Made To The Settlement Agreement** ................................................... 35

**CONCLUSION** ..................................................................................................................... 36

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM          ii
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1

## TABLE OF AUTHORITIES

2

*Barnes v. Fleetboston Fin. Corp.*
   2006 WL 6916834 (D. Mass. Aug. 22, 2006)....................................................33, 30 n. 18

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D.Cal.1979) ............................................................................ 10, 11

*Browning v. Yahoo! Inc.*
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)...........................19, 25 n. 13, 27

*Byrd v. Civil Serv. Comm'n*
   459 U.S. 1217 (1983) ................................................................................................... 5

*Churchill Village, L.L.C. v. Gen. Electric*
   361 F.3d 566 (9th Cir. 2004)............................................................................ 5, 10, 16

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992)...................................................................................5, 7

*Curtis–Bauer v. Morgan Stanley & Co.*
   2008 WL 4667090 (N.D.Cal. Oct.22, 2008)................................................................ 7

*Dennis v. Kellogg Co.*
   697 F.3d 858 (9th Cir. 2012)......................................................................................28

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15 (N.D. Cal. 1980 ............................................................................... 7, 14

*Guschausky v. Am. Family Life Assur. Co.*
   2012 U.S. Dist. LEXIS 46480 (D. Mont. Apr. 2, 2012) ................................................20

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998).......................................................................6, 13, 18, n. 8

*Heekin v. Anthem, Inc.*
   2013 WL 752637 (S.D. Ind. Feb. 27, 2013) ........................................................32 n. 19

*In re "Agent Orange" Product Liability Lit.*
   818 F.2d 145 (2nd Cir. 1987)......................................................................................17

*In re AOL Time Warner ERISA Litigation*
   2007 WL 4225486 (S.D.N.Y. Nov. 28, 2007) ........................................................31 n. 17

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*
   2003 WL 22417252 (D. Me. Oct. 7, 2003 ........................................................................30

*In re Corrugated Container Antitrust Litigation*
   659 F.2d 1322 (5th Cir. 1981).......................................................................................13

*In re Initial Pub. Offering Sec. Litigation*
   728 F. Supp. 2d 289 (S.D.N.Y. 2010) ............................................................................31

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM                iii
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Lorazepam & Clorazepate Antitrust Litigation*
    2003 WL 22037741 (D.D.C. June 16, 2003) ...................................................................28

*In re Omnivision Technologies, Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 9, 11

*In re Pre-Filled Propane Tank Marketing & Sales Practice Litigation*
    2010 WL 924379 (W.D. Mo. March 11, 2010) ...............................................................28

*In re Qiao Xing Securities Litigation*
    2008 WL 872298 (S.D.N.Y. April 2, 2008) ...................................................................28

*In re Syncor ERISA Litigation*
    516 F.3d 1095 (9th Cir. 2008) ...........................................................................................13

*In re TD Ameritrade Account Holder Litigation*
    2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........................................... 6, 25 n. 13, 34

*In re TFT-LCD (Flat Panel) Antitrust Litigation*
    2013 WL 257125 (N.D. Cal. Jan. 23, 2013) ...................................   31 n. 18, 32 n. 19, 33

*In re Terazosin Hydrochloride Antitrust Litigation*
    2002 WL 31761433 (S.D. Fla. Mar. 13, 2002) ...............................................................28

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*
    2012 WL 3984542 (D. Minn. Sept. 11, 2012) ...............................................................32

*In re Wal-Mart Wage & Hour Employment Practices Litigation*
    2010 WL 786513 (D. Nev. Mar. 8, 2010) ........................................................... 31 n. 18

*Lane v. Facebook, Inc.*
    696 F.3d 811 (9th Cir. 2012) ...........................................................................................16

*Linney v. Cellular Alaska Partnership*
    1997 WL 450064 (N.D. Cal. Jul. 18 1997) ...................................................................11

*Maher v. Zapata Corp.*
    714 F.2d 436 (5th Cir. 1983) ...........................................................................................17

*Mangone v. First USA Bank*
    206 F.R.D. 222 (S.D. Ill. 2001) ............................................................ 9, 21 n. 10, 26

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977) ...................................................................................16, 19

*McKinnie v. JP Morgan Chase Bank*
    678 F.Fupp.2d 806 (E.D. Wis. 2009) ...................................................................21 n. 10

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) ............................................................................................. 6

*Mullane v. Central Hanover Bank and Trust Co.*
    339 U.S. 306 (1950) ........................................................................................................14

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL           CASE NO. 4:09-CV-01823-SBA
OF CLASS ACTION SETTLEMENT AND MEMORANDUM    iv
OF POINTS AND AUTHORITIES IN SUPPORT

*Multi-Ethnic Immigrant Worker Organizing Network v. City of Los Angeles*
    2009 WL 1065072 (C.D. Cal. March 19, 2009) ............................................................27

*Nachshin v. AOL, LLC*
    663 F.3d 1034 (9th Cir. 2011).............................................................................. 28 n. 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 6, 10, 11

*Nwabueze v. AT&T Inc.*
    2011 WL 332473 (N.D. Cal. Jan. 29, 2011) ...............................................................4 n. 1

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*
    688 F.2d 615 (9th Cir.1982).  .......................................................................5, 7, 9, 14

*Parkinson v. Hyundai Motor Am.*
    796 F. Supp. 2d 1160 (C.D. Cal. 2010).......................................................................19

*Petrovic v. AMOCO Oil Co.*
    200 F.3d 1140 (8th Cir. 1999).................................................................................16

*Religious Tech. Cir. V. Wollersheim*
    796 F.2d 1076 (9th Cir. 1986)...............................................................................4 n. 1

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir.2009)................................................................... 6, 11, 16, 26

*Shaffer v. Continental Casualty Co.*
    362 F.App'x 627 (9th Cir. 2010) .............................................................................36

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003)..................................................................................13

*Sullivan v. DB Investments, Inc.*
    667 F.3d 273 (3d Cir. 2011)...................................................................................30

*Suzuki v. Hitachi Global Storage Techs., Inc.*
    2010 U.S. Dist. LEXIS 22908 (N.D. Cal. Mar. 12, 2010)................................................19

*Taubenfeld v. AON Corp.*
    415 F.3d 597 (7th Cir.2005)................................................................................31 n. 18

*Tenuto v. Transworld Sys., Inc., CIV. A.*
    2002 WL 188569 (E.D. Pa. Jan. 31, 2002) ................................................................30

*Torrisi v. Tucson Electric Power Co.*
    8 F.3d 1370 (9th Cir. 1993)..............................................................................16, 19

**Statutes Rules & Regulations:**

    Fed. R. Civ. P. 23 (e) ........................................................................................... 5
    Fed. R. Civ. P. 23 (e)(1) .......................................................................................14
    Fed. R. Civ. P. 23 (c)(1)(C)................................................................................... 9
    Fed. R. Civ. P. 23 (c)(2)(B)...................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Miscellaneous:**

Manual For Complex Litigation, Fourth (Fed. Jud. Ctr. 2004) ("MCL 4th") ................................ 5

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed.2002) ........................ 7, 14

Jones, Christopher S. Seventh Circuit Shoots Down Professional Objector (2005),
    http://pslranugget.blogspot.com/2005/07/seventh-circuit-shoots-down.html .......... 30 n. 17

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM          vi
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1

## **INTRODUCTION**

2       By this Motion, Plaintiffs respectfully request that the Court take the final step in the class

3   action settlement approval process by granting final approval to the proposed Settlement reached

4   between the parties in this case.  On February 28, 2012 (Dkt. No. 99), this Court granted

5   preliminary approval to the Settlement and approved the Notice Plan submitted by the parties.

6   Verizon and the Settlement Administrator then provided more than 8 million mailed and e-mailed

7   notices to present and former Verizon landline customers, as well as providing national

8   newspaper publication notice and a settlement website notice supported by Google Adwords.

9   Julie Redell Declaration ("Redell Decl.") ¶¶ 7-21; Eric Shaefer Declaration (Schaefer Decl.) ¶¶ 5-

10  49.   In addition, Verizon provided CAFA notice to the appropriate State and Federal officials

11  across the country.  Redell Decl. ¶¶ 5-6. The deadline for objections and exclusion requests has

12  long passed (August 17, 2012 for the overwhelming bulk of the class; January 17, 2013 for the

13  comparatively tiny "Group 2" portion of the class;  and June 3, 2013 for the even smaller "Group

14  3" members of the Class).  Only 668 exclusion requests (including 21 late requests and 19

15  duplicate requests) have been received, and 28 objections, which lack merit for the reasons

16  discussed later in this memorandum at pages 12-34, below.   Redell Decl.") ¶¶ 29-31 and Gary

17  Zimmers  Declaration ("Zimmers Decl.") ¶¶ 5-19; *see, also,* Fn. 3, *infra.*.

18      The elements of the Settlement – and their effect on consumers – were described in detail

19  in Plaintiffs' Motion For Preliminary Approval (Dkt. No. 91) and Plaintiffs' Motion for Attorney

20  Fees (Dkt. No. 123) and will only be briefly summarized here.

21      Either of the two major components of the Settlement – relief for past cramming and

22  future remedial/injunctive relief – standing alone, presents a sufficient basis to approve the

23  Settlement as fair, reasonable and adequate under the governing legal standards as described

24  below.

25      The Settlement provides Class Members the opportunity to recover 100% of all

26  unauthorized charges for the period April 27, 2005 through February 12, 2012.   There is no cap

27  on the amount any individual Class Member may recover and no cap on the aggregate amount

28  Verizon is obligated to pay to Class Members.  The ability to recover 100% of all unauthorized

1   charges constitutes a remarkable result in any case, and especially in a cramming case, with their

2   special litigation risks.   To Class Counsel's knowledge, no private class action settlement, nor

3   any state or federal regulatory or law enforcement judgment or consent decree, has heretofore

4   succeeded in obtaining the ability to recover 100% of all unauthorized charges billed by one of

5   the dominant landline telephone companies in the country.

6          In addition, the Settlement provides Class Members with the right to obtain, for free, in an

7   easily understandable format, a billing summary identifying all third-party charges they were

8   billed for during the class period and the ability to use that billing summary to submit a claim

9   form to recover 100% of the unauthorized third-party charges.  (Class members are also given the

10  option to file a simple flat payment claim for $40, if they so choose.)  The free billing summaries

11  are a significant benefit because not only do most consumers not retain their bills, but because

12  most consumers are not even aware that their telephone bills contain such third-party charges so

13  consumers do not even understand that they should review their bill to see if they were billed for

14  these charges.  But even if class members had their old bills or could otherwise obtain them for

15  free, the billing summaries spare them the time and difficulty of weeding through years of bills,

16  one by one, to ascertain if there were charges.  Class Counsel and Verizon created the format for

17  the billing summaries as part of this Settlement so that they would be easily understood and used

18  to submit a claim either online or as part of a paper claim.  As a result of this Settlement, Verizon

19  designed, developed and implemented computer programs to search approximately seven years of

20  bills for each Class Member (consisting of some 3.4 *Billion* monthly phone bills) requesting a

21  billing summary and then extracted the names of each third-party provider and aggregator, and

22  the respective monthly and total charges billed by each aggregator/third-party provider.  (Schaefer

23  Decl. ¶¶ 5-12).  This billing summary identifies each aggregator and each third-party provider

24  that billed for Third Party Charges during the class period, the amount of each charge and credit

25  and the net total for each provider (without extraneous other information), and was provided to

26  the Class Member in a consumer-friendly and understandable format.  All a claimant has to do is

27  place a check mark next to any charge that the claimant says was unauthorized.

28          The right to obtain the billing summaries presents an unprecedented benefit made

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM       - 2 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1   available to Class Members.  To Class Counsel's knowledge, no private class action settlement,

2   nor any state or federal regulatory or law enforcement judgment or consent decree, has heretofore

3   succeeded in making this amount of historical information available, in a distilled, easily

4   understandable format, for free.  Examples of the billing summary are attached as Exhibits J and

5   K to the Schaefer Declaration. These two aspects of the monetary portion of the Settlement

6   provide nearly everything that the Class Members might have been able to recover had the case

7   been litigated, class issues resolved in favor of a certification, the case won on the merits, and

8   both class certification and the decision on the merits upheld on appeal.  The Settlement provides

9   all of these benefits now, rather than years in the future, and avoids the undisputed risks posed by

10  continued litigation.

11          As described in the Motion For Preliminary Approval, the injunctive/remedial relief

12  provisions of the Settlement consist of eleven major changes in the manner that Verizon would

13  conduct its third-party billing business in the future.  These eleven changes required Verizon to

14  make extraordinary, sweeping, industry-changing revisions in the manner it had been conducting

15  its third-party billing business since approximately 1998.  These eleven changes, described in

16  detail in the Motion For Preliminary Approval consisted of:  an Opt-In requirement before new

17  customers could be billed for Third Party Charges; an educational notice program for bill

18  blocking; a separate prominent notice to customers any time a new third-party charge would be

19  billed; reduced cramming  adjustment thresholds that would result in termination of

20  aggregators/third-party providers; increased penalties for cramming complaints; improved

21  employee customer service training regarding cramming complaints; notice to other carriers and

22  governmental authorities of adverse action taken against bad actors; improved requirements for

23  obtaining customers authorization of third-party billing; notice to customers billed by providers

24  terminated for cramming; regular audits of aggregators and providers to ensure compliance with

25  anti-cramming policies and procedures; and reduced cramming complaint thresholds.  See Dkt.

26  No. 91 at pp. 4-5 and 10-12.

27          These eleven changes required major changes in Verizon's internal business operations

28  including, for example, revising the methods and procedures manuals and retraining for

1   thousands of Verizon customer service personnel, and significant revisions to policies and

2   procedures utilized by the Verizon business group managing the third-party billing business.

3   Moreover, these changes would have resulted in extensive changes in Verizon's business

4   relationships with each of the five aggregators and thousands of third-party providers who placed

5   third-party charges on Verizon's bills; and would have required major changes in the information

6   required to be disclosed to, and obtained from, millions of Verizon's existing and future

7   customers by thousands of Verizon's customer service personnel.

8        In the Motion For Preliminary Approval, Class Counsel described these eleven changes --

9   in the context of fifteen years of anti-cramming efforts by consumer groups, private class actions,

10  and state and federal legislative, regulatory and law enforcement efforts -- as unprecedented and

11  industry-changing.  As discussed later in this memorandum, as it turned out, subsequent to the

12  entry of the Preliminary Approval Order, Verizon announced that it would exit the business of

13  billing for what Verizon claims are the vast bulk of the type of third party charges that have given

14  rise to this litigation, and in fact did so as of December 31, 2012.  (Schaefer Decl. ¶ 57; Jacobs

15  Dec. ¶ 7.)

16        In comparing benefits provided by a settlement against possible benefits to be obtained by

17  continued litigation, it can scarcely be doubted that the comprehensive injunctive/remedial relief

18  portions of the Settlement agreed to by Verizon compare extraordinarily favorably to any

19  injunctive/remedial relief that the Class Members might have been able to expect to recover had

20  the case been litigated to conclusion.[1]

21        In summary, whether viewed from the perspective of what the Settlement achieves for the

22  Class in comparison to either (i) what additional relief (if any) might have been available through

23  continued litigation and the risks presented by continued litigation, or (ii) the historical context of

24  fifteen years of regulatory, legislative, judicial and law enforcement efforts to combat cramming,

25  the Settlement is an outstanding accomplishment.   While no Settlement is perfect, and the

26

27  [1]   *See, e.g. Nwabueze v. AT&T Inc.,* C 09-1529 SI, 2011 WL 332473 (N.D. Cal. Jan. 29, 2011)
    where the Court dismissed a request for injunctive relief in a similar cramming case as

28  unavailable because of its potential interference with the regulatory jurisdiction of the California
    Public Utility Commission.  *Religious Tech. Cir. V. Wollersheim,* 796 F.2d 1076, 1084-1088 (9th
    Cir. 1986) (injunctive relief not available to a private plaintiff in civil RICO action).

1   governing standards for approval as described below do not require perfection (a settlement is,

2   after all, a compromise of disputed claims), the monetary benefits of the Settlement, and/or the

3   injunctive/remedial relief provisions of the Settlement, either separately or together, provide a

4   compelling basis for approval of the Settlement as fair, reasonable and adequate.

5          Below, we analyze separately each of the required standards governing approval of class

6   action settlements.

7                                        **ARGUMENT**

8          Judicial proceedings under Rule 23 have led to a defined three-step procedure for approval

9   of class action settlements: (1) certification of a settlement class and preliminary approval of the

10  proposed settlement after submission to the Court of a motion for preliminary approval;

11  (2) dissemination of notice of the proposed settlement to the class; and (3) a final approval

12  hearing for the Court to consider whether the settlement is fair, reasonable and adequate and in

13  the best interests of the class, and, if so, to grant final approval to the settlement.  *See* MANUAL

14  FOR COMPLEX LITIGATION, FOURTH (Fed. Jud. Ctr. 2004) ("MCL 4th"), §§ 21.63 *et seq*.

15         In granting preliminary approval of the Settlement and ordering that notice be

16  disseminated to the Class, the Court has taken the first two steps in the process.  With this

17  Motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement

18  approval process by granting final approval of the proposed Settlement.

19  **I.      The Settlement Merits Final Approval.**

20         The law favors the compromise and settlement of class action suits.  *See, e.g., Byrd v.*

21  *Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566,

22  576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

23  *Officers for Justice*, 688 F.2d at 625.  Under Rule 23(e) of the Federal Rules of Civil Procedure,

24  "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

25  compromised only with the court's approval" and such approval may occur "only after a hearing

26  and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and

27  adequate."  Fed. R. Civ. P. 23.  The primary concern of Rule 23(e) is "the protection of those

28  class members, including the named plaintiffs, whose rights may not have been given due regard

1   by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City and County of*

2   *San Francisco*, 688 F.2d 615, 624 (9th Cir.1982).

3          In determining whether a settlement agreement is fair, adequate, and reasonable, a district

4   court may consider some or all of the following factors:

5                     the strength of plaintiffs' case; the risk, expense, complexity, and likely
                      duration of further litigation; the risk of maintaining class action status
6                     throughout the trial; the amount offered in settlement; the extent of
                      discovery completed, and the stage of the proceedings; the experience and
7                     views of counsel; the presence of a governmental participant; and the
                      reaction of the class members to the proposed settlement.
8

9

10  *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  This list is not exhaustive, and different

11  factors may predominate in different factual contexts.  *In re TD Ameritrade Account Holder*

12  *Litig.*, C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011).  Under certain

13  circumstances, one factor alone may prove determinative in finding sufficient grounds for court

14  approval.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D.

15  Cal. 2004) .  In addition to these factors, the Court may also consider the procedure by which the

16  parties arrived at the settlement to determine whether the settlement was likely the result of good

17  faith negotiations at arm's length, or whether it was the product of fraud or collusion. *Id.*

18          "[T]he decision to approve or reject a settlement is committed to the sound discretion of

19  the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and

20  proof."  *Hanlon*, 150 F.3d at 1026.  In exercising this discretion, "[t]his circuit has long deferred

21  to the private consensual decision of the parties."  *Rodriguez v. West Puhl'g Corp.*, 563 F.3d 948,

22  963 (9th Cir.2009).  Thus, in evaluating whether the settlement is fair and adequate, the Court's

23  function is not to second-guess the settlement's terms:

24                    [T]he court's intrusion upon what is otherwise a private consensual agreement
                      negotiated between the parties to a lawsuit must be limited to the extent necessary
25                    to reach a reasoned judgment that the agreement is not the product of fraud or
                      overreaching by, or collusion between, the negotiating parties, and that the
26                    settlement, taken as a whole, is fair, reasonable and adequate to all concerned.
                      Therefore, the settlement or fairness hearing is not to be turned into a trial or
27                    rehearsal for trial on the merits. Neither the trial court nor this court is to reach
                      any ultimate conclusions on the contested issues of fact and law which underlie
28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM        - 6 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1
2
3

the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

4   *Officers for Justice*, 688 F.2d at 625; Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of

5   compromise; the question we address is not whether the final product could be prettier, smarter or

6   snazzier, but whether it is fair, adequate and free from collusion.").  This is especially so "in light

7   of the strong judicial policy that favors settlements, particularly where complex class action

8   litigation is concerned." *City of Seattle*, 955 F.2d at 1276; *see also Curtis–Bauer v. Morgan*

9   *Stanley & Co.*, No. C 06–3903 TEH, 2008 WL 4667090, at *4 (N.D.Cal. Oct.22, 2008)

10  (Henderson, J.) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring

11  settlement, particularly in class action law suits.").

12         The Settlement here readily satisfies the standard for final approval because:  (A) it is the

13  product of  serious, arms-length negotiations between the parties reached after hard-fought

14  litigation and thorough investigation and discovery, (B) it provides substantial relief to the

15  Settlement Class in light of the significant risks, expenses, complexity and duration of further

16  litigation and appeals and of a maintaining class action status, and it provides that relief now

17  rather than, *if at all*, at some uncertain date in the future, (C) it has received an overwhelmingly

18  positive reaction from the Settlement Class, and (D) it was negotiated by, and is recommended by

19  experienced and well informed counsel, as well as an experienced and highly regarded mediator.

20         **A.      The Settlement is the Product of Arms-Length Negotiation**

21         Where a settlement is the product of arms-length negotiations conducted by capable and

22  experienced counsel, the court begins its analysis with a presumption that the settlement is fair

23  and reasonable.  *See* 4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th Ed.

24  2002); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

25         Here, the parties engaged in over a year of arms-length negotiation before a nationally-

26  respected mediator, the Honorable Judge Daniel Weinstein (Ret.).  (Dkt. No. 91, Jacobs Decl. ¶ 5,

27  Schachman Decl. ¶ 11.)  The mediations included extensive information exchanges, briefing and

28  in-person negotiations, ultimately culminating in the Settlement submitted for final approval by

1   this Motion.  Moreover, Judge Weinstein himself has recommended the Settlement as "the best

2   possible resolution . . . of this complex and highly uncertain litigation" and has stated under oath

3   that the "settlement was negotiated aggressively, effectively, in good faith, at arm's length and

4   with a high level of professionalism" and "was not the product of fraud or collusion." Dkt. No.

5   91-2 (Decl. of Judge Daniel Weinstein (Ret.) ¶¶ 11, 21)  *See, also,* Dkt. No. 99 ¶ 6, (the parties

6   "entered into the Settlement Agreement in good faith, following arms-length negotiation.")

7        **B.      The Immediate Relief Provided By The Settlement Is Particularly Impressive
                   Given The Significant Class Certification, Liability, And Damages Hurdles
8                  Plaintiffs Faced In This Risky, Expensive and Complex Litigation, And Given
                   The Possibility Of Delayed Recovery, Or No Recovery At All.**
9

10          This Settlement is unprecedented.  To date, numerous putative class action cases have

11   been filed against telephone companies as well as third party providers to address the problem of

12   cramming, but as discussed in Plaintiffs' Preliminary Approval Motion, those cases have met

13   either with dismissals or settlements that provided only a fraction of the benefits provided here.

14   (See, Dkt. No. 91, Schachman Decl. ¶ 13 and Jacobs Decl. ¶ 3.)

15          Throughout the litigation, Verizon maintained that Plaintiffs would be unable to (1) secure

16   certification of a litigation class, [2] (2) hold Verizon liable for the unauthorized billing of its third

17   party billing partners, and (3) succeed on the merits of the case, including Plaintiffs' RICO theory

18   of liability.  Dkt. No. 91-2 (Decl. of Judge Daniel Weinstein (Ret.) ¶¶ 12, 14, 17 ); *See also*

19   Defendants' Answer to the Complaint, Dkt. No. 63 (asserting  24 separate affirmative defenses,

20   only one of which need gain traction with a judge or jury to defeat Plaintiffs' claims).  In

21   addition, Verizon maintained that Plaintiffs would be unable to prove damages on a classwide

22   basis because the question of whether individual Class Members authorized particular charges is

23   inherently individual.  Though Plaintiffs dispute Verizon's characterization of their claims, the

24   historical failure with which cramming cases have met underlines the challenge of litigating this

25   case to judgment.  Moreover, the inherent uncertainty that comes with all class litigation poses

26   additional risks to Plaintiffs.  If Plaintiffs failed to obtain certification of a contested litigation

27

28   [2] The Court certified, for settlement purposes only, a Settlement Class in the Preliminary
     Approval Order.  (Dkt. No. 99, ¶ 2.)  However, if the Court fails to grant final approval of the
     Settlement Agreement, the certification of the class will automatically become void.  (*Id.* ¶ 5.)

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM          - 8 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1  class, the case would effectively be over and class members left with nothing.  And, even if

2  Plaintiffs were successful in a motion for class certification absent the Settlement, Defendants

3  could move for decertification of the class before or during trial and could also challenge a

4  contested class certification decision on appeal.  Fed. R. Civ. P.23(c)(1)(C).

5        In addition, it is certain that in the absence of the settlement, the expense, duration and

6  complexity of the protracted litigation that would result would be substantial, as significant

7  hurdles remain, including, among other things, anticipated summary judgment motions, contested

8  class certification, *Daubert* motions, and appeals.  Yet, the added cost and burden of litigation

9  would not necessarily produce better results for the class.  Thus, not only does this Settlement

10  achieve substantial benefits for Class Members akin to the benefits available at law following a

11  judgment, but it does so at significantly reduced expense and delay to the Class. In short, the

12  Settlement provides certain recovery now rather than uncertain, and potentially *no* recovery, later.

13        The Settlement ensures that Class Members may claim and be refunded the <u>full</u> amount

14  (100%) of all unauthorized charges, with no individual limits and no aggregate limits on the

15  amounts paid, a result heretofore unseen in cramming litigation, and rarely seen in any litigation.

16  *Mangone v. First USA Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001) ("This is an unusual and very

17  desirable feature of this Settlement because settlements, by their nature, typically do not yield

18  100% recovery for plaintiffs."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th

19  Cir. 1982) (a settlement amounting to "only a fraction of the potential recovery does not per se

20  render the settlement inadequate or unfair."); *OmniVision,* 559 F. Supp. 2d at 1042 (finding a

21  certain recovery of 6% of the potential recovery after accounting for attorneys' fees and costs to

22  be reasonable and favor approval of the settlement).  The Settlement also provides for

23  unprecedented injunctive relief (that precisely targets the allegedly unlawful conduct at issue in

24  the suit) and requires Verizon to separately pay various (and substantial) costs, such as costs of

25  notice and settlement administration, class representative incentive awards and Plaintiff's

26  counsel's attorneys' fees and expenses, so that Class Members do not have to pay them out of

27  their own recovery as is typically the case in class action settlements.

28        When weighed against the considerable risks and expense, duration and complexity of

1   continued litigation, the reasonableness of these immediate settlement benefits is readily apparent,

2   and strongly favors final approval of the Settlement.

3   **C.      The Overwhelmingly Positive Reaction Of The Class Members Supports Approval.**

4

5          The reaction of the Settlement Class Members to the proposed Settlement has been

6   overwhelmingly positive and strongly supports final approval.  Courts have repeatedly recognized

7   "that the absence of a large number of objections to a proposed class action settlement raises a

8   strong presumption that the terms of a proposed class settlement action are favorable to the class

9   members." *Nat'l Rural Telecomms*., 221 F.R.D. at 529. Here, 28 persons filed objections to the

10  settlement.[3]  Leaving aside the fact that several of these persons purporting to file objections were

11  not class members and thus without standing (and one appears to have been dead at the time) and

12  several other purported objections are procedurally deficient, that is an infinitesimal percentage of

13  the class, something on the order of 4/10,000ths of 1%.  (See Schaefer Declaration at ¶ 50; there

14  were in fact approximately 6.1 million class member accounts.)  We discuss separately in Section

15  II below the substance of objections, but the fact is, virtually no one had any objection.  Similarly,

16  only 628 people opted out of the settlement (including untimely exclusion requests), a mere

17  1/100th of 1% of the class have requested exclusion from the Class.  Courts have routinely

18  approved class action settlements where the percentage of objectors or opt outs have been

19  substantially higher than this amount. *See e.g., Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 622

20  (N.D.Cal.1979) (approving settlement over objections from 16% of the class); *Churchill Village,*

21  *L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir.2004) (approving settlement where 545

22  people out of an initial notice pool of 90,000 objected to the settlement or excluded themselves).

23          Moreover, these opt outs and objections are overshadowed by the overwhelming

24  ---

[3]   The parties and the Settlement Administrator have reviewed documents submitted to the Clerk

25  to identify objections, and are agreed that the documents attached hereto at Group Exhibit 1 are
    the communications that might fairly be considered to express objections (without regard to

26  whether they comply with the Court's order for substance and procedure for filing objections).
    These documents were received by the Clerk (Dkt. No. 142 1-5), the Settlement Administrator

27  (see Redell Decl., ¶ 30 and Exhibit F), or, in the case of one document, by Class Counsel (see
    Jacobs Declaration In Support Of Final Approval, attached hereto, at ¶ 3).  In addition, there are

28  letters regarding the filing of claims or obtaining billing summaries that the parties are agreed
    appear not to be objections to the settlement.  The parties will be prepared to respond at the final
    approval hearing to any questions the Court may have concerning such materials.

1    participation of the Class in the settlement process.  To date, more than 514,000 requests for

2    billing summaries have been submitted and over 300,000 claim forms have been filed. (Redell

3    Declaration ¶¶ 23and 27; Azari Decl. ¶¶ 51-52)  The response of the Class to the Settlement

4    confirms the Court's initial finding of fairness, reasonableness, and adequacy in its preliminary

5    approval Order as well as supplies a significant basis upon which to base the grant of final

6    approval.   *In re Apple Inc. Sec. Litig*., 5:06-CV-05208-JF HRL, 2011 WL 1877988 (N.D. Cal.

7    May 17, 2011) (Fogel, J.) ("The small number of objections raises a strong presumption that the

8    settlement is favorable to the class. See In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036,

9    1043 (N.D.Cal.2008). The Court concludes that none of the objections rebuts this presumption.")

10            **D.     The Recommendations Of Experienced, Well-Informed Counsel And A**
              **Nationally Respected Mediator Favor Approval.**

11

12           The recommendation of experienced counsel regarding the Settlement should be given

13   significant weight.  *See Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at 5 (N.D. Cal.

14   Jul. 18 1997); *Boyd v. Bechtel Corp*., 485 F.Supp. 610, 622 (N.D. Cal. 1979) ("The

15   recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Nat'l*

16   *Rural Telecomms Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528-29 (C.D. Cal. 2004) ("Great

17   weight is accorded to the recommendation of counsel, who are most closely acquainted with the

18   facts of the underlying litigation.").  Reliance on such recommendations is premised on the fact

19   that "parties represented by competent counsel are better positioned than courts to produce a

20   settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez,* 563

21   *F.3d at 967 (quoting In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)).*

22           As the Court is aware from its experience during the pendency of this Action, Class

23   Counsel are experienced class action firms that have substantial experience securing the rights of

24   consumers nationwide.  Through their investigation, research, review of discovery materials,

25   consultation with experts, litigation, mediation sessions, and the settlement process, Class

26   Counsel had an intimate understanding of the law and facts at issue, had a clear view of the

27   strengths and weaknesses of their case and were in possession of sufficient information to make

28   an informed decision about settlement and to intelligently negotiate its terms for the ultimate

1  benefit of the class.   Counsel have unreservedly recommended the settlement to the Court as in

2  the best interests of the class.  (Dkt. No. 91, Jacobs Decl. at ¶ 8, Schachman  Decl. at ¶ 12.)

3        For its part, Verizon is also represented by experienced, sophisticated counsel in the class

4  action field.  And, significantly, a neutral party, the mediator, The Honorable Daniel H. Weinstein

5  (ret.), also recommends the settlement:  "[I]t is my opinion that the Settlement reached in this

6  case is not only fair, reasonable and adequate, but is a truly excellent settlement that provides

7  substantial monetary benefits to the class and unprecedented injunctive relief."  (Dkt. 91-2, ¶ 2.)

8  **II.    The Objections Lack Merit.**

9        Of the 8,089,893 notices sent to current and former Verizon landline account customers

10  (current customers were mailed two such notices), the more than 1,655,000 present and former

11  customers who were sent emailed notice (most were sent two each), the countless others who read

12  the nationally published noticed, and the 1,499,000 individuals who viewed the settlement

13  website, only 28 persons have submitted objections, a miniscule fraction of 1% of the class.

14  Redell Decl. ¶ 19, Schaefer Decl. at ¶¶ 27, 37, 44; Azari Decl. ¶ 49.   In addition, the U.S.

15  Department of Justice ("DOJ") filed a Statement of Interest criticizing the Settlement, Dkt. No.

16  137, and the Federal Trade Commission ("FTC") filed an *amicus* brief opposing the Settlement.

17  Dkt. Nos. 137 and 136, respectively).  Following the filing of the Stipulation amending the

18  Settlement (Dkt. No. 158), however, both the DOJ and FTC have filed statements with the Court

19  noting that, in light of the Stipulation which addressed and ameliorated their concerns, they do not

20  intend to appear attend or participate at in the Final Approval Hearing.   The DOJ continues to

21  express concern about the adequacy of notice that had already been sent to consumers at the time

22  the government learned of and objected to the settlement (Dkt. No. 160), and the FTC continues

23  to express concern about using a claims process in a cramming case (Dkt. No. 159).   We shall

24  address those remaining concerns below along with addressing objections filed to the settlement.

25        Before doing so, though, it seems appropriate to note the heavy burden an objector bears

26  to try to block approval of a settlement at this stage.  Where a court has granted preliminary

27  approval, has found that the settlement is the product of arms' length negotiation, where

28  experienced, sophisticated counsel recommend the settlement to the court, and where the reaction

1    of the class is overwhelmingly positive, courts impose a heavy burden on an objector to block

2    final approval of the settlement. "Once the court has given preliminary approval, an agreement is

3    presumptively reasonable, and an individual who objects has a heavy burden of demonstrating

4    that the settlement is unreasonable." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex.

5    2007); *Mayborg v. City of St. Bernard*, 1:04-CV-00249, 2007 WL 3047235 (S.D. Ohio Oct. 18,

6    2007) ("With such preliminary approval, the settlement is presumptively reasonable, and an

7    individual who objects has a heavy burden of proving the settlement is unreasonable."); *Moore v.*

8    *United States*, 63 Fed. Cl. 781, 784 (Fed. Cl. 2005) (same); *New England Health Care Employees*

9    *Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) *aff'd sub nom.*

10   *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("Preliminary approval gives rise to a presumption

11   that the settlement is fair, reasonable and adequate.  Objectors, therefore, have the burden of

12   persuading this Court that the proposed settlement is unreasonable."); *United States v. State of*

13   *Or.*, 913 F.2d 576, 581 (9th Cir. 1990) (stating that "In this circuit, we have usually imposed the

14   burden on the party objecting to a class action settlement" and recognizing that where a court is

15   satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated

16   decree is presumptively valid and the objecting party "has a heavy burden of demonstrating that

17   the decree is unreasonable.").

18        Regardless of burden, the objections lack force.  The thrust of the objections that have

19   been filed is that the Settlement is less than perfect in various ways.  But the Court's task is not to

20   imagine the perfect settlement or the ideal outcome for one party or another.  Settlements are, by

21   definition, compromises.  *In re Corrugated Container Antitrust Lit.*, 659 F.2d 1322, 1325 (5th

22   Cir. 1981).  The Court's task is to determine whether the settlement, as a whole, is fair, adequate,

23   and reasonable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Instead of

24   splicing settlements and evaluating their terms in a vacuum, the Ninth Circuit recognizes that "[i]t

25   is the settlement taken as a whole, rather than the individual component parts, that must be

26   examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The

27   Court performs this review in light of the Ninth Circuit's strong judicial policy favoring voluntary

28   resolution of complex litigation.  *In re Syncor ERISA Lit.*, 516 F.3d 1095, 1101 (9th Cir. 2008)

1   (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).

2       Here, Objectors focus on theoretical ideal settlements, devoid of compromise or the reality

3   of risk and complexity in class action litigation, by addressing specific components that they

4   believe could be better for the Class Members.  But ideal relief is not a settlement – it is a 100%

5   trial victory reached immediately.  No settlement achieves perfect relief.

6       Where, as here, the settlement was negotiated at arms-length by capable and experienced

7   counsel, courts *begin* their analysis with a presumption that the settlement is fair and reasonable.

8   *See* 4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th Ed. 2002); *Ellis v.*

9   *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Objectors do not raise any

10   arguments to rebut that presumption; they fail to point to fraud or duress (or anything approaching

11   it) that could cast doubt on the Settlement.  *See Bluetooth*, 654 F.3d at 947.  Therefore, the

12   Objections should be overruled, and the Court should approve the Settlement.

13       Before we address objections, we wish to be clear that there are virtually no objections

14   that are appropriately before the Court.  We discuss this in greater detail in Subsection E below,

15   but while they should be rejected on those bases, we want there to be no question but that the

16   objections also fail *on the merits,* and thus we address them below.  Second, to the extent that any

17   objection can be understood as objecting to Class Counsel's fee request, that will not be

18   addressed in this brief, but, instead, will be addressed in connection with the briefing schedule

19   that has been established with regard to fees.

20       **A.**     **The Court-Approved Notice Plan Was The Best Notice Practicable.**

21       In a class action settlement, "[t]he court must direct notice in a reasonable manner to all

22   class members."  Fed. R. Civ. P. 23(e)(1).  In generally setting forth the requirements for notice,

23   the Rules require "the best notice that is practicable under the circumstances, including individual

24   notice to all members who can be identified through reasonable effort," Fed. R. Civ. P.

25   23(c)(2)(B), and in its Preliminary Approval Order, the Court so found.  (Dkt. No. 99 ¶ 8.)  The

26   Supreme Court has explained that a settlement notice must "apprise interested parties of the

27   pendency of the action and afford them an opportunity to present their objections."  *Mullane v.*

28   *Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314 (1950).  The Notice Plan approved by

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL                          CASE NO. 4:09-CV-01823-SBA
OF CLASS ACTION SETTLEMENT AND MEMORANDUM    - 14 -
OF POINTS AND AUTHORITIES IN SUPPORT

1   this Court was implemented by Verizon and the Settlement Administrator (*see* Redell

2   Declaration, and Schaefer Declaration).   It was the best notice practicable under the

3   circumstances, and, as the Declaration of Cameron Azari, an expert on class action notice, attests,

4   it was excellent notice that fully complied with the Federal Rule of Civil Procedure and the

5   *Manual For Complex Litigation* and reached "the greatest number of Settlement Class members

6   possible under the circumstances."  (Azari Decl. ¶¶ 1-58.)

7          While the DOJ suggests the inadequacy of bill stuffer notice in a cramming case (where

8   customers do not notice that they have been crammed in the first place), this overlooks the fact

9   that the bill stuffer notice in this case was sent in an envelope that contained in prominent

10  lettering a "call-out" on the outside of the envelope calling attention to the fact that enclosed in

11  the envelope was a yellow notice regarding "refunds of third-party charges" and identifying its

12  color (yellow, which was a color different than any other document in the envelope).[4]  Similarly,

13  the notice, the bill stuffer itself, said in prominent bold red print twice the size of any other font

14  on the document, right at the beginning of the notice, that **"You Received This Notice Because**

15  **Verizon's Records Indicate You Were Billed For Third Party Charges between April 27,**

16  **2005 and February 28, 2012 and May Be Entitled to a Payment From This Class Action**

17  **Settlement."** *See* Azari Declaration and exhibits thereto, attaching examples of the actual notices

18  provided to the class.  Azari Decl. ¶¶ 18-43; Exs. B-H. In contrast, there has never been a "call-

19  out" on the outside of the regular billing envelopes containing bills with crammed charges and

20  nothing to draw the customer's attention to the crammed charges.   Similarly, the objection

21  overlooks the fact that in addition to the bill stuffers, there was also email notice to all customers

22

23  [4]     Courts have regularly endorsed the use of billing insert notice as part of an overall notice
    plan. *See, e.g.*, *Hall v. AT&T Mobility LLC*, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) (approving
24  use of bill insert); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d
    935 (N.D. Ill. 2011) (same); *Faigman v. AT&T Mobility LLC*, 2011 WL 672648 (N.D. Cal. Feb.
25  16, 2011) (Patel, J.); *Lee v. Sprint Nextel Corp.*, 2010 WL 1854422 (N.D. Cal. May 6, 2010)
    (Conti, J.) (affirming adequacy of notice in prior litigation where notice plan included use of bill
26  insert, precluding subsequent class action); *Larson v. Sprint Nextel Corp.*, 2009 WL 1228443 (D.
    N. J. April 30, 2009) (endorsing use of a bill insert as reasonable and cost-effective measure for
27  providing class notice); *Sollenbarger v. Mountain States Tel & Tel. Co.*, 121 F.R.D. 417 (D. N.M.
    1988) (same).
28

1  for whom Verizon had an email address, newspaper publication and website notice supported by

2  Google Adwords.   This was robust, comprehensive, redundant, extremely expensive notice, the

3  best practicable in the circumstances.

4       Objector Drozdov[5] objects that the Notice was inadequate because it failed to include

5  details about (1) the exact amount class members were entitled to recover under the Settlement;

6  (2) the identity of every third party that may have placed charges on Class members' bills; and (3)

7  the total potential liability Verizon faced at the time of settlement.

8       Each of these complaints is presented devoid of any legal authority whatsoever, and for

9  good reason.  Courts nationwide consistently recognize that mailed notice is satisfactory if it

10  "generally describes the terms of the settlement in sufficient detail to alert those with adverse

11  viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. GE*, 361

12  F.3d 566, 575 (9th Cir. 2004).

13       Here, the Notice informed class members, after informing them that Class Counsel

14  maintained that some class members would have claims for hundreds of dollars or more, that they

15  could file a flat claim for $40, or – for free – obtain a Summary of Charges, informing them of all

16  Third Party Charges they had been billed during the class period and allow them to file a claim

17  for 100% of those charges if they were unauthorized.  Talking about aggregate potential damages

18  of the class was meaningless; what mattered was what was available to the individual class

19  member.  Compare, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (Rule 23 notice

20  "does not require an estimate of the potential value of those claims.").

21       First, the Ninth Circuit has repeatedly held that notice need not specify potential recovery.

22  *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (rejecting

23  objectors' arguments that the notice must specify potential recovery); *Marshall v. Holiday Magic,*

24  *Inc.*, 550 F.2d 1173 (9th Cir. 1977) (same); *Rodriguez v. W.Publ'g Corp.*, 563 F.3d 948, 962 (9th

25  Circ. 2009) (while the notice does not "analyze the expected value, we do not see why it

26  should.").  Likewise, in *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140 (8th Cir. 1999), the Eighth

27

28  [5]     As we will detail later in this memorandum, most purported objectors (a) were not in fact class members (and thus without standing to object), and/or (b) did not comply with the requirements of the Preliminary Approval Order as to the requirements of filing objections.  Dkt. No. 99, ¶ 11.

1    Circuit rejected the objectors' contention that "a mailed notice of settlement must contain a

2    formula for calculating individual awards.  It is well settled that the notice 'is not required to

3    provide a complete source of information.'"  *Id.* at 1153 (quoting *Maher v. Zapata Corp.*, 714

4    F.2d 436, 452 (5th Cir. 1983)).  In fact, "[t]he weight of authority rejects the proposition that a

5    specific formula must always be included in the notice."[6]  *Id.*; *In re "Agent Orange" Product*

6    *Liability Lit.*, 818 F.2d 145, 170 (2nd Cir. 1987).  Here, like in *Petrovic*, "the mailed notice

7    provided a reasonable summary of the stakes of the litigation, and class members could easily

8    acquire more detailed information, including data on potential individual awards, through the

9    telephone number that was provided.  Due process requires no more." *Petrovic*, 200 F.3d at

10   1153.

11          Nonetheless, it is suggested that the Notice could have assumed that all third-party

12   charges were unauthorized, and calculated each Class member's total potential recovery.  This,

13   like all of Objectors' arguments, envisions an ideal settlement where Plaintiffs recover everything

14   -- and more -- that they could have recovered at trial because the defendant yields on all issues,

15   and cost is no object.  The reality, however, is quite different.  Like all settlement terms, notice is

16   subject to negotiation, and cost is an inevitable factor.  Moreover, the fact is that some (or,

17   Verizon argued, many or most) third-party charges were authorized; for purposes of the Notice or

18   the monetary recovery itself, the parties could not ignore this fact and instead assume, as

19   Objectors recommend, that all third-party charges were unauthorized and therefore must be

20   refunded.   Judge Alsup's orders in the *Inc21* case are instructive in this regard, as discussed

21   below.

22          This objection is closely related to the objection that a claims-made process is

23   inappropriate.   But that objection blinks reality.  Without doubt, all governmental bodies that

24   have studied the cramming problem have suggested that the rate of cramming is extremely high,

25   upwards of 95%, as we noted in our Preliminary Approval Motion (Dkt. No. 91 at pp. 2-3).  But

26   that is not 100%, and the difference of 5 or 10% of all Third Party Charges is huge indeed.

27   ─────────────

28   [6]   Here the "formula" **is** disclosed: 100 cents on the dollar for all unauthorized charges in the
     event the class member files a full payment claim, or a flat $40 for a flat payment claim, with no
     aggregate limitation or cap on recovery.

1    Indeed, in the *Inc. 21* case, discussed in our Preliminary Approval Motion (*Id. at 2*), <u>after</u> making

2    his excoriating findings regarding the defendants' dishonest activities in cramming customers,

3    Judge Alsup entered an order <u>requiring that affected customers file claims under penalty of</u>

4    <u>perjury in order to get a payment from the case</u>.  (See Exhibit 2 hereto, at page 47.)   Only when

5    the FTC argued that it would be an impossible task to figure out who had been billed what

6    amount by which third party through which aggregator and through which ILEC telephone

7    company did Judge Alsup relent and agree to allow a *pro rata* payment plan paying "pennies on

8    the dollar" out of the monies the FTC was able to recover against the Inc21 defendants.  (See

9    Exhibit 3 hereto, page 11-14.)  Here, however, the concerns that motivated the *Inc21* court are not

10   present; here, through a remarkable project by Verizon that included review of some 3.4 Billion

11   monthly bills,[7] it <u>is</u> possible to find out who was charged how much by which third party and

12   through which aggregator.  Under the terms of this Settlement – unprecedentedly – class members

13   can obtain, free of charge, a detailed listing of all third party charges and credits incurred during

14   the class period.  Everything that the FTC argued in *Inc21* would have to be done through a

15   never-ending series of subpoenas at great expense to the victims with no promise that the

16   information would be available is in fact provided – free of charge, for the mere asking – by the

17   terms of this settlement.  The objection to a claims-made settlement in such circumstances lacks

18   force. [8]

19        Second, there is no requirement that the notice identify every third party that charged a

20   given Class member money during the class period, and Objectors present no evidence that such

21   information would have affected Class members' understanding of the notice or their decision to

22   submit a claim.  It would have required individualized – prohibitively expensive – notice,

23

24   [7]    See, Schaefer Declaration at ¶¶ 6-12.

25        [8]    Courts of this Circuit (and nationally) regularly approve claims-made settlements.
26   *Shames v. Hertz Co.*, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) ("[T]here is nothing
     inherently objectionable with a claims-submission process, as class action settlements often
27   include this process, and courts routinely approve claims made settlements." (collecting cases)).
     *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Villegas v. J.P. Morgan*
28   *Chase & Co.*, 2012 WL 3542187 (N.D. Cal. Aug. 14, 2012); *McClellan v. SFN Group, Inc.*, 2012
     WL 2367905 (N.D. Cal. June 21, 2012) (same).

1   different for each class member.   Nor is there anything to indicate that knowing such names

2   would have any salutary effect on recipients.   In the instance of a crammed customer, a third

3   party's name would likely be meaningless.   Instead, the Settlement provided for free billing

4   summaries.  Under the Settlement, Class Members can obtain for the mere asking – and, thus far

5   have done so, by the thousands – information from their billing summaries as to every Third Party

6   Charge billed to them during the class period, specifically identifying each third party, each

7   charge and through which Aggregator each charge was billed.   The balance between detail, user-

8   friendliness and feasibility is a challenge that one always faces when crafting notices.[9]

9           Third, neither Rule 23 nor the Ninth Circuit requires that the notice provide a numerical

10  value of total potential liability in a case like this.  That information is required where a

11  settlement action fund is to be distributed to the Class *pro rata*; then, class members need to know the

12  total amount to be allocated and the allocation plan, so that they can understand what they will

13  receive if they participate.  *See, e.g.*, *Torrisi, supra.*, 8 F.3d at 1374 (approving class action

14  settlement where notice described $30 million settlement fund and allocation plan for division

15  among class members); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977)

16  (same, for $2.6 million settlement).  This case, however, is different.  Here, Class members are

17  not receiving a percentage allocation of a fixed amount, nor will their recoveries depend on the

18  Class participation rate (i.e., x% of a total fixed fund).   Instead, they will receive either a flat

19  payment of $40 if they file an approved Flat Payment Claim, or **100 cents on the dollar** if they

20  file an approved Full Payment Claim.  Thus, the notice need only describe, as it did in this case,

21  how Class Members' recoveries will be calculated and that <u>all</u> legitimate claims will be paid.

22  *See, e.g.*, *Suzuki v. Hitachi Global Storage Techs., Inc.*, 2010 U.S. Dist. LEXIS 22908 (N.D. Cal.

23  Mar. 12, 2010) (granting final approval of claims-made class action settlement with no cap where

24  notice did not estimate total liability); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266

25  _____

26  [9]   So, too, with a variant of the objection discussed above: that the notice should have listed the
      names of all the third parties that charged Third Party Charges through aggregators and Verizon.

27  (See, e.g., Drozdov Objection at 2.)  But those third parties numbered in the *thousands*.   Adding
      pages and pages to a notice to list thousands of companies that most people never heard of or saw

28  on their bills would not improve the notice.  Quite the opposite, it would make the notice
      unreadable and unread, and make notice prohibitively expensive.

1   (N.D. Cal. Nov. 16, 2007) (same); *Guschausky v. Am. Family Life Assur. Co.*, 2012 U.S. Dist.

2   LEXIS 46480 (D. Mont. Apr. 2, 2012) (approving fee award and final approval of claims-made

3   class action settlement with no cap where notice did not estimate total liability but described

4   formula for class recovery); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1163 (C.D.

5   Cal. 2010) (same).  Objectors point to no authority for their position in a claims-made settlement

6   like this one, and Plaintiffs are aware of none.  As with the preceding criticism, it is difficult to

7   imagine what impact an estimation of total potential liability would have on an individual's

8   decision whether to claim the $40 flat payment, claim the full payment for several hundred or

9   thousand dollars, or opt out and pursue litigation on his or her own.  Whatever Verizon's

10  aggregate liability might be does not impact any individual's decision in this case, because under

11  the structure of this Settlement, the individual Class Member's recovery is unaffected by other

12  class members' participation and requires reference to no allocation plan.

13          Objectors not only fail to propose their own improved notice, but they also ignore the

14  many excellent aspects of the notice that Plaintiffs secured in the settlement negotiations, as the

15  Declaration of Cameron Azari details.  It was designed to maximize the number of times Class

16  members would see it.  The bill stuffer Notice, which was sent twice, was inserted into Verizon

17  billing envelopes, with a conspicuous "call-out" on the face of the envelope (which Class

18  members are virtually guaranteed to open), and it was colored differently from all other pieces of

19  paper in the envelope.   The postcard notice had bold call out language in red ink on the front of

20  the postcard.  The e-mail Notice was also sent twice to e-mail addresses registered with Verizon,

21  with prominent alerts and links to the settlement website.  In addition, the Notice was included on

22  Verizon's own corporate website, was published twice in *USA Today*, and on the Settlement

23  website (along with all other pertinent case filings).  Objectors fail to cite any authority for the

24  proposition that the Notice Plan was in any way deficient.  The Court should overrule their

25  objections.

26      **B.      The Claims Process Approved By This Court Uses A Well-Accepted Claims
                Process And Entitles Class Members To Full Refunds Of All Unauthorized
27              Charges**

28          Objector Drozdov, Turkish, and Pollack also raise objections to the claims process

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM        - 20 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1   established by the Settlement.  Without relying on any authority, Objectors argue that the claims

2   process was unduly burdensome because it (1) requires Class members to verify under penalty of

3   perjury, to the best of the Class members' knowledge and belief, that they were charged by a third

4   party for services they did not order and did not use and for which they had not already received a

5   refund or released claims, (2) requires Class members to request billing summaries to determine

6   the precise amount of third-party charges paid, and (3) allows Verizon and the aggregators to

7   challenge claims that they believe are do not qualify under the Settlement.

8          It is certainly true that the ideal outcome in any case from the perspective of the plaintiffs

9   is an arrangement that provides monetary relief without any effort on the part of the Class

10  members and without any verification of whether they are entitled to it.  But this Settlement is the

11  product of arms-length negotiation, as required by prevailing law.  And Verizon would never

12  agree to pay claims that do not qualify under the Settlement (e.g., claims for charges that the

13  Class member never paid or claims for services that the customer repeatedly used) – in short, pay

14  *over* 100% of the value of its liability.  In the words of the well-respected mediator in this case,

15  "this Settlement represents the best possible resolution . . . of this complex and highly uncertain

16  litigation." Dkt. No. 91-2 (Declaration of Judge Daniel Weinstein (Ret.), ¶ 21).

17         First, it is quite common for claim forms to require signature under penalty of perjury,

18  witness Judge Alsup's original order in *Inc21* (Exhibit 2, at 47:17-20).[10]   In fact, claim forms in

19  most other settlements requiring submission under penalty of perjury do not have the softening

20  "to the best of my knowledge and belief" language that the parties included here. [11] It is clear

21  from the face of the claim form that, if a class member's good faith recollection is that he or she

22  did not receive a refund or release claims, then signature and submission of the claim form is

23  proper.

24

25  [10]    Courts regularly approve claims-made settlements where the claimant files under penalty of
    perjury.  *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 235 (S.D.Ill. 2001); *McKinnie v.*
26  *JP Morgan Chase Bank,* 678 F.Fupp.2d 806, 814 (E.D. Wis. 2009).

27  [11]    Compare and contrast, the under-penalty-of-perjury claim form the FTC promulgated in
    January of 2013 in the *Cold Med* settlement (http://www.ftc.gov/opa/2013/01/iovaterefund.shtm),
28  attached hereto as Exhibit 5, with the claim form in this Settlement.

1    Second, the opportunity to request free billing summaries (copies of bills over the seven-

2    year class period would normally be a very expensive proposition) in order to file full payment

3    claims -- far from representing an impediment to recovery as urged by the objectors --  instead

4    represents "the first time that customers of one of the two dominant telephone companies in the

5    country will have the opportunity to recover 100% of all unauthorized charges they paid, and to

6    obtain information for free and in a customer-friendly manner that will allow them to claim all

7    unauthorized charges."  Weinstein Decl., Dkt. No. 91-2, ¶ 14.

8        Third, the challenge process involves several layers of protection for the Class members,

9    and is in line with other settlement processes. NEWBERG, § 11:35 (discussing challenge processes

10   in class action settlements).  Flat payment claims may only be challenged on the grounds that the

11   claimant did not actually pay a charge, any such charge was already refunded, the claimant

12   already released its claims against Defendants related to the charge, or the claimant used the

13   product or service.    Under the settlement, no claim can be challenged solely on the basis of a

14   Letter of Authorization or a Third Party Verification.

15       Similarly, challenges to full payment claims require the challenging party to present

16   records showing that one of the three aforementioned bases (nonpayment, prior refund, or

17   release), or that the claimant used the product or service (which suggests that he or she intended

18   to purchase it).  A challenge cannot be made solely on the basis of a purported letter of

19   authorization or a third-party verification.  All challenges must be submitted under penalty of

20   perjury.  Then, all challenged claimants still have the opportunity to rebut challenges through

21   sworn testimony.   Class counsel will assist Class members through this stage, just as they have

22   assisted Class members through the notice stage.  Challenged claims will be resolved either by

23   the Settlement Administrator or this Court.

24       The challenge process implemented is thus fair and reasonable, protecting Verizon and the

25   aggregators from fraudulent claims, while protecting Class members against unfair challenges,

26   and all the while ensuring that Class members have the ongoing benefit of assistance and

27   continued representation by Class Counsel.

28       Overall, the claims process provides for two alternatives for each Class member: (1) a

1   simple claim form, submitted online or by mail, for a meaningful payment amount, without any

2   documentation, notarization, or further investigation required, or (2) a claim form detailing all

3   charges, again submitted online or by mail, with potential recovery of hundreds or thousands of

4   dollars, also without any documentation, notarization, or further investigation required (the free

5   billing summaries will provide the relevant information for them in digest form).  Objectors'

6   claims that this process is unduly burdensome are untethered to the reality of complex litigation

7   and the give-and-take essential to the settlement of such cases.

8           Additionally, Drozdov and Turkish complain that the Settlement requires Full Payment

9   claimants to attach the billing summary "even though the summary information is in the

10  possession of Verizon."  This reflects a misunderstanding of the Settlement.   While Verizon *does*

11  have the summary, it does <u>not</u> have the *completed* summary, marked with Xs by the claimants to

12  indicate which of the listed charges he or she claims were not authorized.  That information is

13  necessary for the claims to be processed in accordance with the settlement since only class

14  members who claim unauthorized charges may recover under the settlement.  The Court should

15  overrule those objections.

16  **C.      The Unprecedented, Robust Injunctive Relief Also Supports A Finding That**

17  **The Settlement As A Whole Is Fair, Reasonable, And Adequate.**

18          Objectors also attack the injunctive relief provided for by the Settlement as insufficient.

19  In particular, Objectors claim that the two-year period provided for by the Settlement Agreement

20  is insufficient; Objector Drozdov claims it should be "at least three years."  Drozdov Obj. at 23.

21  The FTC argued that customers should not be required to opt *out* of third-party charges (by

22  selecting Verizon's free "bill blocking"), but instead they should be required to opt *in* to third-

23  party charges (i.e., customers could be charged for third-party products only if they have

24  explicitly opted into the service).  The FTC also argues that, like with the Notice in this case, it

25  considers mailed notice of the availability of the bill blocking service to be insufficient because

26  customers may not read it.

27          We address the opt-in argument first.   The Settlement *does* require opt-in for all new

28  accounts; an account cannot be opened until and unless a customer makes a choice to allow or to

1    block third party charges.  (Section II.A.1)[12]   That is a sea-change in the industry.  And, as the

2    other injunctive provisions of the Settlement make clear, Verizon is required to contact existing

3    customers and inform them of the existence of third party billing and the ability to block it –

4    twice in a row beginning thirty days after the Effective Date of the Settlement and once a year

5    thereafter (*Id.),* as well as the other provisions, previously discussed, such as a separate letter

6    from the aggregator any time a new charge is proposed to be added to the customer's bill,

7    specifically notifying the customer of this and containing prominent language on the outside of

8    the envelope telling them that the envelope "CONTAINS IMPORTANT INFORMATION

9    ABOUT NEW CHARGES ON YOUR VERIZON BILL."  (*Id. §* II.A.7.    In fifteen years,

10   neither through legislation, rulemaking, nor litigation has anyone been able to effect such a

11   change in the industry.   And these relief measures were negotiated *in addition* to the full

12   compensation that each Class member is entitled to receive pursuant to a valid claim submission.

13   Nevertheless, it should be noted that the mediator in this case, Judge Weinstein, stated: "In my

14   opinion, either the monetary relief aspects of the Settlement or injunctive relief aspects of the

15   Settlement would be sufficient to conclude that the Settlement represented an outstanding

16   achievement for the Class."  Dkt. No. 91-2 (Weinstein Decl., ¶ 17).

17         Objectors fail to cite a single authority for the proposition that these aspects of the

18   injunctive relief are deficient – let alone that they could make the Settlement unfair, unreasonable,

19   or inadequate.  Given that these injunctive provisions take the opt-in approach farther than it has

20   ever been taken, it is hard to see how this robust injunctive relief is somehow inadequate.

21   Plaintiffs respectfully submit that, contrary to Objectors' claims, the injunctive relief is, by itself,

22   an extraordinary outcome in an extraordinarily risky case against one of the largest telephone

23   companies in the country, and that when added to the monetary relief afforded to the Class,

24   _____

25   [12]   Before the FCC last summer, Verizon was explicit that this settlement imposed an opt-in
requirement.  See Exhibit 6 hereto at page 11:   "Due to the wireless industry's adherence to the

26   Mobile Marketing Association's best practices, which include a double opt-in requirement, it
would be counterproductive and impose needless costs of compliance on carriers for the
Commission to adopt a different opt-in requirement, such as the one in Verizon's wireline class

27   action settlement agreement.  *Comments of Verizon and Verizon Wireless*, In the Matter of
Empowering Consumers to Prevent & Detect Billing for Unauthorized Charges (Cramming), CG

28   Docket No. 11-116 (June 25, 2012) (http://apps.fcc.gov/ecfs/document/view?id=7021977694).

1   results in a Settlement that far exceeds the "fair, reasonable, an adequate" standard.

2         **D.**     **The Remaining Objections Lack Merit Because They Fail to Address the**
    **Settlement, or They Focus On Concerns Peculiar to the Objector and Not to**
3             **the Class as a Whole.**

4       None of the remaining objections has merit (all are found in Group Exhibit 1 hereto).

5       Mr. Green objects.   Much of what he has written is difficult to comprehend.[13]  It is clear,

6   however that he objects to the inclusion of governmental agencies in the class definition,

7   reasoning that government entities should not be permitted to recover because the federal

8   government has failed to police cramming in the first instance.  But Mr. Green misreads the

9   Court's class definition:  it expressly <u>excludes "the U.S. government and any State government or</u>

10  <u>instrumentality thereof</u>."  (Preliminary Approval Order, Dkt. No. 99, ¶2.)  Second, Objector

11  Green objects that the class period should be ten years (instead of the almost seven years in the

12  Settlement).   Mr. Green provides no basis for his selection of a ten-year class period, and

13  certainly no legal authority for it.  The class period set forth in the Settlement is significantly

14  longer than the statute of limitations under RICO and many state consumer protection statutes

15  (e.g., the four-year statute of limitations of the California Unfair Competition Law is longer than

16  most).

17      Similarly, Objector Morrison objects to the Settlement because he believes that Verizon's

18  executives should be personally liable for all unauthorized charges paid during the Class Period

19  rather than Verizon's stockholders, because he believes that the stockholders will be ultimately

20  financially responsible for this Settlement.  Because of the huge amount of money made available

21  for the Class Members' benefit, as well as the legal and practical hurdles in pursuing such

22  executives as individual defendants, a strategy of pursuing individual liability would likely have

23  resulted in an outcome far inferior to this Settlement.   Moreover, his argument is beside the

24  point: the question here is the fairness of the settlement to *class members*, not shareholders.

25  _____

26  [13]  *In re TD Ameritrade Account Holder Litig.*, C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal.
    Sept. 13, 2011) (overruling unintelligible objections as well as one-sentence objections that stated
27  no grounds for objecting);  *Browning v. YahooA Inc.*, C04-01463 HRL, 2007 WL 4105971 (N.D.
    Cal. Nov. 16, 2007) ("Roughly 10% of the objection letters were incomprehensible. The very
28  nature of these objections makes it impossible for the Court to address them, but such objections
    are to be expected from a settlement class including 14 million people. These objections are
    overruled.")

1    Separately, Mr. Morrison also expresses his strong support for measures aimed at correcting the

2    problem of cramming.  Again, these observations underscore the fairness, reasonableness, and

3    adequacy of the Settlement.

4         Objector Jones appears to object to Class Counsel's fee because she does not want her

5    recovery to be diluted by attorneys' fees ("I want all my winnings of the class action suit to come

6    directly to me in the Moore v. Verizon suit").  This misconstrues the nature of the Settlement; Ms.

7    Jones is entitled to full recovery under the Settlement *regardless* of Class Counsel's fee.  Any

8    fees are paid in addition to payments to class members and will not dilute her or any other class

9    member's recovery.   Objector Principio appears to make the same argument as Jones's.  His

10   letter states, in its entirety, "I feel it is unfair to have to pay for my own attorney's fees. But I

11   would like my money that's due me."  (See Group Exhibit 1 hereto.)

12        Objector Margulies objects to the settlement because it does not provide for punitive

13   damages, while Drozdov objects that the amount offered in settlement is not enough since it

14   doesn't account for treble damages under RICO.  Both arguments are without merit.  *See*

15   *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 964–65 (9th Cir.2009) ("courts generally

16   determine fairness of an antitrust class action settlement based on how it compensates the class

17   for past injuries, without giving much, if any, consideration to treble damages."); *Mangone v.*

18   *First USA Bank*, 206 F.R.D. 222, 229-30 (S.D. Ill. 2001) ("A few Class Members object because

19   they believe the Settlement does not sufficiently punish Defendants... Punitive damages are

20   generally not appropriate in measuring the fairness of a proposed class action settlement.");

21   *Duhaime v. John Hancock Mut. Life Ins.* Co., 177 F.R.D. 54, 70 (D.Mass.1997) ("the fact that

22   [the defendant] is not 'sufficiently punished' is not itself a reason for finding the settlement

23   unfair").

24        Objector Price appears to misconstrue the Settlement as well; he seems to believe that the

25   Settlement limits recoveries to $40, but it does not.  In his particular case, moreover, Mr. Price

26   did not incur relevant charges during the class period and thus had no damages and is thus not a

27   class member.   Zimmers Decl. ¶ 14.   Mr. Price cites personal issues, saying he did not receive

28   credits due him and had his credit rating adversely affected.   Individual issues such as this are not

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM       - 26 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1  appropriate objections to a class settlement.  *In re Am. Investors Life Ins. Co. Annuity Mktg. &*

2  *Sales Practices Litig.,* 263 F.R.D. 226, 239-40 (E.D. Pa. 2009) enforcement granted in part,

3  denied in part, 695 F. Supp. 2d 157 (E.D. Pa. 2010) ("Four of the twelve objectors … object to

4  the settlement for personal reasons. *** Mr. Gopoian objects because he wants to recover $430

5  from a charge on his account. These four personal complaints do not upset the settlement's

6  fairness to the class as a whole.")   In the same vein is David Rourke's objection.  In its entirety it

7  states:  "I got severe damages for mental anguish; I <u>object</u> to this.  Verizon owes me, they turned

8  in incorrect credit reports on me ruining my credit for years now."  (Emphasis in original.)  That

9  is an individual issue, not an objection to the settlement.   The same is true of Todd Elliott's

10 lengthy letter to the Court; it addresses nothing about this settlement, but rather Verizon's failure

11 to provide tiered service.   Similarly, Sanae Dillard does not object to the settlement, just to being

12 told that she had previously received a full refund for her Third Party Charges.[14]  *Browning v.*

13 *YahooA Inc.,* C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ("Another 10% of

14 the class members who objected complained, not about the class settlement, but about alleged

15 errors in the class member's own particular credit report. For instance, some class members

16 complained that a lender's tradeline included an incorrect balance, or that a particular line of

17 credit should no longer be reported. Such objections are irrelevant to the determination of whether

18 the settlement should be finally approved.")

19      Finally, in addition to objecting to the claims process, Turkish raises two further

20 objections.  First, Turkish argues that the requirement that objectors appear in person at the final

21 approval hearing in order to preserve their rights on appeal deprives the Class of due process.

22 There simply is no authority to support this position, and Turkish fails to cite to any.  Indeed, the

23 law is squarely to the opposite. See, e.g *See Multi-Ethnic Immigrant Worker Organizing Network*

24 *v. City of Los Angeles*, 2009 WL 1065072, at * 7 (C.D. Cal. March 19, 2009) (class member

---

[14]      Sanae Dillard's letter complained that she requested a billing summary on behalf of her mother Maxine Dillard, but never received the summary.  As it turns out, Ms. Dillard entered the wrong account number in her request (she provided a Verizon wireless account number, not a Verizon landline account number).  In September 2012, Class Counsel had multiple communications with Ms. Dillard, obtained from her the correct account number and provided the information to the settlement administrator.  On October 10, 2012, Ms. Dillard confirmed receipt of her billing summary, which, as it turned out showed that she had already received full credit for all Third Party Charges, a net <u>credit</u> of some $48.  (Jacobs Decl. Re: Objections ¶ 4)

1    objections will only be considered if accompanied with a notice of intention to appear at the

2    fairness hearing); *In re Lorazepam & Clorazepate Antitrust Litigation*, 2003 WL 22037741, at *5

3    (D.D.C. June 16, 2003) ) (same); *In re Pre-Filled Propane Tank Marketing & Sales Practice*

4    *Litigation*, 2010 WL 924379, at *5 (W.D. Mo. March 11, 2010) (same); *In re Terazosin*

5    *Hydrochloride Antitrust Litigation*, 2002 WL 31761433, at *1 (S.D. Fla. March 13, 2002) (same);

6    *In re Qiao Xing Securities Litigation*, 2008 WL 872298, at *5 (S.D.N.Y. April 2, 2008) (same).

7    Moreover, Turkish's lawyer in fact noticed his intent to appear at the Final Approval Hearing.

8            Second, Objector Turkish argues that this Settlement must fail because the Class notice

9    fails to identify the *cy pres* beneficiary that will receive the money remaining from checks sent to

10    Class Members that go uncashed, expire and become void.  Under the Settlement, consistent with

11    general practice, checks sent to Class Members that remain uncashed 90 days after issuance will

12    become void, and the funds represented by uncashed checks will ultimately be distributed based

13    on Court order according to established *cy pres* principles.  Typically, in almost every settlement,

14    despite the fact that checks are sent to whatever address each Class Member desires, some Class

15    Members fail to cash their settlement checks.  Objector Turkish claims that this converts the

16    Settlement into a "*cy pres* settlement," like the Ninth Circuit addressed in *Dennis v. Kellogg Co.*,

17    697 F.3d 858 (9th Cir. 2012), and that the Class Notice must therefore have identified the

18    proposed recipient of the *cy pres* funds.  This argument strains credulity and misreads *Kellogg*.  In

19    *Kellogg*, $2.75 million was made available for payments to customers (with a limitation of $15

20    per claimant), with unclaimed monies to go to charities selected by the parties, <u>and</u> an additional

21    $5 million "worth" of food products were to be donated by Kellogg to charities selected by the

22    parties that feed the indigent.  697 F.3d at 862-63.  Thus, *Kellogg* was a true *cy pres* settlement;

23    that was where the overwhelming bulk of any payments by Kellogg would ultimately go.  Here,

24    on the other hand, only a tiny fraction of the money will go to the *cy pres* beneficiary.  Any *cy*

25    *pres* aspect of this settlement is an incidental contingency, as in the vast majority of consumer

26    class actions.[15]  This is not a *cy pres* settlement and the objection is meritless.

27

28

---

[15]   The [Proposed] Agreed Final Approval Order And Judgment (¶ 16), attached as Exhibit 7, specifies Consumers Union as the *cy pres* recipient in the event of available funds.  Consumers Union fits all the requirements of an appropriate *cy pres* recipient:  it is actively involved in consumer protection in the field of telephony (including before the FCC in support of greater

1

**E.     Most Purported Objectors Lack Standing.  One Objection May Be Fraudulent. At least two are from professional objectors.**

2

3     As the concurrently-filed Declaration of Gary Zimmers (¶¶ 7-19) details, the following

4     persons are not members of the Settlement Class (Joseph and Betty Fix, Mark Drozdov, Forrest

5     Turkish, Dolores Warner, Steven K. Morrison, Richard Price, Ronald Riley, John J. Pentz, Jr.,

6     Ronald Green, Maxine Dillard/Sanae Dillard, Elizabeth Kirk-Prevatte, and Melissa Brown) and,

7     as such, lack standing to object to the Settlement.  F.R.Civ.P. 23(e)(5).  Further, the following

8     purported objections were not filed in compliance with the requirements specified in the Court's

9     Preliminary Approval Order for objections, and thus should be rejected on that basis alone:

10    Shirley A. Jones, Barbara Hilton, Ronald M. Green, Joseph and Betty Fix, Elizabeth Kirk

11    Prevatte, Daniel Martinez, Forrest Turkish, David Rudd,  Irene Nelson, Maurice M. Margulies,

12    Mrs. C. Parker, Richard Principio, Dr. D. Warner, Larry Stover, Todd Elliott, Patrick Rudd and

13    Sanae Dillard/Maxine Dillard.   As previously noted, Plaintiffs have chosen to respond to

14    arguments made in those objections so as to satisfy the Court as to the propriety of final approval,

15    but the fact remains that the objections are not properly before the Court.   Two purported

16    objections, however, merit special discussion, that of Pentz and Turkish.

17          **1.   The Purported Pentz Objection.**

18    According to the Zimmers Declaration ¶ 15, John J. Pentz, Jr. is not a member of the class

19    and never was billed for any Third Party Charges during the class period.  John J. Pentz, Jr.

20    purportedly filed an objection on August 16, 2012.  (Dkt. No. 133.)  According to his obituary,

21    however, he had passed away six weeks <u>earlier</u>, having died on June 28, 2012 at the age of 84 at

22    his home in Stroudsburg, Pennsylvania. *See*

23    http://www.wmhclarkfuneralhome.com/fh/obituaries/obituary.cfm?o_id=1521966&fh_id=13105.

24    A copy of his obituary is attached hereto as Exhibit 4.

25    Yet, nowhere does the objection disclose that Mr. Pentz is deceased or claim that it is

26    brought on behalf of Mr. Pentz's estate.  Rather, the objection affirmatively states that John J.

27

28    protections against cramming) thus closely aligned with the purpose of the litigation, it is national in scope, and has no ties to any of the parties. *Compare, Nachshin v. AOL, LLC,* 663 F.3d 1034 (9th Cir. 2011).

1  Pentz, Jr. "hereby objects" to the settlement and that "Class Member Pentz" intends to appear at

2  the Final Approval Hearing, through his counsel.  It even purports to articulate what "Objector

3  Pentz" believes.  Obviously, he could not do any of those things if he had died, as he appears to

4  have done six weeks before he "filed" his objection.[16]  It is not clear who actually authorized the

5  filing of the objection (if Mr. Pentz was deceased, as the obituary would suggest), but counsel

6  who filed it, Steve A. Miller, surely has not been forthright with the Court about it, let alone with

7  respect to whom he represents (he claims he is the "Attorney for Objector John J. Pentz, Jr.").

8  More about Mr. Miller momentarily.

9          If Mr. Pentz had in fact passed away, the objection is plainly misleading -- perhaps

10  intentionally so in an attempt to obscure the fact that Mr. Pentz's son is a serial objector to class

11  action settlements and the likely driving force behind the objection.  According to Mr. Pentz's

12  obituary, he was survived by, among others, his son "John J Pentz, III" of Sudbury,

13  Massachusetts, who appears to be the same John J Pentz, III of the "Class Action Fairness Group"

14  (formerly known as the "Class Action Objectors Group)[17] in Massachusetts, an attorney and

15  notorious professional objector.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 284 (3d Cir.

16  2011) *cert. denied,* 132 S. Ct. 1876, (U.S. 2012) *reh'g denied,* 132 S. Ct. 2451 (U.S. 2012) ("John

17  J. Pentz, III, Esq. [Argued], Class Action Fairness Group, Maynard, MA, for Non Party–

18  Appellant."); *Tenuto v. Transworld Sys., Inc.*, CIV. A. 99-4228, 2002 WL 188569 (E.D. Pa. Jan.

19  31, 2002) ("John J. Pentz, Jr. pressed two objections through his son, an attorney with The

20  Objectors Group in Massachusetts.").   He has been routinely criticized by courts for his

21  objections. *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361,

22  2003 WL 22417252 (D. Me. Oct. 7, 2003) ("Attorney Pentz "filed a groundless objection" and

23  "appears to be a repeat objector in class action cases").[18]

---

24  [16] The objection also states that "Mr. Pentz" received notice of the settlement and requested a
25  summary of "his" third-party charges on June 28, 2012, the very same day that Mr. Pentz
    apparently had died.  Interestingly, according to the Settlement Administrator, the email address
26  that *Mr. Pentz* supposedly submitted was "jjpentz3@gmail.com."   See Borges Decl. ¶ 3.

27  [17]    See, "Seventh Circuit Shoots Down Professional Objector,"
    http://pslranugget.blogspot.com/2005/07/seventh-circuit-shoots-down.html
28

[18]   Among others, *see, Barnes v. Fleetboston Fin. Corp.,* CA 01-10395-NG, 2006 WL 6916834

1   Compounding matters, not only is Mr. Pentz a serial objector, but he is "represented" in

2   this objection by *another* serial objector, Steve A. Miller.  *In re Initial Pub. Offering Sec. Litig.*,

3   728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (finding attorney Steve A. Miller to be one of several

4   serial objectors who engaged in bad faith and vexatious conduct, requiring the posting of an

5   appeal bond and noting "that professional objectors undermine the administration of justice by

6   disrupting...settlement in the hopes of extorting a greater share of the settlement for themselves

7   and their clients")

8   The bona fides of the purported Pentz objection should be reviewed with particular care.

9   It should not be allowed to delay or interfere with the final approval of the settlement and the

10  delivery of benefits to the class.

11  **2.      The Purported Turkish Objection**

12  According to the Zimmers Declaration ¶ 10, Mr. Turkish is not a member of the class and

13  never was billed for any Third Party Charges.  Turkish therefore has no standing to object.  Nor,

14  as a matter of procedure, does he appear to have complied with the requirements of Paragraph 11

15  of the Court's Preliminary Approval Order.   Insofar as can be determined, Turkish never filed his

16  purported objection with the Clerk of the Court as required by the Court's Preliminary Approval

17  Order and as specified in all notices.  It should be denied on these bases alone, as well as lacking

18  merit, as discussed above.

19  It seems appropriate to note one other aspect of the Turkish document. The purported

20  Turkish objection comes from attorney Darrell Palmer.  That is instructive.  Several courts have

21  noted that Mr. Palmer is a serial objector to class action settlements, have found his objections

22  lacking in merit and of questionable motivation, have found his behavior in bad faith and

23  (D. Mass. Aug. 22, 2006) ("Feldman and her attorney, John Pentz (who is also her son-in-law) are
24  professional objectors"); *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853, 2007 WL
    4225486, at *3 (S.D.N.Y. Nov. 28, 2007) *In re Wal-Mart Wage & Hour Employment Practices*
25  *Litig.*, MDL 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010) (objectors through counsel Pentz
    required to post appeal bond of $500,000 for meritless objection and frivolous appeal and noting
26  that objectors' "counsel have a documented history of filing notices of appeal from orders
    approving other class action settlements, and thereafter dismissing said appeals when they and
27  their clients were compensated by the settling class or counsel for the settling class."); *Taubenfeld
    v. AON Corp.*, 415 F.3d 597, 599 (7th Cir.2005); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M
28  07-1827 SI, 2013 WL 257125 (N.D. Cal. Jan. 23, 2013) (sanctions sought against John Pentz for
    allegedly filing objection without the authorization of the objector).

1   potentially violative of local and ethical rules and have chided him for not entering appearances in

2   the matters in which he purports to represent objectors.  *See, e.g., In re Uponor, Inc., F1807*

3   *Plumbing Fittings Products Liab. Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn.

4   Sept. 11, 2012) ("the Court finds that the Palmer Objectors have evidenced bad faith and

5   vexatious conduct. Most critically, the Palmer Objectors are not class members" and "the Palmer

6   Objectors appear to be represented by an attorney who has not entered an appearance in this case

7   and who is believed to be a serial objector to other class-action settlements….This attorney,

8   Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents

9   filed on their behalf bear his California mailing address rather than the Texas addresses of the

10  Palmer Objectors…. The Palmer Objectors' objections and subsequent appeal appear little more

11  than dilatory tactics of questionable motivation.")[19]

12       Mr. Palmer continues his practice of refusing to state the address of the purported objector

13  notwithstanding the explicit requirement of the Preliminary Approval Order (¶ 11(a)) that it be

14  provided, cryptically stating merely that "his present address is in New Jersey."

15       As with the Pentz purported objection, the Turkish objection appears to be the result of a

16  professional objector.  As one court aptly described the problem with these professional objectors

17  (coincidentally, in a case where Mr. Pentz had filed one of his objections):

18            Repeat objectors to class action settlements can make a living simply by
          filing frivolous appeals and thereby slowing down the execution of settlements.
19        The larger the settlement, the more cost-effective it is to pay the objectors rather
          than suffer the delay of waiting for an appeal to be resolved (even an expedited
20        appeal).  Because of these economic realities, professional objectors can levy what
          is effectively a tax on class action settlements, a tax that has no benefit to anyone

21  _____

22  [19]   *Heekin v. Anthem, Inc.*, 1:05-CV-01908-TWP, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013)
    (requiring a $250,000 appeal bond and stating that the "Court does find evidence of bad faith or
23  vexatious conduct on the part of appellants. Mr. Paul appears to be represented by an attorney
    who has not entered an appearance in this case. It is worth noting that attorney Darrell Palmer
24  ("Mr.Palmer"), previously requested leave to appear pro hac vice in this case (Dkt.747).
    However, this request was withdrawn after the Court scheduled a teleconference to address Mr.
25  Palmer's motion (Dkt.754). ***Plaintiffs have produced evidence that Mr. Palmer is likely a
    serial objector and other courts have recognized similar behavior" and "this Court finds such
26  behavior in bad faith and also potentially violative of local and ethical rules."); *In re TFT-LCD
    (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2013 WL 621791 (N.D. Cal. Feb. 19, 2013) (finding
27  Mr. Palmer in civil contempt of Court for failing to comply with the Court's orders relating to his
    objector client's refusal to appear for deposition and noting that the objections failed to comply
28  with requirements for filing objections since several objectors "represented by Palmer, filed new
    objections to the Round 2 Settlements, again failing to include their addresses on the objection.").

1
2

other than the objectors.   Literally nothing is gained from the cost.  Settlements
are not restructured and the class, on whose behalf the appeal is purportedly raised,
gains nothing.

3
4

*Barnes v. FleetBoston Fin. Corp,* CA 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22,

2006).

5
6

F.      **Seventeen/Of  The Purported Objections Were Not Filed And Served In**
        **Compliance With The Court's Preliminary Approval Order**

7          The deadline for filing objections was August 16, 2012 for Group 1 class members,

8    January 18, 2013 for Group 2 class members, and June 3, 2013 for Group 3 class members.  Two

9    Group 1 objections (Irene Nelson and Sanae Dillard) made late objections – Nelson's postmarked

10   on August 27, 2012 and Dillard's on September 4, 2012.  Separate and apart from all other

11   reasons for rejecting the purported objections, the late filing supports rejection.  *In re TFT-LCD*

12   *(Flat Panel) Antitrust Litig.,* MDL 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27,

13   2011) ("His objection herein is untimely, having been mailed on November 28, 2011, rather than

14   filed with the Court on that date. On that basis alone, the Court refuses to consider the

15   objection.")

16         The Preliminary Approval Order provided that any objection "must be in writing and

17   include (1) the name, address and telephone number of the objecting Settlement Class

18   Member;…"  The following purported objections did not contain this required information:

19   Barbara Hilton (no phone number), Daniel Martinez (no phone number), Richard Principio (no

20   phone number), Forrest Turkish (no address or phone number), and David Rourke (no phone

21   number).  (See Group Exhibit 1.)  On this separate and independent basis, each of these purported

22   objections should be denied.

23         Another requirement of any proposed objection established by the Court's Preliminary

24   Approval Order is that any objection "must include … (iv) the caption and case number appearing

25   on the Settlement Class Notice;…."   The following purported objections failed to comply with

26   this requirement :  Shirley A. Jones, Barbara Hilton, Ronald M. Green, Joseph and Betty Fix,

27   Elizabeth Kirk-Prevatte, Daniel Martinez, Irene Nelson, Maurice M. Margulies, and Mrs. C.

28   Parker.  (See Group Exhibit 1.)  For this reason, in addition to others stated elsewhere in this

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM          - 33 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA

1    memorandum, these purported objections should be rejected.

2            The Court's Preliminary Approval Order specifies that, "Any Settlement Class Member

3    who wishes to object to the proposed Settlement … must file with the Court and serve upon Class

4    Counsel a written objection no later than August 17, 2012."  The following purported objections

5    were not filed with the Court:  Forrest Turkish, Irene Nelson, Mrs. C. Parker, and Daniel

6    Martinez.   The following purported objections were not served on counsel:  Richard Principio,

7    Dr. D. Warner, Larry Stover and Todd Elliott.   For this reason, separate and apart from other

8    substantive and procedural failings, the foregoing purported objections should be denied.  *In re*

9    *TD Ameritrade Account Holder Litig.*, C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13,

10   2011) ("There were seven additional objections that were submitted to the Court, but that were

11   *not* served on counsel. Since these objections were not submitted in compliance with the Notice,

12   they are not properly before the Court.")

13           Finally, the Court's Preliminary Approval Order required that all objections "must be in

14   writing and include : … (ii) a detailed statement of objections, including all factual and legal

15   authority for such objection."   The following purported objections contained no such detailed

16   statement of objection:  Barbara Hilton, Patrick Rudd, Daniel Martinez, Elizabeth Kirk-Prevatte,

17   and Mrs. C. Parker.  (See Group Exhibit 1.)   Actually, Mr. Rudd's letter says, "Patrick Rudd,

18   objector to overcharges" and does not appear to object to the settlement.

19   **III.    Developments Subsequent To Preliminary Approval Only Make The Settlement
             Better**
20

21           As we stated in the motion for preliminary approval, this is a remarkable, unprecedented

22   settlement.  But, since the Court's preliminary approval of the settlement, there have been two

23   developments in the case that make an already- extraordinary settlement even better.   Those two

24   developments are:  (a) Verizon has exited the business of billing for the enhanced services that

25   are the subject of this settlement; and (2) the parties have filed a Stipulation, amending the

26   Settlement Agreement.  We discuss those two developments in turn.

27

28

1   **A.  Verizon Has Ceased Billing For The Enhanced Services Involved In This Case.**

2       In the Motion For Preliminary Approval (Dkt. 91), at pages 4-5 and 9-12, we detailed the

3   various elements of injunctive relief that the Settlement provides, which, as we stated, "inevitably

4   must have a profound effect on the ability of anyone to cram Verizon customers."  (*Id.* at 4.)   In

5   a word, if those provisions would not eliminate cramming, they would certainly make it very,

6   very difficult to continue on any scale.   But, then, subsequent to the granting of Preliminary

7   Approval, Verizon stated that it would (and as of December 31, 2012, *did*) exit the business of

8   billing for what Verizon states are the vast bulk of the type of third party charges that have given

9   rise to this litigation.   (Schaefer Decl. ¶ 46; Jacobs Decl. ¶ 7.)   Now it <u>is</u> a certainty that Class

10  Members will not be billed for these Third Party Charges again in the foreseeable future.

11      **B.  Changes Made To The Settlement Agreement.**

12          On March 1, 2013, the Parties filed a Stipulation with the Court (Dkt. No. 158), making

13  certain amendments to the Settlement Agreement.   There are two[20] principal changes effected by

14  that Stipulation:  (a) no third party providers are released by the Settlement,[21] and (b) no claim

15  can be challenged on the mere basis of a purported Letter of Authorization or Third Party

16  Verification.  (These changes are incorporated into the attached [Proposed] Agreed Final

17  Approval Order And Judgment.)  The combined effect of these two changes is to narrow the

18  number of class member claims that can even be challenged by Verizon, the Aggregators or Third

19

20  [20]   In their filings in response to the Stipulation (Dkt. Nos. 159 and 160, respectively), the FTC and DOJ have suggested a third change is effected by the Stipulation: that Class Counsel will represent Class Members with respect to any challenges to their claims, but that is not new;

21  hence the provision of the original I.D.3 that provided that "***At the same time a challenge is made, a complete copy of any records supporting the challenge shall be provided to Class

22  Counsel and the Claimant."  Similarly, the forms approved by the Preliminary Approval Order include the following from the Website FAQs:  "#11.  What happens after I send in my Claim

23  Form? *** If a challenge is made to your claim, you will be notified and given an opportunity to respond and to receive, free of charge, the assistance of Class Counsel."  Likewise, the Claim

24  Form informs class members that, "Class Counsel will help you, for free, in the event your claim is challenged." Dkt. No. 91 Exhs. E and H.

25

26  [21]   The Stipulation also make explicit that no Aggregators are released from any action by any governmental entities (Dkt. No. 158 at p.2) except to the extent that the aggregator proves a

27  specific payment to a class member.  The Parties had never understood the Aggregators to be released from any governmental action by this Settlement (and the FTC argued in its filing before

28  this Court that they were not so precluded (Dkt 136 at 19:22 – 20:5) but the Stipulation makes it explicit.

1   Party Providers,[22] and to make explicit that no Class Member (regardless of whether they file a

2   claim in this case) is releasing any claims against any Third Party Provider, and that no claim can

3   be made by any third party or aggregator that such class member's claim has been settled should

4   any governmental entity proceed against any third party provider or Aggregator.

5        Since these changes result only in improving benefits under the Settlement – by narrowing

6   the scope of the release and limiting the bases upon which claims may be challenged – new or

7   supplemental notice to the class is not required.   E.g., *Shaffer v. Cont'l Cas. Co*, 362 F.App'x

8   627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class

9   member received the notice, the changes did not render the notice inadequate because they

10  narrowed the scope of the release.")

11                                 **CONCLUSION**

12       Class members have the ability to file claims for refunds of 100 cents on the dollar of all

13  crammed charges during the seven-year class period, and there is no possibility in the foreseeable

14  future of a return to the cramming that gave rise to this litigation.  By any definition, such a

15  settlement is fair, reasonable and adequate to the class.

16       And, it should be noted, that this is a net-net settlement.   No deductions are made from

17  the class's recovery for the substantial notice and administration costs of the settlement (in excess

18  of $5.5 million through May of 2013 – Redell Decl. ¶ 32) nor for attorneys' fees.   Those are paid

19  *in addition* to the monetary benefits paid to the class.

20       This Settlement, unlimited in its monetary relief to Class Members, and unprecedented in

21  the scope of its injunctive relief, has led a great number of Verizon customers to claim refunds for

22  unauthorized charges placed on their bills that they paid during the Class Period.  And, as a result

23  of this Settlement, millions more consumers have been educated about the problem of cramming,

24  and millions more have benefited from Verizon's subsequent exit from billing for so-called

25  miscellaneous or enhanced services, a move that was subsequently matched by its major

26  _____

27  [22]  This provision of the Stipulation should have the effect of streamlining the claim-review process by completely eliminating the ability to lodge a challenge based on an LOA or TPV, but we do not think it ultimately would affect the number of challenges *sustained*, since we believe

28  neither this Court nor any Settlement Administrator would uphold a challenge on the mere basis of a purported LOA or TPV, given how fraudulent and unreliable they have been found to be by various courts and governmental bodies.

1    competitor, AT&T, and then yet a third major player, Century Link.  As the mediator in this case

2    has already told the Court, this Settlement's monetary and injunctive features, each standing

3    alone, would merit a finding of fairness, reasonableness, and adequacy.  Together, they represent

4    a result that ought leave little room for doubt but that the Settlement is, at a minimum, fair,

5    reasonable and adequate to the members of the class and should be given final approval.

6           For the reasons stated, Plaintiffs respectfully request that the Court grant final approval of

7    the Settlement and enter the [Proposed] Agreed Final Approval Order And Judgment, attached

8    hereto.

9

10   Dated: June 11, 2013                    Respectfully submitted,

11                                           */s/ John G. Jacobs*

12                                           John G. Jacobs (*pro hac vice*)
                                             Bryan G. Kolton (*pro hac vice*)
13                                           JACOBS KOLTON, CHTD.
                                             55 West Monroe Street, Suite 2970
14                                           Chicago, Illinois 60603
                                             Telephone: (312) 427-4000
15                                           Facsimile:  (312) 268-2425
                                             E-mail:  jgjacobs@jacobskolton.com
16                                           E-mail:  bgkolton@jacobskolton.com

17                                           David Schachman (*pro hac vice*)
                                             LAW OFFICES OF DAVID SCHACHMAN, P.C.
18                                           55 West Monroe Street, Suite 2970
                                             Chicago, Illinois 60603
19                                           Telephone:  (312) 427-9500
                                             Facsimile:  (312) 268-2425
20                                           ds@schachmanlaw.com

21

22

23

24

25

26

27

28

1

Jeffrey F. Keller (State Bar No. 148005)
KELLER GROVER, LLP
2

1965 Market Street
San Francisco, CA 94103
3

Telephone:  (415) 543-1305
Facsimile:  (415) 543-7861
4

jfkeller@kellergrover.com

5

Michael W. Sobol (State Bar No. 194857)
Jahan C. Sagafi (State Bar No. 224887)
6

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
7

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
8

Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
9

msobol@lchb.com
jsagafi@llchb.com

10

*Class Counsel*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM     - 38 -
OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 4:09-CV-01823-SBA