# GROUP EXHIBIT 1

# LORY AXTMAN

May 5, 2013

RECEIVED

MAY 0 9 2013

JACOBS KOLTON, CHTD.

John G. Jacobs, Esq.
55 West Monroe Street, Suite 2970
Chicago, IL 60603

Henry A. Weissmann
355 S. Grand Ave., 35th Fl.
Los Angeles, CA 90071-1560

Clerk of the Court
1301 Clay Street, St . 400
S. Oakland, CA 94612

Dear Sirs,

Regarding Verizon Third Party Class Action Settlement, I hereby **object** to the Class Counsel's request for $7,500,000 attorneys' fees and incentive awards ($10,000 total), on behalf of my 4 current accounts with Verizon:  01 1769 1160119300 01; 01 1769 1115858645 03; 01 1769 1160164976 05; 01 1766 1131047894 09.

Signed,

Lory Axtman, owner of businesses and individual account holder

USA
Liberty
FOREVER

BAKERSFIELD CA 935

MOJAVE CA

RECEIVED

MAY 09 761

JACOBS KOLTON, CHTD.

A.V. Ice Creamery, Inc. dba
Cold Stone Creamery
43440 10th St. West #105
Lancaster, CA 93534

John G. Jacobs, Esq.
55 West Monroe Street, Suite 2970
Chicago, IL 60603

606036500l

# MELISSA BROWN

RECEIVED

MAY 2 8 20.3

JACOBS KOLTON, CHTD.

Melissa Brown
715 Cardinal Rd. Unit 120
Caldwell,  TX   77836
May 21, 2013

Clerk of the Court
1301 Clay St. 400 S
Oakland,  CA  94612

Please file this document with the case number given below.

John G. Jacobs, Esq.
55 West Monroe Street, Suite 2970
Chicago IL 60603

Henry A. Weissmann
355 S. Grand Ave., 35th Fl
Los Angeles CA 90071-1560

Verizon Third Party Billing Settlement
Class Action Settlement Administrator
P.O. Box 4655
Portland OR 97208-4655

RE:    Moore v Verizon, Case No. CV-09-1823 SBA
       Verizon Third Party Billing Class Action Settlement
       Objection to Counsels Request for Attorney Fees and Expenses and incentive  awards

Greetings:

I am a class member and object  to the settlement.  Specifically I object to the amount of fees and
incentive requested.   I have no objection to reasonable expenses or reasonable compensation for
counsels' time and efforts.  Seven million, five hundred is outrageously excessive.  The
incentives seem redundant as they will be compensated for successfully settling the class action.
They are not an injured party, yet they intend to reap much more than the class members will get.

I am sending a signed copy of this document to all of you.  My current phone number is (979)
272-6735.  This is also the number which makes me a class member.

Sincerely,

Melissa Brown

Melissa Brown
Class Member, Group 3
Verizon Account: 10 5496 2854164653 09
mmbrown tx @gmail.com



NORTH TEXAS TX P&DC
DALLAS TX 753
22 MAY 2013 PM 4 L

RECEIVED

MAY 25 2013

JACOBS KOLTON, CHTD.

John H. Jacobs Esq.
55 West Monroe St. Suite 2970
Chicago IL 60603

5060350614 5

Melissa Brown
Unit 120
715 Cardinal Rd.
Caldwell, TX 77836-4057

# SANDRA DIAZ

RECEIVED   5/29/13

JUN 04 2013

JACOBS KOLTON, CHTD.

I Sandra Diaz
did not authorize those third
party charges. I was ripped
of my rights as a consumer
were violated. I am looking
and requesting the Sum of 99,999.99
per the violation. please. delete
me from the Settlement.
I do not want to be put
in that law suite. I request
the above Sum as payment for
violation  Sandra Diaz

**SETTLEMENT CLAIM FORM**
**Moore v. Verizon Class Action Settlement Claim Form**
*Moore et al., v. Verizon et al.,* Case No. 09-cv-1823 SBA
**This Claim Form must be postmarked or received no later than October 21, 2013.**

To receive a settlement payment, please select *either* a Flat Payment Claim *or* Full Payment Claim, but not both, by checking the appropriate box below.

[ ] <u>Flat Payment Claim ($40)</u>:  I hereby submit a claim for the flat payment amount of $40 for all Third-Party Charges that were billed to me during the Class Period.  In support of my claim, I state that I: (i) paid for Third-Party Charges; (ii) did not knowingly authorize those Third-Party Charges; (iii) did not receive a full refund of those Third-Party Charges; (iv) did not intentionally use the service associated with those Third-Party Charges; and (v) did not release claims related to those Third-Party Charges in any prior litigation.

[ ] <u>Full Payment Claim (100% refund of unauthorized charges)</u>:  I hereby submit a claim for benefits in the full amount of any Third-Party Charges that I incurred during the Class Period, for a total of $ `99999` . `99` .  In support of my claim, I state that I: (i) paid Third-Party Charges in the claimed amount; (ii) did not knowingly authorize Third-Party Charges in the claimed amount; (iii) did not receive a full refund of the claimed Third-Party Charges; (iv) did not intentionally use the service associated with the claimed Third-Party Charges; and (v) did not release claims related to those Third-Party Charges in any prior litigation.

[ ] In support of my Full Payment Claim, I have attached the summary of third-party charges Verizon provided to me as part of this Settlement.

**Please Type or Print in the Boxes Below; Do NOT use Red Ink, Pencil, or Staples**

First Name: `Sandra`   MI: `A`   Last Name: `Diaz`

Business Name (if applicable):

Mailing Address (Street, PO Box, Suite or Office Number, as applicable): `794 madison avenue`

City: `paterson`   State: `NJ`   Zip Code: `07501`

Current Telephone Number: `973 - 684 - 6339`

Current Email Address: `Sandradiazmatos1970` @ `Gmail . com`
(Username)                                    (Domain name)

Are you submitting a claim for a current account or former account?  (If you terminated your service with Verizon on or after April 11, 2012, please select the Current Account option): Current Account: [✓]   Former Account: [✓]

If you are submitting a claim for a current account, please provide the Verizon Account Number to which the unauthorized charges were billed:
`9736896339`

If you are submitting a claim for a former account, please provide the PIN that was on the back of the Postcard notice you received:
`973345997`

**In order to complete this Claim Form you must sign it below.**

By signing below I hereby verify under penalty of perjury that, to the best of my knowledge and belief, the statements made in this Claim Form are true and correct.

Signature: *Sandra Diaz*   Date: `05 - 22 - 13`
                                         M M   D D   Y Y

To file a Claim Form online, visit www.verizonthirdpartybillingsettlement.com.  If you are submitting a hard copy, mail this Claim Form, along with any necessary documentation, to:

Moore v. Verizon Settlement Administrator
PO Box 4655
Portland, OR 97208-4655

**PLEASE DO NOT SEND THIS TO VERIZON.**

02-CA3071
L2162 v.01 04.19.2013

Questions or to obtain a Claim Form: visit www.verizonthirdpartybillingsettlement.com,
or call 1-877-772-6219 toll free or email at
questions@verizonthirdpartybillingsettlement.com.

## CLAIM FORM INSTRUCTIONS

Read and follow these instructions carefully. Failure to follow these instructions could result in the rejection of your claim for a settlement payment. If you have questions or need help in filling out the Claim Form, you can call the Settlement Administrator at 1-877-772-6219. You must file your claim no later than October 21, 2013.

If you received a Notice of this class action Settlement in the mail, by email, or as a result of receiving a post card notice about the Settlement, it is because Verizon's records indicate that you are either a current or former landline telephone customer of Verizon who was billed for Third-Party Charges between April 27, 2005 and February 28, 2012, and may be entitled to a payment under the Settlement.

If you were billed for unauthorized charges, you have the right as a member of the Settlement Class to submit a claim for **either**: (a) a Flat Payment Claim for $40, **or** (b) a Full Payment Claim for a refund of the full amount (i.e., 100%) of all unauthorized Third-Party Charges that you paid between April 27, 2005 and February 28, 2012. Verizon will provide you, for free, a summary of all of the third-party charges that you paid during the relevant time period that you can submit with your Claim Form. To get a summary of charges, contact the Settlement Administrator at www.verizonthirdpartybillingsettlement.com, 1-877-772-6219, or questions@verizonthirdpartybillingsettlement.com.

Follow the steps below to submit a Claim Form for a settlement payment. If you do not submit a Claim Form, you will not receive any payment under the terms of the Settlement.

**Step One**—*Complete and Sign the Claim Form*

(1) check the box to indicate if you are submitting a Flat Payment Claim **or** a Full Payment Claim, but not both;
(2) if the Full Payment Claim is selected, (a) identify the total dollar amount you claim, and (b) confirm that you have provided the required supporting information or documentation from the summary of third-party charges. In the case of an online claim, you must include information from the summary of third-party charges. In the case of a paper or mailed claim, you must attach the paper summary of third-party charges. **This information is required only for Full Payment Claims.**
(3) provide your name, current address, current telephone number, and current email address; **If your address changes after you file your claim, please provide your full name, new address, and account number or PIN to the Settlement Administrator.**
(4) provide your Verizon account information: (a) if you are submitting a claim for a **current Verizon Account**, please provide the Verizon Account Number to which the unauthorized charges were billed (your Account Number can be found at the top of your Verizon bill); (b) if you are submitting a claim for a **former Verizon Account**, please provide the PIN that was printed on the back of your postcard notice. You may have both an account number(s) for your current Verizon account(s) and PIN(s) for a former Verizon account(s), and you are allowed to obtain billing summaries and file claims for all such accounts. If you need assistance locating the Verizon Account Number on your bill, or the PIN that was printed on your postcard notice, visit www.verizonthirdpartybillingsettlement.com, or contact the Settlement Administrator at the contact information below.
(5) please note that if you have multiple Verizon Account Numbers, or assigned PINs, you may attach a separate sheet of paper to list the additional Account Numbers or PINs if the contact information is exactly the same for all Account Numbers, or assigned PINs. Otherwise, you will need to submit a separate Claim Form for each Verizon Account Number or PIN. For each Account Number, or PIN, indicate if you are submitting a Flat Payment Claim or a Full Payment Claim. You must identify the total dollar amount and provide the summary of third-party charges for *each* Verizon Account Number or PIN for which you select a Full Payment Claim. You may also contact Class Counsel at (877) 593-2088 for additional assistance with multiple accounts or PINs.
(6) sign the completed Claim Form.

Note: For Flat Payment Claims, you need only provide the information requested in items (1), (3), (4) and (6) above.

**Step Two**—*Submit the Claim Form to the Settlement Administrator by the Claims Deadline*

Claim Forms may be submitted online at www.verizonthirdpartybillingsettlement.com, by mail to Moore v. Verizon Settlement Administrator, PO Box 4655, Portland, OR 97208-4655, or email to questions@verizonthirdpartybillingsettlement.com. To be on time, the Settlement Class member's Claim Form must be postmarked or received by **October 21, 2013**.

**What happens to the Claim Forms:** Verizon and the other entities involved in the third-party charges have the opportunity to challenge a Claim Form if they believe that the Class Member is not entitled to payment under the terms of the Settlement. For a full listing of the bases on which challenges can be made, go to www.verizonthirdpartybillingsettlement.com and consult the FAQ concerning the claims challenge process. If a Claim Form is challenged, the Class Member will be informed and will have an opportunity to respond. Class Counsel will help you, for free, in the event your claim is challenged. The Court-appointed Settlement Administrator will make the final decision.

**IF YOU FAIL TO SUBMIT YOUR CLAIM FORM ON OR BEFORE OCTOBER 21, 2013, YOUR CLAIM MAY NOT BE APPROVED.**

No paper Claim Form will be accepted without an original signature.

**FAILURE TO FILL OUT THE CLAIM FORM COMPLETELY MAY RESULT IN THE REJECTION OF YOUR CLAIM.**

**NO PAYMENTS WILL BE MADE AVAILABLE UNTIL AFTER FINAL APPROVAL OF THE SETTLEMENT BY THE COURT, INCLUDING AFTER ANY APPEALS ARE RESOLVED. THE PROCESS MAY TAKE TIME. PLEASE BE PATIENT.**

Questions or to obtain a Claim Form: visit www.verizonthirdpartybillingsettlement.com,
or call 1-877-772-6219 toll free or email at
questions@verizonthirdpartybillingsettlement.com.


01-CA3071
L2161 v01 04 19.2013



RECEIVED

JUN 0 4 2013

JACOBS KOLTON, CHTD.

John Jacobs
Esq. 55 West Monroe St.
Suite 2979  60603

Serena Deer
Gilmadison ave
Paterson N 50780

# SANAE DILLARD/

# MAXINE DILLARD

RECEIVED

SEP 1 0 2012

LEGAL SERVICES

**Moore v Verizon CA3071**

**Objection #**                    **600000020**

**Special Request**
Tracking # SP2872

# Document Range

0307105

**Begin:**

20

**End:**

21

**Quantity:**

2

| **Prepped by:** | **QC:** | **Stats:** | **Scanned by:** |
|---|---|---|---|
| ID #: 14 l/c  9-10-12 | ✓ | | 9/19/12 |

**Route to:**   Vault          **\*Route to:**_____

Sanae Dillard
9725 Ramona St #9
Bellflower, CA 90706
Pinkylove777@gmail.com
562-760-2967

September 1, 2012
Class Counsel, John G. Jacobs
122 S. Michigan Ave, Suite 1850
Chicago, IL 60603

Verizon's Counsel at Henry A. Weissmann
355 S. Grand Ave. 35th floor
Los Angeles, CA 90071

Clerk of the Court
1301 Clay Street, 400 S
Oakland, CA 94612

RE: Objection

I Sanae Dillard continuously received emails regarding a class action lawsuit with Moore et al v. Verizon et al., Case No. 09-cv1823 SBA and I responded by doing one of the following and that is to request the third party charges between April 27, 2005 and February 28, 2012. I never received that information but instead received an email on August 27, 2012 stating that Verizon records show that the account for which I requested a summary report for wasn't billed 3rd party charges and that if I have questions I could submit a letter to Moore Settlement Administrator. I object to this because I recall when it was happening questioning Verizon wireless representatives as to why I was being charged for the third party companies that I had been seeing on my bill that I hadn't seen before and I was told that it had something to do with taxes and it wasn't them doing it and it was out of their control. I can't recollect all of that information because I shredded those statements. I have been with Verizon wireless over approximately 7 years and have had different numbers and cell phones and I don't recall everything, but I do recall being charged by third parties and I was upset about it as well. I would like to be compensated and Verizon Wireless should have copies of all of this information seeing that everything is computerized, they know who they has paid third parties. This is absurd. I also received a letter telling me that I would get a long distance phone benefit in connection with the settlement case entitled Cowit v. Cellco Partnership d/b/a/ Verizon Wireless which I don't know if it has something to do with this case, but I don't want that because my plan already comes with long distance benefits.

Thank-You
Sanae Dillard

*Sanae Dillard*

Old VZ #
562-760-9256

Sanae Dillard
9725 Ramona St #9
Bellflower, CA 90706
Pinkylove777@gmail.com
562-760-2967

RECEIVED

SEP 0 8 2012

JACOBS KOLTON, CHTD.

September 1, 2012
Class Counsel, John G. Jacobs
122 S. Michigan Ave, Suite 1850
Chicago, IL 60603

Verizon's Counsel at Henry A. Weissmann
355 S. Grand Ave. 35th floor
Los Angeles, CA 90071

Clerk of the Court
1301 Clay Street, 400 S
Oakland, CA 94612

RE: Objection

I Sanae Dillard continuously received emails regarding a class action lawsuit with Moore
et al v. Verizon et al., Case No. 09-cv1823 SBA and I responded by doing one of the
following and that is to request the third party charges between April 27, 2005 and
February 28, 2012. I never received that information but instead received an email on
August 27, 2012 stating that Verizon records show that the account for which I requested
a summary report for wasn't billed 3rd party charges and that if I have questions I could
submit a letter to Moore Settlement Administrator. I object to this because I recall when it
was happening questioning Verizon wireless representatives as to why I was being
charged for the third party companies that I had been seeing on my bill that I hadn't seen
before and I was told that it had something to do with taxes and it wasn't them doing it
and it was out of their control. I can't recollect all of that information because I shredded
those statements. I have been with Verizon wireless over approximately 7 years and have
had different numbers and cell phones and I don't recall everything, but I do recall being
charged by third parties and I was upset about it as well. I would like to be compensated
and Verizon Wireless should have copies of all of this information seeing that everything
is computerized, they know who they has paid third parties. This is absurd. I also received
a letter telling me that I would get a long distance phone benefit in connection with the
settlement case entitled Cowit v. Cellco Partnership d/b/a/ Verizon Wireless which I
don't know if it has something to do with this case, but I don't want that because my plan
already comes with long distance benefits.

Thank-You
Sanae Dillard

Sanae Dillard

Old V2 #
562-760-9256

SANTA ANA CA 926
SEP 2012 PM 11

RECEIVED

SEP 08 2012

JACOBS KOLTON, CHTD.

Sonte Dillard
9725 Ramona St #9
Bellflower, CA 90706

Class Counsel John G. Jacobs
122 S. Michigan Ave Suite 1850
Chicago, IL 60603

60603614050

# MARK DROZDOV

RECEIVED

AUG 2 0 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**

**600000011**

# Document Range

0307105

| Begin: | End: | Quantity: |
|--------|------|-----------|
| 11 | 12 | 2 |

| Prepped by: | QC: | Stats: | Scanned by: |
|-------------|-----|--------|-------------|
| ID #: 25  SL7     8/21/12 | ✓ | AG 8/21/12 | AG 8/21/12 |

Route to: __Vault__          *Route to:_____

# LAW OFFICES OF WILLIAM R. WEINSTEIN

199 Main Street, 4th Floor
White Plains, New York 10601
Tel: (914) 997-2205
Fax: (646) 448-8215
E-Mail: wrw@wweinsteinlaw.com

August 16, 2012

**BY PRIORITY MAIL**

Clerk of the Court
U.S. District Court for the
  Northern District of California
1301 Clay Street
Suite 400 S.
Oakland, CA 94612

      Re:    *Moore v. Verizon Communications Inc.*, No. 4:09-cv-01823-SBA, Objections of
              <u>Mark Drozdov to Proposed Class Action Settlement – For Manual Filing</u>

To Whom It May Concern:

       Enclosed for manual filing in the above-captioned action is the August 16, 2012
Objections of Mark Drozdov to Proposed Class Action Settlement, with exhibits. The Certificate
of Service attached at the end of the document states that the document has been served on the
parties required under the terms of the proposed settlement by Priority Mail.

       Additionally enclosed is the cover page for the document, which I request you file-stamp
and return to me in the enclosed self-addressed, stamped envelope.

       Should you have any questions, I can be contacted at 914.997.2205.  Thank you in
advance for your assistance.

                                    Respectfully submitted,

                                    William R. Weinstein

encl.

cc: Plaintiffs' Counsel, Verizon Counsel (w/encl.)

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE MOORE and KAREN JONES, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) Case No. 4:09-cv-01823-SBA |
| Plaintiffs, | ) ) CLASS ACTION ) ) OBJECTIONS OF MARK |
| v. | ) DROZDOV TO PROPOSED ) CLASS ACTION SETTLEMENT |
| VERIZON COMMUNICATIONS INC., et al., | ) ) ) Hon. Saundra Brown Armstrong |
| Defendants. | ) ) ) |

Class Member Mark Drozdov ("Drozdov"), by his undersigned attorneys, respectfully submits his objections to the proposed settlement of the above-captioned class action.[1] Drozdov's counsel intends to appear at the Final Approval Hearing and present argument in support of Drozdov's objections.

## SUMMARY OF OBJECTIONS

The proposed settlement suffers from multiple, material defects that preclude its final approval by the Court as fair, reasonable and adequate. These defects are briefly summarized as follows:

      I.      The notice is inadequate to satisfy the requirements of due process. It fails to advise individual class members either of their total or their specific individual third party charges so they can meaningfully evaluate their potential total benefit from the settlement, and even fails to tell them which phone line or lines are the ones identified by Verizon as the basis

---

[1]    Drozdov received emails from Verizon Services dated June 26, 2012 and July 3, 2012 providing Drozdov with notice of the proposed settlement and advising him that he was a member of the proposed settlement class based on data in Verizon's records. A copy of the June 26, 2012 notice is annexed as Exhibit A hereto.

for sending them notice so that class members can easily determine as an initial matter whether they think it worth their while to proceed with the claims process. Nor does the notice or any of the other linked documents on the settlement website advise class members of the identity of all of the different Third Party "providers" so that class members can easily determine as an initial matter whether they may have actually authorized charges or should proceed with the claims process.

Of equal or greater importance, the notice and the other linked documents identified and made available on the settlement website *nowhere* advise class members of the total amount of third party charges establishing the potential individual and joint and several liability of Verizon and the other defendants, or the total amount of benefits projected to be paid out to class members under the settlement claims process -- both of which are necessary for class members to fairly evaluate the results achieved. Nor does the notice contain any meaningful discussion of the issues and defenses required under Fed. R. Civ. P. 23(c)(2)(b)(iii), which is particularly important in light of the Court's September 10, 2010 decision on defendant's motion to dismiss and is thus relevant to the defendants potential liability for damages at trial. *See* I, *infra.*

II.      The proposed relief is unfair, unreasonable and inadequate.

A.      Presumably by intent, and undeniably by effect, the manual claim mechanism is unfairly and unreasonably burdensome, and will ensure that only a *de minimis* percentage of the agreed settlement benefits will actually have to be paid by Verizon to the class in exchange for a potentially *multi-billion dollar* release – even for the subclass(es) of class members whose entitlement to refunds can be confirmed by the facts and data in the databases of Verizon and the other defendants. *See* II(A), *infra.*

B.     Verizon's profit share of the $670 million total Third Party charges it billed and/or collected -- estimated by Drozdov's counsel at between $100 million and $200 million and earned whether or not the related services were legitimate or bogus or authorized or used – is the result of its indisputable role as the hub and facilitator of the enterprise which could not have existed or wrongfully profited without its essential participation.   Yet under the proposed settlement Verizon will get a release worth as much as $2 billion to it for the costs of notice and administration of the proposed settlement, the *de minimis* (and lacking any minimum) amount of claims filed, and the attorneys' fees and expenses ultimately approved by the Court. Thus, Verizon should be required to disgorge a material percentage of the millions of dollars of profit it obtained in connection with its role, and thereby create a genuine settlement fund for broad distribution to the members of the class regardless of whether or not they authorized or received the services Verizon billed them for. *See* II(B), *infra*.

C.     The injunctive relief is inadequate because Verizon -- the party best situated and with the necessary computer systems already in place to efficiently, contemporaneously and effectively advise all class members and future customers of potential Third Party charges before they are billed – is excluded from any direct responsibility for advising its customers of the newly-added Third Party Charges.   Additionally, the injunctive relief expires after an unreasonably short period of time. *See* II(C), *infra*.

III.     The fairness, reasonableness and adequacy of the requested attorney's fees cannot be fully evaluated by class members or the Court until sufficient detail about the actual nature and timing of the work performed, and before the actual settlement benefits can be quantified, but based on the limited lodestar information provided by class counsel the fees appear to be potentially excessive.

3

## BACKGROUND AND RELEVANT EXPERIENCE OF DROZDOV'S COUNSEL

Drozdov's lead counsel in connection with his objection is William R. Weinstein, principal of Law Offices of William R. Weinstein. Weinstein has substantial experience in class actions, including securities and consumer class actions, and over the past ten years has prosecuted a number of class actions involving bogus and misleading charges and other deceptive practices against Verizon, Verizon Wireless and other consumer telecommunications service providers, including Sprint and AT&T/Cingular Wireless. *See, e.g., Schatz v. Cellco P'shp d/b/a Verizon Wireless,* 2012 WL 423316 (S.D.N.Y. Jan. 31, 2012); *Litman v. Cellco P'shp d/b/a Verizon Wireless,* 655 F. 3d 225 (3d Cir. 2011); *Shroyer v. New Cingular Wireless Services, Inc.,* 606 F.3d 658 (9th Cir. 2010); *Emilio v. Sprint Spectrum L.P.,* 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008), *aff'd,* 315 Fed. Appx. 322 (2d Cir. Mar. 12, 2009); *Opperman v. Verizon Wireless,* No. BC326764 (Ca. Sup. Ct. L.A. County 2006); *In re Verizon Three Way Calling Litig.,* No. 603484-01 (Supreme Ct. N.Y. County). *See* www.wweinsteinlaw.com.

Working with Weinstein in connection with Drozdov's objection is Michael Levine. In addition to being a lawyer, Levine has many years of experience in the Information Technology field, specializing in the design and implementation of databases, and in the use of databases to support business reporting and analysis. Levine has worked in the development of complex computer applications since the mid-1980's, and has specialized in database design, analysis and use since 1998, including providing services concerning databases to a number of Fortune 500 companies. Levine has assisted Weinstein in connection with the development of several complex class member databases, generating detailed damage calculations as well as other relevant class member information from the available electronic records for the purpose of potential or actual settlement of class actions.

4

Although in connection with class action settlements Weinstein always tries to maximize the percentage of benefits to actual damages potentially available to each individual class member, he is equally committed to the use of the settlement process to maximize the total distribution of settlement benefits to all class members where appropriate. For example, in *Lan v. Ludrof,* 2008 WL 763763 (W.D. Pa Mar. 21, 2008), by rejecting the requirement for a claim form in connection with a $5.234 million settlement of claims arising out of a tender offer for minority shares of Erie Family Life Insurance Company. Because the necessary data was available in the relevant defendant databases, the settlement ultimately resulted in the distribution more than 99.3% of the total Net Settlement Fund to all possible class members, who each received 100% of their damages as computed under the settlement, with the remainder of the Net Settlement Fund going to the agreed-upon charity.

Furthermore, working with Levine in connection with class action settlements involving the rigorous development of class databases incorporating the necessary available computer data regarding the computation of damages in combination with appropriate "class member friendly" claims mechanisms, Weinstein has been able to achieve substantial distributions of available settlement funds under the settlement both in terms of percentage of damages and percentage of class members. For example, in the settlement in *Kitamura & Landa v. Trump Parc Condominium, et al.,* No. 603562-2008 (N.Y. Sup. Ct. New York County), the settlement resulted in the distribution of 100% of the possible damages extending back to 1994 plus additional interest to the 40% of all class members who were entitled to and filed claims, with the remainder of the Net Settlement Fund going to the agreed-upon charities. And in *Emilio v. Robison Oil Corp.,* No. 1412-2003 (N.Y. Sup. Ct. Westchester County) the settlement will provide for the distribution of approximately 74% of the total damages provable at trial plus

5

additional interest to the 48% of all class members entitled to and filing claims. Weinstein and Levine also recently developed a class member database in connection with the certification and/or settlement of a line item surcharge telecommunications class action involving several million class members and a class period extending over seven years.

## DROZDOV'S OBJECTIONS TO THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

I.  **The Notice is Inadequate To Satisfy Due Process Because It Fails To Include The Information Necessary For Class Members To Evaluate The Fairness, Reasonableness And Adequacy Of The Settlement Either Individually Or To The Class As A Whole**

   A.  **Inadequate Notice Regarding an Individual Class Member's Potential Benefits**

Despite the fact that the information is readily available to Verizon, and thus was or should have been obtained by class counsel in connection with the discharge of their fiduciary duties the class, the notice fails to advise individual class members either of their total or their specific individual Third Party Charges so they can meaningfully evaluate their own potential benefits from the settlement. Furthermore, the notice even fails to tell class members which phone line or lines are the ones identified by Verizon as the basis for sending them notice, thus requiring class members like Drozdov with multiple lines to conduct searches of all their phone bills for all their lines to try to locate the charges that Verizon has identified as the basis for their class membership. Unless the class members have retained all bills going back during the entirety of the seven year class period (highly unlikely) and are able to find charges which plaintiffs alleged in their Second Amended Complaint were unlikely to be noticed in the first place by many (really most) class members (Docket #101 ["Complaint"], ¶59), the notice as

6

provided requires each class member to engage in a proverbial "snipe hunt" to try to determine on their own what settlement benefits they might reasonably expect.[2]

Compounding that difficulty, nowhere does the notice or any of the other linked documents on the settlement website advise class members of the actual identity of all of the different Third Party entities purportedly providing the goods and services charged for, to enable class members to more easily determine as an initial matter whether they may have actually authorized charges or should proceed with the claims process, and so that the possibility of name recognition will enable class members to more easily remember whether they ever contracted with a Third Party "provider" for goods or services. Instead, the notice only includes a cursory description of examples: "voicemail, email, fax, web page services (design, hosting or marketing), yellow page services, diet plans, identity protection and others." *See* Exhibit A hereto (Drozdov June 26, 2012 Notice). In fact, the list of Third Party "providers" could and should provide an explicit list of those Third Party "providers" who Verizon terminated or suspended prior to the Settlement because of fraudulent and deceptive or other improper billing practices, as well as those who were not terminated or suspended but had a substantial complaint rate also indicating impropriety. The individual notice to class members also could and should be amended to expressly advise individual class members whether they were subject to such known fraudulent or otherwise improper charges, and the amounts of such charges.[3]

---

[2]      The notice actually suggests that the fact that "the summary of all Third Party Charges that Verizon will provide to [class members] for free" constitutes some sort of material benefit to the Class. *See also* Fee and Expense Motion (Docket #123, p.2 n.1). The suggestion that Verizon should be able to charge class members for this list of potentially fraudulent, deceptive and other Third Party Charges for which Verizon had no express authority from the class members to impose in the first place, where Verizon has the information and data which should already have been compiled as part of the class list, and when Verizon will receive a potential multi-billion dollar release if the settlement is finally approved, is outrageous.

[3]      For example, although the class has not been advised of it, the parties stipulated to an amended form of Final Order and Judgment after the Federal Trade Commission ("FTC") filed papers to enjoin the parties to the

(. . . footnote continued next page)

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

Assuming *arguendo* the omitted Third Party Charge information has not already been compiled by Verizon in connection with the class list, the reasons are obvious:  providing the information would create more work and costs for Verizon, and its inclusion in the notice can only serve to increase the claims rate.  Such short-cuts cannot be justified in light of the potential multi-billion release from class members Verizon hopes to obtain.  *See also* II(A), *infra*.

**B.   Inadequate Notice Regarding Total Potential Defendant Liability and Likely Benefits Actually Paid to Class Members under Proposed Claims Process**

*Nowhere* do the settlement notice or the other linked documents on the settlement website advise class members of the total amount of Third Party Charges establishing the potential separate and joint and several liability of Verizon and the other defendants, or the total amount of damages that might be recoverable if the case if the case went to trial.  By digging through the motion papers accessible on the PACER docket (something few class members are registered for or know how to do), Drozdov's counsel was able to locate representations in the Fee and Expense Motion (Docket #123, p.4, *citing* Jacobs Fee Declaration ¶4) that "[t]here were some **$670 million in third-party charges paid by class members** during the relevant period."  Class members obviously would find that information *highly* material – indeed, necessary to evaluate the fairness, reasonableness and adequacy of the settlement.

---

proposed settlement in this case from taking any actions which would interfere with the judgment the FTC previously obtained in a different case in connection with the fraudulent practices of one the Third Party "providers," Inc21.com, *et al.*  – including interfering by releasing any of the claims because of the failure to file claims by class members in this action.  See Docket ## 122-1, 122-2, 124.  The FTC papers state that Verizon actually terminated the Third Party billing privileges. *See* Docket 122-1 at 2.

    For whatever reason, the copy of the Settlement Agreement filed with the Court and made available for review on the settlement website (Docket #94-1) omits as an exhibit the proposed Final Judgment identified in the Agreement itself as Exhibit B (Settlement Agreement, p.5 ¶2) – which is highly unusual in the experience of Drozdov's counsel, and actually constitutes another inadequacy in the notice, as class members are not provided with the full Settlement Agreement or with ready access to the proposed final judgment to be entered against them in connection with the settlement if approved.  *See* Settlement Agreement, pages 56-57 of 86.  Nor has the settlement website been updated to provide access to the proposed amendments to the Final Order and Judgment.

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

But Verizon's exposure and the potential damages aren't limited to that astronomical figure. The notice and other linked website papers also fail to clearly advise class members that this Court, in its September 10, 2010 decision, sustained a substantial part of plaintiff's First Amended Complaint, including the RICO allegations – a holding Drozdov's counsel believes is entirely correct in light of the clear existence of a RICO enterprise for which Verizon is not only the hub but the essential participant without whom the Third Party Charges could never have been billed and collected in the massive volumes disclosed. *See Moore v. Verizon Commc'ns Inc.,* 2010 WL 3619877 (N.D. Cal. Sept. 10, 2010). In light of this holding, Verizon's potential liability is joint and several, with damages potentially trebled – *viz.,* **as much as $2 billion.** *See* 18 U.S.C. § 1964(c) (treble damages); *OKI Semiconductor Co. v. Wells Fargo Bank, N.A.,* 298 F.3d 768, 775 (9th Cir. 2002) (potential joint and several liability for § 1962(d) RICO conspiracy claim). The failure to clearly disclose this information to the class strongly suggests it was being hidden by the parties. The omission is further compounded by the fact that the notice and other linked website papers also fail to provide any meaningful discussion of the claims, issues and defenses in the case as required under Fed. R. Civ. P. 23(c)(2)(B)(iii), including the issues already decided by the Court's 2010 decision – a decision which no doubt was a material driver for Verizon to seek a negotiated resolution by settlement.

Additionally, nowhere do the notice and other linked website papers – or any other papers of which Drozdov's counsel is presently aware – disclose how much of the $670 million was the profit cut Verizon took for its billing and collection of the Third Party Charges that could serve as a basis for Verizon's damages on a separate basis. A comparison between these profits and the amounts Verizon will be required to expend under the settlement would be highly

9

material to a class member in assessing the adequacy of the settlement.  As plaintiffs allege in the

Complaint:

> 4.      Verizon is by no means an innocent conduit in the matter of third-party billing, merely billing on behalf of third parties and passing the collected money on to the third parties. Instead, Verizon is a full joint venturer with the third-party providers and the billing aggregators involved in this system, keeping for itself a substantial portion of the amounts billed and collected for these third-party services, running in the millions of dollars annually.

> 38.      Verizon is compensated for its billing and collection services by retaining substantial portions of the amounts so billed and collected, typically based upon a percentage of the billing revenue. Verizon typically purchases the accounts receivable from the billing aggregators and other billers, bills and collects from its customers and then through a system of allowances and refunds, effectively remits to the billing aggregators and other billers the amount of the collected sums minus its cut.[4]

Finally, nowhere are class members advised of a projected or estimated claims rate,

which is particularly important because the settlement as presently proposed does not create a

separate settlement fund or any minimum payment to all class members by Verizon, only a

possible payout of refunds based on the number of claims.  However, the claims rates in

consumer class actions involving refunds of small amounts of money can be notoriously low,

and Verizon surely knows what claims rates it has experienced in other comparable consumer

class action settlements which can serve as a guide post for what Verizon truly believes it will

have to pay out in this case. As Judge Posner stated in another context, "only a lunatic or fanatic

sues for $30." *Carnegie v. Household Finance Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

---

[4]      The Senate Report on Cramming included as Exhibit 4 to the Preliminary Approval Motion (Docket #91-4, at 18 of 51) estimates that 300 million third party charges totaling $2 billion or more are imposed industry-wide each year, thus resulting in an average charge of approximately $6.67.  Furthermore, the Senate Report includes representations from Verizon's Assistant General Counsel that Verizon "receives a flat fee of between $1 and $2 per charge." *Id.* Assuming an average charge of $6.67, then the $670 million of revenues represented by class counsel is comprised of approximately 100 million transactions billed by Verizon, resulting in Verizon revenues of between $100 million and $200 million – or between 15% and 30% of the total charges billed.  In other words, Verizon is the single greatest profiteer from the wrongful conduct.  This additional information is highly relevant to evaluating the adequacy of the settlement.

Unfortunately, much the same can be true in connection with claims in consumer class action settlements involving small amounts of refunds – particularly when class members aren't even told how much their own individual refund might be as part of the notice they are provided.[5]

As Judge Walker aptly stated in his unpublished order denying preliminary approval of a class action settlement for reasons including, *inter alia,* inadequate notice in *Martin v. FedEx Ground Package System Inc.,* No. 06-6883 (VRW), Slip Op. at 19 (N.D. Cal. Jul. 8, 2008) (Docket #62):

> The proposed notice does not, however, explain the class claims adequately, as required by FRCP 23(c)(2)(B)(iii). As noted above, the notice does not describe the basis for counsel's estimate of class damages nor does it inform class members of the total damages that might be recoverable if the case went to trial. In addition, the notice fails to provide any estimate of how much a typical class member might receive under the settlement. The notice merely informs the plaintiffs that the maximum settlement value is $8,125,000 and notes that this will be reduced by attorney fees and other costs, but it provides no other information that would allow class members to evaluate the quality of the proposed settlement.

The notice in the case is substantially more deficient than in *Martin*, for all of the reasons described at length herein.

---

[5]    In *Emilio v. Sprint Spectrum L.P., supra,* for which Weinstein was lead counsel, the class was alleged to involve millions of New York Sprint customers with charges relating to a single allegedly deceptive New York State-related surcharge estimated to exceed $100 million. Sprint attempted to settle out the claims as part of the settlement of a nationwide class action which sought to extinguish claims involving a host of larger federal surcharges, in addition to the improperly included state surcharge at issue in *Emilio.* At oral argument in the Second Circuit, counsel for Sprint represented that Sprint had paid out claims to New York residents in connection with the nationwide settlement totaling *only $85,000.*

Similarly, last week Judge Whyte issued an Order with respect to the settlement of the *Apple IPhone 4* class action stating that from a class estimated at between 15 and 27 million members, only 44,000 claims were filed. *See In re Apple IPhone 4 Prods. Liab. Litig.,* No. 5:10-md-02188-RMW, Slip Op. at 2 (N.D. Cal. Aug. 10, 2012).

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

II.     **The Proposed Relief Is Unfair, Unreasonable And Inadequate**

     A.     **The Claims Procedure Is Unreasonably and Unfairly Burdensome to All Class Members, and Will Result in the Failure to Pay Settlement Benefits to a Substantial Number of Class Members Whose Entitlement to Payment Is Fully Confirmed by the Data and Information In Verizon's Possession**

          1.     **The Requirement to Independently Request a Summary of Charges in Order to be Fully Compensated Is an Unnecessary and Unfair Impediment to Obtaining Full Compensation Under the Settlement**

As noted in I(A), *supra*, the notice provided to class members in this case is inadequate because it fails to advise individual class members either of their total or their specific individual Third Party Charges so they can meaningfully evaluate their potential total benefit from the settlement -- despite the fact that the information is readily available in Verizon's records if it is not already included in the class list Verizon prepared in connection with the dissemination of the settlement notice.

The claim mechanism unfairly and unreasonably compounds the inadequacy of the notice by requiring class members to independently request from Verizon a summary of Third Party Charges in order to determine whether they are entitled to claim a potential refund of more than $40 dollars – *i.e.*, the full refund amount they are actually entitled to claim under the terms of the Settlement.  Furthermore, even though the summary information in the possession of Verizon is now being provided by Verizon (but only to those who request it), the class member is still required to attach a copy of the summary with the paper or email claim submission – once the summary is actually received.[6]   It is clear that this hurdle is a needless and unfair impediment intended to reduce both the total number of claims filed and the number of claims filed for more than $40:   first, the class member is deprived of the necessary information to evaluate the

---

[6]     Drozdov made several requests for the summaries on July 23, 2012, but as of August 10, 2012 none had been received.  He is now out of the country for a period extending beyond the August 17, 2012 deadline for objections.

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

potential claim, and then after requesting it the class member is required to give back what Verizon gave the class member.

Conversely, the failure to request the summary of charges will result in one of two outcomes: (i) undercompensation to class members with Third Party Charges exceeding $40; and (ii) overcompensation to class members with Third Party Charges less than $40. Indeed, even if a class member requests a summary of charges and discovers that the charges are less than $40, the class member is still entitled to be overcompensated. Thus, class members with smaller claims are treated *better* than class members with larger claims because of the requirement for a summary request, which is unfair discrimination, particularly when providing the summary is touted by class counsel as being "free of charge." *See* Note 2, *supra*.

Finally, Drozdov's counsel is unable to discern from the settlement papers how class counsel arrived at the $40 figure as the cutoff for requiring the summary of charges, but it appears to be both arbitrary and artificially low, and thus its basis should be disclosed to class members. Although the settlement notice and other linked documents on the settlement website fail to advise class members how many class members there actually are, Drozdov's counsel was able to locate representations in the Fee and Expense Motion (Docket #123, p. 4, *citing* Jacobs Fee Declaration ¶ 4) that the number is 7.7 million. Using this number and the $670 million total Third Party Charges also disclosed in the fee motion means that the average claim per class member is $87, substantially more than the $40 apparently arbitrarily used in the settlement.[7]

---

[7]    In the notice, class counsel represent the following to the class:

It is not possible to tell how much each class member is entitled to receive under the Full Payment Claim option without getting the summary of all Third-Party Charges that Verizon will provide to you, for free, as described in the next paragraph, as part of this Settlement. Some class members may have a claim for less than $40. Class counsel contends that some class members may have a claim for hundreds of dollars or more.

(. . . footnote continued next page)

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

2.    **The Claims Process Is Unnecessary and Unfair For a Substantial Number of Class Members Whom Verizon Knows Did Not Authorize Their Third Party Charges and Did Not Receive Refunds**

As with other class actions, to justify the claims process in this case, Verizon is trying to exploit what the Complaint (¶55) describes as "plausible deniability" – Verizon's "I know nothing"/"head in the sand" purported lack of any specific knowledge of wrongdoing to create an "ambiguity" providing it with purported justification for requiring a separate claim form from every member of the class.  In addition to each class member's total and specific individual Third Party Charges, the information and computer data unquestionably possessed by Verizon and generated and analyzed and used by Verizon in connection with the original billing and collection of the Third Party Charges renders redundant and unnecessary the information Verizon is unfairly demanding in the claim form for a substantial number of class members:

(i)    Verizon knows or can determine from its available data and information – and class counsel should know if they do not -- which of the Third Party "providers" Verizon terminated or suspended for improper practices, and thus knows that these charges for these "providers" were unauthorized.  *See also* Note 3, *supra.*  Thus, Verizon has no legitimate need for a statement to that effect on a claim form from a class member.

(ii)    Verizon knows or can determine from its available data and information – and class counsel should know if they do not -- which services of which Third Party "providers" were entirely duplicative of the same services Verizon was already providing class members.  For example, plaintiff Moore was already receiving long distance service from Verizon when Verizon billed her for purported Third Party "enhanced long distance" services (Complaint ¶¶ 71-73).  Similarly, plaintiff Jones was already receiving voicemail services from Verizon when Verizon billed her for purported Third Party voicemail services.  It is

---

These representations are misleading at best, if not false.  It is inconceivable that class counsel does not know what the total and specific Third Party Charges are for each class member, because as noted throughout, that information is available in Verizon's customer databases, and is or should be included in the class list compiled by Verizon for the purpose of disseminating notice to the class.  Furthermore, the implication that class counsel cannot be sure whether some class members have claims less than $40 ("Some class members *may* have a claim for less than $40") (emphasis added), or that the existence of class members with claims for hundreds of dollars or more is only a "contention" of class counsel, is either misleading or confirms the existence of a serious problem in connection with what class counsel did in connection with their confirmatory discovery to independently determine the fairness and adequacy of the settlement.

inconceivable that a class member would knowingly and intentionally authorize payments for completely unnecessary and redundant services from a different provider (Complaint ¶¶ 71-73).

      (iii)    Verizon knows or can determine from its available data and information – and class counsel should know if they do not -- which customers complained and which Third Party "providers" they complained about, as well as the ratio of those complaints to the total customers being billed for each "Third Party "provider" to statistically analyze the total fraudulent and misleading charges for each such "provider." Thus, Verizon has no legitimate need for a statement regarding authorization of the charges from such affected class members.

      (iv)    Verizon knows from its available data and information – and class counsel should know if they do not -- which class members who were billed these indisputably bogus Third Party Charges received refunds of credits to their bills during the class period, and Verizon knows from the related data why the credits were issued. At a minimum, Verizon cannot rely on the possibility of a Verizon refund credit for those class members who never received one.   So the information requested in the claim forms is also redundant for these class members.

      (v)    Verizon either knows from its available data and information or could know with the appropriate inquiry – as could and should class counsel – which Third Party "providers" were the subject of class actions involving refunds or may have otherwise issued refunds to any class members.  The issuance of such refunds by the Third Party "providers" were no doubt integrated into the calculations Verizon used to determine the allowances and refunds it paid to the aggregators and Third Party "providers" as described in ¶38 of the Complaint. Furthermore, Verizon itself is required to obtain that information in connection with any challenge to a claim it may lodge under the challenge procedures included at pages 10-11 of the Settlement Agreement. Thus, the purpose of the claim form is solely to substantially limit the extent of its obligation to determine the propriety of the claims submitted.

If this case had been settled during or after class certification, all of this electronic discovery data and information would have been required to be produced for analysis of precisely these types of criteria relevant to the propriety of certification -- assuming class counsel was in a position to actually use and analyze it after requesting it.  And if the proposed settlement is not approved, the information will have to be developed anyway in connection with subsequent class certification proceedings.  Thus, if the data and information have not already

been collected, then neither Verizon nor class counsel could object to being required to compile it in order to facilitate the claims process and assure the widest distribution of promised settlement benefits to class members.  The same is true with respect to the data regarding the total and specific individual Third Party Charges that should have been included in the notice.

Verizon and other consumer class action defendants are trying to rely on an unnecessarily burdensome and unfair 20th Century claim method to deal with a 21st Century settlement.  The claims process as designed and agreed to in the proposed settlement uses a blunderbuss approach rather than an approach that differentiates among different "classes" of customers with distinctly different data characteristics who are entitled to have their benefits distributed under methods tailored to their objectively determinable circumstances.

Even assuming *arguendo* Verizon should be entitled to rely on the ambiguity created by its "plausible deniability" and therefore insist on the use the claim form to avoid having to compensate a large percentage of the class members, the settlement can and should narrow its reach.  The existence and availability of the necessary data can make this and other class action settlements what they can now be but often are not – vehicles to maximize the distribution of material benefits to as large a percentage of the members of the class as is reasonably practicable.

**B.      The Settlement Relief Is Inadequate Because It Fails To Require Verizon To Disgorge Any Material Minimum Amount Or Percentage Of The Millions Of Dollars Of Profit It Obtained In Connection With Its Role As The Facilitator Of The Wrongdoing**

As stated in I(B), *supra,* nowhere do the notice and other linked website papers – or any other papers of which Drozdov's counsel is presently aware – disclose how much of the $670 million was the profit cut Verizon took for its billing and collection of the Third Party Charges which might serve as a basis for Verizon's damages on an individual basis – although Drozdov's

16

counsel estimates those profits at between $100 million and $200 million. *See* Note 4, *supra.* In any event, there can be no serious dispute that Verizon profited by many millions of dollars in fees as its share of the estimated $670 million total Third Party charges it billed and/or collected -- regardless of whether or not the related services were legitimate or bogus or authorized or used. Verizon indisputably is the hub and facilitator of the enterprise which could not have existed or wrongfully profited without its essential participation.

Yet under the settlement Verizon will get a release worth as much as $2 billion to it for the costs of notice and administration of the proposed settlement, the *de minimis* amount of claims filed, and the attorneys' fees and expenses ultimately approved by the Court. In light of the frequently abysmal claim rates in these consumer settlements, including in the *Sprint* and *Apple IPhone 4* cases described in Note 5, *supra,* it is extremely possible that Verizon will end up having to come out of pocket less than $20 million dollars – less than 3% of the $670 million Third Party Charges quantified by class counsel in their fee papers, and only 1% of its possible RICO treble liability of in excess of $2 billion. There is no legitimate justification for allowing Verizon to receive a release valued at between 38 and 100 times its settlement related out-of-pocket expenditures.

The only possible justification for discounts of this magnitude are litigation risks that make it overwhelmingly unlikely plaintiffs ultimately will succeed on the merits. As already noted in I(A), *supra,* the Court's 2010 decision sustaining the majority of the First Amended Complaint (including the RICO claims providing for treble damages and joint and several liability) was a substantial hurdle in plaintiffs' prosecution of the case, and no doubt was a material driver for Verizon to settle -- although the notice contains inadequate information about the decision and the claims, issues and defenses in the litigation required by Fed. R. Civ. P.

23(c)(2)(B)(iii). For the record, the facts alleged obviously support the existence of a RICO enterprise with Verizon as the hub and essential facilitator of the enterprise's wrongdoing, particularly in light of its huge share of the total revenues collected.

That leaves the risk of class certification. Class certification concededly always presents some risk in class actions, though some cases are more readily certifiable than others. Many class certification issues can be fixed by more narrowly defining the class, or through the use of appropriate subclasses. In plaintiffs' papers in support of the settlement, there is a cursory discussion of the risks of class certification, with several representations, without substantial citation to authority, to the effect that "the industry (telephone companies, aggregators and third-party providers) . . . almost always defeats class certification." *E.g.,* Jacobs Decl. in Support of Preliminary Approval, ¶3. But this description is lacking in the candor necessary to prevent it from being overstatement.

As an initial matter, this case seems to be a strong vehicle for injunctive relief under Fed. R. Civ. P. 23(b). The injunction clearly would benefit not only present class members but all future customers of Verizon, and thus presents an issue of the propriety of injunctive relief that stands on its own. There is no discussion that Drozdov's counsel is aware of regarding the propriety of Rule 23(b) certification in plaintiffs' papers in support of the settlement.

Furthermore, regarding the existence of favorable authority under Rule 23(b)(3), when Drozdov's counsel performed a basic internet search of legal documents on Google Scholar (scholar.google.com) using the search terms "cramming and 'class certification,'" the *first* decision identified was the decision of the U.S. Court of Appeals for the Sixth Circuit in *Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007), in which the Sixth Circuit affirmed the certification of a "cramming" class under certain federal communications statutes. More

18

importantly, the Sixth Circuit rejected essentially the same argument by defendants there as here – that individual issue regarding whether individuals authorized the charges predominate. Rather, the Sixth Circuit held that the issue of the defendant's liability to "the class as a whole" was the issue that predominated, and not the issue of individual damages to individual class members. *Id.* at 564-66. Again, this was the first case located from an elemental Google search. And the seventh case listed in the search *also* upheld class certification in another cramming case. *Stammco, LLC V. United Tel. Of Ohio,* 2011 Ohio 6503 (Ct. App. 6th Dist. 2011), *appeal granted,* 132 Ohio St. 3d 1425 (June 20, 2012).

The issue in this case, the liability of Verizon and the other defendants in the RICO enterprise "to the class as a whole" would readily be subject to determination through the same use of discovery, including data analyses, statistical sampling and expert testimony, as any antitrust or securities fraud class action, which are litigated without any specific facts as to any individual class members, whose entitlement to damages are highly fact specific. Except that here, it would be even stronger, because Verizon has all of the necessary facts regarding the Third Party Charges on its own database.

Indeed, the very exhibits cited to and filed with plaintiffs' motion for preliminary approval – none of which were made available on the settlement website -- confirm that statistical sampling could be effectively and reliably used to measure Verizon's liability to the class as a whole: Exhibit 5, the FCC website graphic regarding "cramming" (Docket # 91-5), includes the following sobering statistic developed by the FCC based on statistics developed during its own investigation (and prominently cited in the Preliminary Approval Motion, at p. 3): "In two Commission investigations of cramming, involving approximately 36,000 consumers billed for a product on their telephone bills, only 0.1% of the consumers had actually used the

19

product." Furthermore, and more importantly, the statement on the same page of the Preliminary Approval Motion taken from the same Exhibit 5 FCC website graphic -- that "[o]nly 1 out of 20 victims of cramming is aware of the crammed charges" -- is based on the expert statistical study and analysis of Howard Marylander prepared on behalf of the FTC in another cramming action in the Northern District of California involving Inc21.com, the same defendant that was the subject of the FTC's motion for judicial notice recently filed in this action.  *See FTC v. Inc21.com*, No. 3:10-cv-00022-WHA (N.D. Cal.), Docket #123-37 (Marylander statistical analysis expert report); *see also* Docket ##122, 122-1 and 124 in this case (FTC motion and resulting stipulation amending form of proposed Final Order and Judgment).

According to the declaration of the settlement mediator, Judge Weinstein (Docket #91-2, at ¶12), this case presents an "all or nothing" scenario.  Yet under the settlement, the class gets relatively nothing in relation to Verizon's total potential liability to the class as a whole, and Verizon gets it all.  Or more precisely, the class gets an estimated 1-3%, as opposed to Verizon, who gets from 97-99% of its best possible result at trial – despite the fact that it too is subject to enormous risks of continued litigation.   Yet here, the same types of statistical analysis utilized by the FTC and FCC could be used for many, or most of the Third Party "providers," including but not limited to the ones that Verizon already terminated or suspended for improper practices. And if necessary, subclasses could be used as to the specific "providers" to ensure that those people receive the refunds they indisputably are entitled to.

Thus, unless Verizon is required to disgorge a material percentage of the hundreds of millions of dollars of profit it obtained in connection with its role as the principal facilitator of the wrongful Third Party practices for distribution "to the class as a whole," the settlement should not be approved as fair, reasonable and adequate.   The settlement should require the

creation of a genuine settlement fund from the profits obtained by Verizon for its billing and collection functions facilitating the fraudulent enterprise regardless of whether or not individuals authorized the charges, which would then be available for broad distribution to the members of the class regardless of whether they authorized the services.[8]

> **C.**   **The Injunctive Relief Is Inadequate Because It Does Not Require Contemporaneous Contact By Verizon With Its Customers Regarding Third Party Charges, And Is Too Short**

The injunctive relief provided under the settlement does provides some relief for the benefit of the class and all Verizon customers going forward, and class counsel deserve to be compensated for it. Nevertheless, the injunctive relief is materially inadequate because it excludes Verizon from the process of advising customers about newly-implemented Third Party Charges before they are actually billed, even though Verizon is the party best situated to efficiently and effectively ensure that class members have the earliest opportunity possible to stop improper and unauthorized charges.

Verizon profits from the first billed and collected Third Party Charge, so it has every incentive to slow down the process by which customers learn of the charges – particularly when it is likely that only a small percentage will notice them in the bill anyway. Furthermore, Verizon is the *only* party who actually knows about every charge from every aggregator and Third Party 'provider." Yet under the proposed settlement, it is the web of Aggregators who are responsible for providing the contemporaneous confirmation notice of the new Third Party Charges – *although no maximum number of days for providing that notice is specified in the*

---

[8]    There is no evidence that Drozdov aware of that the Verizon customers being billed for Third Party Charges were ever advised that the actual costs of those goods or services were actually substantially less than the billed amount, and that Verizon and the Aggregators were actually taking large cuts before remitting the balance to the Third Party "providers" – this balance is really the actual amount paid for whatever was purportedly being provided.

*Settlement Agreement. See* Settlement Agreement, Section II(7), p. 16.   Similarly, it is the

Aggregators rather than Verizon who are responsible for notifying those customers "who have

been billed by the Third-Party Service Provider in the most recent month prior to termination"

about the termination of the Third Party "provider." *See* Settlement Agreement, Section II(8),

pp. 16-17.

In fact, Verizon already has in place the total system necessary to easily and

contemporaneously notify customers of any change in service, including newly-added and

terminated Third Party Charges.  Attached as Exhibit B hereto is a copy of the electronic notice

Weinstein recently received on August 6, 2012 about a minor change in service on August 4,

2012 to one of his personal wireless telephone lines.  Attached as Exhibit C hereto is a copy of

an October 19, 2011 mailed notice from Verizon to Weinstein regarding an October 19, 2011

change in service to his office "landline."   These notices are computer generated and are

intended to be sent and received as soon as possible immediately after and contemporaneous

with the change in service and its related charges.

A notice from Verizon in a Verizon "envelope" and on Verizon letterhead will be

delivered more quickly, and is much more likely to be read, than a letter from an Aggregator.

Indeed, most customers probably have no idea who or what the Aggregator is, and not seeing a

Verizon envelop and letterhead will make it substantially more likely the notice is not read at all

– even if it does reference Verizon on the envelope.

The injunctive relief is also objectionable because it releases Verizon from its obligations

under the agreement only two years after the Effective Date of the settlement, regardless of

whether the implementation of the relief has been proven to be effective or ineffective.  Simply

stated, what happens after two years?  Is Verizon free to resume its normal practices which were

22

the essential facilitation of the wrongdoing?  Under the agreement, the injunctive relief stops before it really gets going.  In the absence of some major justification, the relief should last at least three years, and then be subject to a determination that it has effectively reduced the massive problems engendered by Verizon's Third Party Charge practices.[9]

The injunctive relief cannot be considered adequate when it intentionally adopts a mechanism which is certain to be less effective than the mechanism already in place at Verizon for dealing with the exact same type of changes in service and related charges.  Nor can it be considered adequate when it expires before it barely gets started, and without any monitoring mechanism on behalf of Verizon's customers.

III.   **The Attorneys' Fee Request Cannot Be Decided Without Sufficient Additional Information**

Drozdov's counsel litigate class actions, and always want to earn the largest fee, including a multiplier when appropriate, that is fair in light of the amount of time reasonably expended and the results achieved.  And Drozdov's counsel believe that class counsel in all cases successfully resolved are entitled to the same.

Unfortunately, the papers filed in the action to date provide insufficient information and detail for Drozdov to definitively determine whether the amount applied for is fair and reasonable.  Although none of the fee approval papers are specifically linked for access on the settlement website, a review of the filed papers shows the description of work to be too cursory to confirm that the $3.55 million of time incurred as described in the fee motion (Docket #123, at 10).  Furthermore, the general information lacks sufficient detail for the Court to perform the

---

[9]   To the best of Drozdov's knowledge, the Settlement Agreement does not provide for any responsibility by class counsel to monitor or review or be provided with information regarding the effectiveness of the injunctive relief, or a mechanism for class counsel to petition the court if the relief is not being complied with.

analysis it must to decide the application. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 943-45 (9th Cir. 2011).

For the record, the complaints filed by plaintiffs in the action are extremely well-researched and obviously the product of substantial legal and factual investigation, and set out the allegations in an extremely persuasive fashion – the Court's September 10, 2010 decision sustaining the most important claims confirms its high quality.   Furthermore, though not adequate for the reasons set out in II(C), *supra,* the injunctive relief provides what seems to be a good framework for the actions necessary for the Third Party Charge industry to self-regulate – but only so long as the victims of its improprieties are given the best opportunity at the earliest possible time to contribute to the reduction of the problem.   And there is no doubt that class counsel will have to expend substantial additional time in connection with the administration of the settlement if approved, however it finally is structured.

Nevertheless, and without the benefit of the detailed time records, $3.55 million seems pretty high for a case involving the preparation of the excellent complaint, successful opposition to the motion to dismiss, discovery involving 150,000 pages of documents (really not a lot, relatively speaking) and miscellaneous data compilations and analyses prepared by Verizon, the mediation and related briefing and preparation, and the presumably extensive negotiations and drafting of the settlement papers.   But no definitive conclusion can be reached by Drozdov or the Court without more.

Additionally, the benefits of the settlement do not include a settlement fund or minimum distribution amount for the class as a whole.   Thus, the benefits cannot be quantified until all claims are received and preliminarily administered after the prescribed claim filing deadline – which deadline occurs after the currently scheduled date for the Final Approval Hearing.

24

**IV.    If The Court Credits Drozdov's Objections And Denies Final Approval, Then Drozdov's Counsel Requests That They Be Appointed By The Court To Participate In The Implementation Of The Changes Necessary To Render The Settlement Fair, Adequate And Reasonable**

As noted, *supra,* Drozdov's counsel have substantial experience in complex database techniques necessary to locate, compile, organize and analyze the available data in the context of the terms of the specific settlement, including the creation of a proper class list with the necessary information to ensure that the class benefits are distributed as widely as possible to the class.   Thus, if the Court credits Drozdov's objections regarding these issues, Drozdov's counsel respectfully requests that they be appointed by the Court to participate in the implementation of the changes necessary to make the settlement fair, reasonable and adequate.

**V.     In Any Event, The Court Should Withhold Approval Of The Settlement And Fee Application Until The Benefits Actually Provided To The Class Can Be Quantified**

The issue of the amount of settlement benefits actually provided to the class, and its impact on the fairness and adequacy of the settlement and the reasonableness of the attorneys' fees applied for, is discussed extensively throughout Drozdov's objections.   Drozdov respectfully submits that those issues cannot be properly decided until those settlement benefits can be accurately quantified.

## CONCLUSION

The Court should deny approval of the settlement as proposed for the reasons stated herein, or alternatively withhold its decision on the settlement and the attorneys' fees until the necessary information, including the benefits distributed to the class and the reasonable lodestar, can be accurately quantified.

MARK DROZDOV OBJECTION
CASE NO. 4:09-cv-01823-SBA

Dated:  August 16, 2012

Respectfully submitted,

William R. Weinstein
LAW OFFICES OF WILLIAM R. WEINSTEIN
199 Main Street, 4th Fl.
White Plains, NY 10601
914.997.2205

ATTORNEY FOR OBJECTOR
MARK DROZDOV
271 Glendale Road
Scarsdale, NY 10583
Cell: 917.417.5103

OF COUNSEL:

MICHAEL LEVINE, ESQ.
54 Walworth Avenue
Scarsdale, NY 10583
914.725.7716

26

# Exhibit A

| From: | mdrozdov@aol.com |
|---|---|
| To: | wrw@wweinsteinlaw.com |
| Subject: | Fwd: Class Action Settlement Notice Ordered By Federal Court in Moore et al v. Verizon et al., Case No. 09-cv-1823 SBA |
| Date: | Monday, July 23, 2012 8:57:51 PM |

-----Original Message-----
From: Verizon Services <verizon-services@verizon.com>
To: mdrozdov <mdrozdov@aol.com>
Sent: Tue, Jun 26, 2012 8:25 pm
Subject: Class Action Settlement Notice Ordered By Federal Court in Moore et al v. Verizon et al.,
Case No. 09-cv-1823 SBA

Can't view this email properly? Click here for the online version



### CLASS ACTION SETTLEMENT NOTICE

*A federal court authorized this Notice. Read this Notice carefully. Your legal rights may be affected.*

**THIS IS NOT A SOLICITATION. THIS IS NOT A NOTICE THAT YOU HAVE BEEN SUED. THIS IS TO NOTIFY YOU THAT YOU MAY BE ENTITLED TO BENEFITS.**

**United States District Court for the Northern District of California**

*Moore et al. v. Verizon et al.,* Class Action Case No. 09-cv-1823 SBA

(Para ver este aviso en español, se puede visitar
www.verizonthirdpartybillingsettlement.com/espanol.)

## You Received This Notice Because Verizon's Records Indicate You Were Billed For Third-Party Charges Between April 27, 2005 And February 28, 2012 And May Be Entitled To A Payment From this Class Action Settlement.

A Settlement has been preliminarily approved by the Court in a class action lawsuit against Verizon alleging that it billed landline phone customers for unauthorized charges from third-party companies (a practice known as "cramming"), in violation of federal and state law. Verizon denies any wrongdoing. The Court has not decided in favor of either the plaintiffs or defendants. Instead, both sides have agreed to settle the lawsuit in order to avoid the cost, delay, and uncertainty of litigation. The Settlement calls for payments to Class Members who file approved claims and injunctive relief designed to prevent future cramming.

You have the right as a member of the Settlement Class to file a claim for (1) a **Flat Payment Claim for $40, or** (2) a **Full Payment Claim** for the **full amount** (i.e., 100%) of all unauthorized Third-Party Charges you paid between April 27, 2005 and February 28, 2012. To receive a

settlement payment, you <u>must</u> submit a Claim Form by **November 15, 2012.**

You have been sent this Notice because Verizon's records indicate that you have received Third-Party Charges on your Verizon bill during the class period and are therefore a class member and may be entitled to submit a claim for payments. To file your Claim on line, or to obtain a Claim Form, <u>**Click here.**</u>

**How much will your payment be?** That depends on whether you make a Flat Payment Claim or a Full Payment Claim. If you make a Flat Payment Claim that is approved, you will receive $40. If you make a Full Payment Claim that is approved, you will receive the full amount (i.e., **100%**) of all unauthorized Third-Party Charges you paid between April 27, 2005 and February 28, 2012 (the "Class Period"). It is not possible to tell how much each class member is entitled to receive under the Full Payment Claim option without getting the summary of all Third-Party Charges that Verizon will provide to you, for free, as described in the next paragraph, as part of this Settlement. Some class members may have a claim for less than $40. Class counsel contends that some class members may have a claim for hundreds of dollars or more. To obtain payment, you must submit a Claim Form, which is available <u>here</u> or from the Settlement Administrator at <u>www.verizonthirdpartybillingsettlement.com</u>, 1-877-772-6219, or <u>questions@verizonthirdpartybillingsettlement.com.</u>

**You can get a summary of all your Third-Party Charges.** You may have been billed for Third-Party Charges over a period of months without having noticed it. To help identify unauthorized Third-Party Charges for which you were billed during the Class Period and decide whether to submit a Flat or Full Payment Claim, you can request a summary of all Third-Party Charges for which you were billed, for free. You may then use the summary of all Third-Party Charges to submit a Full Payment Claim on line, by e-mail or by mail.

**To request a free summary of all of the Third-Party Charges** that you were billed <u>**Click here**</u> or call 1-877-772-6219.

**What are "unauthorized Third-Party Charges?"** "Third-Party Charges" are charges for products or services provided by third-party companies (i.e., not Verizon) and are billed to your Verizon telephone bill, excluding certain charges identified in the class definition below. Examples of the types of products and services are: voicemail, email, fax, web page services (design, hosting or marketing), yellow page services, diet plans, identity protection and others. "Unauthorized Third-Party Charges" are Third-Party Charges you did not knowingly authorize.

**You can block Third-Party Charges from being included on your phone bill.** Verizon will, for free, place a "block" on your phone number so that certain Third-Party Charges will not be allowed to be billed to you in the future. To request the "block" on your phone number, call Verizon customer service toll free 1-800-VERIZON. If you later wish to remove the "block," you may do so, for free, by contacting Verizon at

the same number.

**Who is in the Settlement Class?** The Court certified a class for settlement purposes only consisting of: All current and former Verizon landline customers billed for Third-Party Charges submitted to Verizon by Billing Concepts Inc. a/k/a Billing Services Group Clearing Solutions or BSG d/b/a USBI and ZPDI, ACI Billing Services Inc. d/b/a OAN, Enhanced Services Billing, Inc. d/b/a ESBI, and HBS Billing Services Company (collectively, "Billing Concepts Inc."), The Billing Resource d/b/a Integretel, The Billing Resource LLC (collectively, "The Billing Resource"), ILD Teleservices, Inc. ("ILD"), Transaction Clearing, LLC ("Transaction Clearing") and PaymentOne Corp., d/b/a PaymentOne or Ebillit ("Payment One") from April 27, 2005 to February 28, 2012 (the "Settlement Class"). Excluded from the class are: (i) customers billed for only the following charges: (a) message telephone services ("MTS") usage charges; (b) charges that relate to a change in the customer's primary interexchange carrier ("PIC"); (c) charges billed by local telephone companies purchased from Verizon by Frontier Communications Corporation, FairPoint Communications, Inc., and Hawaiian Telcom; (ii) any judicial officer to whom the Action is assigned; and (iii) the U.S. government or any State government or instrumentality thereof. You received this email notice because Verizon's records indicate that you are a customer who was billed for such Third-Party Charges and are thus a member of the Settlement Class.

**Do you have a lawyer representing you in this lawsuit?** The Court appointed lawyers from four law firms to act as Class Counsel for the Settlement Class, whose information is at www.verizonthirdpartybillingsettlement.com. Class Counsel will ask the Court to approve payment of $7,500,000 for attorneys' fees and expenses for their efforts in achieving this Settlement and for their risk in undertaking their representation on a contingency basis and payment of $5,000 each to Desiree Moore and Karen Jones, for their services as Class Representatives. The Settlement Class will not be required to pay any portion of the fees and expenses and incentive awards awarded by the Court, which will be paid by Verizon. Payment of these items will not reduce the benefits available to the Settlement Class. You may hire your own attorney at your own cost if you wish, who may enter an appearance on your behalf.

**The Court has preliminarily approved the Settlement.** The Court-appointed Class Representatives, Desiree Moore and Karen Jones, and Court-appointed Class Counsel believe that the Settlement is in the best interests of the Settlement Class. The Settlement does not constitute an admission of any wrongdoing by Verizon. **IF YOU ARE A CLASS MEMBER, THE PROPOSED SETTLEMENT WILL AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS.** This Notice is only a summary. For complete information, **including deadlines by which you must act,** you should read the full notice or the Settlement Agreement, available at

**www.verizonthirdpartybillingsettlement.com.**

| Your legal rights and options in this Settlement | |
|---|---|
| **Submit a Claim Form** | This is the only way to get a payment. You have the right as a member of the Settlement Class to apply for (1) **Flat Payment Claim** for **$40** <u>or</u> (2) a **Full Payment Claim** for the **full amount** (i.e., 100%) of all unauthorized Third-Party Charges you paid between April 27, 2005 and February 28, 2012. To receive a settlement payment, you <u>must</u> submit a Claim Form by **November 15, 2012.** To submit your Claim Form on line <u>**Click here.**</u> |
| **Exclude yourself** | Get no payment, but do not give up your right to sue Defendants or related entities. To **exclude** yourself, you must mail a signed, written request to be excluded from Moore v. Verizon, with your name, address, and phone number, to the Settlement Administrator postmarked **by August 17, 2012.** Requests to be excluded from the Settlement should be mailed to Moore v. Verizon Settlement Administrator, PO Box 4655, Portland, OR 97208-4655. Unless you exclude yourself, you will be in the Settlement Class, and if the Settlement is approved, will be bound by it, and release claims against Released Persons, as defined in the Settlement Agreement. |
| **Comment or object** | If you do not exclude yourself, you or your lawyer have the right to **object** to or comment on the Settlement, Class Counsel's request for attorneys' fees and expenses and/or incentive awards, by mailing objections, in writing, to: Class Counsel, John G. Jacobs at 122 S. Michigan Ave., Suite 1850, Chicago, IL 60603, and Verizon's Counsel at Henry A. Weissmann, 355 S. Grand, Ave., 35 Fl., Los Angeles, CA 90071-1560 and filing the same with the Clerk of the Court at 1301 Clay Street, St. 400 S., Oakland, CA 94612 by **August 17, 2012.** Objections must include the objector's name, address, phone number, a detailed statement of the objection, all factual and legal support for it, evidence supporting it, including evidence of the objector's membership in the Settlement Class and the caption and case number appearing on the Settlement Class Notice. No one will be permitted to appear at the final approval hearing to present an objection unless that person has complied with the requirements set forth for filing a timely written objection. |

| Go to the hearing | If you would like, you may ask to speak in Court about the Settlement. You do not need to attend the hearing unless you wish to object in person, which is required to preserve your right to appeal the Settlement or award of attorneys' fees. The Court will hold a Final Approval Hearing on September 25, 2012 at 1:00 p.m. at the U.S. District Court, Northern District California, 1301 Clay Street, Oakland, CA 94612, Courtroom 1 to decide whether the Settlement should be approved as fair, reasonable and adequate and in the best interests of the Class and whether to approve Class Counsel's request for attorneys' fees and expenses and class representative incentive awards. The Court will be available to hear objections and arguments about the Settlement. The hearing may be changed to a different date or time without notice. No one will be permitted to appear at the final approval hearing to present an objection unless that person has complied with the requirements set forth for filing a timely written objection. |
|---|---|
| Do nothing | Get no payment and give up your right to sue Defendants and other released entities regarding the issues in this case. |

**This is only a summary of the Settlement. For a full description of the Settlement, your rights under it, the deadlines by which you must act, and copies of relevant documents, go to www.verizonthirdpartybillingsettlement.com.**
**Questions or to obtain a Claim Form: Visit www.verizonthirdpartybillingsettlement.com, call 1-877-772-6219 toll free or send an email to questions@verizonthirdpartybillingsettlement.com.**

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.2177 / Virus Database: 2437/5149 - Release Date: 07/23/12

# Exhibit B

**Bill Weinstein**

| | |
|---|---|
| **From:** | AccountNotify@verizonwireless.com [eAccountNotify@verizonwireless.com] |
| **Sent:** | Monday, August 06, 2012 9:38 AM |
| **To:** | wrweinstein@optonline.net |
| **Subject:** | Account Change Notification Available in My Verizon |
| **Attachments:** | _Certification_.htm |



## IMPORTANT ACCOUNT INFORMATION FROM VERIZON WIRELESS.

### Your Wireless Number Ending With: 1084

Your confirmation letter includes an updated summary of your recent changes to the wireless number listed above. To view your copy, go to *My Documents and Receipts* and select the mobile number referenced above.

**> Go to My Documents and Receipts**

Thank you for choosing Verizon Wireless.



**My Verizon** is also available 24/7 to assist you with:

- Viewing your usage
- Updating your plan
- Adding Account Members
- Paying your bill
- Finding accessories for your devices
- And much, much more...

## AMERICA'S LARGEST AND MOST RELIABLE HIGH SPEED WIRELESS NETWORK.

© 2011 Verizon Wireless

Verizon Wireless | One Verizon Way | Mail Code: 180WVB | Basking Ridge, NJ 07920

We respect your privacy. Please review our privacy policy for more information.

If you are not the intended recipient and feel you have received this email in error, or if you would like to update your customer notification preferences, please click here.

PO Box 4003
Acworth, CA 36101

RULE THE AIR

WILLIAM WEINSTEIN
3 CLAREMONT RD
SCARSDALE, NY 10583-1103

You recently updated your service on line
914-523-1084.
For a summary of your service read on.

August 7, 2012

Dear William Weinstein,

Thank you for being a Verizon Wireless customer This letter confirms that the service update you requested on line 914-523-1084 went into effect on August 4, 2012. See a snapshot of your service below.

Sincerely,
Verizon Wireless

## SERVICE SUMMARY FOR LINE 914-523-1084 AS OF 08/04/12

Contract End Date: 03/22/14
Early Termination Fee: Up To $350

| | TALK | TEXT |
|---|---|---|
| | SHARED | SHARED |
| Allowance | 700 Mins. | Unlimited |
| Monthly Access - This Line | $9.99 | Included |
| Overage Rate | $0.45/Min. | N/A |

Included Feature(s) for this line: •Unlimited Nights And Weekend Share •Unlimited National M2m

| CURRENT FEATURES | Price | CURRENT FEATURES | Price |
|---|---|---|---|
| • National Access Roaming | $0.00 | • Email & Web Unlimited $29.99 | $29.99 |

## SERVICE SUMMARY FOR SERVICES AS OF 08/04/12

Account # : 0282257500-00001        Account Plan Description : Nationwide Talk & Text Shareplan

### SHARED SERVICES

| | TALK 700 Mins. | TEXT Unlimited |
|---|---|---|
| Allowance | | |
| Monthly Access - Account | $80.00 | Included |
| Overage Rate | $0.45/Min. | N/A |
| Total Monthly Line Access Charge | $39.96 | Included |
| Total Lines Enrolled | 4 | 4 |

Nights:      9:01pm - 5:59am, Monday - Friday
Weekends:    12:00am Saturday - 11:59pm Sunday

Please note: Individual lines may have additional, recurring monthly fees for non-shared services. Taxes & Surcharges apply; see details following this service summary.

Taxes & surcharges billed are based on:
Monthly Regulatory Charge (subject to change from time to time) .. ..... ... 16¢ per line
Monthly Administrative Charge (subject to change from time to time) ........... 99¢ per line
Monthly Federal Universal Service Charge on interstate & international
telecom charges ........................................................................... 15.7% per line
(This percentage varies quarterly based on FCC rate)
Note:
Federal Universal Service, Regulatory and Administrative Charges are Verizon Wireless charges, not taxes. Taxes and Verizon Wireless surcharges may be between 12% and 41% of your monthly bill.

Note: Please retain this letter, which is for information purposes only, for your records. Discounts apply only if you are on a qualifying plan. In the case of error, your Calling Plan and Customer Agreement will govern.

confidential

INCLUDED FEATURES

| | |
|---|---|
| 411 Search[1] | Connect to a live operator and get automatic call completion for only $1.99 per call, plus airtime. Up to 3 numbers can be provided per call. |
| Calling Features | Enjoy Basic Voice Mail with Message Waiting Indicator, Caller ID, Call Waiting, 3-Way Calling, Call Forwarding and No Answer/Busy Transfer. |
| Data Sent or Received[2] | Data sent or received using Mobile Web (including advertising), Get It Now, and other data applications will be billed $1.99 per megabyte. |
| | For information about how and when data charges are incurred and how to manage your data usage, click on the "Understanding Your Data Charges" link located in your Account Document section at www.verizonwireless.com/messagecenter. |
| International Roaming/Calling[3] | Visit verizonwireless.com/international for applicable long distance and roaming rates, and for places you can call direct and use your phone. |
| International Text Messaging | From US to international destinations:  $0.20 per message received and $0.25 per message sent. |
| | While traveling internationally:  $0.05 per message received and $0.50 per recipient per message sent. |
| Mobile Web 2.0 | Get the latest news, sports and weather tracking. |
| Unlimited Messaging[4] | Send and receive Text, Picture & Video Messages to anyone on any network in the US. |
| Unlimited National Mobile to Mobile (M2M) Calling Minutes | To call other Verizon Wireless customers from within the U.S. |
| Unlimited Night & Weekend Minutes | Night hours:  (Mon-Fri) 9:01 p.m. - 5:59 a.m.<br>Weekend hours:  (Sat-Sun) 12:00 a.m. - 11:59 p.m. |

1. Rates and features vary when when outside the Nationwide Rate and Coverage Area.
2. Data usage for smartphone users will be billed at $0.015 per KB ($15.36 per MB) unless you add a data block or data feature.
3. International Dialing (I-Dial) may be required prior to calling or roaming internationally.
4. Applies when sending and receiving (i) Text messages in the United States. (ii) Text Messages sent via email; (iii) Instant Messages; (iv) Text Messages with customers of wireless carriers on participating networks in Canada, Mexico and Puerto Rico. Premium Messaging programs not included. Messaging is available from within the National Enhanced Services Rate and Coverage Area and is not available throughout the Nationwide Rate and Coverage Area.

**For a map of your wireless coverage, visit verizonwireless.com/coveragelocator and enter a street address.**

11340

Verizon Wireless is not responsible for any information, content or services you access, download or use from the Internet.  You may access and monitor your data usage by accessing My Verizon online or by contacting Customer Service.
Verizon Wireless calling plans, rate and coverage areas, rates, agreement provisions, business practices, procedures and policies are subject to change as specified in the Customer Agreement.
11360

# Exhibit C

V-EAST-LTRHD_1/10



Verizon
P.O. Box 33079
St. Petersburg, FL 33733-8079

**NO CORRESPONDENCE ACCEPTED AT THIS ADDRESS**

October 19, 2011

# Enjoy your new service.
### Here's what you'll need to know.

>03047 7181843 001 008018 03
William R Weinstein Esq
199 Main St Fl 4
White Plains NY 10601

Ref#: 9149972205

Dear William R Weinstein Esq:

Thank you for ordering the following service(s) from Verizon. The package features and calling services that you added, as shown below, became available on 10/19/11.

> Telephone Number: 914 997-2205
> Solutions Bundle Main Line - 2 year
> - Voice Line
> - Calling Features
> - Caller ID and Voice Messaging
> - Unlimited Nationwide Calling
> Three-Way Calling
> Caller ID
> Call Forwarding
> Business Call Answering

To receive the most benefit from your service(s), please read the enclosed instructions.

We look forward to assisting you in the future with your choice of many Verizon products and services to further enhance your services while growing your business.

For additional information, see our website at www.verizon.com.

Sincerely,

Verizon's Business Voice Services and Usage Team



## CERTIFICATE OF SERVICE

WILLIAM R. WEINSTEIN, an attorney admitted to and in good standing with the bar of the State of New York and the United States Court of Appeals for the Ninth Circuit, among others, hereby certifies under penalties of perjury that, on August 16, 2012, he caused the foregoing Objections of Mark Drozdov to Proposed Class Action Settlement and Exhibits to be served by Priority Mail on the following recipients prescribed in the Frequently Asked Questions on the website relating to the Settlement of the action:

John G. Jacobs
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
*Counsel for Plaintiffs*

Henry A. Weissmann
355 S. Grand, Ave., 35th Fl.
Los Angeles, CA. 90071-1560
*Counsel for Verizon*

Moore v. Verizon Settlement Administrator
PO Box 4655
Portland, OR 97208-4655

Dated: August 16, 2012

_____
WILLIAM R. WEINSTEIN



PLEASE PRESS FIRMLY

**PRIORITY MAIL**

NITED STATES POSTAL SERVICE

lat Rate Mailing Envelope

sit us at usps.com

**TERNATIONAL RESTRICTIONS APPLY:**

ustoms forms are required. Consult the
ternational Mail Manual (IMM) at pe.usps.gov
ask a retail associate for details.

CERTIFIED MAIL™

7011 1570 0002 3343 0564

U.S. POSTAGE
PAID
CANTON,OH
4711
AUG 16 12
AMOUNT
**$10.45**
0004 1S23-06

PRIORITY MAIL

97208

UNITED STATES
POSTAL SERVICE
1006

— . . SE PRESS FIRML





**PRIORITY®**
**MAIL**

**For Domestic**
**and International Use**

UNITED STATES POSTAL SERVICE

Law Offices of Wm. R. Weinstein
199 Main Street, 4th Floor
White Plains, NY 10601

**From**

TO  Moore v Verizon Settlement
Admin + Staton

PO Box 4655

Portland, OR 97208-4655

Label 228, January 2008





PS00001000014

# TODD ELLIOTT

**Tuesday, May 15, 2012**

Reply to Todd G. Elliott
Attn of: P. O. Box 2356 (ZIP 01888)
   101 Munroe Avenue
   Woburn, MA  01801-3259 Tel. (781) 937-7724 or (781) 933-6517

To: U. S. District Court
  Northern District California
  1301 Clay Street, St.400 S.,
  Oakland, CA 94612
  Court Room 1

RE1: Full Payment Claim, PIN: ~~▒▒▒▒▒▒~~
  CLASS ACTION SETTLEMENT NOTICE
  Verizon Third Party Billing Settlement
  Class Action Settlement Administrator
  C/O Epiq Systems
  Moore v Verizon, Case No. CV-09-1823 SBA
  PO Box 4655
  Portland Oregon (OR) 97208-4655
  www.verizonthirdpartybillingsettlement.com
  1-877-772-6219

RE2: VERIZON Billing of the Elderly in Massachusetts, Karen Powers, Account Number ~~▒▒▒~~ ~~▒▒▒▒▒▒6~~, and Todd G. Elliott, Account Number ~~▒▒▒▒▒▒▒▒~~.

Subject: Received Court Ordered Notice of invalid business practices by Verizon; Seeking Consideration, PIN: ~~▒▒▒▒▒▒▒~~**Additionally, Unreasonable and inflated pricing by VERIZON, Inc. under the preview of Massachusetts State Law for Elders**. Seeking Consideration from years of abuse from payments of services not rendered by Verizon Services to <u>a single family home</u>.

## BACKGROUND OF SERVICES PROVIDED BY VERIZON:

I, Todd G. Elliott, attempted to explain in, 2008, before the work orders (MA00016478913 and MA00016478072), of 01/09/09 and 01/16/09 were even initiated, that the primary purpose of changing all telecommunications services to Verizon at the above single family residence was and still is economics. Installed, was, and is <u>one</u> FIOS Line that extends from the pole to a single FIOS panel in the basement. The panel serves the purpose to multiplexing two (2) Telephone Lines, Television and Computer Internet Service. Repeat, this is service providing two (2) telephone lines, RF Cable TV, and computer internet service. Two (2) Invoices had have been submitted, to receive two (2) billings; Tel. (781) 933-6517 258 001 6, for Karen, and Tel. (781) 937-7724 880 001 8, for me, Todd G. Elliott. Together the two bills balances were a total in excess of $200.00 per month. I feel cheated. I am not a big user of these telecommunication services collectively. Plus, I do not like having to pay rental fees on Telecommunications'

<em>Page 1 of 3</em>

company's equipment because it appears to be a scam. I am seeking consideration for costs incurred between 2008 an 2012.

Karen, of 67 years, only watches local TV programming and few cable TV Channels. Premium and extra cost broadcasts are NEVER utilized, yet we were charged periodically for services never used. I do not subscribe to Premium or HD channels. It just does not seem fair to have had been charged to pay for services not utilized. It just does not seem fair to take advantage of consumers in this way. And finally, Are there any considerations, suggestions or help available? I have corresponded with Verizon as early as 2008 (when this service was first initiated), but to no avail. In December 23, 2011, Verizon Scheduled a Work Order, to have this matter remedied, but Verizon never showed up to keep their appointment. I have been corresponding with Verizon since 2008 to no avail and the Verizon Escalation Department persistently did not respond to my customer service requests. I brought it to the attention of the local Law Center which has produced some results. I have an extensive audit trail and I intend to demonstrate Verizon poor customer service, and outright cheating me out of services to their monetary advantage. I possess all my Verizon bills and advertisements inclusively. In 2008, I utilized RCN (before that

Comcast/*Xfinity*). I was paying $200 to $300 per month on telecommunications without rendered services. I knew I could not continue on my fixed retired elderly income. I received a continuous amount of advertisements of how 'Bundling' services from my multiple bills, to one bill would cause an economical savings to my benefit as a retiree (advertisement from Verizon). I accepted the presumed offer made by Verizon. They did not do as they said, nor honored my wishes in 2008. It could have had been done with simplicity using software application. I had telecommunications; Telephone (two lines), Basic TV (channels 2, 3, 4,7, etc), and Internet Services with Verizon which average cost of $200.00 to $300 per month again. Nothing changed after 2008. I feel I have been cheated. I am not a big user of extensive services. Repeat, I do not like having to pay rental fees on Telecommunications' company's equipment either. To me it is a scam.

I do not watch TV. My wife to be, Karen, rarely watches more than 30 different types of the basic TV channels. I do not subscribe to Premium or HD channels. It just does not seem fair to incur extensive cost to me during 2008 to 2012. I do not like having to be itemized for each and every price item line concerning combined services. It just does not seem fair to take advantage of consumers in this way. And finally, I feel nick picked for each and every Internet service used. Are there any considerations, suggestions or help available?

Karen Powers (an elder) and I are on a fixed low income. Our motivation was expressed to be combined ("BUNDLE") services (three TVs, Internet, and two phone lines) on to one monthly bill statement. Please, I insisted in 2008, services be merged, whether (781) 933-6517, or (781) 937-7724 is established as the primary account. What does not make sense is that both lines physically go to the same FIOS terminal anyway. I did not want to have to pay two bills each month to the same company; Verizon. Additionally, Verizon's advertisements of low monthly payments were very enticing, but deceptive. I hope they can honor their customers to stay within their budget. Someone please help.

NOTES: I, Todd G. Elliott, seek to be included in this settlement. Do not exclude me. On Monday, 09/26/2011, I received a call from Verizon. Another one received from a multitude of continuous correspondence received from the Telecommunications industry over the years. The

kindness I had been once been accustomed to from telecommunications companies years back was not present. The Verizon spokes person came across, or more inappropriately (almost to the point of being argumentative) identified a strong handed approach and not accommodating to me as a consumer. This sets the pace, because Verizon personnel have in the past pretended they cannot hear me, or blatantly disconnected the call by hanging up, without any concern to address my concerns. I Quote: "You shall continue to receive services, by way of bills accordingly to the price fluctuations deemed necessary by Verizon. No further accommodation shall be made in spite of a <u>single line</u> from the street pole, multiplexed within and billed to a <u>single family home</u>. It is not Verizon's policy to bill residential consumers as requested who live in a <u>single family home</u>, on a two line service, connected to a single panel internal to the house from the years between 2008 and 2012. My correspondence with Verizon by postal mail, phone, and internet demonstrates that Verizon Policy drives their employees to acquire profits, in lieu of accommodating the needs of the consumer. I find Verizon to be a wide spread disjointed and dysfunctional organization. One Verizon organization does not know what the other is doing as matter of concern. The very nature of a big bureaucracy that becomes unmanageable evolves to be self protective at the loss of the consumer. <u>All In All I want Verizon to increase the number of tier programs that adequately accommodate their customers.</u>

TODD G. ELLIOTT

Page 3 of 3

Mr Todd Elliot
101 Monroe Ave
Woburn, MA 01801-3259



P.O. BOX 2356 (ZIP 01888)

U.S. DISTRICT COURT
NORTHERN DISTRICT CALIFORNIA
1301 CLAY STREET, STE. 400 S.)
OAKLAND CA 94612



# JOSEPH & BETTY FIX

**RECEIVED**

AUG 2 0 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**                    **600000010**

# Document Range

0307105

**Begin:**                    **End:**                    **Quantity:**

**Prepped by:**          **QC:**          **Stats:**          **Scanned by:**

ID #:

**Route to:**  Vault          **\*Route to:**_____

169 Danbury Drive
Cheektowaga, NY 14225-2—2
Email: phenry65@hotmail.com
Telephone: 716.836.1264
Cell phone of son, Brian Fix:  310.746.7738
In re: Verizon Account:  7168361264180265


8/16/2012    17:18:33 PM



Clerk of the Court at 1301 Clay Street, St. 400 S., Oakland, CA 94612

CC: John G. Jacobs at 122 S. Michigan Ave., Suite 1850, Chicago, IL 60603 (Plaintiffs' Counsel)

Bcc:  Henry A. Weissmann, 355 S. Grand, Ave., 35th Fl., Los Angeles, CA. 90071-1560 (Verizon's counsel)

Bcc:  Moore v. Verizon Settlement Administrator, PO Box 4655, Portland, OR 97208-4655

Dear Honorable Court and relevant counsel:

*I am writing to object to the Settlement in Moore v. Verizon, Case No. CV 09-1823 SBA.  My name is Joseph Fix, my wife Betty, my son Brian, and other sons and daughters not listed here.  My current address is 169 Danbury Drive, Cheektowaga, New York 14225, my current telephone number is 716-836-1264, my Verizon telephone number is the same: area code 716, 836-1264.  My signature is below.  My primary reasons for objection are below.  My factual and legal support to my objection is below.  I reserve the right to enter further factual and legal information, as it becomes available to me.  I shall do so in a timely manner.  I intend to appear at the Final Approval Hearing.  I will appear through my son, Brian Fix, or legal counsel, as provided at a later date.*

*Reasons for Objection to the Settlement:*

*I respectfully object to the settlement.  I and my family are forced into this settlement.  We are egregiously under informed.  We are under duress to enter into present class action.  We argue the terms are unconscionable. Unconscionability, duress, and other adverse bargaining conditions are due to a lack of response by Verizon and inability to influence Verizon by honorable counsel to class action.  We appreciate the effort put in by honorable plaintiff's counsel.  Still, Verizon and Plaintiffs' attorneys have not fully informed us as to our summary of all Third Party Charges for which we were billed.  We have requested said information many, many times since June of 2012. We have never received a reply, even when promised by plaintiff counsel.  We cannot make a fully informed decision.  We cannot make a reasoned decision, that capable of being made by a reasonable man, without such information, as to, inter al., whether to opt in or opt out of present class action.  It is now less than 24 hours before objection must be filed or not.  We appreciate the efforts made by Plaintiff's counsel, but still must hold our objection.  Indeed, one of the 'Benefits of class action is facilitation and receiving Summary of Third Party Charges, as stated on Administrator's website, below.  This benefit has not been delivered.*

*We first placed our request for a Free Summary of all Third Party Charges, as instructed by Verizon and/or Counsel for the Plaintiffs in June 2012.  We heard nothing back from both Verizon and Counsel.  We reapplied for summary in July, via the internet site and/or email provided by Plaintiffs' counsel and Verizon.  We heard nothing.  We*

applied a third time, and received a 2nd confirmation on or about July 15th, 2012, we received an email from the provided website, detailing that our confirmation number is: MSKXEHBI.  The email pledged that "(Y)our summary of all Third-Party Charges that you have been billed during the Class Period will be emailed to you at the email address you provided in approximately 14 days.  This means a summary would arrive via email on or about July 29[th].  No notice arrived.  We received a second confirmation:  confirmation number is: ULYRWP3T. We heard nothing.  We called counsel for Plaintiffs on August 8[th], 2012, requesting clarification, and possibly expediting Summary of Third Party Charges.  This information would help us, Plaintiffs, make an informed decision on whether or not to opt in to Class action.  We heard nothing.  On August 9[th], we received an email from counsel  for the Plaintiffs:  In that email, counsel wrote : "We were told that, by today or early next week, your summary will be emailed to you, or you will receive an explanation for why it was not emailed to you. "  This would mean a Summary would arrive on August 9[th], 13[th], or 14[th].  I interpret 'early next week' to mean Monday or Tuesday.  Yet, even by Wednesday, August 15[th], we heard nothing.  We received neither a Summary (requested in mid to late June) nor an explanation.  On Thursday, August 16, 2012, 2 pm EST, we received a call from Verizon Third Party Settlement.  The call lasted more than ten minutes.  No summary was produced, provided, or shared. No explanation as to the delay was provided.

Plaintiffs Joseph Fix, Betty Fix, and children will provide telephone, internet, and telephone records upon request.

Plaintiffs have at least one son and one daughter well versed enough in the law, and with contacts enough in the legal field, to make reasonable attempts to handle this case on our own.  However, Verizon and, perhaps unintentionally, counsel to plaintiffs have provided numerous obstructions to obtaining said information. Verizon is especially guilty in this regard, providing unnecessary delays and breaking pledges to plaintiffs, including the strong likelihood of numerous other plaintiffs, and even pledges to counsel.

Telephone information provides by class counsel and Verizon is as follows:

"To help identify unauthorized Third-Party Charges for which you were billed during the Class Period and decide whether to submit a Flat or Full Payment Claim, you can request a free summary of all Third-Party Charges for which you were billed, by clicking here or calling 1-877-772-6219."

We have called this telephone number numerous times, beginning in mid to late June and extending through August 16, 2012.  We have awaited email with Summary until 17:25 pm, 8.16.2012.  Accessed but no responses.

Web page design:  As the web pages were designed (https://www.verizonthirdpartybillingsettlement.com/(S(vnhl13rzcb0ajdi5sss5uqye))/default.aspx)

And (https://www.verizonthirdpartybillingsettlement.com/(S(2t0vn1bbit3yz1jwem0dybqq))/FAQ.aspx) accessed on June 19th, July 15th, August 16th, 17: 16, and numerous other dates, it is confusing and difficult to trace for the common plaintiff.  The default web site shows only one page, replete with incentives for plaintiffs to choose one settlement or another, but not to object or comment.  There are two hypertext links under a heading advantageous to counsel: "Submit a Claim Form", which precedes all others.  These links lead plaintiffs to choose one settlement or another.  There are no links on this default page to include objections or comments.  Additionally, the third heading, two below the enticing "Submit a Claim Form", is headlined "Comment"  Only in parentheses is there a subtitle that suggests "including Object".  In fact, it provides disincentives to comment or go hearing.  One must delve deep into details on a dependent page for that process, whereas the first two links are all about signing up with the four assigned attorney firms.

Buried deep on the secondary, dependent page, at offer #18, is the instruction that I "like or don't like the settlement". Opting out is did not even make the top ten. It is offered ot #14, beneath a blur of blue hypertext links that serve the counsel to Plaintiffs very well.

The settlement pledges that "Verizon will provide you, free of charge, a summary of all of the Third-Party Charges that you were billed from April 27, 2005 through February 28, 2012." As I and my family were customers during this entire seven year period, there is a strang likelihood that our Third Party Billing Charges were in excess of the $40 flat fee offered by plaintiff's counsel. Indeed, on the same web page, counsel is quoted: "Class counsel contends that some class members may have a claim for hundreds of dollars or more." But Verizon and class counsel have made it difficult to discern in a timely manner of we are one of these fortunate 'hundreds of dollars' plaintiffs. If so, we may be better off filing outside of the present class action, Settlement in Moore v. Verizon, Case No. CV 09 – 1823 SBA. Again, we have access to some pretty knowledgeable legal persons. For example, our daughter has worked for a single law firm continuously for two decades, and in the field for nearly thirty years. But, without compliance from Verizon, how can the reasonable man assess whether to file independently, or opt to the present class action? And, if Verizon can bluff, bluster, and delay a major law firm appointed by the court (which it did, in the case of the Honorable Attorney David Schachman, DAVID SCHACHMAN & ASSOCIATES, P.C., 122 South Michigan Avenue, Suite 1850, Chicago, Illinois 60603, Telephone: (877) 593-2088, how much more easily can the seemingly non-contrite Verizon put off our daughter, son, and others in our relatively less influential legal circles.

For the reasons above and related reasons, I object to the settlement

In advance, I petition for good cause to not appear in person. I and my wife are Senior Citizens and reside in New York State. We understand the Final Approval Hearing will be held in Northern California. Our son may be able to serve as proxy and advocate on our behalf. I ask that he may have the right to speak at the Final Approval Hearing.

https://www.verizonthirdpartybillingsettlement.com/(S(2t0vn1bbit3yz1jwem0dybqq))/FAQ.aspx) , accessed on 16th August 2012, states that : "Mail the objection, postmarked no later than August 17, 2012 ...". We have complied with this due date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Sincerely,




Joseph Fix, Betty Fix, and family

Date:  8/16/2012 5:15:31 PM



497 VAN DUSY LK.
CHEEKTOWAGA, NY 14225

SAN DIEGO CA 920

16 AUG 2012 PM 2 4

MOORE v. VERIZON SETTLEMENT
ADMINISTRATOR
P.O. BOX 4655
PORTLAND, OR 97208-4655

97208465555

RECEIVED

AUG 0 6 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**                    **600000007**

This Item Was Labeled as a Special Request by DC
DC Issue Tracking # SP 2600
Requested by: S. Dungan
From VOID? (YES) NO   Date: 8-13-12
Original Case: Moore VVerizon
Original Doc Type: Corres
Original Doc ID: 700001170

Please Review Document History
Before Requesting a VOID

# Document Range

| Begin: | End: | Quantity: |
|--------|------|-----------|
| 7 | — | 1 |

0307105

| Prepped by: | QC: | Stats: | Scanned by: |
|-------------|-----|--------|-------------|
| ID #: 14 1c<br>8/13/12 | ✓ | AG<br>8/13/12 | AG<br>8/13/12 |

**Route to:**   Vault          *Route to:_____

169 Danbury Drive
Cheektowaga, New York 14225-2002
(716) 836- 1264
(310) 746 – 7738
Email:                          or          *phenry 65@ hotmail. Com*
                                              *rentuva 2009@gmail. Com*
2 August 2012


Moore v. Verizon Settlement Administrator,
PO Box 4655,
Portland, OR 97208-4655

Dear Sir or Madam:

Verizon Account 716 836 1264 180 26 5

In re Verizon Class Action lawsuit. I object to the settlement.   Settlement administrators have not given us, senior citizens, a timely or reasonable period to discern whether or not to opt in to the class action.

I am writing to express hurt, to stop the hurt, to prevent the hurt from occurring again, to increase communication, and improve the relationship I have with Verizon Class Action attorneys.

I am a resident of New York State.

I am a potential party to the Verizon Class action suit.

In late June, I called the provided number by Verizon Class Action attorneys to gain a summary of Third Party billing charges.   We followed the instructions completely.   Six weeks later, we have not received a form to submit to learn of our summary.

We are Senior Citizens, and we would like to have adequate time to reason whether or not it is in our best interest to be included in the class action.

Later in June, we filled out the form online, to gain a Summary form to better make this informed, reasoned decision.   We heard nothing back.   It has been over one month.

Lastly, in July, we filled out a form online again, got a ticket number again (though a much later one, we presume).   We have yet to receive a form, to learn of our Third Party billing summary.   We would like to make an informed decision.

In sum, we are senior citizens.   We suffer from certain ailments, have many doctor's appointments, and would like to have more time than the court initially afforded in order to decide whether to opt in or out of the class action suit.

Class Counsel will ask the Court to approve payment of $7,500,000 to them for attorneys' fees and expenses.   This is certainly enough compensation for the four firms selected by the court to respond in a

reasonable time period.  Six weeks, and five weeks, is certainly a reasonable enough time, in our humble estimation, to respond to the true sufferers of these over charges.

We reserve the right to ask the United States District Court for the Northern District of California to extend the deadline and / or to sanction the alleged honorable attorneys and their staff for not responding to us and other potential class action participants in a timely and reasonable manner.  After all, the Attorneys have email, internet, cell phones, blackberries, computers, faxes, telephones, and the like, at their disposal.  We, the humble potential plaintiffs, have only a phone, and public library access to email.

Please increase communication and improve the relationship in an expeditious manner in the approaching week.  You may reach ourselves, or my son, Brian Fix, at the above information.  Thank you.


Sincerely,

Joseph and Betty Fix



Fix
169 Dansbury Drive
Cheektowaga NY 14225-2002

Moore v. Verizon
P.O. Box 4655
Portland, OR 97208-4655

5720846555

# RONALD GREEN

RECEIVED

JUL 1 2 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**

**600000005**

**Special Request**
Tracking # SP2405e

# Document Range

0307105

**Begin:**

5

**End:**

—

**Quantity:**

1

| Prepped by: | QC: | Stats: | Scanned by: |
|---|---|---|---|
| ID #: 14 6 <br> 7-12-12 | ✓ | AG <br> 7/13/12 | AG <br> 7/13/12 |

**Route to:** Vault          **\*Route to:** _____

RONALD M. GREEN
5540 BARNHOLLOW RD.          ronaldpreppie@aol.com
NORFOLK, VA 23502            757-466-2965 Home

July 6, 2012

Henry A. Weissmann,
355 S. Grand. Ave., 35th Fl.
Los Angeles. CA. 90071-1560 (Verizon's counsel)

RE:    OBJECTION

TO WHOM IT MAY CONCERN:

I, Ronald M. Green of 5540 Barnhollow Road, Norfolk, Va. 23502, a plaintiff class member
objects to current settlement for the following reasons:

1). I object to the United States government being a plaintiff since the government with each
respective state had a regulatory responsibility to avoid such fiascos or debacles with sufficient
and more stringent regulation backed with supervisory follows-ups on especially all
Corporations like Verizon, who also receive massive tax breaks. *The government's portion
considered should be split among the other class members due to inadequate execution and
enforcement of laws.* This has largely along with Verizon's conduct alleged contributed to
providing the importunity for cramming. Now this is further supported by:
> a). The "Declaration" of John G. Jacobson page 2, lines 19-21,
> b). "Declaration of David Schachman", number 4, page 3 lines 5-13,
> c). Again, with respect to government regulation(at least annual accountability of
> "Verizon" to customers and the government, and quarterly accountability from Third
> Party Billing to Verizon) in relations to number 9 of page 5 of Schachman's Decl.,
> d). With respect towards the inadequacies of government and defendants in relations
> to the " Declaration of the Honorable Daniel H. Weinstein(Ret) in Support of Motion for
> Preliminary Approval of Class Action Settlement, page 5, lines 16-19, and
> e). In further support of the defendant's conduct complained of with respect to
> deficient governmental execution and enforcement towards accountability, number 20
> of page 8 of the declaration of the Honorable judge D. H. Weinstein.

2). It appears based on my understanding that the amounts payable to each class member
apart from the lead plaintiffs equals to "Full payment of claims"(100%) of monies charged
unauthorized. Unless the other issues raised by Class Counsel applies such as actual, treble,
and exemplary damages, for class plaintiff(in addition to injunctive and declaratory relief,
interest, costs, and reasonable attorneys fees).

(1)

3). Now if such damages do apply then I object to a complete lump sum payment made if the amount is more than $1,000.00 rather than paid in increments of $1,000.00 or less consecutively until exhausted due to disability requirements such as the "Substantive Gainful Activity Level".

4). I object to the period certain for determining claims without having verification of knowledge within the Amended Complaint or subsequent motions. I support a 10 year period certain based on "the Senate Report" of page 9 of 34 of the Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class action Settlement; Memorandum of Points and Authorities in Support Thereof.

5). I object to the payment amounts of the lead plaintiffs and Class Counsel because these people are heroes and should be paid three times as much at minimum of what is reported in current settlement.

6). I'm not anticipating appearing before the U.S.D.C. for the Northern District of California for the Final Approval hearing, however; I object if my right to reserve a change of mind to appear would be denied pursuant to the Stipulation and Settlement Agreement page 29 of D.1.(v), Objections by Settlement Class Members.

7). I object to Termination for Unexpected Incident of Exclusion and Termination for Modification Reversal or Failure to Obtain Approval on page 29, numbers A. and B., it should not be convenient for the defendants in relations to the inconvenience defendants have imposed on class plaintiffs. Any suffering of defendants is only consequential and well deserved.

8). With respect to Effect of Termination or Non-Occurrence of Effective Date, I object because whatever portions of the Settlement are workable, each class member should have the right to decide on the outcome of whether to accept after determination of defendant's denial by each class member's acknowledgement of right to choose to settle based on denial options.

9). Responding only in letter form rather than by motion unless letters become exhibits to be added to the record.

10). I object to the fact I haven't received the package to view over my account for cramming, when I had made my request by phone on or around 05/23/12, and by email on 05/30/12.


Thank you sincerely,

Ronald M. Green

RONALD M. GREEN
5540 BARNHOLLOW ROAD
NORFOLK, VIRGINIA 23502

March 1, 2010

VERIZON
P. O. BOX 9000
ANNAPOLIS, MD 21401-9000

RE:      Freeze on my account #: 000126094858 13Y, since 03/18/04 and future Notifications?

TO WHOM IT MAY CONCERN:

On March 18, 2004, I called Verizon to report a carrier I saw on the internet appearing to
attempt to switch me from Verizon without authorization.  I was also persuaded by Verizon to
put a freeze on my account as witnessed and recorded by a Third Party Verifier, who in turn
informed me that I must notify Verizon to remove the freeze if I decide to change to another
carrier.  Documentation in support of the verification was also placed on the subsequent billing.

However; my inquiry before you today is to find out why Verizon once notified of my intent to
switch carriers and port my phone number only sought to deny Ooma(new carrier) and myself
of my Request despite the paperwork I initialed with Ooma to display my obvious "intent to
contract"?  In addition, on September 14, 2009, and September 22, 2009, included but not
limited thereto; why wasn't I also again reminded and/or informed of the freeze on my account
during the times I made aware to Verizon of my intent to change carriers, cut off one phone
line(757-466-8826) and/or reduce current phone services to Economy plans, when Verizon
during those times asked(as answered) why was I changing, cutting off and/or reducing
services?

I'm also requesting a copy of the verification process as recorded on 03/18/04 along with what
constitutes notification from a customer for intent to change carriers pursuant to your
corporate policy, and/or procedure.  Please inform me of any costs necessary to accommodate
my requests.


Thank you sincerely,

*R. M. Green*

RONALD M. GREEN     757-466-2965 HOME  757-348-0436 CELL

# BARBARA HILTON

RECEIVED

MAY 2 2 2012

LEGAL SERVICES

### Moore v Verizon CA3071



**Objection #**

600000002

**Special Request**

Tracking # SP1817

# Document Range

0307105

| Begin: | End: | Quantity: |
|--------|------|-----------|
| 2 | — | 1 |

| Prepped by: | QC: | Stats: | Scanned by: |
|-------------|-----|--------|-------------|
| ID #: 14 LC<br>5.23.12 | ✓ | AG<br>5/23/12 | AG<br>5/23/12 |

**Route to:** Vault          **\*Route to:** _____

MAY 16,2012

CLASS ACTION SETTLEMENT

JOHN G.JACOBS,ESQ
122 S.MICHIGAN AVE
ST.1850,CHICAGO,IL 60603
CC:HENERY A WEISSMANN
355S.GRAND AVE 35TH FL
LOS ANGELES, CA9001-1560
CC:CLERK OF THE COURT
1301 CLAY STREET ST.
400 S OAKLAND, CA 94612

I BARBARA HILTON WITH PIN 8646804681266 OBJECTIONS

OBJECTIONS

BARBARA HILTON

# SHIRLEY JONES

RECEIVED

MAY 1 4 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**                                    **600000001**

## Special Request
Tracking # SP 1759

# Document Range

0307105

| Begin: | End: | Quantity: |
|--------|------|-----------|
| 1 | — | 1 |

| Prepped by: | QC: | Stats: | Scanned by: |
|-------------|-----|--------|-------------|
| ID #: 14 IC<br>5-17-12 | ✓ | JB | MAY 2 1 2012 |

**Route to:**  Vault                    **\*Route to:** _____

May 9, 2012

John G. Jacobs, Esq

122 S. Michigan Ave. St. 1850

Chicago, IL 60603

Henry A. Weissmann,

355 S. Grand Ave., 35th Fl

Los Angeles, CA 90071-1560

Clerk of the Court

1301 Clay Street, St. 400 S

Oakland, CA 94612

U.S. District Court, Northern District California

Court Room 1

131 Clay Street

Oakland, CA 94612

To:   Whom It May concern:

RE:  Moore v. Verizon law suit settlement.

I am writing to object/ appeal the settlement, class counsel's request for attorney's fees & expenses

(7,500, 00 0) and/or incentive awards (10,000 total).

 I would like to appeal the settlement or award of attorney's fees.  I want all my winnings of the class action suit to come directly to me in the Moore v. Verizon law suit.

Sincerely,

Shirley A. Jones

Cell:  617-212-2195, press # to bypass greeting

Email address: sjones@rhdboston.org

# ELIZABETH KIRK-PREVATTE

RECEIVED

AUG 2 0 2012

LEGAL SERVICES

**Moore v Verizon CA3071**

**600000013**

**Objection #**

This Item Was Labeled as a Special Request by DC
DC Issue Tracking # SP 2709
Requested by: Scott Ogden
From VOID? YES NO   Date: 8-23-12
Original Case: Moore v Verizon
Original Doc Type: Comega
Original Doc ID: 70000184

Please Review Document History
Before Requesting a VOID

# Document Range

0307105

| Begin: | End: | Quantity: |
|--------|------|-----------|
| 13 | — | 1 |

| Prepped by: | QC: | Stats: | Scanned by: |
|-------------|-----|--------|-------------|
| ID #: 1416  8/23/12 | ✓ | AG 8/23/12 | AG 8/23/12 |

**Route to:** Vault                *Route to:_____

Elizabeth Frick- Prewitt
4700 Schooner Blvd
Suffolk, VA 23434

8/17/12

Dear Sir,

I in regards to Moore v. Verizon class A in care of the Moore v. Verizon Settlement Administrator I am informing of a request to extend the decision declaration due to competent circumstancial distressing severe happenings. This request is within the awareness of the Final Approval Hearing on September 6, 2012 at the U.S. District Court, Northern District California, 1301 Clay Street, Oakland, CA 94612, Courtroom 1. Also, at this time am notifying considerable objection but not exclusion.

Thankyou, Elizabeth Frick

Elizabeth Kirk - Prevatte
1700 Schooner Blvd.
Suffolk, VA 23435
(OARC Events Rd.
Suffolk, VA 23434)

Moore V. Verizon Settlement Administrator
P.O. Box 4655
Portland, OR 97208-4655

97208+4655

Phone # 751-295-1281

# MAURICE MARGULIES

12011 Hitching Post Lane
Rockville, MD 20852
301-881-6163
mmmargul@verizon.net
http://www.marguliesfineart.com

June 7, 2012

Re: Moore et al vs Verizon et al

Clerk of the Court
1301 Clay Street
Ste. 400 400S
Oakland CA 94612

Sir,

I am enclosing a copy of my letter to John G. Jacobs objecting to the settlement in the case above.

Respectfully

Maurice M. Margulies

12011 Hitching Post Lane
Rockville, MD 20852
301-881-6163
mmmargul@verizon.net
http://www.marguliesfineart.com

June 7, 2012

Re: Moore et al vs Verizon et al

Class Counsel
John G. Jacobs
122 S Michigan Ave.
Suite 1850
Chicago I 60603

Sirs,

I object to the settlement because there are no punitive damages. I was billed but did not pay any third party charges. Thus, as I understand the settlement I cannot recover damages. I spent considerable time and effort to get my account with Verizon straightened out.  In addition to third party billing Verizon billed me for services I had not ordered. That took even longer to get settled. Since I was not aware of the class action suit, and generally these days don't bother with them because what I would be able to recover is usually minisculet my correspondence and billings from years previous to 2012 have been discarded.

Verizon should have been hit with substantial punitive damages.

Respectfully

Maurice M. Margulies

Cc Henry Weissman and Clerk of the Court

RECEIVED

JUN 1 1 2012

*Clerk of the Court*
*1301 Clay Street*
*Ste 400₄₀₀S*
*Oakland CA 94612*

Mr. Maurice M. Margulies
12011 Illiching Post Ln
N Bethesda, MD 20852

# DANIEL MARTINEZ

FRom DanieL mARtines
1841 S. FlogaWAy → santa mARia, ce 93459

Objections

RECEIVED

MAY 18 2012

JACOBS KOLTON, CHTD.

From DanieL mARtines
1841 S. FloRaWAy santa mARia CA 931

SANTA mARia caLif 93459

To JoHn G Jacobs Es'q
122 S. michigan Ave sf
1850, chicago, IL 60603

RECEIVED

MAY 18 2012

JACOBS KOLTON, CHTD.

# JAMES McCULLOUGH

650 Concord Avenue - Apartment 218
Cambridge, Massachusetts
02189–1130

July 23, 2012

John G. Jacobs, Esq.
122 South Michigan Avenue, St. 1850
Chicago, Illinois 60603

Dear Mr. Jacobs and Clerk of the Court Settlement Agent:

  Regarding the Moore v Verizon Case No. CV-09-1823 SBA, I
have read the card sent to me informing me of the Verizon third party
billing settlement dispute. Of course you must know that it is not under-
standable to non-lawyers like me.
  As seemingly requested, I went to the indicated website and did the
desired request, however no reply was sent to me within the stated four-
teen (14) days. So if an amount of how much I paid to Verizon is needed
so that the courts can settle an amount to pay me, how can I possible do
that if your end of the website agreement was never filled? And who
saves phone bills from 2005 to 2012? I do not! Something is unsettling
in this questionable settlement outcome. Will only the Courts, Moore,
and lawyers really get anything out of this folly?
  I, therefore, write you to officially inform you that I do wish to be
included in any payment of this settlement over $40.00, although so far
no good faith has been shown from your website search request.

Perplexed,

James McCullough
James McCullough

  617-864-0012  mccullj@gmail.com



# STEVE MORRISON

RECEIVED

AUG 2 2 2012

LEGAL SERVICES

**Moore v Verizon CA3071**

Objection #                    600000017

# Document Range

0307105

**Begin:**

**End:**

**Quantity:**

**Prepped by:** | **QC:** | **Stats:** | **Scanned by:**

ID #:

**Route to:** Vault

**\*Route to:** _____

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Moore et al v. Verizon et al    Class Action Case No. cv-1823 SBA

OBJECTION TO THE PROPOSED SETTLEMENT

My name is Steven K. Morrison and I received a notice (printed on yellow background) that I had the opportunity to object to the proposed settlement. I am 77 years old and retired and the notice also told me that I should expect to receive $40 or some still undisclosed amount from the proposed settlement. I am spending more than 3 percent of my alleged return on postage to object to the proposed settlement.

The people who may be liable for my possible $40 and the 7.5 million dollar legal fees are mainly the 2012 Verizon stockholders. But those culpable for the scurrilous behavior were those individuals at Verizon who developed the scheme and were rewarded for misleading and overbilling Verizon customers, an activity which produced their inflated salaries, bonuses and stock options in earlier years. Not only should they have exclusive liability for the settlement and the attorney fees, but they should be fired from their Verizon employment now!

There may be cases that do or do not support this viewpoint. I am not going to devote a lot more of my great windfall return to hire someone to do legal research as the Notice suggests I might. However, I am really vexed that this sleazy behavior ( a Ponzi scheme that I did not and do not consent to) apparently goes unaddressed and the actual perpetrators have an insufficient personal downside for their bad behavior.

Steven K. Morrison
13816 Vintage Lane
Silver Spring, MD 20906-2240
(301) 871-6452

On this 17th day of August, 2012, I personally mailed the foregoing
OBJECTION, first class mail from a US Post Office, to John G. Jacobs, 122
S. Michigan Ave., Suite 1850, Chicago, IL. 60603,  Henry Weiss, 355 S.
Grand Ave., 35th Floor, Los Angeles, CA 90071-1560, and Clerk of the
Court, 1301 Clay Street, Ste 400 S., Oakland, CA 94612.

# IRENE NELSON

RECEIVED

SEP 10 2012

LEGAL SERVICES

**Moore v Verizon CA3071**



**Objection #**

**600000021**

# Document Range

0307105

**Begin:**

**End:**

**Quantity:**

**Prepped by:**      **QC:**      **Stats:**      **Scanned by:**

ID #:

**Route to:**   Vault      *****Route to:**_____

Ms. Irene Nelson
205B Boxwood Rd. #206
Annapolis, MD 21403-1150

July 23, 2012

Henry A. Weissmann, ESQ.
3555 S. Grand Ave., 35th Fl.
Los Angeles, CA. 90071-1560

Re: Class Action Settlement Notice

Dear Esq. Weissmann:

I STRONGLY **OBJECT** To The Settlement, Class Counsel's request fees and expenses ($7,500,000) And or incentive Awards ($10,000 Total).

I WANT WHAT is best for me (MONETARY).

Enclosure: **OMIT**
Class Action Settlement Notice
Photocopy

410-280-8641 Line (Now DISCONNECTED)
410-212-2710 Cell OR
433-254-7038 Cell

Sincerely
Irene Nelson

RECEIVED

AUG 2 9

JACOBS KOLTON, CHTD.

Ms. Irene Nelson
205B Boxwood Rd. #206
Annapolis, MD 21403-1150

Aug. 16, 2012

John G. Jacobs, Esq.
122 S. Michigan Ave.
Ste. 1850
Chicago, Il. 60603

Re: Class Action Settlement Notice

Dear Attorney (Esq.) Jacobs:

I Strongly OBJECT to the
Settlement, Class Counsel's request
fees and expenses ($7,500,000) And or
incentive Awards ($10,000 TOTAL).

I want the BEST for me in
MONETARY settlement.

410-280-8641 (Disconnected) Verizon

410-212-2710 Cell OR
410-254-7038 Cell