1
2
3
4                    UNITED STATES DISTRICT COURT
5             FOR THE NORTHERN DISTRICT OF CALIFORNIA
6                          OAKLAND DIVISION
7

8  DESIREE MOORE and KAREN JONES          Case No:  C 09-1823 SBA
   individually and on behalf of a class of
9  similarly situated individuals,        **ORDER**

10              Plaintiffs,                Docket 123, 168

11       v.

12 VERIZON COMMUNICATIONS INC.,
   VERIZON CALIFORNIA INC., VERIZON
13 CORPORATE SERVICES GROUP INC.,
   VERIZON SERVICES CORP.,
14 TELESECTOR RESOURCES GROUP, INC.
   d/b/a VERIZON SERVICES GROUP,
15 VERIZON SERVICES OPERATIONS INC.,
   VERIZON SERVICES ORGANIZATION
16 INC., VERIZON CORPORATE SERVICES
   CORP., VERIZON DATA SERVICES INC.,
17 and DOES 1 through 25,

18              Defendants.

19

20       The parties are presently before the Court on Plaintiffs Desiree Moore and Karen

21 Jones' (collectively, "Plaintiffs") Motion for Final Approval of Class Action Settlement,

22 and Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative

23 Incentive Awards.  Dkt. 123, 168.  Defendants Verizon Communications Inc., Verizon

24 California Inc., Verizon Corporate Services Group Inc., Verizon Services Corp., Telesector

25 Resources Group, Inc. d/b/a Verizon Services Group, Verizon Services Operations Inc.,

26 Verizon Services Organizations, Inc., Verizon Corporate Services Corp., and Verizon Data

27 Services Inc. (collectively, "Verizon" or "Defendants") filed a statement of non-opposition

28 to Plaintiffs' Motion for Final Approval of Class Action Settlement.  Dkt. 176.  Verizon

filed an opposition to Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.  Dkt. 175.  Non-party Enhanced Services Billing, Inc. ("ESBI") filed an *amicus* brief objecting to Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.  Dkt. 173.  Verizon's opposition and ESBI's objection to Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards are limited to Class Counsel's request for attorneys' fees and expenses in the amount of $7,500,000.  Dkt. 173, 175.

Having read and considered the papers filed in connection with these matters as well as the arguments made by counsel at the July 9, 2013 Final Approval Hearing, the Court hereby GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement, and GRANTS IN PART Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.  The Court grants Class Counsel's Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards to the extent Class Counsel seek an incentive award of $5,000 for each of the Class Representatives.  Class Counsel's request for an award of attorneys' fees and expenses in the amount of $7,500,000 has been referred to Magistrate Judge Jacqueline Scott Corley for determination, subject to review by this Court upon timely request by either party.  See Dkt. 189.

## I.   BACKGROUND

This lawsuit was brought in early 2009 against Verizon on behalf of a proposed nationwide class of current and former Verizon landline customers who were billed for allegedly unauthorized third-party charges submitted to Verizon by billing aggregators on behalf of third-party providers.  See Compl., Dkt. 1.  The practice of placing unauthorized charges on a customer's monthly phone bill is commonly known as "cramming."

The operative complaint alleges that "[t]his class action against Verizon involves a particularly abusive practice: the intentional charging of consumers for products and services they have not requested or authorized and the illegal billing and collection of such charges," i.e., cramming.  Second Am. Compl. ("SAC") ¶ 1.  According to Plaintiffs, "[t]he problem lies in business practices Verizon has adopted for billing and collecting on behalf

of itself and myriad third-party companies for various third-party products and services."
Id.  Plaintiffs allege that although Verizon is aware of the widespread incidence of unauthorized billing by its third-party providers from customer complaints and from state and federal regulatory bodies across the nation, it has failed to take sufficient steps to ensure that the charges placed on consumers' telephone bills are in fact authorized by the persons legally empowered to authorize such charges.  Id. ¶¶ 2-3.

Plaintiffs allege that Verizon does not allow most third-party service providers to place charges directly on their bills.  SAC ¶ 5.  Instead, Verizon requires that the third-party providers bill through billing aggregators who act as an intermediary between the third-party providers and the local exchange carriers ("LECs," i.e., local phone companies such as Verizon).  Id.  The third parties send their billings to the billing aggregators, the billing aggregators in turn send those billings along to the appropriate LEC, and the LEC places those charges on its customers' monthly phone bills.  Id.  According to Plaintiffs, "Verizon, the billing aggregators, and the third-party providers know that the billing and collection system used lacks sufficient checks and safeguards to prevent unauthorized charges from being added to customers' wireline telephone bills – indeed, to the contrary, they all know that there is a significant likelihood of unauthorized charges, given the system presently used – and they have knowingly exploited those defective systems to implement and carry out their fraudulent scheme."  Id. ¶ 5.

Plaintiffs and the putative class and sub-class bring claims against Verizon for (a) violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"); (b) violation of the Telecommunications Act of 1934, 47 U.S.C. §§ 201, et seq. (the "TCA"); and (c) breach of trust.  SAC ¶ 6.  Plaintiffs and the putative class and sub-class also bring claims against all Defendants, other than the Verizon LECs, for tortious interference with contract.  Id.  Plaintiffs and the putative sub-class bring additional claims against Verizon California for: (a) violation of California Public Utilities Code ("CPUC") § 2890; and (b) breach of contract against all Defendants for violation of California Business and Professions Code § 17200, et seq. (the "UCL")  Id.  Plaintiffs and the putative class and

sub-class seek actual, treble and exemplary damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.  Id. ¶ 7.

On September 18, 2009, Plaintiffs filed a first amended complaint ("FAC").  FAC, Dkt. 32.  On September 10, 2010, the Court granted in part and denied in part Defendants' motion to dismiss the FAC.  Dkt. 60.  The Court granted the motion with respect to Plaintiffs' claims for breach of trust and violations of the TCA and 47 C.F.R. § 64.2401.  Id. The Court denied the motion with respect to Plaintiffs' claims for violation of RICO, conspiracy to violate RICO, breach of contract, tortious interference with contract, violation of CPUC § 2890, and violation of the UCL.  Id.

In or about October 2010, the parties engaged in mediation under the supervision of the Honorable Daniel H. Weinstein (Ret.).  See Dkt. 60, 91.  After over a year of mediation, the parties reached an agreement on a proposed settlement of this matter ("Settlement"). See Weinstein Decl. ¶¶ 1, 8-10, Dkt. 91.

The salient terms of the Settlement call for: (1) complete refunds (i.e., 100%) of all unauthorized charges for class members filing Full Payment Claims or, alternatively, Flat Payments of $40 for class members who do not want to file a Full Payment Claim; (2) various forms of injunctive relief, as described below; (3) payment of attorneys' fees and expenses in an amount up to $7,500,000[1]; and (4) an incentive award of $5,000 for each of the Class Representatives.  Settlement Agreement at 10, 13-17, 22-23.  In addition to paying Plaintiffs' attorneys' fees and expenses, Verizon has agreed to pay the costs of administering the Settlement and the incentive awards to the Class Representatives.  Id. at 12-13.  Verizon has also agreed to provide class members with the right to obtain, for free,

---

[1] The original Settlement Agreement contained what is characterized as a "clear sailing provision," which states that "Verizon shall not oppose . . . or solicit others to [oppose]" an application for attorneys' fees, costs and expenses in an amount that does not exceed $7,500,000.  Settlement Agreement at 22.  As set forth below, the parties have eliminated this provision from the Settlement Agreement.

a billing summary identifying all Third-Party Charges[2] they were billed for during the class period and the ability to use that billing summary to submit a Full Payment claim to recover 100% of all unauthorized Third-Party Charges.  Id. at 9-10.[3]

With respect to injunctive relief, the Settlement provides the following changes to the manner in which Verizon conducts its third-party billing business: (1) an opt-in requirement before new customers can be billed for Third-Party Charges; (2) a notice program that explains to existing customers that Third-Party Charges may appear on their bills and that they have the option to block such charges for free; (3) a prominent notice to customers any time a new Third-Party Charge is proposed to be added to the customer's bill; (4) reduced cramming complaint thresholds for Third-Party Charges at which Verizon has the right to terminate billing by Aggregators and Third-Party Service Providers; (5) increased penalties for cramming complaints; (6) enhanced training of Verizon customer service representatives to improve adherence to Verizon's First Call Resolution Policy, which allows customers who have been billed for Third-Party Charges to obtain a full refund of unauthorized charges without engaging in the settlement procedures outlined in the Settlement Agreement; (7) a requirement that obligates Verizon to cause Aggregators to notify other landline carriers (AT&T and Qwest) and governmental entities of an

---

[2] The Settlement Agreement defines "Third Party Charge" as "a charge from a Third-Party Service Provider billed by Verizon to the Settlement Class through an Aggregator." Settlement Agreement at 9.  The term "Third-Party Service Provider(s)" is defined as "any Person whose charges were billed by Verizon to the Settlement Class through an Aggregator."  Id.  The term "Aggregators" is defined as "Billing Concepts, Inc. a/k/a Billing Services Group Clearing Solutions or BSG d/b/a USBI and ZPDI, ACI Billing Services Inc. d/b/a OAN, Enhanced Services Billing, Inc. d/b/a ESBI, and HBS Billing Services Company (collectively, 'Billing Concepts Inc.'), The Billing Resource d/b/a Integretel ('The Billing Resource'), ILD Teleservices, Inc., ('ILD'), Transaction Clearing, LLC ('Transaction Clearing') and PaymentOne Corp., d/b/a PaymentOne or Ebillit ('Payment One') or any of them."  Id. at 2.

[3] As part of the Settlement, Verizon agreed to design, develop and implement computer programs to search approximately seven years of bills for each class member (consisting of almost 3.4 billion customer bills) for the purpose of providing billing summaries to class members.  See Schaefer Decl. ¶¶ 7-12, 51-52, Dkt. 171.  The billing summaries provide the names of each Third-Party Service Provider and Aggregator, as well as the respective monthly and total charges billed by each Aggregator and Third-Party Service Provider.  See id., Exhs. J-K.

Aggregator's rejection of a Third-Party Service Provider's application for billing services related to Third-Party Charges or the termination of billing services related to Third-Party Charges[4]; (8) a requirement that Third-Party Service Providers must have an order confirmation process for Third-Party Charges which verifies any individual order placed for such charges via (a) personal information obtained from a customer that must be verified by an Aggregator, and (b) an opt-in communication with customers confirming that they understand they have just placed an order with the Third-Party Service Provider; (9) notice to customers billed by Third-Party Service Providers terminated for cramming; and (10) regular independent audits of Aggregators and Third-Party Service Providers to ensure compliance with Verizon and Aggregator anti-cramming policies and procedures relating to Third-Party Charges.[5]  Settlement Agreement at 13-17.

In exchange for the relief set forth above, class members agree to release claims that arise out of or are related to the Third-Party Charges billed by Verizon on behalf of the Aggregators from April 27, 2005 to the date of preliminary approval of the Settlement that have been asserted or that might have been asserted in this action, excluding (a) message telephone services ("MTS") usage charges; (b) charges that relate to a change in the customer's primary interexchange carrier ("PIC"); and (c) charges billed by local telephone companies purchased from Verizon by Frontier Communications Corporation, FairPoint Communications, Inc., and Hawaiian Telecom.  See Settlement Agreement at 6-7, 21-22.  Approval of the Settlement is not conditioned on any minimum attorneys' fee award, minimum costs award, or the payment of any incentive award.  See Settlement Agreement at 22-24.

---

[4] If Verizon suspends an Aggregator from billing services related to Third-Party Charges, Verizon will notify relevant government entities, AT&T, and Qwest within 30 days and provide the reasons for such suspension.  Settlement Agreement at 15.

[5] In addition, Verizon will require Aggregators to maintain an ongoing internal audit function to ensure compliance with all required policies relating to Third-Party Charges, including the notice policies in the Settlement Agreement.  Settlement Agreement at 16.  The internal audit function is subject to the regular independent auditing process.  Id.  Any substantial failure to comply with the required policies will result in early termination of the Aggregator by Verizon.  Id.

On February 28, 2012, the Court issued an Order preliminarily approving the Settlement.  Dkt. 99.  In March 2012, Verizon announced that it intended to eliminate billing for what are called "miscellaneous" or "enhanced services" on its customers' bills, i.e., those services that have generated the bulk of cramming complaints.[6]  See Jacobs Decl. ¶ 7, Dkt. 168-9.  As of December 31, 2012, Verizon no longer allows such charges on its bills.  See id.; Schaefer Decl. ¶ 57.

On March 16, 2012, ESBI, a billing aggregator, filed a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure.  Dkt. 102.  In support of its motion, ESBI argued that it has a significant protectable interest in the amount of attorneys' fees and costs that the Court approves as part of the proposed Settlement because ESBI is required to indemnify Verizon for certain costs that Verizon has agreed to pay under the Settlement Agreement pursuant to an indemnity provision in a Billing Services Agreement entered into between Verizon and ESBI.  See Dkt. 154.  At the hearing on the motion to intervene, the parties agreed to amend the Settlement Agreement to allow Verizon to oppose Class Counsel's request for attorneys' fees and expenses.  In other words, the parties agreed to remove the "clear sailing" provision from the Settlement Agreement.  See Dkt. 144.  On February 5, 2013, the Court issued an Order denying ESBI's motion to intervene, but allowing ESBI to file an *amicus* brief in response to Class Counsel's request for attorneys' fees and expenses.  Dkt. 154.

On July 2, 2012, Class Counsel filed a Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.  Dkt. 123.  On August 17, 2012, the Federal Trade Commission ("FTC") filed a motion for leave to file an *amicus* brief objecting to the Settlement.  Dkt. 136.  The FTC's *amicus* brief expresses concerns about, among other things, provisions in the Settlement Agreement relating to the release of claims and the claims process.  Dkt. 136.  Also on August 17, 2012, the United States Department of Justice ("DOJ") filed a "statement of interest" objecting to the Settlement.  Dkt. 137.  The

---

[6] Not long thereafter, AT&T, Inc. made a similar announcement.  See Dkt. 123.

DOJ's statement of interest expresses concerns regarding the release of claims, the claims process, and the method for notifying potential class members of the Settlement.  Dkt. 137. On August 23, 2012, the Court granted the FTC's request to file an *amicus* brief.  Dkt. 140.

In response to the FTC's and the DOJ's objections to the Settlement, the parties engaged in numerous discussions with the FTC and DOJ regarding their concerns.  Dkt. 158.  Following these discussions, the parties agreed to modify the Settlement Agreement. Id.  On March 1, 2013, the parties filed a stipulation with the Court outlining several modifications to the Settlement Agreement relating to the release of claims and the claims process.  Id.

On March 4, 2013, the FTC filed a "Notice Regarding Final Approval Hearing," notifying the Court of its intention not to participate in the Final Approval Hearing because the modifications to the Settlement Agreement "significantly improve the settlement for consumers."  Dkt. 159.  Specifically, the FTC states that the modified Settlement Agreement improves the Settlement for consumers by: (1) no longer releasing Third-Party Service Providers – the parties alleged to have fraudulently billed consumers through Verizon; (2) limiting the release for Aggregators by making it clear that the FTC or any other government agency may obtain full restitution, disgorgement, or compensation for consumers without this lawsuit having any preclusion effect; (3) requiring Class Counsel to represent consumers whose claims are challenged; and (4) providing that Letters of Authorization, Third-Party Verification Recordings, and checked boxes are insufficient to rebut sworn consumer testimony when a consumer's claim is challenged.  Id.[7]

On March 5, 2013, the DOJ filed a "Notice of Position Regarding Revised Settlement," stating that the revised Settlement Agreement "accommodates the . . . non-notice-related concerns" it previously expressed regarding the Settlement.[8]  Dkt. 160.

---

[7] The FTC, however, states that it "remains generally concerned about the propriety of a claims-made process in the cramming context."  Dkt. 159.

[8] The DOJ's notice states that it "remains concerned about the adequacy of the notice sent to [potential] class members."  Dkt. 160.

Specifically, the notice filed by the DOJ states that the revised Settlement Agreement "enhance[s] consumer rights and make[s] it easier for class members to obtain justified recoveries" because: (1) it no longer contains provisions that could have blocked government enforcement actions against Aggregators and crammers; (2) it does not allow the use of customer "letters of authorization" and other deceptive and falsified materials to defend against class member recovery; (3) it requires Aggregators and crammers to produce all documents relating to a class member when attempting to block the class member's recovery, and (4) it requires Class Counsel to represent class members in disputes.  Id.

On June 11, 2013, Plaintiffs filed a Motion for Final Approval of Class Action Settlement.  Dkt. 168.  Also on June 11, 2013, Verizon and ESBI filed briefs objecting to Class Counsel's request for attorneys' fees and expenses.  Dkt. 173, 175.  On June 24, 2013, Verizon filed a statement of non-opposition to Plaintiffs' Motion for Final Approval of Class Action Settlement.  Dkt. 176.  On June 26, 2013, Class Counsel filed a reply to their Motion for Attorneys' Fees and Expenses and Class Representative Incentive Awards.  Dkt. 177.  On June 28, 2013, Class Counsel filed a supplemental declaration, attaching for the Court's *in camera* review counsels' detail time and expense reports.  Dkt. 184.  On July 2, 2013, Verizon filed objections to reply evidence.  Dkt. 185.

A Final Approval Hearing was held on July 9, 2013.  Dkt. 188.  On July 11, 2013, the Court issued an Order referring Class Counsel's request for attorneys' fees and expenses to Magistrate Judge Corley for determination.  Dkt. 189.

## II.   DISCUSSION

### A.   Motion for Final Approval of Class Action Settlement

#### 1.   Legal Standard

Federal Rule of Civil Procedure 23(e) provides that: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Approval under this rule entails a two-step process: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class.  See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221

F.R.D. 523, 525 (C.D. Cal. 2004).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011).

The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The district court's discretion in considering final approval of a settlement is informed by balancing the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).  "This list is not exhaustive, and different factors may predominate in different factual contexts." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement. See Chun–Hoon v. McKee Foods Corp., 716 F.Supp.2d 848, 851 (N.D. Cal. 2010).

The district court's role in evaluating a proposed settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. Officers for Justice, 688 F.2d at 625.  "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." Evans v. Jeff D., 475 U.S. 717, 726 (1986); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026

1  (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify

2  or substitute certain provisions.  The settlement must stand or fall in its entirety.")

### 2.    Balancing of Factors

#### a.    Strength of Plaintiffs' Case

5      The first factor to consider is the strength of Plaintiffs' case.  Because this action

6  settled before any substantive motions were filed, the Court did not have the opportunity to

7  consider the merits of Plaintiffs' claims.  However, while Plaintiffs believe their claims

8  have merit, they readily concede that they faced significant class certification, liability, and

9  damages hurdles.  Pls.' Mtn. at 8-9.  According to Class Counsel, numerous prior class

10  action lawsuits relating to cramming have resulted either in outright dismissal or in

11  settlements with no significant recovery or changes in the way third-party billing is

12  conducted.  Id. at 8 (citing Schachman Decl. ¶ 13, Dkt. 91-7; Jacobs Decl. ¶ 3, Dkt. 91-6).

13  Class Counsel aver that in the course of deciding whether to initiate this case, they learned

14  that the industry (telephone companies, aggregators and third-party providers) had fared

15  extremely well in litigation, including almost always defeating class certification.  Jacobs

16  Decl. ¶ 3.  Given the challenges faced by Plaintiffs in prevailing on their claims, this factor

17  weighs in favor of approving the Settlement.

#### b.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

19
20      The next factor to consider is the risk, expense and duration associated with

21  prosecuting this case through trial and the appellate process.  These considerations favor

22  approval of the Settlement.  There is substantial risk in litigating this case further.  Plaintiffs

23  acknowledge that there is uncertainty in prevailing on their claims if the litigation were to

24  go forward due to the 24 affirmative defenses that have been asserted by Defendants.  Pls.'

25  Mtn. at 8.  Further, Plaintiffs note that Verizon has maintained throughout this action that

26  they would be unable to: (1) secure certification of a class; (2) hold Verizon liable for the

27  unauthorized billing of its third party billing partners; and (3) succeed on the merits of the

28  case, including their RICO theory of liability.  Id.  Plaintiffs also note that Verizon contends

that they would be unable to prove damages on a class wide basis because the question of whether individual class members authorized particular charges is inherently individual. Id.

While Plaintiffs dispute Verizon's characterization of their claims, they acknowledge that the historical failure of cramming cases "underlines" the challenge of litigating this case to judgment.  Pls.' Mtn. at 8.  Moreover, Plaintiffs recognize that the inherent uncertainty that comes with all class action litigation poses additional risks.  Id.  According to Plaintiffs, if they failed to obtain class certification, "the case would effectively be over and class members left with nothing."  Id. at 8-9.  Furthermore, Plaintiffs assert that, in the absence of settlement, the expense, duration and complexity of the protracted litigation that would result would be substantial given the significant hurdles that remain, including, among other things, anticipated summary judgment motions, contested class certification, Daubert motions, and appeals.  Id. at 9.

The Court finds that Plaintiffs have shown that Verizon intended to vigorously defend against this action had the parties not agreed to settle.  As such, proceeding further in this already protracted litigation would have presented numerous risks to Plaintiffs, including the denial of a motion for class certification, dismissal of this action upon a dispositive motion, and judgment in favor of Verizon after trial.  Such considerations, and the substantial expense associated with litigating this action further, weigh in favor of approving the Settlement.  See Rodriguez, 563 F.3d at 964 (difficulties and risks in litigating further weighed in favor of approving settlement).

### c.      Risk of Maintaining Class Action Status

The third factor considers the risk of maintaining class certification in the event the litigation proceeds forward.  As noted, Verizon maintains that it has meritorious defenses to the claims alleged in this action, and that it was prepared to vigorously oppose class certification.  Pls.' Mtn. at 8.  According to Plaintiffs, Verizon has repeatedly asserted that they had virtually no chance of certifying a class.  Id.  While Plaintiffs contend that there are features about this case that distinguish it from other cramming cases, they admit that

class certification has been denied in the "overwhelming run of cramming cases."  See, e.g., Lady Di's, Inc. v. Enhanced Services Billing, Inc., 654 F.3d 728 (7th Cir. 2011) (affirming the denial of class certification where district court found that common issues of fact or law did not predominate over individual issues because the details of each customer's individual transactions would need to be examined to consider whether the claims for unjust enrichment or statutory deception were proven).  Given the difficulties and risks in obtaining and maintaining class certification, this factor weighs in favor of approving the Settlement.

### d.      Amount Offered in Settlement

The amount offered in settlement is another factor for the Court to consider in determining whether to finally approve a proposed settlement.  Churchill Village, 361 F.3d at 574.  In this case, Defendants have agreed to pay for 100% of all unauthorized Third-Party Charges submitted to Verizon by Aggregators on behalf of Third- Party Service Providers.  Alternatively, class members may opt for a $40 Flat Payment.  In addition to monetary benefits, the Settlement provides meaningful injunctive relief as outlined above, including, among other things, an opt-in requirement before new customers can be billed for Third-Party Charges, a notice program that explains to existing customers that Third-Party Charges may appear on their bills and that they have the option to block such charges for free, and a prominent notice to customers any time a new Third-Party Charge is proposed to be added to their bill.  The Settlement Agreement also requires Verizon to pay the costs of notice and settlement administration,[9] incentive awards for the Class Representative in an amount up to $10,000, and Class Counsel's attorneys' fees and expenses in an amount up to $7,500,000.

Finally, while it is unclear as to the precise impact this lawsuit had on Verizon's decision to no longer permit third-party charges for "enhanced or miscellaneous services" to appear on its customers' bills, the timing of Verizon's decision (which occurred less than

---

[9] Through May 31, 2013, the Settlement Administrator has billed Verizon a total of $5,508,291 for its services in administering the Settlement.  Redell Decl. ¶ 32.

one month after the Settlement was preliminarily approved) suggests to the Court that the instant action played a role in that decision.  The Court notes that Verizon's decision to eliminate services that have generated the bulk of cramming complaints is laudable and confers a substantial benefit not only on class members but also on all current and future Verizon customers.  The parties are to be commended for their efforts in obtaining this result.  Accordingly, because the Settlement has resulted in significant benefits to class members, this factor weighs in favor of approving the Settlement.

### e.   Extent of Discovery Completed and the Stage of the Proceedings

The Settlement in this action was reached after the parties engaged in discovery, litigated a motion to dismiss, and participated in mediation that involved an extensive exchange of information, multiple briefings, and six all-day mediation sessions overseen by the Honorable Daniel H. Weinstein (Ret.) over the course of more than a year.  <u>See</u> Weinstein Decl. ¶¶ 1, 8-10, Dkt. 91-2.  The fact that the Settlement was reached at this juncture of the proceedings supports the conclusion that the parties' decision to settle was a fully informed one.  Therefore, this factor weighs in favor of approving the Settlement.

### f.   Experience and Views of Counsel

The experience and views of counsel representing the parties support approval of the Settlement.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1026 (noting that the experience of counsel representing plaintiff and defense also favors final approval of the proposed settlement). The attorneys representing both sides are experienced in this type of litigation and are in a position to opine whether the Settlement is fair, reasonable and adequate.  Verizon has been represented by Munger, Tolles & Olson LLP, a well-known and reputable law firm that has considerable experience with complex litigation and class actions.  Verizon's counsel supports approval of the Settlement. Dkt. 176.  Likewise, Class Counsel have extensive experience with class actions,[10] and they "unreservedly recommend the settlement to the Court as in the best interests of the class."  Pls.' Mtn. at 12.  Given the collective experience

---

[10] <u>See</u> Dkt. 91-3 (firm resumes, including experience of Class Counsel).

of the attorneys involved in this litigation, the Court credits counsels' view that the Settlement is worthy of approval. <u>See</u> <u>Rodriguez</u>, 563 F.3d at 967 ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"). Moreover, the Court notes that the experienced mediator also "unreservedly" recommends the Settlement. <u>See</u> Weinstein Decl. ¶¶ 2, 4-6, 11.

### g. Governmental Participant

The Settlement Administrator sent a notice packet by certified mail to 12 Public Utilities Commissions and 52 federal and state officials, including the Attorney General of the United States, the Attorneys General of each of the 50 states and the District of Columbia. Redell Decl. ¶ 5. Other than the FTC and the DOJ, no governmental entity has objected to the Settlement. As for the FTC and the DOJ, they both decided not to participate in the Final Approval Hearing following the modification of certain provisions of the Settlement Agreement. Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

### h. Reaction of the Class Members

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. <u>Mandujano v. Basic Vegetable Prods. Inc.</u>, 541 F.2d 832, 837 (9th Cir. 1976). Out of the potential 8,089,893 class members, 250,236 submitted valid claims,[11] there are 28 objections,[12] and 621 have chosen to opt out.

---

[11] As of June 7, 2013, the Settlement Administrator had received 349,475 Claim Forms. Redell Decl. ¶ 27. Of these Claim Forms, 250,236 were deemed valid. <u>Id.</u> The remaining 99,239 Claim Forms were deemed invalid because they: (1) could not be matched with any account on the Settlement Class List (79,065); (2) did not elect either the Flat or Full Payment option, or elected both the Flat and Full Payment option (3,359); or (3) did not include a Charge Summary, claimed an amount different from the amount indicated on the Charge Summary, or failed to indicate on their Charge Summary which charges were unauthorized (16,815). According to the Settlement Administrator, "[f]or most Claim Forms, classification as valid or invalid is not a final determination." <u>Id.</u>

[12] As of June 5, 2013, the Settlement Administrator had received 24 objections. Redell Decl. ¶ 31. While the Settlement Administrator has only received 24 objections, Class Counsel has identified 28 objections. Pls.' Mtn. at 12. Below, the Court will address each of the 28 objections identified by Class Counsel.

See Redell Decl. ¶¶ 7, 27, 30-31; Pl.'s Mtn. at 12.  Given the amount of valid claim forms submitted, and the relatively small number of objections and opt-outs, the reaction of the class to the Settlement is positive, which favors approving the Settlement.  See Rodriguez, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); Churchill Village, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received).

### i.       Arms-Length Negotiation

Finally, the Court considers whether the Settlement was likely the result of good faith arms-length negotiations, or whether it was the product of fraud or collusion.  See Officers for Justice, 688 F.2d at 625.  In this case, the parties agreed to settle this matter after over a year of arms-length negotiations overseen by the Honorable Judge Daniel H. Weinstein (Ret.).  According to the mediator, the Settlement was reached at the end of an "extraordinarily thorough mediation process" and is "the result of hard fought, good faith and arm's length negotiation that takes into account the risk and potential rewards of the claims being settled."  See Weinstein Decl. ¶ 11.  Given the length and the nature of the mediation process as described in detail by the mediator, id. ¶¶ 9-11,[13] the Court is satisfied that the Settlement is not the product of fraud or collusion.  Therefore, this factor weighs in favor of approving the Settlement.  See In re Bluetooth, 654 F.3d at 948 (participation of mediator is not dispositive, but is "a factor weighing in favor of a finding of non-collusiveness").

///

///

---

[13] Prior to reaching an agreement in principle to settle this matter, the parties participated in six all-day mediation sessions and numerous telephonic and e-mail communications with the mediator and his colleague.  See Weinstein Decl. ¶ 9.  As part of the mediation process, the parties served detailed information and document requests, exchanged the requested information and documents, and exchanged several rounds of briefs.  Id.

1

### j.      Conclusion

2      On balance, the Court concludes that the relevant factors weigh in favor of a finding

3  that the Settlement is fair, reasonable, and adequate.

4

### 3.      Objections

5      In determining whether to finally approve a class action settlement, the Court

6  considers whether there are any objections to the proposed settlement and, if so, the nature

7  of those objections.  However, the fact that there is some opposition does not necessitate

8  disapproval of the settlement; rather, the court must evaluate whether the objections suggest

9  serious reasons why the proposal might be unfair.  <u>Bennett v. Behring Corp.</u>, 737 F.2d 982

10  (11th Cir. 1984); <u>White v. Experian Information Solutions, Inc.</u>, 803 F.Supp.2d 1086, 1100

11  (C.D. Cal. 2011).  As will be set forth below, none of the objections present any serious

12  reasons for rejecting the Settlement.

13

### a.      Standing to Object

14      It is well-settled that only class members may object to a class action settlement.

15  <u>Gould v. Alleco, Inc.</u>, 883 F.2d 281, 284 (4th Cir. 1989); <u>see</u> Fed.R.Civ.P. 23(e)(5).  Thus,

16  a court need not consider the objections of non-class members because they lack standing.

17  <u>See</u> <u>Californians for Disability Rights v. Cal. Dept. of Transp.</u>, 2010 WL 2228531, at *8

18  (N.D. Cal. 2010) (Armstrong, J.).

19      The following objectors lack standing to object to the Settlement because they are

20  not class members: Joseph and Betty Fix, Mark Drozdov,[14] Forrest Turkish, Dolores

21  Warner, Steven K. Morrison, Richard Price, Ronald Riley, John J. Pentz, Jr., Ronald Green,

22  Maxine Dillard/Sanae Dillard, Elizabeth Kirk-Prevatte, and Melissa Brown.  According to

23  Gary Zimmers, who is a Consultant Systems Engineer in Verizon Data Services LLC's

24  Information Technology group, these individuals incurred no Third-Party Charges during

25

26  _____

27      [14] In a letter dated June 25, 2013, Mark Drozdov informed Class Counsel that he is
withdrawing his objections to the Settlement.  Therefore, Mr. Drozdov's objections are
MOOT.

28

the Class Period and therefore are not class members.  Zimmers Decl. ¶¶ 3, 7-19.

Accordingly, the objections submitted by these individuals are OVERRULED.

### b.    Insufficient Information

Based on the information submitted, Verizon was unable to determine whether the following individuals were billed for Third-Party Charges during the Class Period: James McCullough,[15] Maurice Margulies[16] and Daniel Martines.[17]  Zimmers Decl. ¶¶ 20-22. Zimmers avers that these individuals only provided their name and address in connection with their respective objections in violation of the Court's Preliminary Approval Order and the Class Notice.  See Dkt. at 99; Azari Decl., Exh. C, Dkt. 169.  Zimmers searched Verizon's records, but did not locate an account for these individuals with Verizon. Zimmers Decl. ¶¶ 20-22.  Accordingly, because these individuals are not part of the class, and/or because they failed to comply with the proper procedures to object to the Settlement, their objections are OVERRULED.

///

///

---

[15] Mr. McCullough generally complains that the notice he received is not understandable to non-lawyers and states that he did not receive a billing summary within fourteen days after making an online request.  He also states that he "wish[es] to be included in any payment of this settlement over $40.00, although so far no good faith has been shown from [Verizon's] website search request."  Mr. McCullough's has not articulated a basis for rejecting the Settlement.  His objection does not demonstrate that the Settlement is unfair, inadequate, or unreasonable.  Mr. McCullough failed to show that the class notice is inadequate or that he suffered any prejudice resulting from his failure to receive a charge summary within fourteen days of his online request.  Accordingly, his objection is OVERRULED.

[16] Mr. Margulies objects to the Settlement on the ground that it does not provide for punitive damages.  However, because he has failed to show that the Settlement is unfair, inadequate, or unreasonable for the failure to include such damages, Mr. Magulies' objection is OVERRULED.  See In re Oil Spill By Oil Rig Deepwater Horizon, --- F.R.D. ----, 2013 WL 144042, at *44 (E.D. La. 2013) ("Given that any award of punitive damages is inherently speculative and discretionary, courts regularly approve settlements that offer no or little compensation representing the risk of a punitive damages award.") (citing cases); Rodriguez, 563 F.3d at 964 ("courts generally determine fairness of an antitrust class action settlement based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages").

[17] Because Mr. Martines failed to articulate any basis for his objection to the Settlement, his objection is OVERRULED on the merits.

1

### c.    Remaining Objections of Class Members

2

#### i.    Lory Axtman

3

Lory Axtman objects to Class Counsel's request for attorneys' fees and expenses and

4 Class Representative incentive awards.  However, she offers no specific reason as to why

5 the Settlement should not be approved based on Class Counsel's request.  Therefore, Ms.

6 Axtman's objection is OVERRULED.

7

#### ii.    Sandra Diaz

8

The objection filed by Sandra Diaz is largely unintelligible.  Ms. Diaz appears to

9 claim that she has been "ripped off" by third-party charges and thus is requesting the sum of

10 $99,999.99.  However, she offers no specific reason for objecting to the proposed

11 Settlement.  Therefore, Ms. Diaz's objection is OVERRULED.

12

#### iii.    Todd Elliott

13

Todd Elliott submitted a lengthy letter to the Court discussing Verizon's tiered

14 service, stating that "All in All I want Verizon to increase the number of tier programs that

15 adequately accommodate their customers."  The objection of Mr. Elliott states no ground

16 for rejecting the Settlement.  Therefore, his objection is OVERRULED.

17

#### iv.    Barbara Hilton

18

The one-sentence objection of Barbara Hilton states no substantive ground for her

19 objection to the Settlement.  Therefore, Ms. Hilton's objection is OVERRULED.

20

#### v.    Shirley Jones

21

Shirley Jones objects to Class Counsel's request for attorneys' fees and expenses and

22 Class Representative incentive awards, but she offers no reason for her objection other than

23 she wants all her "winnings . . . to come directly to [her]."  Because Ms. Jones states no

24 substantive ground for objecting to the Settlement, her objection is OVERRULED.

25

#### vi.    Irene Nelson

26

Irene Nelson objects to Class Counsel's request for attorneys' fees and expenses and

27 Class Representative incentive awards.  However, Ms. Nelson offers no reason for

28

objecting to the Settlement other than wanting "the best for [her] in monetary settlement." Therefore, Ms. Nelson's objection is OVERRULED.

### vii.    Mrs. C. Parker

Mrs. C. Parker objects to Class Counsel's request for attorney's fees and expenses and Class Representative incentive awards.  However, because she did not offer any reason why the Settlement is unfair, inadequate, or unreasonable, Mrs. Parker's objection is OVERRULED.

### viii.    Fanette Pollack

Fanette Pollack objects to Class Counsel's request for attorneys' fees and expenses on the ground that the claims process is "sloppy, inaccurate, duplicative and cumbersome, and not designed to serve the interests of the class."  Specifically, Ms. Pollack takes exception to the fact that she did not timely receive her charge summary after submitting two requests online.  She states that she finally received her charge summary approximately two weeks after requesting it directly from the Settlement Administrator.  Ms. Pollack asserts that "if [Class Counsel's] handling of the case was anything like their implementation of the settlement process for Verizon customers, they should not be paid anything approaching [$7,500,000]."  The mere fact that Ms. Pollack experienced delay in receiving her charge summary is not a reason to reject the Settlement.  Her objection does not demonstrate that the Settlement is unfair, inadequate, or unreasonable.  Ms. Pollack has not shown that she or any other class member has suffered any prejudice resulting from the delay in receiving a charge summary.  Therefore, Ms. Pollack's objection is OVERRULED.

### ix.    Richard Principio

Richard Principio's objection states that he "feel[s] that it is unfair to have to pay for my own attorney's fees.  But I would like my money that's due me."  Since Verizon is responsible for the payment of fees, Mr. Principio's objection is without merit, and therefore OVERRULED.

///

///

### x.     Charles Quinn

Charles Quinn objects to the payment of attorney's fees and expenses in the amount of $7,500,000 and to the payment of anything over $500 to Class Representative Desiree Moore.  Mr. Quinn states that attorneys' fees and expenses in the amount of $7,500,000 for "representing a $40 claim" is extravagant, but does not offer any compelling reason why the Settlement is unfair, inadequate, or unreasonable.  Therefore, his objection is OVERRULED.

### xi.     David Rourke

David Rourke's objection states that he "got severe damages & mental anguish" and that Verizon "turned in incorrect credit reports . . . ruining his credit for years. . . ." Because Mr. Rourke offers no specific reason for objecting to the Settlement, his objection is OVERRULED.

### xii.     Patrick Rudd

Patrick Rudd's objection states that he is an "objector to overcharges," but does not offer any reason why the Settlement is unfair, inadequate, or unreasonable.  Therefore, his objection is OVERRULED.

### xiii.     Larry Stover

Larry Stover objects to the Settlement on the ground that attorneys' fees in the amount of $7,500,000 "is an outrageous amount for a nuisance settlement and will only encourage these attorneys to file more of these."  Mr. Stover's objection, however, states no substantive ground for objecting to the Settlement, and therefore is OVERRULED.

### d.     Procedurally Deficient Objections

The Preliminary Approval Order states, in relevant part, as follows:

> Any Settlement Class Member who wishes to object to the proposed Settlement, the applications for attorneys' fees, costs and expenses or the request for the payment of incentive awards must file with the Court, and serve upon Class Counsel and Defendants' Counsel, a written objection no later than August 17, 2012. . . .

> All such objections must be in writing and include: (i) the name, address and telephone number of the objecting Settlement Class Member; (ii) a detailed statement of objections to be made, including all factual and legal support for such objection; (iii) any evidence supporting the objection that is intended to

be introduced in support of the objection, including evidence of the objector's membership in the Settlement Class. . . . Objections not filed and served in accordance with this paragraph shall not be received or considered by the Court.  Any Settlement Class Member who fails to timely file and serve a written objection in accordance with this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, to the fairness, reasonableness, or adequacy of the Settlement, to the payment of attorneys' fees, costs, and expenses, the payment of incentive awards, or to the Final Approval Order or the right to appeal same.

See Dkt. 99 at ¶ 11.

The Class Notice (long form) instructs class members that any objection to the Settlement must be mailed to Class Counsel and defense counsel and filed with the Court. Azari Decl., Exh. C-D.  The notice further instructs class members that objections must include the objector's name, address, phone number, a detailed statement of the objection, all factual and legal support for the objection, evidence supporting the objection, including evidence of the objector's membership in the Settlement Class, and the caption and case number appearing on the Settlement Class Notice.  Id.

In addition to the reasons stated above, the objections submitted by the following individuals are also overruled for failing to comply with the procedural requirements for objecting to the Settlement: Mr. and Mrs. Fix; Mr. Turkish; Ms. Warner; Mr. Green; Ms. Dillard; Ms. Kirk-Prevatte; Mr. Margulies; Mr. Martines; Mr. Elliott; Ms. Hilton; Ms. Jones; Ms. Nelson; Mrs. Parker; Mr. Principio; Mr. Rourke; and Mr. Stover.

Specifically, Mr. and Mrs. Fix's objection is OVERRULED because it does not contain the caption and case number appearing on the Settlement Class Notice; Mr. Turkish's objection is OVERRULED because it does not contain an address or phone number and was not filed with the Court; Ms. Warner's objection is OVERRULED because it was not served on Class Counsel; Mr. Green's objection is OVERRULED because it does not contain the caption and case number appearing on the Settlement Class Notice; Ms. Dillard's objection is OVERRULED because it is untimely; Ms. Kirk-Prevatte's objection is OVERRULED because it does not contain the caption and case number appearing on the Settlement Class Notice; Mr. Margulies objection is OVERRULED because it does not contain the caption and case number appearing on the Settlement Class Notice; Mr.

Martines objection is OVERRULED because he did not file his objection with the Court or provide his phone number; Mr. Elliott's objection is OVERRULED because he failed to mail his objection to Class Counsel; Ms. Hilton's objection is OVERRULED because she failed to provide a phone number or the caption and case number appearing on the Settlement Class Notice; Ms. Jones' objection is OVERRULED because she failed to provide the caption and case number appearing on the Settlement Class Notice; Ms. Nelson's objection is OVERRULED because it is untimely, was not filed with the Court and does not provide the caption and case number appearing on the Settlement Class Notice; Mrs. Parker's objection is OVERRULED because her objection was not filed with the Court and does not provide the caption and case number appearing on the Settlement Class Notice; Mr. Principio's objection is OVERRULED because it was not timely filed with the Court, was not sent to Class Counsel, and does not include his phone number; Mr. Rourke's objection is OVERRULED because it does not provide his phone number; and Mr. Stover's objection is OVERRULED because he did not serve his objection on Class Counsel.

### e.      Outstanding Concerns of the FTC and DOJ

As discussed above, on March 1, 2013, the parties filed a stipulation outlining certain modifications to the Settlement Agreement made in response to the DOJ's and the FTC's objections to the Settlement.  Dkt. 158.  The FTC and DOJ subsequently filed documents with the Court indicating that they did not intend to participate in the Final Approval Hearing given the modifications to the Settlement Agreement.  Dkt. 159, 160.  However, the FTC stated in its filing that it "remains generally concerned about the propriety of a claims-made process in the cramming context," Dkt. 159, while the DOJ stated in its filing that it "remains concerned about the adequacy of the notice sent to [potential] class members."  Dkt. 160.  These concerns are addressed below.

### i.      FTC

Notwithstanding the modifications to the Settlement Agreement, the FTC remains "generally concerned" about the Settlement's claims-made process.  See Dkt. 136-1.

1  Specifically, the FTC is concerned that claimants are required to aver under penalty of

2  perjury, to the best of their knowledge and belief, that they paid and did not knowingly

3  authorize the claimed third-party charges, did not receive a refund for such charges, did not

4  intentionally use the services associated with the charges, and did not release claims related

5  to such charges in any prior litigation.[18]  Id.  The FTC is also concerned that claims

6  submitted by class members are subject to a challenge by entities that wrongly billed them,

7  and that claimants are required to review their bills for a seven-year period to determine

8  whether they were wrongfully charged.  Id.  The FTC asserts that these "hurdles" are likely

9  to block valid claims and impede class members from filing a claim and thus lower the

10  recovery for class members.  Id.  According to the FTC, given the extremely low incidence

11  of legitimate Third-Party Charges, the only fair, reasonable, and adequate method for

12  providing monetary relief is to eliminate the claims process and provide refunds to

13  consumers who paid such charges unless there is reliable evidence that the consumer

14  actually used the product.  Id.

15        Although it is clear that adopting the FTC's proposal would be a better outcome for

16  the class than the claims-made process agreed to by the parties, the Court finds that the

17  FTC has failed to demonstrate that the Settlement should be rejected.  The proper standard

18  for approval of the Settlement is whether it is fair, reasonable, adequate, and free from

19  collusion—not whether the class members could have received a better deal in exchange

20  for the release of their claims.  See Hanlon,150 F.3d at 1027 ("Settlement is the offspring of

21  compromise; the question we address is not whether the final product could be prettier,

22  smarter or snazzier, but whether it is fair, adequate and free from collusion."); Officers for

23  Justice, 688 F.2d at 625 ("The proposed settlement is not to be judged against a

24

25        [18] The FTC notes that entities engaged in fraudulent billing frequently change their
   names to continue their fraudulent enterprise because they exceed the LECs' cramming
26  complaint levels and are banned from billing through them.  Dkt. 136-1.  According to the
   FTC, the "ever-morphing" slate of entities that appear on consumers' phone bills is likely to
27  confuse consumers and further deter them from filing a claim, especially where consumers
   must swear under penalty of perjury that they were billed for charges that they did not
28  knowingly authorize.  Id.

hypothetical or speculative measure of what might have been achieved by the negotiators. Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.' ") (citations omitted).

The Court is persuaded by Class Counsel's argument that while the FTC's proposal represents the ideal outcome for the class, the Settlement, including the claims-made process, is the product of compromise following extensive arms-length negotiations.  As such, the fact that the parties did not agree to the FTC's proposal is not a proper basis to reject the Settlement.  It is undisputed that not all Third-Party Charges were unauthorized. Further, the parties take sharply contrasting views on the percentage of unauthorized charges.  Given the parties' dispute regarding the percentage of unauthorized charges and the obstacles Plaintiffs faced in certifying a class and prevailing on the merits of their claims, the Court finds that the claims-made process, when viewed as part of the overall Settlement Agreement, does not render the Settlement unfair, unreasonable, or inadequate.

The Court notes that the claims-made process is not as burdensome for class members as the FTC suggests.  Contrary to the FTC's contention, claimants do not have to review seven years' worth of billing records to submit a claim.  Rather, claimants may request from the Settlement Administrator, free of charge, a billing summary developed by Verizon, which provides the names of each Third-Party Service Provider and Aggregator, as well as the respective monthly and total charges billed by each Aggregator and Third-Party Service Provider during the class period.  See Schaefer Decl. ¶¶ 51-53, Exhs. J-K. The billing summary explains what the summary is, how to use it to file a claim, and provides class members a link to a website with detailed instructions on how to submit a claim.  See id., Exhs. J-K.  The billing summary also identifies, in an easily understandable format, each Aggregator and each Third-Party Service Provider that billed for Third-Party Charges during the class period, the amount of each charge and credit, and the net total for each provider.  See id.  To complete the approximately three-to-four page form, a claimant must simply place a check mark next to any charge that the claimant believes was unauthorized.  See id.

ii.     **DOJ**

While the parties' modifications to the Settlement Agreement address the DOJ's non-noticed related concerns with the Settlement, the DOJ "remains concerned about the adequacy of the notice sent to [potential] class members."  Dkt. 160.  Specifically, the DOJ asserts that notice by telephone bill inserts to consumers who did not notice crammed charges on their telephone bills is inadequate.  Id.  According to the DOJ, "there is no reason to believe that the victims of cramming will see these notifications.  These are the same consumers who did not notice unauthorized charges on their telephone bills in the first place.  In fact, billing inserts may be less likely to be noticed than unauthorized charges, given that billing envelopes frequently contain promotional material that consumers ignore as junk mail."  Dkt. 137.

In this case, the parties agreed to a Notice Plan which includes notice via mail (i.e., bill stuffer notice), e-mail, postcard, publication, and a website.  Settlement Agreement 17-19.  The bill stuffer notice was sent to current Verizon customers in an envelope which contained in prominent lettering a "call-out" on the outside of the envelope, calling attention to the fact that enclosed in the envelope was a yellow notice regarding "refunds of third-party charges" and identifying its color (yellow, which was a color different than any other document in the envelope).  See Azari Decl. ¶¶ 21, Exhs. B-C.  The bill stuffer states in large, bold text:  "**CLASS ACTION SETTLEMENT NOTICE . . . You Received This Notice Because Verizon's Records Indicate You Were Billed For Third Party Charges between April 27, 2005 and February 28, 2012 and May Be Entitled to a Payment From This Class Action Settlement.**"  Id., Exh. C.  The bill stuffer notice was sent in two consecutive monthly bills.  Id. ¶ 23.  In addition to bill stuffer notice, current Verizon customers with e-mail addresses also received e-mail notice.  Id. ¶ 38. Current customers were also provided notice via newspaper publication and a website supported by Google Adwords.  Id. ¶ 42, 44-46.

Rule 23(c) prescribes the "best notice practicable under the circumstances."  Fed.R.Civ.P. 23(c)(2).  Under Rule 23(e), the "court must direct notice in a reasonable

manner to all class members who would be bound by the proposal."  Fed.R.Civ.P. 23(e).

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

detail to alert those with adverse viewpoints to investigate and to come forward and be

heard.' "  Churchill Village, 361 F.3d at 575; see Silber v. Mabon, 18 F.3d 1449, 1454 (9th

Cir. 1994) (In order to satisfy due process considerations, notice must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections.").  Notice by publication

and mail has been found to be "clearly adequate."  Walsh v. Great Atlantic & Pacific Tea

Co., 726 F.2d 956, 963 (3d Cir. 1983).

        The DOJ criticizes the bill stuffer notice as inadequate but does not propose a better

form of notice to current Verizon customers or discuss the other forms of notice provided to

current Verizon customers.  Nor does the DOJ provide any authority or analysis

demonstrating that class notice via a billing insert is inadequate in general, let alone

inadequate under the circumstances of this case.  Indeed, as Plaintiffs point out, numerous

other courts have approved the use of a notice plan that included class notice via bill notice

inserts.  See, e.g., Faigman v. AT & T Mobility LLC, 2011 WL 672648, at *3 (N.D. Cal.

2011).

        Having reviewed the content of the bill stuffer notice and the other forms of notice,

the Court finds that the notice provided to class members is the best notice practicable

under the circumstances and satisfies the requirements of Rule 23 and due process.[19]  The

contents of the various forms of notice and the methods of dissemination[20] are sufficient to

inform class members about the lawsuit, the terms of the Settlement, and their legal rights

and options, including the procedures through which to submit claims, object to the

Settlement, or opt-out and pursue their own remedies.  The Court finds that the DOJ's

---

[19] The Court has reviewed the CAFA notice and accompanying materials and finds
that they comply with all applicable requirements of CAFA.  Redell Decl. ¶¶ 5-6, Exh. A.

[20] The notice provided to class members is set forth in detail in the declarations of
Redell and Schaefer.  See Redell Decl.; Schaefer Decl.

1   concern regarding the bill stuffer notice sent to current Verizon customers is not a reason to

2   reject the Settlement.  The notice provided to current Verizon customers is reasonably

3   expected to reach these potential class members and inform them of the proposed

4   Settlement.

5       **B.      Motion for Attorneys' Fees and Expenses and Class Representative
                 Incentive Awards**

6

7           **1.      Attorneys' Fees and Expenses**

8           Class Counsel request attorneys' fees and expenses in the amount of $7,500,000.

9   Dkt. 123.  On July 11, 2013, the Court referred Class Counsel's request for attorneys' fees

10  and expenses to Magistrate Judge Corley for determination.  Dkt. 189.  In light of the

11  referral, the Court will defer final decision on the propriety of Class Counsel's request for

12  attorneys' fees and expenses.  The Court notes that Magistrate Judge Corley's determination

13  as to the proper award of attorneys' fees and expenses is subject to review by this Court

14  upon the timely request of either party.

15          **2.      Class Representative Incentive Awards**

16          Class Counsel request an incentive award of $5,000 for each Class Representative to

17  compensate them for their efforts on behalf of the class.  Dkt. 123.  "The district court must

18  evaluate [named plaintiffs'] awards individually, using relevant factors includ[ing] the

19  actions the plaintiff has taken to protect the interests of the class, the degree to which the

20  class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff

21  expended in pursuing the litigation. . . ."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.

22  2003).  "Such awards are discretionary . . . and are intended to compensate class

23  representatives for work done on behalf of the class, to make up for financial or

24  reputational risk undertaken in bringing the action, and, sometimes, to recognize their

25  willingness to act as a private attorney general."  Rodriguez, 563 F.3d at 958-959.  In this

26  district, a $5,000 payment is presumptively reasonable.  Ko v. Natura Pet Products, Inc.,

27  2012 WL 3945541, at *15 (N.D. Cal. 2012) (Armstrong, J.) (citing Hopson v. Hanesbrands

28  Inc., 2009 WL 928133, at *10 (N.D. Cal. 2009)).

1    Class Counsel aver that the Class Representatives assisted them in their pre-

2  litigation investigation, including providing valuable information and documents, and

3  continued to assist Class Counsel throughout this lawsuit.  Schachman Decl. ¶¶ 26-27.

4  Specifically, the Class Representatives spent a substantial amount of time reviewing with

5  Class Counsel the facts regarding how they incurred unauthorized charges and their efforts

6  to obtain refunds of these charges prior to contacting Class Counsel.  Id. ¶ 26.  They also

7  made themselves available on numerous occasions during the three years this action was

8  pending prior to Settlement to review records, confer with Class Counsel regarding

9  questions that arose during the course of the litigation, and to receive updates on the

10  progress of the case.  Id. ¶¶ 26-27.  In addition, the Class Representatives reviewed all of

11  the major pleadings, motions and Orders in this case, aided Class Counsel with discovery,

12  reviewed the briefing on Defendants' motion to dismiss, and made themselves available by

13  telephone during the parties' mediation sessions.  See id. ¶¶ 26-28.  Upon review of the

14  record, and in light of the nature of the assistance the Class Representatives provided in this

15  case, the Court finds that the requested incentive award of $5,000 for each of the Class

16  Representatives is reasonable.

17  **III.    CONCLUSION**

18    For the reasons stated above, IT IS HEREBY ORDERED THAT:

19    1.    Plaintiffs' Motion for Final Approval of Class Action Settlement is

20  GRANTED.

21    2.    The terms of the Settlement Agreement as modified by the parties are

22  incorporated into this Order and are APPROVED.

23    3.    All objections to the Settlement are OVERRULED.

24    4.    The parties and the Settlement Administrator shall perform their respective

25  obligations under the terms of the Settlement Agreement.

26    5.    The Class Representatives are each awarded $5,000 as an incentive award.

27    6.    Pursuant to the terms of the Settlement Agreement, the instant action is

28  dismissed with prejudice, subject to Paragraphs 7 and 8 below.

1    7.    Without affecting the finality of this Order in any way, the Court hereby

2  retains jurisdiction to resolve any dispute regarding compliance with the Settlement

3  Agreement that cannot be resolved through the meet and confer process.  Any disputes

4  regarding the Settlement Agreement shall be referred to Magistrate Judge Corley.

5    8.    Per the parties' agreement, the attorneys' fees and expenses award shall not

6  exceed $7,500,000.  Class Counsel's request for an award of attorneys' fees and expenses

7  has been submitted to the Court and referred to Magistrate Judge Corley for determination,

8  subject to review by this Court upon timely request by either party.

9    9.    This Order terminates Docket 168.

10    IT IS SO ORDERED.

11  Dated:  8/28/2013

12    SAUNDRA BROWN ARMSTRONG
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28