United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

DESIREE MOORE, et al.,

Plaintiffs,

v.

VERIZON COMMUNICATIONS, INC., et al.,

Defendants.

Case No.: 09-1823 SBA (JSC)

**REPORT AND RECOMMENDATION RE: MOTION FOR ATTORNEYS' FEES (Dkt. No. 123)**

Plaintiffs brought suit in 2009 on behalf of a nationwide class of current and former Verizon landline customers who were billed for allegedly unauthorized third-party charges submitted to Verizon by billing aggregators on behalf of third-party providers. After a year of litigation, the parties began a lengthy process of attempting to settle the case with the assistance of a mediator. In January 2012, the parties reached a settlement that provides that class members (customers who paid verifiably unauthorized third-party charges) will receive either a 100% refund or a flat payment of $40. (Dkt. No. 91-1 at 5.) District Judge Saundra Brown Armstrong granted final approval of the settlement and referred Class Counsel's now pending Motion for Attorney Fees (Dkt. No. 123) to the undersigned magistrate judge for disposition. Having considered the parties' submissions, including their supplemental filings, and having had the benefit of oral argument on September 5, 2013, the Court

RECOMMENDS that the district court GRANT the motion for fees in the amount of $7,500,000.00.

**BACKGROUND**

The District Court's August 28, 2013 order granting final approval of the settlement sets forth the background of the litigation and settlement in great detail, and the Court incorporates this discussion by reference. (Dkt. No. 196.) For purposes of this motion, the Court reiterates the salient terms of the settlement: (1) complete refunds (i.e., 100%) of all unauthorized charges for class members filing Full Payment Claims or, alternatively, Flat Payments of $40 for class members who do not want to file a Full Payment Claim; (2) various forms of injunctive relief; (3) payment of attorneys' fees and expenses in an amount up to $7,500,000[1]; and (4) an incentive award of $5,000 for each of the Class Representatives. The only issue presently before the Court is the reasonableness of the $7,500,000 sought in attorneys fees' and costs.

The Court heard oral argument regarding the fees motion on September 5, 2013 and ordered that Class Counsel produce copies of their contemporaneous time records, which had previously been submitted to the Court for *in camera* review, to Defendant Verizon Communications, Inc., ("Verizon"). The parties thereafter filed supplemental briefs regarding the reasonableness of the fees sought in light of Verizon's review of the billing records. Enhanced Services Billing, Inc. ("ESBI"), which was previously granted leave by the District Court to submit an amicus brief in opposition to the fee motion, also submitted a supplemental brief opposing a multiplier. [2]

---

[1] The original Settlement Agreement contained what is characterized as a "clear sailing provision" providing that "Verizon shall not oppose . . . or solicit others to [oppose]" an application for attorneys' fees, costs and expenses in an amount that does not exceed $7,500,000; however, the parties subsequently agreed to eliminate this provision. (Dkt. No. 91-1 at 22.)

[2] ESBI is a billing clearinghouse that serves as an intermediary between its service provider clients and wireline local telephone companies. ESBI moved to intervene following preliminary approval of the settlement; the District Court denied the motion to intervene, but granted ESBI leave to submit an amicus brief in opposition to the fee motion. (Dkt. No. 154.) ESBI contends that it has a significant interest in the outcome because it is required to

## DISCUSSION

### A. Approval of the Settlement Agreement

The District Court granted final approval of the settlement on August 28, 2013, finding that the settlement was fair, adequate, and reasonable to all concerned thus satisfying all of the factors outlined in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). (Dkt. No. 196.) In doing so the District Court considered (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. (*Id*. at 11-17.)

### B. Response to Class Notice

Notice of the settlement was mailed to 8,089,893 current and former Verizon landline account customers (current customers were mailed two such notices with their monthly bill), it was also emailed to all 1,655,000 present and former customers for whom Verizon had an email address. (Dkt. No. 169 ¶¶ 18-49.) Notice was nationally published in USA Today. (*Id*. at ¶¶ 42-43.) According to Verizon, 1,499,000 individuals viewed its settlement website. (Dkt. No. 170 ¶ 19.) As of information available at the time of the hearing, 250,236 timely claims had been submitted, which represents 3% of the potential 8,089,893 class members. This number was preliminary, however, as the claims period for a third group of claimants did not close until October 20, 2013. The parties have not provided updated information regarding the number of additional claims received from this third group. Further, 28 individuals filed objections, and 621 individuals have opted out. (Dkt. No. 196 at 15.)

---

indemnify Verizon for certain costs that Verizon has agreed to pay under the settlement, and thus, separately opposes the motion for fees . (Dkt. No. 173.)

United States District Court
Northern District of California

**C. Attorneys' Fee Award**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942 (noting that 25% of the fund is considered the "benchmark" for a reasonable fee). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result. Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Id.* (citations omitted).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon*, 150 F.3d at 1029.

The Ninth Circuit recommends that whatever method is used, the district court perform a cross-check using the second method to confirm the reasonableness of the fee, e.g., if the lodestar method is applied, a cross-check with the percentage-of-recovery method will reveal if the lodestar amount surpasses the 25% benchmark. *See Bluetooth*, 654 F.3d at 944-45.

**1. Percentage or Lodestar?**

The parties dispute which method of calculating the fees is appropriate – the percentage method or the lodestar method. The dispute centers, at least in part, on whether the settlement creates a common fund such that the percentage-of-the recovery method is applicable. A common fund is created when the settlement sets aside a specified amount of money to be paid by the defendant for the benefit of the entire class "in exchange for a release of liability." *State of Fla. v. Dunne*, 915 F.2d 542, 544-45 (9th Cir. 1990). The attorneys' fees are then taken from the common fund, thereby reducing the amount available to class members. *Id.* at 545. This arrangement is "based on the equitable notion that those who have benefitted from litigation should share in its costs." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (internal citation and quotation marks omitted). Using this method, attorneys' fees are to be calculated based on a percentage of the entire fund (usually 25%), rather than as a percentage of the amount actually claimed by class members. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

A constructive common fund approach is used to safeguard against "private agreements to structure artificially separate fee and settlement arrangements" that attempt to do an end run around the twenty-five percent benchmark requirement in "what is in economic reality a common fund situation." *Bluetooth*, 654 F.3d at 943 (internal citation and quotation marks omitted). Where the "award to the class and the agreement on attorney fees represent a package deal" because the entire settlement amount essentially comes from the same source, the settlement is treated as a constructive common fund. *Id.* (internal citation and quotation marks omitted).

Here, Plaintiffs posit that the fees sought would be appropriate under either method of calculation, but argue strongly for the percentage method. Verizon counters that the percentage method is inappropriate because there is no common fund—this is a claims-based settlement as Verizon has agreed to reimburse all charges without a limit on recovery. The Court concludes that given the open-ended nature of the settlement, a lodestar calculation is

more appropriate than a percentage-of-recovery assessment. As the Ninth Circuit has explained, the percentage method is useful in situations where "the benefit to the class is easily quantified," making it worthwhile to forego the "often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942. In contrast, the lodestar method is usually used in situations where "there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d at 1029.

Plaintiffs' reliance on *Wing v. Asarco Inc.*, 114 F.3d 986, 987 (9th Cir. 1997), for the proposition that even when the settlement value is uncertain the court is still authorized to use the percentage method based on an estimated value, is misplaced for two reasons. First, in *Wing*, the percentage method was used only as a cross-check to ensure that the lodestar-multiplier approach yielded a reasonable determination, not as the primary method of calculation. *See id.* at 990. Second, the parties agreed as to the value of the settlement therefore assuaging concerns that the settlement estimate was wholly speculative. *See id.* Here, in contrast, the parties contest the projected value of the settlement. While Defendants contend that the "amount of class relief made available under the Settlement depends solely and entirely upon the number, type, and amount of claims filed" (Dkt. No. 175 at 8), Plaintiffs argue that the settlement value can be reasonably estimated by multiplying the percentage of third-party charges presumed to be unauthorized by the total amount of third-party charges. (*See* Dkt No. 123 at 4-6). Even Plaintiffs acknowledge, however, that the precise percentage of unauthorized third-party charges is unknown at this point, meaning that the Court would necessarily have to hazard a guess under the percentage method about what portion of the $670 million in third-party charges is potentially recoverable. *See id.* at 4. Although the parties agree that the present value of the claims is $16.3 million, this amount will inevitably rise, but how close it will come to the figure Plaintiffs' ascribe to is far from certain. Thus, while Plaintiffs provide compelling statistics from reliable sources indicating that the majority of third-party charges are unauthorized, Plaintiffs have not sufficiently explained why the Court needs to engage in this guesswork given that the lodestar method is an indisputably appropriate mode of calculation in this case. That is, even if it is true that a

constructive common fund can be utilized here, Plaintiffs have failed to prove why it is *preferable*.

Plaintiffs' reliance on *Bluetooth* is similarly unavailing. Plaintiffs cite *Bluetooth* for the proposition that a constructive common fund exists even without a "defined pool of money" set aside for the class, noting that in *Bluetooth* "there was no payment of any kind to be made to class members, much less any 'common fund' or 'defined pool of money' for payments." (*See* Dkt. No. 177 at 2-3.) While it is true, as Plaintiffs emphasize, that the Ninth Circuit left open the possibility that the settlement there could be analyzed as a constructive common fund, what the court viewed as constituting the common fund is telling, and ultimately cuts against Plaintiffs' argument. The *Bluetooth* court explicitly identified the sum total of the purported constructive common fund as $962,000, adding the "$800,000 allotment for attorneys' fees, the $12,000 allotment for an incentive award, the $100,000 *cy pres* award, and the $50,000 allotment for fees" to reach this figure. *Bluetooth*, 654 F.3d at 945. Thus, the court relied on discrete amounts in its percentage method calculation, which actually undermines Plaintiffs' claim that *Bluetooth* did not involve a "defined pool of money." (*See* Dkt. No. 177 at 3) (internal quotation marks omitted). In fact, the court declined to add to the constructive fund a speculative estimate of the value of the settlement injunctive relief because this value was "not apparent . . . from the face of the complaint," a district court finding, or "the progression of the settlement talks." *Bluetooth*, 654 F.3d at 945. Accordingly, the Ninth Circuit utilized the percentage method as a cross-check of the lodestar calculation and remanded the question of whether the settlement was best viewed as creating a common fund to the district court. *See id.* at 944-45. On remand, the district court determined that "as the settlement is not a common fund, the Court again concludes that the lodestar method is a more appropriate method of calculating a reasonable fee." *In re Bluetooth Headset Products Liab. Litig.*, 2012 WL 6869641, at *2 (C.D. Cal. July 31, 2012).



United States District Court
Northern District of California

United States District Court
Northern District of California

Caselaw from this District supports the conclusion that the claims-based nature of this settlement weighs in favor of a lodestar approach. In *Brazil v. Dell Inc.*, for example, the court found:

> The benefits achieved by Class Counsel are not in the form of a "common fund," but rather come in the form of structural changes to Dell's advertising practices and the payment to Class Members on a claims-made basis. Moreover, the fee awarded to Class Counsel will be paid directly by Dell, over and above the consideration to be paid to Class Members, and will thus not reduce the benefits available to the Class. In such circumstances, the most appropriate method for calculating reasonable attorneys' fees is the lodestar method.

2012 WL 1144303 at *1 (N.D. Cal. Apr. 4, 2012) (internal citation omitted). Similarly, the court in *Create-A-Card, Inc. v. Intuit, Inc.* held:

> The settlement in this case . . . is structured in such a way that there is no "common fund." Any attorney's fees and costs awarded to class counsel in this action will come directly from defendant as opposed to from a fund created by the settlement—the amount of attorney's fees awarded will have no impact on the recovery available to class members. Because there is no "common fund" here, the "percentage-of-the-fund" method is not available as a way to calculate attorney's fees.

2009 WL 3073920 at *1 (N.D. Cal. Sept. 22, 2009) (internal citation omitted). As in both of these cases, the settlement here is structured so that attorneys' fees and the class award are paid separately. While the payments are to be made by the same source, namely, by the Defendants, and can therefore be loosely viewed as representing a "package deal," *Bluetooth*, 654 F.3d at 943 (internal citations omitted), neither the *Brazil* nor *Create-A-Card* decisions even referenced a constructive common fund. Like the settlement here, the monetary award available to each claimant in *Brazil* was without a class-wide ceiling on recovery. *See* 2012 WL 1144303 at *1. Similarly, the *Create-A-Card* settlement entitled members of the class to "cash reimbursement for 100% of expenses incurred by the claimant (on or before April 15, 2008) for data recovery software purchased by the claimant, expenses of third party vendors providing data recovery services and the cost of computer hardware reasonably necessary for data recovery." *See* 2009 U.S. Dist. LEXIS 93989, at *9-10 (N.D. Cal. Sept. 22, 2009). No cap was set on this reimbursement. Thus, cases in this district with

settlements structured without a traditional common fund or cap on recovery have analyzed attorneys' fees using the lodestar calculation.

The remaining cases cited by Plaintiffs are likewise distinguishable. Plaintiffs themselves note in their parentheticals that *Hartless v. Clorox Co.*, 273 F.R.D. 630, 642–47 (S.D. Cal. 2011), *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), and *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289 at *32–43 (E.D. Cal. Sept. 1, 2011), all involved either minimum or maximum recovery amounts and/or common funds with specified value amounts. Further, *Browning v. Yahoo! Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007), which Plaintiffs describe as involving a "claims-made settlement with no minimum or maximum recovery" (Dkt. No. 123 at 7), used the percentage method only as a cross-check on the initial lodestar calculation. *See* 2007 WL 4105971 at 17 (explaining that the "reasonableness of the requested fee and the lodestar analysis are further supported by a percentage-of-recovery analysis").

Finally, Plaintiffs' argument that this settlement is better for the class than a settlement that provides an upper limit on recovery is misplaced. Whether the settlement is better from the perspective of class recovery is irrelevant to whether the percentage method is most appropriate in light of the settlement structure. That the settlement has no maximum payment, however, *is* critical to which method applies because payment caps provide guideposts that allow courts to reach informed projections of settlement values, fulfilling the purpose for which the percentage method is deployed in the first place: to provide a convenient alternative to the time-consuming lodestar calculation while still ensuring that the benefits to the class are "traced with some accuracy." *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, (1980) (internal citations and quotations omitted); *Bluetooth*, 654 F.3d at 942 (explaining that "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *see also Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631-32 (9th Cir. 2010) (noting that while the Ninth Circuit has "expressed reservations about using the percentage method where no cash fund is

created," the district court did not abuse its discretion by using the percentage method because an expert actuary had estimated the amount of class benefits to be $24-33 million). Thus, it does not follow that "[i]f an agreement to pay claims only up to a limit is deemed sufficient for use of the percentage method, an unlimited obligation must surely satisfy" because the very fact that the obligation is unlimited precludes estimating the value of the purported common fund with meaningful exactitude. (*See* Dkt. No. 177 at 2 n.2.)

Accordingly, the Court in its discretion concludes that applying the lodestar method in this case is preferable to the percentage-of-recovery method. The Court will, however, utilize the percentage method as a cross-check as recommended by the Ninth Circuit. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 944.

**2. Application of the Lodestar Calculation**

Plaintiffs contend that the lodestar as of May 31, 2013 was $6,375,982 in fees and $171,304 in costs. (Dkt. No. 177 13:2-3.) Plaintiffs seek a 2.1 multiplier, although they assert that in light of the on-going accrual of fees (which is not likely to dissipate any time soon), they will probably not receive any multiplier since the settlement caps fees and costs at $7.5 million.[3] Verizon contends that any award over $5,141,287 is unreasonable because (1) 75% of Class Counsel's time was recorded post-settlement, (2) the majority of that time was spent on needless administrative costs, and (3) the case was staffed in a way that resulted in excessive duplication and inefficiency.[4] Verizon and ESBI both oppose application of a multiplier as well.

---

[3] In their supplemental briefs Verizon and ESBI suggest that Plaintiff is seeking a multiplier of 1.15. Plaintiffs clarify that they never sought a multiplier of 1.15; rather, they argued in their reply brief that given the amount of the lodestar and the cap, they would at best receive a 1.15 multiplier if they were awarded the $7.5 million sought.

[4] Verizon also contends that the Court should view the amount sought with skepticism given the $2 million less the same class counsel agreed to accept in a similar case, *Nwabueze v. AT&T Inc. et al*, No. 09-1529-SI. The Court is not persuaded that this is a relevant benchmark of the appropriateness of the fees here; a number of factors contribute to the fees counsel may be willing to accept in a particular case. What is relevant here is whether the fees sought in this action are reasonable based on the factors laid out by the Ninth Circuit in *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

**a) <u>Reasonableness of the Fees Sought</u>**

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

**1) Fees for post-settlement work**

Verizon contends Class Counsel's lodestar is unreasonably high given that counsel recorded three times as many hours post-settlement (10,443 hours) as pre-settlement (3,542 hours). (Dkt. No. 204-1 ¶ 25.) Verizon insists that in light of the agreed-to professional settlement administrator, much of the time spent by Class Counsel on settlement administration related tasks was unnecessary. Plaintiffs do not contest the calculation of hours between pre and post-settlement work; instead, Plaintiffs challenge Verizon's characterization of the amount of time spent post-settlement as excessive or unnecessary. The issues the Court must resolve are (1) to what extent the time Class Counsel incurred post-settlement is compensable, and (2) at what hourly rate.

With respect to the first issue, Verizon does not identify any particular billing entries involving class member communications that it believes are unreasonable; instead, Verizon asserts a blanket objection to class member communications "including phone calls and emails" as redundant administrative tasks. (Dkt. No. 204-1 ¶ 27.) Verizon first objects to what it characterizes as redundant work performed by 15 contract attorneys who staffed a "call center" to respond to class member inquiries. According to Verizon's expert, this work accounts for $880,597 of the lodestar at hourly rates of $125 an hour or more. (Dkt. No. 204, 8:22-24.) Verizon also objects to the $1,075,402 billed by Class Counsel (the partners) for class member communications. (*Id.* at 9:11-24.)

Plaintiffs do not dispute that they created their own response system for fielding inquiries from class members, although they claim there were only seven contract attorneys and the other billers were firm employees billed at a reduced rate. In any event, the Court

finds that this attorney work was appropriate. The District Court, in granting preliminary approval of the settlement, ordered Class Counsel and the Settlement Administrator to respond to class member inquiries. (Dkt. No. 99 ¶ 14 "[i]t shall be the responsibility of Class Counsel and the Settlement Administrator to respond to all inquiries from Settlement Class Members.") Such an order is unsurprising; Class Counsel's work is not done when the settlement is reached. To the contrary, to make the settlement meaningful to the class, Counsel must often incur substantial time to ensure that the settlement in facts works as envisioned. The Court's review of the record in this case suggests that is what happened here.

The declaration submitted by Class Counsel David Schachman demonstrates that much of the work performed by Class Counsel, whether at the associate or partner level, was substantive and in accordance with counsel's responsibilities to the class. *See, e.g.*, Dkt. No. 178 ¶ 12.A (working with the Settlement Administrator to correct the validation rules in the online system for requesting billing summaries); ¶ 12.C (working with Verizon and the Settlement Administrator to ensure an extension of the claims period for class members whose billing summaries were late); ¶ 12.E (obtaining billing summaries for 40,000 class members who had previously been misclassified); ¶ 18 (identifying two groups of over 300,000 class members who had been omitted from the class list and thus had not received notice); ¶ 19 (providing assistance to 40,000 Class Members who for various reasons were unable to utilize the automated telephone response system or online system provided by the Settlement Administrator).

This type of work is not, as Verizon suggests, merely clerical. *See Californians for Disability Rights v. California Dep't of Transp.*, No. 06-05125, 2010 WL 8746910, at *17 (N.D. Cal. Dec. 13, 2010) report and recommendation adopted sub nom. *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, No. 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) ("communicating with class members" does not qualify as a "clerical activit[y]"); *Browne v. Am. Honda Motor Co., Inc.*, No. 09-06750, 2010 WL 9499073, at *9 (C.D. Cal. Oct. 5, 2010) (finding that time spent on post-settlement class

member communications and supervising responses to class member questions regarding the settlement was reasonable); *Goodson v. Comm'r of Soc. Sec.*, No. 07-1146, 2009 WL 3211700, at *2 (S.D. Cal. Sept. 28, 2009) (finding that "the time Plaintiff's attorney spent communicating with his client was not clerical and was reasonable."). Nor is this work redundant to that performed by the Settlement Administrator. Class Counsel followed up on or, in some cases, filled in the gaps left by, the work of the Settlement Administrator to ensure that class members' needs were being addressed; indeed, Verizon does not dispute that as a result of these communications Class Counsel identified an additional 326,505 class members who had not otherwise received notice, work which resulted in numerous additional claims including a $1.2 million claim by a public educational institution. (Dkt. No. 178 ¶ 9.) Thus, the time spent by Class Counsel post-settlement on class member communications was required by the settlement, productive, and reasonable.

As for the reasonable hourly rate for the above work, the Court is unpersuaded that it should cut the rate claimed by the majority of the attorneys billing for this work. Verizon suggests that for the 5,465 hours billed at hourly rates of $125 an hour or more for the call center the hourly rate should be cut to $62.50. This rate cut would effectively reduce the lodestar by $539,035. Verizon offers no case citation in support of this rate reduction; to the contrary, caselaw suggests that such an arbitrary reduction in the hourly rate would be unreasonable. *See, e.g., Andrews v. Lawrence Livermore Nat. Sec., LLC*, No. 11-3930, 2012 WL 160117, at *2 (N.D. Cal. Jan. 18, 2012) (approving an hourly rate of $300 for a contract attorney where "[d]efendants provide no authority for the proposition that, for purposes of determining reasonable hourly rates, an attorney's status as a contract attorney, as opposed to his or her employment as an associate, is a proper substitute for evaluating an attorney's actual experience or skills."); *Toll Bros., Inc. v. Chang Su-O Lin*, No. 08-987, 2009 WL 1816993 (N.D. Cal. June 25, 2009) (approving hourly rate for a contract attorney of $175). The rates charged for attorneys responding directly to class members' concerns in this nationwide class are reasonable.

Verizon's related contention that the hourly rate for Class Counsel—the partners— be cut to $250 per hour for all work involving class member communications is similarly unpersuasive. Verizon contends that the $1,075,402 sought for 1,537 hours of work performed Class Counsel (Messrs. Jacobs, Keller, Kolton, Sagafi, and Schachman) should be reduced by at least $691,152 because seeking compensation at "$550 to $825 per hour …is clearly excessive compensation for what amounts to 'customer service' activities." (Dkt. No. 204 9:24-26.) Verizon proposes that Class Counsel's hourly rates be reduced to $250 per hour based on the hourly rate of large-city insurance defense attorneys. The Court disagrees. In *Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. 08-01927, 2010 WL 3222183, at *10 (N.D. Cal. Aug. 13, 2010), the district court likewise rejected a suggestion that billing rates for research work should be reduced because the defendant "fail[ed] to offer any authority that require[d] a court to impose varied billing rates for a single attorney that depend on the task completed." *See also Chabner v. United of Omaha Life Ins. Co.*, No. 95-0447, 1999 WL 33227443, at *5-6 (N.D. Cal. Oct. 12, 1999) (rejecting defendants proposal that "senior counsel should not receive premium rates for work that could have been done by more junior-level lawyers" such that they should be compensated at a "'blended flat rate' of $250 hour" because defendant failed to cite any "market evidence or legal authority to back its proffered blended flat rate."). This settlement involves hundreds of thousands of class members with varying needs and concerns. Based on the present record, the Court does not find that the time spent by the partners communicating with class members should have been expended by less experienced attorneys or paralegals.

Accordingly, the Court rejects Verizon's suggestion that it should reduce the hourly rates of either the associates or partners working on the case on behalf of Class Counsel. Further, the Court concludes that the hourly rates for the attorneys who billed time on this case are reasonable given the geographic location and experience of counsel. Plaintiffs' fee expert Kenneth Moscaret declares: "[c]lass Counsel's requested hourly rates are reasonable and comparable to rates charged by comparable attorneys at high-quality litigation law firms

United States District Court
Northern District of California

which handle large, complex litigation (including class actions like this case) in the San Francisco Bay Area legal marketplace." (*See* Dkt. No. 177-3 at 2-3.)

**2) Redundancies generally**

Verizon also objects to the number of partners who participated in the mediation sessions and telephone conferences and proposes a 10% across-the-board reduction. However, in a large class action such as this "[t]he Court is reluctant to second-guess the staffing decisions of Plaintiff's counsel." *Moralez v. Whole Foods Mkt., Inc.*, No. 12-01072, 2013 WL 3967639, at *4 (N.D. Cal. July 31, 2013) (finding that it was not "unreasonable for Plaintiff's two lead attorneys to generate most of the hours billed in the litigation."); *see also Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (finding that participation of more than one attorney does not necessarily amount to unnecessary duplication of effort). Although Verizon correctly notes that the litigation in this case was limited—the case settled prior to significant discovery and absent significant motion practice (one motion to dismiss)—the results achieved by the settlement are excellent; indeed, the settlement achieves the perhaps unprecedented relief of full refunds for unauthorized charges. Having four partners represent the class during the mediation sessions was not unreasonable in a nationwide class action of this nature. The Court does agree, however, that it is likely unnecessary to have four partners attend a motion to dismiss given that only one attorney may actually argue the motion. Even if the Court deducts $10,000 from the amount billed for the motion hearing, however, it does not change the outcome of this motion.

Accordingly, after considering all of the relevant factors, the Court is not persuaded that a 10% across-the-board reduction in Plaintiffs lodestar is appropriate. The Court instead finds that an appropriate lodestar is $6,365,982.

**b) <u>Propriety of a Multiplier</u>**

Plaintiffs' initial motion for attorneys' fees sought a 2.1 multiplier; however, Plaintiffs now contend that given the considerable on-going work performed by Class Counsel on settlement administration related tasks their lodestar will likely be so high that even without a multiplier the $7.5 million cap on fees and costs will be met. As the lodestar

United States District Court
Northern District of California

before the Court, however, is less than the amount sought by Counsel, the Court must decide whether a multiplier is warranted and, if so, how much.

"[M]ultipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002); *see also Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (finding that the district court did not abuse its discretion in awarding a 2.0 multiplier in an "exceptional case" where the district judge spoke of being in "awe of class counsel's performance." Courts generally consider the following reasonableness factors when determining whether a multiplier is appropriate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

The Court is satisfied that a multiplier is warranted here. Because Plaintiffs' counsels' hourly rates are the normal rates they charge in non-contingent cases (*see* Dkt. No. 123-2, Jacobs Declaration ¶ 10), without a multiplier the risk Plaintiffs' counsel took in bringing this contingent-fee case would not be taken into account. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300-01 (9th Cir. 1994) (noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and finding district court's failure to apply multiplier to lodestar calculation was abuse of discretion where case was "fraught with risk and recovery was far from certain"). Further, as discussed *supra*, while the litigation may not have been extensive, the results achieved are sweeping and there was a substantial risk that Plaintiffs would not succeed either at the class certification or merits stage. Class members receive significant monetary relief (full refunds of unauthorized third-party charges) and injunctive relief (a complete

overhaul of Verizon's third-party billing practices including an opt-in requirements for all new accounts) under the settlement. (Dkt. No. 196, 4:14-6:11.) Moreover, while not required by the settlement itself, less than one month after the settlement was preliminarily approved Verizon agreed to no longer engage in third-party billing for enhanced or miscellaneous services. (Dkt. No. 196, 13:24-14:2.) The District Court cited the significant risks involved in the case as well as the breadth of the recovery as factors supporting her conclusion that the settlement was fair, reasonable, and adequate. (*Id.* at 11:4-14:7.)

A multiplier is therefore appropriate. The Court rejects Verizon's legally unprecedented request that the multiplier only apply to work performed prior to settlement. As with Verizon's suggestion that the Court could parse the hourly rates of Class Counsel based on the activity involved, any parsing of the multiplier would be likewise improper where, as here, Class Counsel's post-settlement work appears to have achieved substantial additional benefit for class members, both in terms of identifying hundreds of thousands of otherwise missed class members and in terms of obtaining significant financial relief for individual class members. In light of the "excellent" terms of the settlement, Class Counsel's efforts to ensure that the class has meaningful access to the settlement's benefits, and the risk involved in bringing this case, the Court finds that a multiplier of at least 1.5 is warranted. Thus, even if Counsel's present lodestar were reduced by more than $1 million, a fee award of $7.5 million would still be reasonable.

**3. Percentage Method Cross-Check**

As the Ninth Circuit has recommended that any lodestar fee award be cross-checked with the percentage-of-recovery method, *see Blue Tooth*, 654 F.3d at 944, the Court will do so here. Plaintiffs contend that under the percentage method a conservative estimate of the total settlement value is $58.1 million. This amount includes (1) the class claims, (2) the in-kind relief of the free billing summaries, (3) the costs of notice and settlement administration, and (4) the attorneys' fees and costs.

The Court addresses each category in turn. First, Plaintiffs represent that there are $670 million in third-party charges at issue in this lawsuit and that $16.3 million in facially

United States District Court
Northern District of California

valid claims had been filed as of oral argument. Verizon agreed to the $16 million figure at oral argument, although the parties disputed the number of outstanding claims; nonetheless, this amount is likely to increase as the claims period had not closed for all class members at the time of the hearing. Second, Plaintiffs contend that the free billing summaries amount to an in-kind relief which should be valued at in excess of $28.7 million. Verizon disputes inclusion of the billing summaries contending that the summaries have no independent value; rather, their sole value is to facilitate filing of claims. The Court agrees, but finds that the provision of the billing summaries is an additional indication of the excellent results obtained by Class Counsel further justifying the application of a multiplier. Requiring the billing summaries increased the likelihood that Verizon's agreement to pay 100% of unauthorized charges is meaningful. Third, the settlement administration costs and the costs of notice were at $5.5 million at the time of Plaintiffs' reply brief. Fourth, the attorneys' fees and costs are capped at $7.5 million.

In sum, excluding any additional value for the billing summaries, 25% of the preliminary settlement value would be $7.325, and that does not take into account the significant injunctive relief included in the settlement. Given that the amount of each of those categories will inevitably rise (with the exception of attorneys' fees and costs) with thousands of additional claims from corporate class members outstanding (*see* Dkt. No. 219 17:4-6) and administration of these claims through two additional claim periods yet to occur (at the time of oral argument), the percentage method cross check confirms the Court's finding that a fee and cost award $7.5 million is reasonable and warranted here.

**D. Costs**

Plaintiffs seek $171,304.86 in costs. Neither Verizon nor ESBI offer any specific objections to this request. The Court has reviewed the costs and they are reasonable. Plaintiffs are thus awarded $171,304.86 in costs to be included in the total award of $7.5 million.

//

//

United States District Court
Northern District of California

**CONCLUSION**

For the reasons explained above, the Court RECOMMENDS that the district court GRANT Plaintiffs' Motion for Attorneys' Fees and Costs in the amount of $7.5 million, the maximum amount allowable under the court-approved settlement.

Any party may file objections to this report and recommendation with the district judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: November 27, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE